# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

PHILLIP CHARLES GIBBS,

        Defendant-Appellant.

FOR PUBLICATION
February 14, 2013
9:05 a.m.

No. 306124
Genesee Circuit Court
LC No. 11-028140-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TYRELL HENDERSON,

        Defendant-Appellant.

No. 306127
Genesee Circuit Court
LC No. 11-028141-FC

Advance Sheets Version

---

Before: K. F. KELLY, P.J., and MARKEY and FORT HOOD, JJ.

PER CURIAM.

In Docket No. 306124, defendant, Phillip Charles Gibbs, was convicted by a jury of two counts of armed robbery, MCL 750.529, one count of unarmed robbery, MCL 750.530, and one count of conspiracy to commit armed robbery, MCL 750.157a and 750.529. Gibbs was sentenced to 17½ to 30 years' imprisonment for each count of armed robbery, 100 months to 15 years' imprisonment for the unarmed robbery conviction, and 17½ to 30 years' imprisonment for the conviction of conspiracy to commit armed robbery.

In Docket No. 306127, defendant, Tyrell Henderson, was convicted by a jury of three counts of armed robbery, MCL 750.529, one count of conspiracy to commit armed robbery, MCL 750.157a and 750.529, one count of assault with intent to rob while armed, MCL 750.89, one count of carrying a concealed weapon, MCL 750.227, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Henderson was sentenced to 225 months to 40 years' imprisonment for each count of armed robbery, 225 months to 40 years' imprisonment for the conviction of conspiracy to commit armed robbery, 225 months to 40

years' imprisonment for the conviction of assault with intent to rob while armed, 24 to 60 months' imprisonment for the conviction of carrying a concealed weapon, and 2 years' imprisonment for the felony-firearm conviction.

Defendants were tried together in front of separate juries. They both appeal as of right.[1] We vacate Henderson's conviction for assault with intent to rob while armed, but otherwise affirm both defendants' convictions and sentences.

## I.  BASIC FACTS AND PROCEDURAL HISTORY

### A.  TRIAL

This case arises from an armed robbery that occurred at a store called Wholesale 4 U in Flint, Michigan, on October 26, 2010.  Nancy Anagnostopoulos and her husband, Costas Anagnostopoulos, owned the store and were present at the time of the robbery.  Also present was employee Jeremy Kassing.  Defendants had been to the store together numerous times that day.  Originally, they had hoped to pawn some jewelry.  After finding out that the jewelry had no value, Henderson purchased a video game.  He later decided to return it.  Defendants entered the store and told Costas that the game did not work.  As Costas attempted to help determine what was wrong with the game, Henderson struck him in the head with a gun.  Gibbs, who was not personally armed during the incident, approached Nancy and removed her necklaces and ring.  He took her identification and purse.  Gibbs also took an iPod from the store, as well as a number of laptop computers.  In the meantime, Henderson took Costas's jewelry, wallet, and money.  He ordered Costas to open the store's register and then took Costas to a back room where a safe was kept.  Part of Costas's ear was cut off as a result of the blow he received, and he received stitches for the injury.  Kassing's wallet was also taken.  A subsequent search of the home Gibbs shared with his mother uncovered a sandwich bag containing jewelry, a sandwich bag containing papers and the identifications of the three victims, and several watches identified as those taken from the store.

In separate police interviews, both defendants admitted their involvement.  However, Gibbs told the officer that his involvement was involuntary.  Gibbs believed that they were going to the store to return the video game and had no idea that Henderson was planning a robbery.  Gibbs stated that Henderson ordered him to take the victims' belongings and other store items.  Gibbs testified at trial that he complied only because he did not want anything to happen to him.

The juries convicted defendants and they were sentenced as outlined previously.

---

[1] On September 14, 2011, Henderson filed a claim of appeal, and on September 16, 2011, Gibbs filed his claim of appeal.  On December 7, 2011, this Court entered an order consolidating the appeals.  *People v Gibbs*, unpublished order of the Court of Appeals, entered December 7, 2011 (Docket Nos. 306124 and 306127).

## B.  GIBBS'S MOTION FOR REMAND

On May 23, 2012, Gibbs filed a motion to remand with this Court in order to make two objections to his sentencing, develop his argument that he was denied the right to a public trial, and, alternatively, argue that his counsel was ineffective.  We granted Gibbs's motion to remand and remanded for Gibbs to file a motion for resentencing regarding prior record variable (PRV) 5 and PRV 6 and to file a motion for a new trial.  *People v Gibbs*, unpublished order of the Court of Appeals, entered June 20, 2012 (Docket No. 306124).  We ordered the trial court to hold an evidentiary hearing concerning the closure of the courtroom during voir dire.  *Id.*

On remand, Gibbs argued that his right to a public trial was violated by the closing of the courtroom and the exclusion of his family from jury selection.  Gibbs also argued that he was entitled to resentencing on the basis of the incorrect scoring on PRV 5 and PRV 6.  The trial court declined to conduct a full hearing on the court-closure issue.  The trial court admitted that its procedure is that, after jury selection begins, it does not allow people to enter or leave the courtroom.  The trial court stated that if individuals came after jury selection started, then they would not have been allowed in the courtroom.  The trial court denied the motion for a new trial. The trial court also found that Gibbs had a relationship to the criminal justice system on the date of the offenses for purposes of scoring PRV 5 and PRV 6 and denied the motion for resentencing.

## II.  GIBBS'S APPEAL

## A.  RIGHT TO A PUBLIC TRIAL

Gibbs argues that the trial court violated his right to a public trial and that he is entitled to automatic reversal.  We disagree.

Gibbs did not object to the closure at trial.  The Michigan Supreme Court recently held that the plain-error standard applies to a defendant's forfeited claim that the trial court violated the defendant's Sixth Amendment right to a public trial.  *People v Vaughn*, 491 Mich 642, 664, 674-675; 821 NW2d 288 (2012).

> [I]n order to receive relief on [a] forfeited claim of constitutional error, [a] defendant must establish (1) that the error occurred, (2) that the error was "plain," (3) that the error affected substantial rights, and (4) that the error either resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings.  [*Id.* at 664-665.]

The *Vaughn* Court concluded that the first two prongs of the analysis were satisfied because the trial court ordered the courtroom closed before voir dire without advancing "an overriding interest that is likely to be prejudiced" and the error was "clear or obvious" because it was "readily apparent" that the trial court closed the courtroom and it is "well settled" that the right to a public trial extends to voir dire.  *Id.* at 665 (citations and quotation marks omitted).  The Court also concluded that the third prong was satisfied because the closure of the courtroom was "a plain structural error."  *Id.* at 666.  However, the Court held that the fourth prong was not satisfied because "both parties engaged in a vigorous voir dire process," "there were no objections to either party's peremptory challenges of potential jurors," and "each party expressed

satisfaction with the ultimate jury chosen." *Id.* at 668-669. Additionally, the Court noted that the presence of the venire—members of the public—lessened the extent to which the closure implicated the defendant's right and guaranteed that the proceedings were subject to a substantial degree of public review. *Id.* at 668. The Court concluded that the defendant was not entitled to a new trial. *Id.* at 669.

In *People v Russell*, 297 Mich App 707, 720; 825 NW2d 263 (2012), this Court stated that "the effect of a partial closure of trial does not reach the level of a total closure and only a substantial, rather than a compelling, reason for the closure is required." The Court concluded that the voir dire proceedings were partially closed because of the limited capacity in the courtroom and that the limited capacity was a substantial reason for the closure. *Id.* Accordingly, the partial closure did not deny the defendant his right to a public trial. *Id.*

Gibbs contends that his family and members of the public were prevented from entering the courtroom during jury selection. The record reveals that before jury selection began, the trial court stated, "And if any spectators would like to come in they're welcome but they do have to sit over here by the law clerk, not in the middle of the pool." Gibbs submitted affidavits indicating that individuals were not allowed to enter the courtroom during jury selection. Even accepting Gibbs's contention as true, we find no error given the trial court's statement. It appears that the courtroom was opened to the public initially, but then closed once jury selection began. On remand, the trial court did not conduct a full hearing and acknowledged that once jury selection had begun, the courtroom was closed and suggested that it was "too confusing" to allow individuals to come and go during jury selection. Even if we were to find error on the basis of the trial court's admitted refusal to allow individuals to enter once jury selection began, Gibbs is not entitled to a new trial or evidentiary hearing. As in *Vaughn*, both parties engaged in vigorous voir dire, there were no objections to either party's peremptory challenges, and each side expressed satisfaction with the jury. Further, the venire itself was present. Accordingly, Gibbs fails to satisfy the fourth prong as set forth in *Vaughn* and is not entitled to a new trial.

## B. PREARREST SILENCE

Gibbs argues that the prosecutor violated his Fifth Amendment right to remain silent by using his prearrest silence to impeach his testimony and by referring to his prearrest silence during closing argument. We disagree.

Gibbs failed to object to the prosecutor's questions during his cross-examination; therefore, the issue is unpreserved. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). To the extent that Gibbs's argument alleges prosecutorial misconduct, because Gibbs did not object to the prosecutor's statements, the issue is also unpreserved. *People v Cain*, 299 Mich App 27, 35; 829 NW2d 37 (2012). "This Court reviews unpreserved constitutional errors for plain error affecting substantial rights." *Id.* at 40. This Court also reviews unpreserved claims of prosecutorial misconduct for plain error. *Id.* at 35.

During Gibbs's testimony, the prosecutor asked Gibbs when he told his mother what had happened and when he told the police that Henderson made him rob the store. The prosecutor asked Gibbs if he went to the police station on October 26, 2010, or after he talked to his brother the next day. In her closing argument, the prosecutor stated:

-4-

Because remember despite what Phillip Gibbs testified to here in the courtroom about what his knowledge was, what his role or lack thereof was, he doesn't take an opportunity to run out of the store.  He doesn't call 911 from inside the store.  He doesn't run away separate from Mr. Henderson after this robbery occurred.  He doesn't tell his mother.  He doesn't go to the police.

The prosecutor again referred during her rebuttal to Gibbs's failure to turn himself in.

Contrary to Gibbs's assertion, the prosecutor did not violate his constitutional right to remain silent by questioning Gibbs about his failure to alert his mother or law enforcement concerning the robbery.

A defendant's constitutional right to remain silent is not violated by the prosecutor's comment on his silence before custodial interrogation and before *Miranda*[2] warnings have been given.  A prosecutor may not comment on a defendant's silence in the face of accusation, but may comment on silence that occurred before any police contact.

"[A] prosecutor may comment on a defendant's failure to report a crime when reporting the crime would have been natural if the defendant's version of the events were true."  [*People v McGhee*, 268 Mich App 600, 634-635; 709 NW2d 595 (2005) (citations omitted).]

However, "[w]here it would not have been natural for the defendant to contact the police—where doing so may have resulted in the defendant incriminating himself—the prosecution cannot properly comment on the defendant's failure to contact the police."  *People v Dye*, 431 Mich 58, 80; 427 NW2d 501 (1988).

The prosecutor's comments referred to Gibbs's prearrest silence and, therefore, did not violate his right to remain silent.  *McGhee*, 268 Mich App at 634.  The prosecutor's comments on Gibbs's failure to report the crime suggested that if Gibbs's testimony were true—that his participation in the robbery was coerced—he would have called 911 or gone to the police immediately.  Gibbs, however, claims that it would not have been natural for him to contact the police because he would have believed that Henderson might harm him.  We conclude that if Gibbs's version of the events were true—that he did not know Henderson was going to rob the store and he was acting under duress by Henderson—then it would have been natural for him to contact the police.  Therefore, the prosecutor's comments were proper and there was no plain error.

## C.  SENTENCING ERRORS

Finally, Gibbs contends that he is entitled to resentencing because of the erroneous scoring of PRV 5, PRV 6, and offense variable (OV) 13.

---

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

Under MCL 769.34(10), if a minimum sentence is within the appropriate guidelines sentence range, we must affirm the sentence and may not remand for resentencing absent an error in scoring the sentencing guidelines or reliance on inaccurate information in determining the sentence. A sentencing court has discretion in determining the number of points to be scored, provided that evidence of record adequately supports a particular score. Scoring decisions for which there is any evidence in support will be upheld. Additionally, we review de novo as a question of law the interpretation of the statutory sentencing guidelines. [*People v Endres*, 269 Mich App 414, 417; 711 NW2d 398 (2006) (citations omitted).]

### 1. PRV 5

"Prior record variable 5 is prior misdemeanor convictions or prior misdemeanor juvenile adjudications." MCL 777.55(1). The sentencing court must assess 2 points if "[t]he offender has 1 prior misdemeanor conviction or prior misdemeanor juvenile adjudication[.]" MCL 777.55(1)(e). The sentencing court must assess zero points if "[t]he offender has no prior misdemeanor convictions or prior misdemeanor juvenile adjudications[.]" MCL 777.55(1)(f). "'Prior misdemeanor juvenile adjudication' means a juvenile adjudication for conduct that if committed by an adult would be a misdemeanor under a law of this state, a political subdivision of this state, another state, a political subdivision of another state, or the United States *if the order of disposition was entered before the sentencing offense was committed*." MCL 777.55(3)(b) (emphasis added).

Gibbs's presentence investigation report (PSIR) indicates that he pleaded guilty of illegal entry without the owner's permission, a misdemeanor, on August 3, 2010, and was sentenced to probation for the offense on November 9, 2010. This was a juvenile adjudication. The PSIR indicates that the "Disposition Date" was November 9, 2010. The sentencing offense was committed on October 26, 2010. Accordingly, the order of disposition was not entered before the sentencing offense was committed and Gibbs's juvenile adjudication does not constitute a prior misdemeanor juvenile adjudication for purposes of assessing points under PRV 5. MCL 777.55(3)(b). Therefore, the trial court erred by assessing 2 points under PRV 5. However, because a reduction by 2 points from Gibbs's prior record variable score would not change his PRV level, MCL 777.62, resentencing is not required.

### 2. PRV 6

"Prior record variable 6 is relationship to the criminal justice system." MCL 777.56(1). The sentencing court must assess 5 points if "[t]he offender is on probation or delayed sentence status or on bond awaiting adjudication or sentencing for a misdemeanor[.]" MCL 777.56(1)(d). The sentencing court must assess zero points if "[t]he offender has no relationship to the criminal justice system[.]" MCL 777.56(1)(e).

As mentioned earlier, Gibbs entered a guilty plea to illegal entry without the owner's permission, a misdemeanor, on August 3, 2010, and was sentenced to probation for the offense on November 9, 2010. This was a juvenile adjudication. This Court has held that a defendant's prior juvenile adjudications supported the scoring of PRV 6. *People v Anderson*, 298 Mich App

178, 182; 825 NW2d 678 (2012) ("The phrase 'criminal justice system' is not limited to adversarial criminal proceedings."). Thus, contrary to Gibbs's assertion, points could be assessed under PRV 6 for his relationship with the juvenile justice system.

There is no evidence that Gibbs was on probation, delayed-sentence status, or bond at the time of the sentencing offense. His PSIR indicates only that he was placed on probation at sentencing or disposition, which took place on November 9, 2010. It appears that Gibbs was, however, awaiting adjudication or sentencing at the time he committed the sentencing offense, given that he had already entered a plea. This Court has stated:

> *Endres* suggests that a five-point score for PRV 6 is not improper when the defendant committed the sentencing offense while awaiting adjudication or sentencing for a misdemeanor, regardless of his or her bond status. The case illustrates this Court's refusal to categorize a defendant as having no relationship with the criminal justice system when it is obvious that such a relationship exists. [*People v Johnson*, 293 Mich App 79, 88; 808 NW2d 815 (2011).]

Therefore, the trial court properly assessed 5 points under PRV 6, even if Gibbs was not on bond at the time he committed the sentencing offense.

### 3. OV 13

"Offense variable 13 is continuing pattern of criminal behavior." MCL 777.43(1). The sentencing court must assess 25 points if "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person[.]" MCL 777.43(1)(c). "For determining the appropriate points under this variable, all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a). The sentencing court must assess zero points if "[n]o pattern of felonious criminal activity existed[.]" MCL 777.43(1)(g).

Gibbs was convicted of two counts of armed robbery and one count of unarmed robbery, which are all classified under the sentencing guidelines as crimes against a person. MCL 777.16y. Gibbs argues that his convictions arose out of one incident and that he could not have 25 points assessed. However, there is nothing in the language of MCL 777.43(1)(c) to support Gibbs's argument that multiple convictions arising from the same incident cannot be considered for scoring OV 13. In *People v Harmon*, 248 Mich App 522; 640 NW2d 314 (2001), the defendant was convicted of four counts of making child sexually abusive material. He photographed two 15-year-old girls. There were four photos in all—two of each girl, taken on a single date. *Id.* at 524-526. We held that 25 points were properly assessed under OV 13 because of the "defendant's four concurrent convictions . . . ." *Id.* at 532. Similarly, in this case, while the robberies arose out of a single criminal episode, Gibbs committed three separate acts against each of the three victims and these three distinct crimes constituted a pattern of criminal activity. Additionally, although some subsections of MCL 777.43 contain limitations on a trial court's ability to score for more than one instance arising out of the same criminal episode, subsection (1)(c) contains no such limitation. Accordingly, because multiple concurrent offenses arising from the same incident are properly used in scoring OV 13, the trial court did not err by assessing 25 points for that variable.

III.  HENDERSON'S APPEAL

A.  DOUBLE JEOPARDY

Henderson contends that his convictions for both assault with intent to rob while armed and armed robbery violate double jeopardy protections.  The prosecution concedes error and writes:  "Plaintiff agrees that [Henderson's] conviction for assault with intent to rob while armed must be vacated because he is also convicted for [sic] armed robbery involving the same victim during the same criminal episode."  We agree that for purposes of the "multiple punishment" analysis under double jeopardy, assault with intent to rob while armed is the "same offense" as armed robbery and that Henderson's conviction for the lesser crime must be vacated.

This Court reviews de novo questions of law, such as a double jeopardy challenge. *People v Garland*, 286 Mich App 1, 4; 777 NW2d 732 (2009).

The prohibition against double jeopardy in both the federal and state constitutions protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense.  US Const, Am V; Const 1963, art 1, § 15; *People v Nutt*, 469 Mich 565, 574; 677 NW2d 1 (2004).  The third of these protections exists to "protect the defendant from being sentenced to more punishment than the Legislature intended."  *People v Meshell*, 265 Mich App 616, 628; 696 NW2d 754 (2005).  In this case, Henderson claims that he has been punished twice for the same offense.

We have previously held that assault with intent to rob while armed is a lesser included offense of armed robbery.  *People v Akins*, 259 Mich App 545, 552; 675 NW2d 863 (2003); *People v Johnson*, 90 Mich App 415, 421; 282 NW2d 340 (1979).  A lesser included offense is "a crime for which it is impossible to commit the greater offense without first having committed the lesser."  *People v Walls*, 265 Mich App 642, 645; 697 NW2d 535 (2005).  Stated differently, for an offense "[t]o be a lesser included offense, the elements necessary for commission of the greater offense must subsume the elements necessary for commission of the lesser offense." *People v Heft*, 299 Mich App 69, 74-75; 829 NW2d 266 (2012).  However,

> [i]n *People v Smith*, 478 Mich 292, 315; 733 NW2d 351 (2007), our Supreme Court held that the "same elements" test set forth in *Blockburger v United States*, 284 US 299, 304; 52 SCt 180; 76 L Ed 306 (1932), is "the appropriate test to determine whether multiple punishments are barred by Const 1963, art 1, § 15." . . .  The *Blockburger* test focuses on the statutory elements of the offense, without considering whether a substantial overlap exists in the proofs offered to establish the offense.  If each offense requires proof of elements that the other does not, the *Blockburger* test is satisfied and no double jeopardy violation is involved.  [*People v Baker*, 288 Mich App 378, 381-382; 792 NW2d 420 (2010) (citations omitted).]

Accordingly, it is necessary to consider the elements of each offense.

MCL 750.89 is the statute prohibiting assault with intent to rob while armed and provides:

> Any person, being armed with a dangerous weapon, or any article used or fashioned in a manner to lead a person so assaulted reasonably to believe it to be a dangerous weapon, who shall assault another with intent to rob and steal shall be guilty of a felony, punishable by imprisonment in the state prison for life, or for any term of years.

Therefore, in order to obtain a conviction for assault with intent to rob while armed, a prosecutor must demonstrate "(1) an assault with force and violence; (2) an intent to rob or steal; and (3) the defendant's being armed." *Akins*, 259 Mich App at 554 (citation and quotation marks omitted).

The revised armed robbery statute,[3] MCL 750.529, now provides:

> A person who engages in conduct proscribed under [MCL 750.530 (robbery)] and who in the course of engaging in that conduct, possesses a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon, or who represents orally or otherwise that he or she is in possession of a dangerous weapon, is guilty of a felony punishable by imprisonment for life or for any term of years. If an aggravated assault or serious injury is inflicted by any person while violating this section, the person shall be sentenced to a minimum term of imprisonment of not less than 2 years.

Therefore, in order to obtain a conviction for armed robbery, a prosecutor must prove that

> (1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v Chambers*, 277 Mich App 1, 7; 742 NW2d 610 (2007).]

We discern no substantive difference between the elements of the two crimes. Because assault with intent to rob while armed is a lesser included offense of armed robbery and neither crime contains an element the other does not, Henderson could not have been convicted of both. Under the same-elements test that is now applicable to the multiple-punishments strand of double jeopardy under *Smith*, his assault conviction must be vacated. *Meshell*, 265 Mich App at 633-634 ("The remedy for conviction of multiple offenses in violation of double jeopardy is to affirm the conviction on the greater charge and to vacate the conviction on the lesser charge.").

---

[3] As amended by 2004 PA 128, effective July 1, 2004.

## B.  SENTENCING ERRORS

Henderson also contends that he is entitled to resentencing, in his case because of the erroneous scoring of OV 3, OV 4, OV 13, and OV 14.  We disagree.

Henderson preserved his objection to the scoring of OV 13 by objecting at sentencing.  Cf. *Endres*, 269 Mich App at 417.  Henderson did not preserve his objections to the scoring of OV 3, OV 4, or OV 14.  Cf. *id*. at 422.  As noted earlier:

> Under MCL 769.34(10), if a minimum sentence is within the appropriate guidelines sentence range, we must affirm the sentence and may not remand for resentencing absent an error in scoring the sentencing guidelines or reliance on inaccurate information in determining the sentence.  A sentencing court has discretion in determining the number of points to be scored, provided that evidence of record adequately supports a particular score.  Scoring decisions for which there is any evidence in support will be upheld.  Additionally, we review de novo as a question of law the interpretation of the statutory sentencing guidelines. [*Id*. at 417 (citations omitted).]

This Court reviews unpreserved claims for plain error affecting a defendant's substantial rights.  *Id*. at 422.

### 1.  OV 3

"Offense variable 3 is physical injury to a victim."  MCL 777.33(1).  The sentencing court must assess 10 points if "[b]odily injury requiring medical treatment occurred to a victim[.]"  MCL 777.33(1)(d).  "As used in this section, 'requiring medical treatment' refers to the necessity for treatment and not the victim's success in obtaining treatment."  MCL 777.33(3).  This Court has stated that "'bodily injury' encompasses anything that the victim would, under the circumstances, perceive as some unwanted physically damaging consequence."  *People v McDonald*, 293 Mich App 292, 298; 811 NW2d 507 (2011).

Costas testified that Henderson hit him between his neck and head and on the side of the face.  According to Nancy, Costas had blood dripping down his face and neck.  Part of Costas's ear was cut off, and he received four stitches at Hurley Medical Hospital.  He also sees his physician for frequent headaches.  Nancy suffered whiplash and completed seven weeks of physical therapy.  Therefore, the trial court properly assessed 10 points for OV 3.

### 2.  OV 4

"Offense variable 4 is psychological injury to a victim."  MCL 777.34(1).  The sentencing court must assess 10 points if "[s]erious psychological injury requiring professional treatment occurred to a victim[.]"  MCL 777.34(1)(a).  The sentencing court must also "[s]core 10 points if the serious psychological injury may require professional treatment.  In making this determination, the fact that treatment has not been sought is not conclusive."  MCL 777.34(2).

This Court has determined that depression and personality changes are sufficient to uphold the scoring of OV 4.  *People v Ericksen*, 288 Mich App 192, 203; 793 NW2d 120 (2010).

-10-

This Court has also held that a victim's "statements about feeling angry, hurt, violated, and frightened support [the] score under our caselaw." *People v Williams*, 298 Mich App 121, 124; 825 NW2d 671 (2012).

Kassing testified that the experience was traumatic and he had bad dreams about it.  At sentencing, Nancy stated, "Not to mention what you took from us psychologically."  In Costas's victim impact statement, he indicated that he did not feel safe in his store.  These statements support a score of 10 points for OV 4.

### 3.  OV 13

As mentioned in part II(C)(3) of this opinion, because multiple concurrent offenses arising from the same incident are properly used in scoring OV 13, the trial court did not err by assessing 25 points for that variable.

### 4.  OV 14

"Offense variable 14 is the offender's role."  MCL 777.44(1).  The sentencing court must assess 10 points if "[t]he offender was a leader in a multiple offender situation."  MCL 777.44(1)(a).  In scoring this variable, "[t]he entire criminal transaction should be considered . . . ."  MCL 777.44(2)(a); see also *People v Apgar*, 264 Mich App 321, 330; 690 NW2d 312 (2004) (opinion by GAGE, J.).

There was evidence that Henderson was the only perpetrator with a gun, did most of the talking, gave orders to Gibbs, and checked to make sure Gibbs took everything of value.  Kassing specifically testified that he believed Henderson was the leader.  Further, Gibbs's testimony supports the finding that Henderson was the leader.  While neither Nancy nor Costas believed that either defendant was "the leader," "[s]coring decisions for which there is any evidence in support will be upheld."  *Endres*, 269 Mich App at 417.  Accordingly, the trial court did not err by assessing 10 points for OV 14.

Henderson's conviction of assault with intent to rob while armed vacated.  Affirmed in all other respects.

/s/ Kirsten Frank Kelly
/s/ Jane E. Markey
/s/ Karen M. Fort Hood

-11-

| STATE OF MICHIGAN<br>7th JUDICIAL CIRCUIT<br>GENESEE COUNTY | CLAIM OF APPEAL AND<br>ORDER APPOINTING COUNSEL | CASE NO. AND SUFFIX<br>11-28140    FC<br>*FULLERTON* |
|---|---|---|

| Court Address | Court Telephone No |
|---|---|
| COURTHOUSE, ROOM 408 FLINT, MI 48502 | (810) 257-3272 |

**People of THE STATE OF MICHIGAN**

v

| Defendant Name, Last | First | Middle |
|---|---|---|
| GIBBS | CHARLES | PHILLIP |

Date of Birth, Address, and Inmate number (if known)
CHARLES EGELER RECEPTION & GUIDANCE CE1 11-27-1993
3855    COOPER STREET    810512
JACKSON    MI    49201-7518

| | Offense Information | | | | | | | Terms of Incarceration | | | | | | | | | Intermediate Sanctions | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Minimum | | | Maximum | | | | | | Probation | | | | |
| Date | Description | PACC Code | H | C | A | S | Y | M | D | Y | M | D | K | P | J | Y | M | D | R | F | O |
| 10-26-2010 | ROBBERY/ARMED | 750.529 | | | | | 17 | 6 | | 30 | | | | X | | | | | | | |
| 10-26-2010 | ROBBERY/UNARMED | 750.530 | | | | | 1 | 00 | | 15 | | | | X | | | | | | | |
| 10-26-2010 | ROBBERY/ARMED | 750.529 | | | | | 17 | 6 | | 30 | | | | X | | | | | | | |
| 10-26-2010 | ROBBERY/ARMED | 750.529 | | X | | | 17 | 6 | | 30 | | | | X | | | | | | | |

H=Habitual  C=Conspiracy  A=Attempt  S=Solicitation  Y=Year  M=Month  D=Day  K=Consecutive  P=Prison  J=Jail  R=Restitution  F=Fine  O=Other

The defendant claims an appeal from a final judgment or order entered on 08-15-2011 in the 7th Circuit Court, GENESEE County, Michigan by Judge JUDITH FULLERTON 20455. Copies of the final judgment or order being appealed and docket entries are attached for the Court of Appeals, appointed counsel, and Michigan Appellate Assigned Counsel System.

On 09-06-2011 the defendant filed a request for appointment of counsel and a declaration of indigency.

**IT IS ORDERED:**

STATE APPELLATE DEFENDER OFFICE                645 GRISWOLD, PENOBSCOT BLDG. SUITE 3300
Name of Appellate Counsel                       Address

DETROIT, MI 48226                               313-256-9833                1
City, State, Zip                                Telephone No.             Bar No.

is appointed counsel for the defendant in post-conviction proceedings. If appointed counsel cannot or will not accept this appointment, counsel shall notify the court immediately.

The court reporter(s)/recorder(s) shall file with the trial court clerk the transcripts indicated below and any other transcripts requested by counsel in this case not previously transcribed. Transcripts shall be filed within 28 days for pleas or 91 days for trials from the date ordered or requested [MCR 7.210(B)]. Reporter(s)/recorder(s) shall be paid as provided by law.

| TRANSCRIPTS ORDERED | REPORTER/RECORDER NAME | OTHER DESCRIPTION | NUMBER | PROCEEDING DATE |
|---|---|---|---|---|
| SENTENCE | JACKIE SWINTON | | | 08-15-2011 |
| OTHER | JACKIE SWINTON | | | 02-25-2011 |
| OTHER | JACKIE SWINTON | | | 03-09-2011 |
| OTHER | JACKIE SWINTON | | | 04-01-2011 |
| OTHER | JACKIE SWINTON | | | 04-29-2011 |
| OTHER | JACKIE SWINTON | | | 05-20-2011 |
| JURY TRIAL | JACKIE SWINTON | | | 06-28-2011 |
| JURY TRIAL | JACKIE SWINTON | | | 06-29-2011 |
| JURY TRIAL | JACKIE SWINTON | | | 06-30-2011 |
| JURY TRIAL | JACKIE SWINTON | | | 07-06-2011 |
| JURY TRIAL | JACKIE SWINTON | | | 07-07-2011 |
| ARRAIGNMENT | JACKIE SWINTON | | | 01-18-2011 |

The clerk shall immediately send to counsel a copy of the transcripts ordered above or requested by counsel as they become available. The clerk shall also forward documents upon request by counsel. [MCR 6.433]

9-8-11
Date

JUDITH A. FULLERTON                20455
Judge                              Bar No.

**CERTIFICATE OF MAILING**

I certify that on this date I mailed a copy of this claim of appeal to appointed counsel, defendant, court reporter(s)/recorder(s), prosecutor, Court of Appeals, and Michigan Appellate Assigned Counsel System (MAACS). I also mailed a copy of the final judgment or order being appealed and docket entries to appointed counsel, the Court of Appeals, and MAACS. I also mailed a copy of the defendant's request for appointment of counsel to appointed counsel, the prosecutor, and MAACS.

9-9-11
Date

Signature

A TRUE COPY
Michael J. Carr, Clerk

CC403 (12/96)                                   Page 1 of 1

11-028140-FC JUDGE FULLERTON        FILE 01/11/11  ADJ DT 07/07/11 CLOSE  08/15/11
            GENESEE COUNTY                          COD    SCAO:SEC B LINE 01

D 001 GIBBS,PHILLIP,CHARLES           DOB: 11/27/93    SEX: M  RACE: B
       2112 BARKLEY                    CTN:251000405901 TCN:
       FLINT, MI  48504               SID:
                                                       PIN:25FPD50984
       ATY: SKINNER,JEFFREY R.,        PROSECUTOR: LEYTON,DAVID S.,
          P-31379  810-232-3044 APPOINTED       P-35086
       LOWER DISTRICT: 68TH CTY# 25  CASE# 10-1667FYC  PRELIM: HELD  01/07/11
       INCARCERATION DATE:           DISTRICT ARRAIGNMENT:

                              Bond History
----------------------------------------------------------------------------
     Num      Amount              Type           Posted Date    Status
     ---    ----------------  --------------------  -----------  ----------
      1           $.00  Held Without Bond

                                Charges
----------------------------------------------------------------------------
Num Type    Charge(Pacc)   Asc/Trf  Charge Description    Offense Dt  Dsp Evt
--- ----   ----------------  -------  --------------------  ----------  --- ---
01  ORG    750.529                   ROBBERY ARMED          10/26/10   GTY JTW
02  ORG    750.529                   ROBBERY ARMED          10/26/10
    LES    750.530                   ROBBERY UNARMED                   GTY JTW
03  ORG    750.529                   ROBBERY ARMED          10/26/10   GTY JTW
04  ORG    750.529           C       ROBBERY ARMED          10/26/10   GTY JTW
05  ORG    750.89                    ASSAULT TO ROB ARMED   10/26/10   FNG JTW
06  ORG    750.227B-A                FELONY FIREARMS        10/26/10   FNG JTW

                              Assessments
----------------------------------------------------------------------------
        Account              Ordered        Paid        Balance
     ------------------   -----------    -----------   -----------
     CRIME VICTIM FEE        $130.00         $.00        $130.00
     STATE MINIMUM COSTS     $272.00         $.00        $272.00
     COURT COSTS             $500.00         $.00        $500.00
                         -----------    -----------   -----------
          TOTAL:             $902.00         $.00        $902.00
     PAYMENT DUE:  8/15/11  LATE FEE DATE: 10/11/11

                    Actions, Judgments, Case Notes
----------------------------------------------------------------------------
Num  Date     Judge      Chg/Pty  Event Description/Comments
---- -------- ---------- -------  --------------------------------------
  1 01/07/11 FULLERTON           RETURN TO CIRCUIT COURT              CLK TAW
                                 SET NEXT DATE FOR: 01/18/11  8:15 AM  CLK
                                    ARRAIGNMENT
                                 COLLIER-NIX                         CLK
                                 BINDOVER RECEIVED ON 1/11/11        CLK
                                 ARRESTING AGENCY: CITY OF           CLK
                                 FLINT                               CLK
  2                              CODEFENDANT/CONSOLIDATION           CLK TAW
                                 //                                  CLK
                                 TYRELL HENDERSON                    CLK
  3 01/13/11                     PROS'S DEMAND FOR MANDATORY         CLK TAW
                                 DISCLOSURE BY THE DEFENSE           CLK
                                 FILED                               CLK

-----------------------------------------------------------------------------

```
  4 .                         INFORMATION                      CLK TAW
  5                           NOTICE OF INTENT TO AMEND        CLK TAW
                              WITNESS LIST AND RE-OPEN         CLK
                              PROOFS FILED                     CLK
  6 01/14/11                  WRITTEN DEMAND FOR TRANSCRIPT IN CLK TAW
                              DISTRICT COURT FILED             CLK
                              DUE 2/10/11                      CLK
  7 01/18/11        00099     ARRAIGNMENT                      CRT TAW
                              PROCEEDING DIGITALLY RECORDED    CRT
                              PLED NOT GUILTY                  CRT
                              I.R. DEFT PLED NOT GUILTY.       CRT
                              COURT SET PRETRIAL AND TRIAL     CRT
                              DATES. DEFT REMANDED WITHOUT     CRT
                              BOND.                            CRT
  8                           SET NEXT DATE FOR: 02/18/11  8:15 AM CLK TAW
                                 PRE-TRIAL HEARING
  9                           SET NEXT DATE FOR: 03/09/11  8:15 AM CLK TAW
                                 JURY TRIAL
 10 01/19/11                  SET NEXT DATE FOR: 02/25/11  8:15 AM CLK DMC
                                 PRE-TRIAL HEARING
                              ADJ FROM 2-18-11 AT THE REQUES   CLK
                              T OF ATTY TAFT IN CO-DEF TYREL   CLK
                              HENDERSON'S CASE                 CLK
 11                           REMOVE NEXT EVENT: 02/18/11  8:15 AM CLK DMC
                                 PRE-TRIAL HEARING
 12 01/20/11                  CODEFENDANT/CONSOLIDATION        CLK FDA
                              ORDER FOR CONSOLIDATION          CLK
                              (11-28141-FC & 11-28140-FC)      CLK
                              FILED                            CLK
 13 01/26/11                  AMENDED INFORMATION FILED        CLK TAW
 14 02/04/11                  PRELIMINARY EXAM FILED           CLK TAW
                              VOL I                            CLK
 15                           PRELIMINARY EXAM FILED           CLK TAW
                              VOL II                           CLK
 16 02/25/11                  PRE-TRIAL HEARING                CRT TAW
                              PROCEEDING DIGITALLY RECORDED    CRT
                              PRETRIAL HELD. CASE TO           CRT
                              REMAIN ON TRIAL DOCKET.          CRT
 17 03/09/11                  MISCELLANEOUS HEARING            CRT TAW
                              PROCEEDING DIGITALLY RECORDED    CRT
                              MOTION BY APA, R. RIGGS, TO      CRT
                              ADJOURN TRIAL DATE. MOTION       CRT
                              GRANTED. COURT SET NEW           CRT
                              PRETRIAL AND TRIAL DATES.        CRT
 18                           SET NEXT DATE FOR: 04/01/11  8:15 AM CLK TAW
                                 PRE-TRIAL HEARING
 19                           SET NEXT DATE FOR: 04/05/11  8:15 AM CLK TAW
                                 JURY TRIAL
 20 04/01/11                  PRE-TRIAL HEARING                CRT FL2
                              PROCEEDING DIGITALLY RECORDED    CRT
                              PRETRIAL HELD. COURT SET         CRT
                              ADDITIONAL PRETRIAL DATE.        CRT
 21                           SET NEXT DATE FOR: 04/29/11  8:15 AM CLK FL2
                                 PRE-TRIAL HEARING
 22                           REMOVE NEXT EVENT: 04/05/11  8:15 AM CLK FL2
                                 JURY TRIAL
 23 04/29/11                  PRE-TRIAL HEARING                CRT TAW
```

--------------------------------------------------------------------------

```
  .    .                     PROCEEDING DIGITALLY RECORDED      CRT
                             PRETRIAL HELD. COURT SET           CRT
                             ADDITIONAL PRETRIAL DATE.          CRT
    24                       SET NEXT DATE FOR: 05/06/11  8:15 AM  CLK TAW
                                PRE-TRIAL HEARING
    25 05/05/11              REMOVE NEXT EVENT: 05/06/11  8:15 AM  CLK DMC
                                PRE-TRIAL HEARING
    26                       SET NEXT DATE FOR: 05/13/11  8:15 AM  CLK DMC
                                PRE-TRIAL HEARING
                             ADJ FROM 5-6-11                     CLK
    27 05/12/11              REMOVE NEXT EVENT: 05/13/11  8:15 AM  CLK DMC
                                PRE-TRIAL HEARING
    28                       SET NEXT DATE FOR: 05/16/11  9:00 AM  CLK DMC
                                PRE-TRIAL HEARING
    29 05/16/11              SET NEXT DATE FOR: 05/20/11  8:15 AM  CLK TAW
                                PRE-TRIAL HEARING
                             ADJ FROM 5/16                      CLK
    30 05/20/11              PRE-TRIAL HEARING                   CRT TAW
                             PROCEEDING DIGITALLY RECORDED      CRT
                             PRETRIAL HELD. COURT SET           CRT
                             TRIAL DATE.                        CRT
    31                       SET NEXT DATE FOR: 06/28/11  8:15 AM  CLK TAW
                                JURY TRIAL
    33 06/24/11              CODEFENDANT/CONSOLIDATION          CLK MML
                             ORDER FOR CONSOLIDATION FOR        CLK
                             CASE #11-28141-FC                  CLK
    34 06/28/11              SET NEXT DATE FOR: 06/29/11  8:15 AM  CLK DMC
                                JURY TRIAL
    35                       JURY TRIAL HALF DAY                CRT TAW
                             PROCEEDING DIGITALLY RECORDED      CRT
                             THE JURY OF 14 WAS DRAWN AND       CRT
                             SWORN. THE JURY WAS EXCUSED        CRT
                             UNTIL TOMORROW MORNING AT          CRT
                             8:15 AM.                           CRT
    36 06/29/11              JURY TRIAL WHOLE DAY               CRT TAW
                             PROCEEDING DIGITALLY RECORDED      CRT
                             THE JURY RETURNED. OPENING         CRT
                             STATEMENTS OF COUNSEL. PROOFS      CRT
                             AND ALLEGATIONS HEARD IN           CRT
                             PART. THE JURY WAS EXCUSED         CRT
                             UNTIL TOMORROW MORNING AT          CRT
                             8:15 AM.                           CRT
    37 06/30/11              SET NEXT DATE FOR: 06/30/11  8:15 AM  CLK DMC
                                JURY TRIAL
                             TRIAL CONTINUED                    CLK
    38                       JURY INSTRUCTIONS FILED            CLK TAW
    39                       DEFT'S PROPOSED JURY               CLK TAW
                             INSTRUCTIONS FILED                 CLK
    41                       JURY TRIAL WHOLE DAY               CRT MML
                             PROCEEDING DIGITALLY RECORDED      CRT
                             THE JURY OF 14 RETURNED AND        CRT
                             HEARD FURTHER PROOFS AND           CRT
                             ALLEGATIONS IN PART. THE JURY      CRT
                             WAS EXCUSED UNTIL TUESDAY          CRT
                             7/6/11                             CRT
    40 07/05/11              SET NEXT DATE FOR: 07/06/11  8:15 AM  CLK DMC
                                JURY TRIAL
```

--------------------------------------------------------------------------------

```
 .     .                           TRIAL CONTINUED                   CLK
42 07/06/11                        JURY TRIAL WHOLE DAY              CRT MML
                                   PROCEEDING DIGITALLY RECORDED     CRT
                                   THE JURY OF 14 RETURNED. THE      CRT
                                   COURT EXCUSED JUROR #11.          CRT
                                   THE JURY OF 13 HEARD FURTHER      CRT
                                   PROOFS AND ALLEGATIONS IN FULL    CRT
43                                 MEMORANDUM SUPPORTING MOTION      CLK MML
                                   FOR DIRECTED VERDICT REGARDING    CLK
                                   COUNT 6 FELONY FIREARM FILED      CLK
44 07/07/11                        SET NEXT DATE FOR: 07/07/11  8:15 AM  CLK DMC
                                       JURY TRIAL
                                   TRIAL CONTINUED                   CLK
45                        00001    JURY TRIAL WHOLE DAY              CRT MML
                                   PROCEEDING DIGITALLY RECORDED     CRT
                                   FOUND GUILTY                      CRT
                                   THE JURY OF 13 RETURNED AND       CRT
                                   HEARD ARGUMENTS OF COUNSEL        CRT
                                   AND CHARGES OF THE COURT.         CRT
                                   JUROR # B-69 WAS EXCUSED FROM     CRT
                                   FURTHER DELIBERATION. VERDIT      CRT
                                   OF THE JURY: CT 1 GUILTY ARMED    CRT
                                   ROBBERY; CT 2 GUILTY UNARMED      CRT
                                   ROBBERY; CT 3 GUILTY ARMED        CRT
                                   ROBBERY; CT 4 GUILTY OF           CRT
                                   CONSPIRACY TO COMMIT ROBBERY      CRT
                                   ARMED; CT 5 NOT GUILTY; CT 6      CRT
                                   NOT GUILTY. COURT SET             CRT
                                   SENTENCING DATE. DEFT REMANDED    CRT
46                        00002    JURY TRIAL WHOLE DAY              CRT MML
                                   FOUND GUILTY                      CRT
47                        00003    JURY TRIAL WHOLE DAY              CRT MML
                                   FOUND GUILTY                      CRT
48                        00004    JURY TRIAL WHOLE DAY              CRT MML
                                   FOUND GUILTY                      CRT
49                        00005    JURY TRIAL WHOLE DAY              CRT MML
                                   FOUND NOT GUILTY                  CRT
50                        00006    JURY TRIAL WHOLE DAY              CRT MML
                                   FOUND NOT GUILTY                  CRT
51                                 SET NEXT DATE FOR: 08/15/11  9:00 AM  CLK DMC
                                       SENTENCING
                                   DNA ORDER FAXED 7-11-11 TO        CLK
                                   CITY OF FLINT POLICE DEPT.        CLK
52                                 VERDICT FORM FILED                CLK MML
59 08/12/11                        CERTIFICATION AND RETURN OF ORDER CLK TAW
                                   FOR DNA SAMPLE FILED              CLK
53 08/15/11               00001    SENTENCING                        CRT FL2
                                   PROCEEDING DIGITALLY RECORDED     CRT
                                   JACKSON. ALL COUNTS TO RUN        CRT
                                   CONCURRENT WITH EACH OTHER.       CRT
                                   DEFT TO PARTICIPATE IN            CRT
                                   EDUCATIONAL AND VOCATIONAL        CRT
                                   PROGRAMMING. DEFT TO PAY $500     CRT
                                   COURT COSTS; $130 CRIME           CRT
                                   VICTIMS FEE; $272 STATE           CRT
                                   MINIMUM COSTS.                    CRT
       SENTENCE PRISON:       MINIMUM            MAXIMUM          CREDIT
```

--------------------------------------------------------------------------------
                         17-  6-DDD        30-MMM-DDD       YYY-MMM-287
    BEGIN 08/15/11
       $130.00  CRIME VICTIM FEE              272.00  STATE MINIMUM COSTS
       $500.00  COURT COSTS
  54                   00002   SENTENCING                        CRT FL2
                               PROCEEDING DIGITALLY RECORDED     CRT
    SENTENCE PRISON:      MINIMUM         MAXIMUM          CREDIT
                       YYY-100-DDD      15-MMM-DDD       YYY-MMM-287
    BEGIN 08/15/11
  55                   00003   SENTENCING                        CRT FL2
                               PROCEEDING DIGITALLY RECORDED     CRT
    SENTENCE PRISON:      MINIMUM         MAXIMUM          CREDIT
                       17-  6-DDD       30-MMM-DDD       YYY-MMM-287
    BEGIN 08/15/11
  56                   00004   SENTENCING                        CRT FL2
                               PROCEEDING DIGITALLY RECORDED     CRT
    SENTENCE PRISON:      MINIMUM         MAXIMUM          CREDIT
                       17-  6-DDD       30-MMM-DDD       YYY-MMM-287
    BEGIN 08/15/11
  57                            DEFENDANTS RECEIPT OF REQUEST FOR   CLK FL2
                               APPOINTMENT OF ATTORNEY FORM FILED  CLK
  58                            FINAL ORDER OR JUDGMENT FILED       CLK FL2
                               JUDGMENT OF SENTENCE FILED          CLK
  60                            ORDER TO REMIT PRISONER FUNDS       CLK TAW
  61 08/18/11                   SENTENCING INFORMATION REPORT       CLK TAW
  62                            SENTENCING INFORMATION REPORT       CLK TAW
  63                            SENTENCING INFORMATION REPORT       CLK TAW
  64                            SENTENCING INFORMATION REPORT       CLK TAW
  65 08/23/11                   COLLECT Status - PRISON             CLK ML2
.............................  END OF SUMMARY  .............................

| Approved, SCAO | 2nd cop | Corrections (for return) | 5th co | Prosecutor | PAGE 1 |

| STATE OF MICHIGAN<br>7TH JUDICIAL CIRCUIT<br>GENESEE COUNTY | JUDGMENT OF SENTENCE<br>COMMITMENT TO<br>DEPARTMENT OF CORRECTIONS | CASE NO.<br>11-028140-FC-J |

ORI
MI-250015J

Court Address: COUNTY CLERK
900 S. SAGINAW
FLINT, MI 48502

Court Telephone no.
810-257-3220

Police Report No. 25FPD50984

**FILED**

AUG 15 2011

GENESEE COUNTY CLERK
BY DEPUTY CLERK

THE PEOPLE OF THE STATE OF MICHIGAN v

Defendant name, address, and telephone no.
PHILLIP CHARLES GIBBS
2112 BARKLEY
FLINT, MI 48504

| CTN/TCN | SID | DOB |
| 251000405901 | | 11/27/93 |

Prosecuting attorney's name: LEYTON,DAVID S., Bar no. 35086

Defendant attorney's name: SKINNER,JEFFREY R., Bar no. 31379

1. The defendant was found guilty on ___7/07/11___ of the crime(s) stated below.
Date

| Count | CONVICTED BY Plea* | Court | Jury | DISMISSED BY* | CRIME | CHARGE CODE(S) MCL citation/PACC code |
|---|---|---|---|---|---|---|
| 1 | | | X | | ROBBERY ARMED | 750.529 |
| 2 | | | X | | ROBBERY UNARMED | 750.530 |
| 3 | | | X | | ROBBERY ARMED | 750.529 |
| 4 | | | X | | ROBBERY ARMED | 750.529 CONSPIRE |
| 5 | | | | D | ASSAULT TO ROB ARMED | 750.89 |
| 6 | | | | D | FELONY FIREARMS | 750.227B-A |

*For plea: insert "G" for guilty plea, "NC" for nolo contendere, or "MI" for guilty but mentally ill. For dismissal: insert "D" for dismissed by court or "NP" for dismissed by prosecutor/plaintiff.

☐ 2. The conviction is reportable to the Secretary of State under MCL 257.625(21)(b).

Defendant's driver's license number ___

☐ 3. HIV testing and sex offender registration is completed.
☐ 4. The defendant has been fingerprinted according to MCL 28.243.

**IT IS ORDERED:**
☐ 5. Probation is revoked.
6. Participating in a special alternative incarceration unit is ☐ prohibited. ☐ permitted.
7. The defendant is sentenced to custody of the Michigan Department of Corrections. This sentence shall be executed immediately.

| Count | SENTENCE DATE | MINIMUM Years | Mos. | Days | MAXIMUM Years | Mos. | DATE SENTENCE BEGINS | JAIL CREDIT Mos. | Days | OTHER INFORMATION |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 8/15/11 | 17 | 6 | | 30 | | 8/15/11 | | 287 | |
| 2 | 8/15/11 | | 100 | | 15 | | 8/15/11 | | 287 | |
| 3 | 8/15/11 | 17 | 6 | | 30 | | 8/15/11 | | 287 | |
| 4 | 8/15/11 | 17 | 6 | | 30 | | 8/15/11 | | 287 | |

☐ 8. Sentence(s) to be served consecutively to (If this item is not checked, the sentence is concurrent.)
☐ each other. ☐ case numbers _____.

**SEE NEXT PAGE**

CC 219b (3/10) **JUDGMENT OF SENTENCE, COMMITMENT TO DEPARTMENT OF CORRECTIONS**
MCL 765.15(2), MCL 769.1k, MCL 769.16a, MCL 775.22, MCL 780.766, MCR 6.427

| 1st cop | Corrections | 4th cor | - Defendant | |
|---------|-------------|---------|-------------|--|
| Approved, SCAO | 2nd cop | Corrections (for return) | 5th col | Prosecutor | **PAGE** 2 |

| STATE OF MICHIGAN<br>7TH JUDICIAL CIRCUIT<br>GENESEE COUNTY | JUDGMENT OF SENTENCE<br>COMMITMENT TO<br>DEPARTMENT OF CORRECTIONS | CASE NO.<br>11-028140-FC-J |
|---|---|---|

9. The defendant shall pay:

| | $130.00 CRIME VICTIM FEE | $272.00 STATE MINIMUM COSTS |
|--|--------------------------|------------------------------|
| $500.00 COURT COSTS | $902.00 TOTAL | $902.00 BALANCE |

   The due date for payment is <u>8/15/11</u>. Fine, costs, and fees not paid within 56 days
   of the due date are subject to a 20% late penalty on the amount owed.

☐ 10. The concealed weapon board shall ☐ suspend for _____ days ☐ permanently revoke      the
      concealed weapon license, permit number _____, issued by _____
      County.

☐ 11. The defendant is subject to lifetime monitoring under MCL 750.520n.

12. Court recommendation:

        JACKSON. ALL COUNTS TO RUN CONCURRENT WITH EACH OTHER.
        DEFT TO PARTICIPATE IN EDUCATIONAL AND VOCATIONAL
        PROGRAMMING. DEFT TO PAY $500 COURT COSTS; $130 CRIME
        VICTIMS FEE; $272 STATE MINIMUM COSTS.

2011 SEP 16 AM 9:00

_8-15-11_
Date

Judge JUDITH ANNE FULLERTON

20455
Bar no.

I certify that this is a correct and complete abstract from the original court records.
The sheriff shall, without needless delay, deliver the defendant to the Michigan Department
of Corrections at a place designated by the department.

      (SEAL)

Deputy court clerk

**LAST PAGE**

**CC 219b** (3/10) **JUDGMENT OF SENTENCE, COMMITMENT TO DEPARTMENT OF CORRECTIONS**
MCL 765.15(2), MCL 769.1k, MCL 769.16a, MCL 775.22, MCL 780.766, MCR 6.427

# IN THE MICHIGAN COURT OF APPEALS

# ORDER

Re:  **People of MI v Phillip Charles Gibbs; People of MI v Tyrell Henderson**
Docket No.  **306124; 306127**
L.C. No.  **11-028140-FC; 11-028141-FC**

        Deborah A. Servitto, Judge, acting under MCR 7.211(E)(2), orders:

        These appeals are CONSOLIDATED to advance the efficient administration of the appellate process.



A true copy entered and certified by Larry S. Royster, Chief Clerk, on



DEC 0 7 2011
_____
Date

_____
Chief Clerk

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

| Lower Court or Tribunal | **STATE OF MICHIGAN**<br>**IN THE COURT OF APPEALS**<br>**Cover Sheet** | *CASE NO.* | | |
|---|---|---|---|---|
| GENESEE CIRCUIT COURT | | CIRCUIT: | Year **11** Number **028140** Case Type **FC** | |
| | | COURT OF APPEALS: | **306124** | |

## Filing Party

| | |
|---|---|
| Filing Party Last Name or Business/Entity/Agency Name<br>GIBBS CHARLES PHILLIP | Attorney Last Name<br>Robinson |
| Filing Party First Name ___ M.I. | Attorney First Name **Brandy**  M.I. **Y** P Number **66895** |
| Address (Street 1, Street 2, City, State, and ZIP Code) | Address(Street 1, Street 2, City, State, and ZIP Code)<br>645 Griswold Street<br>Suite 3300<br>Detroit  MI  48226 |
| | Attorney Telephone Number<br>(313)256-9833 |

## Summary of Items Filed

| Type | Filename/Description | Filing Fee | Doc Fee | Total This Filing |
|---|---|---|---|---|
| Brief | Brief on Appeal | $5.00 | ---- | $5.00 |
| | | **3% Service Fee:** | | $0.15 |
| **Fee Substitute/Alternate Payment** | | **Total All Filings:** | | $5.15 |

**Reason:**

| | |
|---|---|
| **X** | **Appointed Counsel** |
| ☐ | **Motion To Waive Fee** |
| ☐ | **Fees Waived in this Case** |
| ☐ | **MI InterAgency Transfer** |
| ☐ | **No Fee per MCR 7.203(F)(2)** |

**Filer Office Use Only:**   **25680**

The documents listed above were electronically filed with the Michigan Court of Appeals at the date/time stated in the left margin.  As a recipient of service of these documents, you may wish to go to https://wiznet.wiznet.com/appealsmi to register as a user of the electronic filing system.
306124 - 263564

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

| Lower Court or Tribunal | STATE OF MICHIGAN IN THE COURT OF APPEALS | CASE NO. |
|---|---|---|

**STATE OF MICHIGAN**
**IN THE COURT OF APPEALS**

**Proof of Service**

Lower Court or Tribunal

GENESEE CIRCUIT COURT

*CASE NO.*

CIRCUIT: Year **11**  Number **028140**  Case Type **FC**

COURT OF APPEALS: **306124**

Case Name:   PEOPLE OF MI V PHILLIP CHARLES GIBBS

On   5/23/2012   , one copy of the following documents:

Brief                              Brief on Appeal

was delivered to the persons listed below:

Date

5/23/2012

Signature

/s/Brandy Y. Robinson

| Bar Number | Name | Delivery Method | Service Address |
|---|---|---|---|
| P- | AO, SADO | E-Serve | ao@sado.org |
| P- | AO Support, Genesee County | E-Serve | vhaley@co.genesee.mi.us |
| P-66895 | Robinson, Brandy Y | E-Serve | brobinson@sado.org |
| P- | lamarre, lisa | E-Serve | llamorre@sado.org |

The documents listed above were electronically filed with the Michigan Court of Appeals at the date/time stated in the left margin.  As a recipient of service of these documents, you may wish to go to https://wiznet.wiznet.com/appealsmi to register as a user of the electronic filing system.

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

Approved, Michigan Court of Appeals

| LOWER COURT | Electronically Filed | CASE NO. |
|---|---|---|
| Genesee County Circuit Court | **BRIEF COVER PAGE** | Lower Court  11-28140FC <br> Court of Appeals  306124 |

(Short title of case)

Case Name:  **People v. Phillip Charles Gibbs**

1.  Brief Type (select one):  ☒ APPELLANT(S)      ☐ APPELLEE(S)      ☐ REPLY
    ☐ CROSS-APPELLANT(S)      ☐ CROSS-APPELLEE(S)      ☐ AMICUS
    ☐ OTHER [identify]:

2.  This brief is filed by or on behalf of [insert party name(s)]: **Phillip Charles Gibbs**

3.  ☐   This brief is in response to a brief filed on          by          .

4.  ORAL ARGUMENT:      ☒ REQUESTED          ☐ NOT REQUESTED

5.  ☐   THE APPEAL INVOLVES A RULING THAT A PROVISION OF THE CONSTITUTION, A STATUTE,
    RULE OR REGULATION, OR OTHER STATE GOVERNMENTAL ACTION IS INVALID.
    [See MCR 7.212(C)(12) to determine if this applies.]

6.  As required by MCR 7.212(C), this brief contains, in the following order: [check applicable boxes to verify]

    ☒ Table of Contents [MCR 7.212(C)(2)]

    ☒ Index of Authorities [MCR 7.212(C)(3)]

    ☒ Jurisdictional Statement [MCR 7.212(C)(4)]

    ☒ Statement of Questions [MCR 7.212(C)(5)]

    ☒ Statement of Facts (with citation to the record) [MCR 7.212(C)(6)]

    ☒ Arguments (with applicable standard of review) [MCR 7.212(C)(7)]

    ☒ Relief Requested [MCR 7.212(C)(9)]

    ☒ Signature [MCR 7.212(C)(9)]

7.  This brief is signed by [type name]: **Brandy Y. Robinson**

    Signing Attorney's Bar No. [if any]: **(P66895 )**

(10/06) **E-File Brief Cover Page**                                                    MCR 7.212(C)

# <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES**..................................................................................i

**STATEMENT OF JURISDICTION** .................................................................iv

**STATEMENT OF QUESTIONS PRESENTED** ..............................................v

**STATEMENT OF FACTS** ..............................................................................1

## ARGUMENTS

I.   **THE TRIAL COURT VIOLATED MR. GIBBS' SIXTH AMENDMENT RIGHT TO A PUBLIC TRIAL BY CLOSING THE COURTROOM AND EXCLUDING MEMBERS OF HIS FAMILY FROM JURY SELECTION.** .........................8

II.  **MR. GIBBS' FIFTH AMENDMENT RIGHT TO REMAIN SILENT WAS VIOLATED WHEN THE PROSECUTOR USED HIS PRE-ARREST SILENCE TO IMPEACH HIS EXCULPATORY TESTIMONY AT TRIAL, AND THE PROSECUTOR THEN REFERRED TO THE SILENCE DURING CLOSING ARGUMENT**.............................................................................................. 12

III. **BECAUSE THE COURT BELOW MADE THREE GUIDELINES-SCORING MISTAKES, AND CORRECTING THE MISTAKES WOULD SUBSTANTIALLY REDUCE THE GUIDELINES RANGE, MR. GIBBS MUST BE RESENTENCED.**15

**SUMMARY AND RELIEF AND REQUEST FOR ORAL ARGUMENT** .........................25

BYR\*BOA with Trim.doc\*25680  May 23, 2012
Phillip Charles Gibbs

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

# TABLE OF AUTHORITIES

## CASES

*Combs* v *Coyle*, 205 F3d 269 (6th Cir 2000) ............................................................. 12

*People* v *Dendel*, 481 Mich 114 (2008) ................................................................... 8

*Feld* v *Robert & Charles Beauty Salon*, 435 Mich 352 (1990) ................................. 20

*Gannet Co* v *DePasquale*, 443 US 368 (1979) ........................................................ 9

*Hoerstman Gen Contracting, Inc* v *Hahn*, 474 Mich 66 (2006) ............................... 20

*In re MKK*, 286 Mich App 546 (2009) .................................................................... 18

*Miller* v *Allstate Ins. Co.*, 481 Mich 601 (2008) ..................................................... 20

*Neder* v *United States*, 527 US 1 (1999) ................................................................ 11

*In Re Oliver*, 333 US 257 (1948) ............................................................................ 8

*People* v *Anderson*, 446 Mich 392 (1994) .............................................................. 11

*People* v *Cannon*, 481 Mich 152 (2008) ................................................................. 23

*People* v *Cannon*, 481 Mich 152 (2008) ................................................................. 22

*People* v *Carines*, 460 Mich 750 (1999) ............................................................ 8, 11

*People* v *Collier*, 426 Mich 23 (1986) ............................................................. 12; 13

*People* v *Dye*, 431 Mich 58 (1988) ........................................................................ 12

*People* v *Endres*, 269 Mich 414 (2006) ................................................................. 18

*People* v *Francisco*, 474 Mich 82 .......................................................................... 15

*People* v *Harmon*, 248 Mich App 522 (2001) ........................................................ 22

*People* v *Hegwood*, 465 Mich 432 (2001) .............................................................. 21

*People* v *Johnson*, 293 Mich App 79 (2011) .......................................................... 18

*People* v *Koonce*, 466 Mich 515 (2002) ................................................................ 18

*People* v *Lee*, 391 Mich 618 (1974) ...................................................................... 15

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

*People* v *Malkowski*, 385 Mich 244 (1971) ............................................................15

*People* v *McPherson*, 263 Mich App 124 (2004) ....................................................12

*People* v *Morson*, 471 Mich 248 (2004) ................................................................15

*People* v *Stone*, 195 Mich App 600 (1992) ............................................................20

*Presley* v *Georgia*, 558 US _, 130 S Ct 721 (2010) ........................................8, 9, 10

*Press-Enterprise Co* v *Superior Court*, 478 US 1 (1980) .........................................9

*Salem* v *Jenkins*, 414 F Supp 2d 687 (ED Mich 2006).............................................10

*In re TD*, __ Mich App __ (May 26; 2011) (Docket No. 294716) ............................19

*Taylor* v *Michigan Public Utilities Comm.*, 217 Mich 400 (1922)..........................20

*Tellin ex rel Hinga* v *Forsyth Tp.*, 291 Mich App 692 (2011) ...............................18

*Townsend* v *Burke*, 334 US 736 (1948) .................................................................15

*US Fidelity Insurance & Guaranty Co* v *Michigan Catastrophic Claims Ass'n*, 482 Mich 414 (2008) ...........18

*United States* v *Marcus*, 130 S Ct 2159 (2010) ......................................................11

*Waller* v *Georgia*, 467 US 39 (1984)...........................................................8, 9, 11

*Washington* v *Recuenco*, 548 US 212 (2006) .........................................................11

## CONSTITUTIONS, STATUTES, COURT RULES

MCL 712A.1(2) ..........................................................................................................19

MCL 712A.1 *et seq* ....................................................................................................19

MCL 712A.2(a)(1) ......................................................................................................21

MCL 750.529 .............................................................................................................1

MCL 750.530 .............................................................................................................1

MCL 777.40 ..............................................................................................................23

MCL 777.43(1) ……………………………………………………………          22; 23; 24

MCL 777.51; 777.52 ..................................................................................................19

MCL 777.53 ....................................................................................22

MCL 777.53; 777.54 .........................................................................19

MCL 777.55(1) ………………………………………………………….. 16; 19

MCL 777.55(3) ..................................................................................20

MCL 777.56(1) ……………………………………………………….17; 18; 20

MCL 777.57 .......................................................................................23

MCR 2.613(A) ...................................................................................15

US Const; amend VI ............................................................................8

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

## <u>STATEMENT OF JURISDICTION</u>

Defendant-Appellant was convicted in the Genesee County Circuit Court by jury trial, and a Judgment of Sentence was entered on August 15, 2011.  A Claim of Appeal was filed on September 16, 2011 by the trial court pursuant to the indigent defendant's request for the appointment of appellate counsel dated September 6, 2011, as authorized by MCR 6.425(F)(3).  This Court has jurisdiction in this appeal as of right provided for by Mich Const 1963, art 1, §20, pursuant to MCL 600.308(1); MCL 770.3; MCR 7.203(A), MCR 7.204(A)(2).

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

## STATEMENT OF QUESTIONS PRESENTED

I.   DID THE TRIAL COURT VIOLATE MR. GIBBS' SIXTH AMENDMENT RIGHT TO A PUBLIC TRIAL BY CLOSING THE COURTROOM AND EXCLUDING MEMBERS OF HIS FAMILY FROM JURY SELECTION?

Trial Court made no answer.

Defendant-Appellant answers, "Yes".

II.   WAS MR. GIBBS' FIFTH AMENDMENT RIGHT TO REMAIN SILENT VIOLATED WHEN THE PROSECUTOR USED HIS PRE-ARREST SILENCE TO IMPEACH HIS EXCULPATORY TESTIMONY AT TRIAL, AND WHEN THE PROSECUTOR THEN REFERRED TO THE SILENCE DURING CLOSING ARGUMENT?

Trial Court made no answer.

Defendant-Appellant answers, "Yes".

III.   BECAUSE THE COURT BELOW MADE THREE GUIDELINES-SCORING MISTAKES, AND CORRECTING THE MISTAKES WOULD SUBSTANTIALLY REDUCE THE GUIDELINES RANGE, MUST MR. GIBBS MUST RESENTENCED?

Trial Court answers, "No".

Defendant-Appellant answers, "Yes".

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

## STATEMENT OF FACTS

On October 26, 2011, the lives of Defendant-Appellant Phillip Charles Gibbs, two Flint pawn-shop owners, and one of the shop's employees were changed forever when Mr. Gibbs – a mere sixteen years old at the time – entered the pawn shop with co-defendant Tyrell Henderson and participated in a robbery.  Gibbs was unarmed during the crime and insisted he knew nothing of Henderson's plans.  Instead, he acted under the very-real stress of knowing that his out-of-control co-defendant might turn the gun on him for failing to assist.

<div align="center">*          *          *          *          *</div>

It was undisputed that Mr. Gibbs was the more passive actor during the robbery, which was recorded on the store's surveillance system.  **Costas Anagnostopoulos**, the owner of Flint-based Wholesale 4 U,[1] testified that around 4:00 p.m. on October 26th, Mr. Henderson entered the store alone and purchased a video game. [Trial 6/29/11, p 252-253].  Henderson later returned, this time with Mr. Gibbs, and claimed the game was not working properly. Mr. Anagnostopoulos directed his employee, Jeremy Kassing, to troubleshoot the problem on the store's Xbox game system.  In the meantime, Mr. Anagnostopoulos brought over a power supply to aid with the assessment.  It was then that Mr. Henderson hit Mr. Anagnostopoulos suddenly with a gun on the back of his neck, causing him to nearly fall to the ground.   Mr. Henderson was pointing the gun at Mr. Anagnostopoulos and ordered him to sit on the floor.  Mr. Henderson then demanded and took Mr. Anagnostopoulos' rings, neck jewelry, wallet, and money at gunpoint. [Trial 6/29/11, p 258-263]. He also ordered Mr. Anagnostopoulos to open the cash register.  [Trial 6/29/11, p 263].  In reciting what happened next, Mr. Anagnostopoulos began to testify not based on his knowledge or memory,

---

[1] The witness testified that the shop was also known as Wholesale 2 U.  Despite having a reputation otherwise, Mr. Anagnostopoulos was adamant that his store was not at all functioning as a pawn shop.  [Trial 6/29/11 245].

<div align="center">1</div>

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

but by narrating the contents of the surveillance video in response to questions asked by the prosecutor.  [Trial 6/30/11, p 5-8].

Mr. Anagnostopoulos noted that Mr. Henderson took him to an office inside the store and ordered him to open up the safe.  Mr. Henderson was calling Mr. Anagnostopoulos racial slurs and threatening to shoot and kill him, and then hit him with the gun again on the side of his face.[2]  [Trial 6/30/11, p 9, 14-15].  Mr. Henderson directed Mr. Anagnostopoulos to hand him everything from inside the safe, including a gun he kept there.  [Trial 6/30/11, p 23].  Some of the other stolen goods included paper money, gold coins, silver dollars, silver certificates, foreign currency, three Rolex watches, and a gold Fossil watch.  [6/30/11 Trial, p 39-44].

Mr. Henderson and Mr. Gibbs ultimately left the store and Mr. Anagnostopoulos, his wife, and Mr. Kassing followed to determine where the two men went.  [Trial 6/30/11, p 27-29].  The police called and eventually arrived on the scene in response to receiving a silent panic alert from inside the store from Mr. Kassing.  [Trial 6/30/11, p 29-31].

Mr. Anagnostopoulos was able to pick out Mr. Gibbs in a subsequent corporeal line-up, but could not identify Mr. Henderson.[3]  [Trial 6/30/11, p 32-35].  According to him, his watches and Visa debit card was recovered, but several items taken during the robbery were never returned to him.  [Trial 6/30/11, p 34-37].

Nancy **Anagnostopoulos** was a joint owner of the Wholesale 4 U business with her husband Costas.  [Trial 6/29/11, p 8-9].  She arrived at the store around 5:25pm on the day of the robbery, thirty minutes before closing.  Her husband and Jeremy Kassing were present, and she sat down and down began reading a book [Trial 6/29/11, p 41-42].  Like her husband, Mrs.

---

[2] Part of Mr. Anagnostopoulos' ear was cut from being hit with the gun, requiring four stitches.  He also claimed to have more frequent headaches as a result. [Trial 6/30/11, p 45-46].
[3] Mr. Anagnostopoulos was able to identify both men at trial. [Trial 6/29/11, p 251-252].

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

Anagnostopoulos recounted what happened next by walking the prosecutor and jury through the contents of the video, rather than testifying from her memory.

As her husband and Mr. Kassing worked to troubleshoot the video game, Mrs. Anagnostopoulos heard a loud crack. She stood up and saw her husband going down on the floor, and Mr. Gibbs approached her. He jerked the necklaces from her neck and tried to remove Mrs. Anagnostopoulos' ring from her finger.[4] When he could not remove the ring himself, he directed Mrs. Anagnostopoulos to either do so, or risk him cutting it off. Mr. Gibbs reached into all of Mrs. Anagnostopoulos' pockets and took her identification, ATM card, concealed pistol license, and money. [Trial 6/29/11, p 62-65, 94]. Mr. Henderson later double checked Mr. Gibbs' work in this regard. [Trial l6/29/11, p 117]. Mr. Gibbs never had possession of a gun, knife, or any other weapon and never threatened to beat, stab, shoot, or otherwise injure her, her husband, or Mr. Kassing. [Trial 6/29/11, p 106-110].

Mrs. Anagnostopoulos could see the gun in Mr. Henderson's hand, and heard him yelling racial slurs and threats at her husband. [Trial 6/29/11, p 66-67, 121-124]. When Henderson led Mr. Anagnostopoulos into the back room, Mr. Gibbs began removing money from the cash register. He also took an iPod, and according to Mrs. Anagnostopoulos, Mr. Gibbs retrieved several laptops from the showcase because Mr. Henderson had instructed him to do so. Mr. Gibbs was hesitant to go behind the showcase to obtain more merchandise, so Mrs. Anagnostopoulos volunteered to do so for him. [Trial 6/29/11, p 67-70]. Mr. Gibbs did not say much else to her, but he yelled to Mr. Henderson to "come on" and that they had three minutes. [Trial 6/29/11, p 71-72]. At that point (but only after double-checking whether Mr. Gibbs properly emptied the register), Mr. Henderson picked up a duffle bag, threw it at Mr. Gibbs, and yelled at him to put the laptops inside. [Trial 6/29/11, p 67, 73-74]. Mr. Gibbs "just did it," according to Mrs. Anagnostopoulos. Mr.

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

Henderson then directed Mr. Gibbs to wait before leaving, as they couldn't exit with the items so conspicuously.[5]  Mr. Henderson then emptied Mrs. Anagnostopoulos' purse. [Trial 6/29/11, p 74]. The two men left and Mrs. Anagnostopoulos, her husband and Mr. Kassing conveyed information about the event to the police.  [Trial 6/29/11, p 85, 89-93].  In separate live-lineups conducted later, Mrs. Anagnostopoulos selected Mr. Gibbs and Mr. Henderson as her assailants.  [Trial 6/29/11, p 99-104].  She also identified the men in court.

**Jeremy Kassing** added that the store had a hand-held silent panic alarm system, and he pressed the device nine times during the robbery to alert the police.  [Trial 6/30/11, p 78-79].  Mr. Kassing identified Mr. Gibbs as one of his assailants both during a lineup and at trial.  [Trial 6/30/11, p 79-80, 101-103].  Like the other two witnesses, Mr. Kassing confirmed that only Mr. Henderson had a gun during the incident.  Additionally, it was only Mr. Henderson who demanded that Mr. Kassing empty his pockets. [Trial 6/30/11, p 81-82, 97]. Mr. Kassing perceived Mr. Henderson as the leader of the robbery, inasmuch as he was telling Mr. Gibbs what to do.  [Trial 6/30/11, p 115-116].

**Officer Michael Ross** of the Flint Police Department responded to the radio dispatch regarding the incident.  [Trial 6/29/11, p 149, 151].  He took descriptions of the suspects, watched a portion of the surveillance video, and looked for potential fingerprints that could be lifted from the scene.  [Trial 6/26/11, p 154-155, 157-159].

After speaking with Officer Ross and watching the surveillance video, **Michele Champion** (then an identification technician for the Flint Police Department), processed a video game, a countertop, the safe, and a glass display cases inside the shop in an effort to locate fingerprints

---

[4] Mrs. Anagnostopoulos claimed to suffer whiplash from the snatching incident.  [Trial 6/29/11, p 94].
[5] Jeremy Kassing recalled this sequence of events similarly, noting that Mr. Henderson told Mr. Gibbs he couldn't look so suspicious, and then went back and found another bag.  [Trial 6/30/11, p 93].

[Trial 6/29/11, p 183, 187-190, 206-207].  She then submitted the prints for further identification through the Automated Fingerprint Identification System (AFIS), a national database.   [Trial 6/29/11, p 197-198].  **Mary Martin**, an AFIS employee and sworn expert in fingerprint identification and comparison, then testified that one of the prints recovered matched Mr. Gibbs' left ring finger, while another matched Mr. Henderson's left ring finger. She also determined that one of the prints belonged to Costas Anagnostopoulos**.** [Trial 6/29/11, p 230-233].  **Phillip Thick**, another AFIS employee and fingerprint expert, added that a separate print recovered from the scene matched Mr. Gibbs' left thumb.  [Trial 7/6/11, p 8, 16, 23-24].

**Sergeant Shawn Ellis** testified as the officer in charge of the investigation.  [Trial 6/30/11, p 143].  After receiving the AFIS report, Sergeant Ellis followed-up with Mr. Gibbs, who turned himself in.  He obtained consent from Mr. Gibbs' mother to search her house, and there the officer recovered, *inter alia*, (1) a Ziploc bag with miscellaneous jewelry, (2) a Sam's Club card bearing Nancy Anagnostopoulos' name and picture, (3) three Rolexes and a Fossil watch, and (4) coins and foreign currency.   [Trial 6/30/11, p 152-153, 156-161].

Sergeant Ellis obtained a statement from Mr. Gibbs after he voluntarily surrendered.  He claimed that Mr. Gibbs waived his *Miranda* rights and that the statement was recorded, although he was unable to produce the recording at the time of trial.  [Trial 6/30/11, p 203, 211-212].  According to Sergeant Ellis, Mr. Gibbs said he and Mr. Henderson went to the pawn shop to try and sell some jewelry.  They were trying to raise money to buy marijuana, but were told the jewelry was fake. [Trial 6/30/11, p 212].  Mr. Henderson then bought a video game for them to play and the two men left the store.  [Trial 7/6/11, p 34].  Henderson changed his mind and decided to return the game, and Mr. Gibbs accompanied him back to the pawn shop.  Mr. Gibbs did not know that Henderson was going to rob the place, but once inside, Henderson pulled out the handgun, hit the store owner with it, and ordered Mr. Gibbs to take Mrs. Anagnostopoulos' cell phone and jewelry along with laptops

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

5

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

and other items.  [Trial 7/6/11, p 34-35].  Mr. Gibbs noted that Mrs. Anagnostopoulos offered to help him and ultimately did so.  He acknowledged carrying away items from the store and said they drove around for thirty minutes and eventually ended up at Mr. Gibbs' house.  Mr. Henderson said he would pay Mr. Gibbs $100 to keep the items, but Mr. Gibbs was never paid and Mr. Henderson never came back to pick up anything he had left.  Amongst the items police recovered from Mr. Gibbs was a Pittsburgh Pirates hat that he said belonged to Mr. Henderson. [Trial 7/6/11, p 36-37].

Lastly, **Phillip Gibbs** testified in his own defense.  He was sixteen years old on the day of the robbery.  [Trial 7/6/11, p 87-88].  He acknowledged being in the store earlier in the day in an effort to sell Mr. Henderson's jewelry in exchange for money for marijuana.  [Trial 7/6/11, p 90-91].  After learning that the jewelry had no value, he informed Mr. Henderson of that and the two men returned to the store to buy a video game instead.  Mr. Gibbs went back to the store a third time with Henderson, who intended to seek a refund.  As Mr. Anagnostopoulos and Mr. Kassing plugged up the video game for testing, Mr. Gibbs heard a smacking / clapping noise and saw Mr. Anagnostopoulos falling to the floor.  [Trial 7/6/11, p 91-94].  Mr. Gibbs then saw Mr. Henderson with a large gun in his hand, and was startled when he realized Henderson had hit Mr. Anagnostopoulos with the gun.  [Trial 7/6/11, p 95].  Mr. Gibbs knew what Mr. Henderson was doing was wrong, but he complied with his orders to retrieve items from Nancy.  This was because he was hoping not to be injured himself, as he was afraid of Mr. Henderson's gun.  [Trial 7/6/11, p 96].  Accordingly, he took the money from the cash register and complied with the order to take the laptops from the showcase even though he really wanted no part of the robbery.  Although Mr. Gibbs did not run when Mr. Henderson was out of sight, he was thinking to himself that he hoped Mr. Henderson would not hurt anybody.  [Trial 7/6/11, p 97-101].  Mr. Henderson emerged from the back and checked the cash register again, then threw a duffle bag on the floor with directions for Mr. Gibbs to fill it with laptops.  Moreover, he called Mr. Gibbs dumb or stupid for leaving the

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

store with the items exposed, and retrieved Mrs. Anagnostopoulos' purse to carry the gun and some of the laptops. [Trial 7/6/11, p 101-103]. Consistent with his police statement, Mr. Gibbs indicated that he was taken home and agreed to hide the goods at his house after being pressured by Mr. Henderson. [Trial 7/6/11, p 106-107].

Ultimately, a Genesee County jury refused to hold Mr. Gibbs accountable for the weapon Mr. Henderson used to effectuate the crime. Nevertheless, Mr. Gibbs was still convicted of two counts of armed robbery,[6] one count of unarmed robbery,[7] and one count of conspiracy to commit armed robbery[8] on July 2, 2011 following a five-day trial before the Honorable Judith A. Fullerton. [Trial 7/7/11, p 59-60].

At sentencing, trial counsel agreed to the scoring of the prior record variables, but challenged the points assessed against Mr. Gibbs for OV 4 and OV 13. [Sentence 8/15/11, p 9-18]. Notwithstanding his relatively lesser culpability, minimal past, and youthful status, Judge Fullerton ordered Mr. Gibbs to serve concurrent sentences at the very top of his guidelines of (1) 17.5 years to 30 years imprisonment for the armed robbery and conspiracy charges, and (2) 100 months to 15 years imprisonment for unarmed robbery charge. [Sentence 8/15/11, p 25-26]. Presently incarcerated, this is Mr. Gibbs' appeal of right.

---

[6] MCL 750.529.
[7] MCL 750.530.
[8] 750.157a.

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

## ARGUMENT

### I.     THE   TRIAL   COURT   VIOLATED   MR.   GIBBS'   SIXTH AMENDMENT RIGHT TO A PUBLIC TRIAL BY CLOSING THE COURTROOM AND EXCLUDING MEMBERS OF HIS FAMILY FROM JURY SELECTION.

*Issue Preservation and Standard of Review.*  Trial counsel did not object to the closing of the courtroom during *voir dire.*  Accordingly, the plain error standard of review applies.  *See People v Carines,* 460 Mich 750, 763 (1999).  Since this issue implicates Mr. Gibbs's Sixth Amendment right to a public trial, this Court reviews the claim *de novo.  People v Dendel,* 481 Mich 114 (2008).

*Argument.*  The Sixth Amendment directs that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy *and public trial. . . .*"  US Const; Am VI (emphasis added).  This right applies to state prosecutions under the Fourteenth Amendment.  *In Re Oliver*, 333 US 257, 273 (1948).  The policy considerations underlying the right to a public trial are compelling: "The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions. . . ." *Waller v Georgia,* 467 US 39, 46 (1984) (quoting *In re Oliver*, *supra* at 270, n 25).

In a recent *per curiam* decision, the United States Supreme Court noted unequivocally that the right to an open courtroom applies to the jury selection phase of the trial and, in particular, the examination of prospective jurors.  *Presley v Georgia,* 558 US __; 130 S Ct 721, 725 (2010).  This holding does not create a new right; it simply re-affirms what the Court recognized 28 years ago in *Waller v Georgia, supra.*[9]  The beneficiary of the right to a public trial is both the accused and the

---

[9] Among the values furthered by the public trial guarantee are: (1) to ensure a fair trial; (2) to remind the prosecutor and judge of their responsibility to the accused and the importance of their functions; (3) to encourage witnesses to come forward; and (4) to discourage perjury. Waller, *supra* at 46-47.

public-at-large.  The right is grounded in the Sixth Amendment, *Gannet Co v DePasquale,* 443 US 368, 380 (1979), as well as the First Amendment.  *See Press-Enterprise Co v Superior Court,* 478 US 1 (1980).

    *Presley* reminds us that the selection of a jury is itself a matter of importance, "not simply to the adversaries, but to the criminal justice system."  *Presley, supra* at 724-25 (quoting *Press-Enterprise Co, supra* at 505.)  The *Presley* majority used strong language, declaring that under the Court's "clear precedents," it was "so well settled that the Sixth Amendment right extends to jury voir dire that this Court may proceed by summary disposition." *Id.* at 722–24.  The tenor of the opinion demonstrates the Court's frustration with repeated failures to abide by its holdings.

    *Presley* reemphasized that "[t]rial courts are obligated to take every reasonable measure to accommodate public attendance at criminal trials," including at jury selection. *Id.* at 724.  What is obvious from the Court's discussion is that the first and foremost "obligation" is the duty to ensure the courtroom is open and not unduly restricted by staff or court officers.  Furthermore, given the purposes of the public trial right articulated in *Waller*, it follows that the "integrity and public reputation of the judicial proceedings" is damaged when jury selection is closed to the public.

    Here, the record is unclear as to whether Judge Fullerton knew her staff closed off the courtroom during *voir dire*.  The Judge mentions at the very beginning that "if any spectators would like to come in they're welcome,"[10] yet affidavits submitted by several members of Defendant-Appellant's family suggest that court personnel told them exactly the opposite.  Mr. Gibbs' mother, sister, and brother-in-law have all attested that they, members of the co-Defendant's family, and other members of the public were prevented from entering the courtroom during jury selection. *Affidavits, Appendix A*.  Although these statements are not a part of the existing record, a remand is being requested so that Mr. Gibbs has an opportunity to further develop the issue for appeal.  If it turns out to be true that access was restricted based solely on the need to conduct *voir dire, Presley*

---

[10] [Trial 6/28/11, p 4].

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

indicates that reasonable alternatives had to be considered even if not advanced by the parties. *Presley, supra* at 725. Acceptable options could have included "reserving one or more rows for the public; dividing the jury venire panel to reduce courtroom congestion; or instructing prospective jurors not to engage or interact with audience members." *Id.* at 725.

Although there was no specific objection to the courtroom closure, the Supreme Court has noted that the lack of a complete objection has no bearing on the issue of whether the public trial right has been violated: "The public has a right to be present *whether or not any party has asserted the right.*" *Presley, supra* at 724-25 (emphasis added). This language places the responsibility for ensuring the right to a public trial firmly at the feet of the trial judge, not the defendant. For example, in *Salem v Jenkins,* 414 F Supp 2d 687, 696 (ED Mich 2006) the district court held that "the Michigan Court of Appeals' decision that counsel failed to preserve this issue was based on the incorrect belief that *Waller* required Petitioner's attorney to advance specific objections." To the contrary, it is not necessarily incumbent upon the defendant to contest a closed courtroom; rather, it is the onus of the trial court to ensure the public is granted access to a trial, thus preserving not only the defendant's right, but also the rights of the public-at-large. *Presley, supra* at 721. Furthermore, the public has a right of access to criminal trials that may not be waived. *Presley* was decided as a Sixth Amendment case, but the Supreme Court reiterated that the right to a public trial is also guaranteed by the First Amendment: "The Court has further held that the public trial right extends beyond the accused and can be invoked under the First Amendment. This requirement, too, is binding on the States." *Presley, supra* at 723.

By contrast, this Court has held that "the failure to timely assert the right to a public trial forecloses the later grant of relief." *People v Vaughn,* — Mich App — (Docket No. 292385, December 28, 2010), slip op 7. Yet, this reasoning cannot stand in the face of compelling U.S. Supreme Court statements to the contrary.

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

The attached affidavits provide strong support to Mr. Gibbs' claim that his right to a public trial was violated.  It is equally clear that this violation, if allowed to become a matter of record, amounts to "structural" error, *Waller supra*, at 50 n. 9, since it "'affect[s] the 'framework within which the trial proceeds.'"  *United States v Marcus*, 130 S Ct 2159, 2164 (2010) (quoting omitted).  Automatic reversal is thus required.  *Washington v Recuenco*, 548 US 212, 218-19 (2006).

Even under plain error review, reversal is warranted.  *Carines, supra* at 763.  Since a violation of the public trial right is among the limited class of cases that involve structural error, prejudice is presumed, a violation of substantial rights has occurred, and a new trial is required.  *Neder v United States*, 527 US 1, 8-9 (1999); *People v Anderson*, 446 Mich 392, 40 (1994).

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

II.   **MR. GIBBS' FIFTH AMENDMENT RIGHT TO REMAIN SILENT WAS VIOLATED WHEN THE PROSECUTOR USED HIS PRE-ARREST SILENCE TO IMPEACH HIS EXCULPATORY TESTIMONY AT TRIAL, AND THE PROSECUTOR THEN REFERRED TO THE SILENCE DURING CLOSING ARGUMENT.**

*Issue Preservation and Standard of Review.* The *de novo* standard of review applies to claims of constitutional error. *People v McPherson,* 263 Mich App 124, 131 (2004). Trial counsel did not object, so a plain error analysis must be applied.

*Argument.* The Fifth Amendment to the US Constitution provides, in pertinent part: "No person … shall be compelled in any criminal case to be a witness against himself." *See also*, Const 1963, art 1, § 17.  This provision, as applied to state prosecutions through the Due Process Clause of the Fourteenth Amendment, forbids a prosecutor from impeaching a defendant with the defendant's pre-arrest silence. *People v Dye,* 431 Mich 58, 79-80 (1988).  As the *Dye* Court noted, "allowing impeachment with pre-arrest silence suggests that a defendant has a duty to incriminate himself and burdens his right to testify on his own behalf." *Id* (citing *People v Collier,* 426 Mich 23, 34 (1986). Such tactics are inappropriate given the conventional wisdom that "one does not have to say anything to the police and that what one does say may be used against him.' " *Dye* at 80; *See also, Combs v Coyle,* 205 F3d 269, 283 (6th Cir 2000) ("We agree with the reasoning expressed in the opinions of the Seventh, First, and Tenth Circuits, and today we join those circuits in holding that the use of a defendant's pre-arrest silence as substantive evidence of guilt violates the Fifth Amendment's privilege against self-incrimination. Like those circuits, we believe 'that application of the privilege is not limited to persons in custody or charged with a crime. . . .'").

Notwithstanding these principles, the prosecutor here shifted the burden of proof to Mr. Gibbs and asked him to account for his conduct immediately after the crime:

| | |
|---|---|
| PROSECUTOR: | So, when did you tell your Mom about what happened at the shop? |
| MR. GIBBS: | I didn't – I didn't tell her. |
| PROSECUTOR: | When do you tell – when do you go to the police to tell them that Tyrell Henderson made you rob the Wholesale 4 U pawnshop on Davidson Road in the city of Flint? |
| MR. GIBBS: | What you mean by when?  Like what day? |
| PROSECUTOR: | When?  When do you go to the police and say, police, [a] friend of mine just made me help him rob a store? |
| MR. GIBBS: | November 1st. |
| PROSECUTOR: | And, you go on November 1st 'cause you know the police are looking for you; right? |
| MR. GIBBS: | [T]hat's not the only reason why I went.  'Cause I had – |
| PROSECUTOR: | So, October – October 26 at 6:00, just after this robbery is completed, if we watched the clock on the videotape?  When do you call nine-one-one to tell 'em what happened? |
| MR. GIBBS: | I didn't call nine-one-one. |
| PROSECUTOR: | When do you go to the police station to tell 'em what happened? |

[Trial 7/6/11, p 128-129].   Although the *Collier* court found no impropriety with similar impeachment by the prosecutor under the circumstances presented there, this was largely because that defendant claimed self-defense. The *Collier* court opined that it would have been "natural" for Collier to contact the police given the nature of his theory, inasmuch as "one who has been robbed under the circumstances related by the defendant would report the crime to the police. Defendant knew the identity of the robber and the location of the robbery. It would have been natural for him to report the crime to the police, to have the assailant arrested, and to retrieve his property." *Collier* at 34–36.  Here however, it would not at all have been natural for Mr. Gibbs to contact the police or

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

disclose the crime to his mother or anyone else afterwards, given his claim that he committed the crime under duress: The same threat of harm that caused him to remain on the scene would have endured, if not grown, once the crime was complete; at that point, Mr. Gibbs was the only other person who could implicate Mr. Henderson fully in the robbery. Because approaching the police may have resulted in Mr. Gibbs incriminating, or worse, harming himself, it was improper for the prosecution to comment on Mr. Gibbs' failure to come forward sooner than he did.

Nevertheless, the prosecutor chose to revisit this theme during closing argument:

> Because remember despite what Phillip Gibbs testified to here in the courtroom about what his knowledge was, what his role or lack thereof was, he doesn't take an opportunity to run out of the store. He doesn't call 911 from inside the store. He doesn't run away separate from Mr. Henderson after this robbery occurred. He doesn't tell his mother. He doesn't go to the police. Think of that when you evaluate his testimony.

[Trial 7/6/11, p 182]. The prosecutor's argument was highly prejudicial and impermissibly undermined his constitutional right to remain silent. The prosecutor attempted to use Mr. Gibbs's silence to cast suspicion on his exculpatory testimony by eliciting the inference that if Mr. Gibbs had truly been innocent of armed robbery, he would have offered his exculpatory explanation the night he was arrested. The prosecutor's argument ignored the fact that Mr. Gibbs had the right to remain silent and had a valid reason to exercise that right.

Allowing the use of Mr. Gibbs's silence for impeachment turned his constitutional protections against him by punishing him for not immediately waiving his Fifth Amendment rights by incriminating himself in order to escape liability for the robbery allegations. By highlighting Mr. Gibbs's reliance on the right to remain silent, the prosecutor planted a prejudicial inference in the mind of the jury while obscuring the legitimate reasons for not speaking to the police. Because this flies in the face of his right to silence, this Court should grant Mr. Gibbs a new trial.

### III. BECAUSE THE COURT BELOW MADE THREE GUIDELINES-SCORING MISTAKES, AND CORRECTING THE MISTAKES WOULD SUBSTANTIALLY REDUCE THE GUIDELINES RANGE, MR. GIBBS MUST BE RESENTENCED.

*Issue Preservation and Standard of Review.* Trial counsel objected at sentencing to some, but not all, of the erroneous scoring of the guidelines. Specifically, he did not contest the scoring of any of the Prior Record Variables, but he did challenge the points assessed against Mr. Gibbs under OV 13. The latter issue is thus preserved for appellate review. Mr. Gibbs is requesting a remand for a resentencing and/or so that he can first present these issues to the trial court for consideration.

The proper interpretation and application of the statutory sentencing guidelines are legal questions that Michigan appellate courts review de novo. *People v Morson,* 471 Mich 248, 255 (2004).

*Argument.* Under the Michigan and United States Constitutions, defendants have a due process right to be sentenced on the basis of accurate information and in accordance with the law. *Townsend v Burke,* 334 US 736 (1948); *People v Lee,* 391 Mich 618, 636-637 (1974); *People v Malkowski,* 385 Mich 244 (1971). Further, MCR 2.613(A) provides that a sentence must be consistent with "substantial justice." Our Supreme Court has found that "it is difficult to imagine something 'more inconsistent with substantial justice' than requiring a defendant to serve a sentence that is based upon inaccurate information." *People v Francisco,* 474 Mich 82, 91, n6 (2006). Thus, a defendant is entitled to resentencing when his sentence is predicated upon mis-scored and inflated guidelines. *Id.* at 91-92.

### PRV-5

Resentencing is required because Mr. Gibbs was improperly assessed two points under Prior Record Variable (PRV) 5, where the order of disposition was entered *after* the commission date of the sentencing offense.

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

Points may be attributed to a defendant under PRV-5 based on an offender's prior misdemeanor convictions and prior misdemeanor juvenile adjudications.  A score of two points is appropriate under this guideline if a person has "1 prior misdemeanor conviction or prior misdemeanor juvenile adjudication":

1) Prior record variable 5 is prior misdemeanor convictions or prior misdemeanor juvenile adjudications. **Score prior record variable 5 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points**:

    (a) The offender has 7 or more prior misdemeanor convictions or prior misdemeanor juvenile adjudications............................ 20 points

    (b) The offender has 5 or 6 prior misdemeanor convictions or prior misdemeanor juvenile adjudications............................ 15 points

    (c) The offender has 3 or 4 prior misdemeanor convictions or prior misdemeanor juvenile adjudications............................ 10 points

    (d) The offender has 2 prior misdemeanor convictions or prior misdemeanor juvenile adjudications............................ 5 points

    (e) **The offender has 1 prior misdemeanor conviction or prior misdemeanor juvenile adjudication.** .................... **2 points**

MCL 777.55(1)(a) (emphasis added).  If a defendant has no prior misdemeanor convictions or prior misdemeanor juvenile adjudications, the appropriate score to be assessed is zero points.  The statute defines "prior misdemeanor juvenile adjudications" to mean "a juvenile adjudication for conduct that if committed by an adult would be a misdemeanor under a law of this state . . . **if the order of disposition was entered before the sentencing offense was committed.**" MCL 777.55(3)(b).

A review of the record here reveals, however, that the only juvenile adjudication eligible for scoring under PRV-5 was for an August 3, 2010 entering without permission case, the disposition of which took place November 9, 2010.  Pre-Sentence Investigation Report (PSR) at 3.  Because the current crimes occurred on October 26, 2010 (before the

juvenile disposition), it was improper to use this conviction as a basis for penalizing Mr.

Gibbs with two points under PRV-5.  This error, combined with the error in scoring PRV-6,

*infra*, affects Mr. Gibbs' guidelines range and entitles him to a resentencing before the trial

court.

### PRV-6

Additionally, Mr. Gibbs received a 5-point score under PRV-6 for being "on probation or

delayed sentence status or on bond awaiting adjudication or sentencing for a misdemeanor."  MCL

777.56(1)(d).  Yet, this score was both factually and legally inappropriate.  Factually speaking, as the

attached affidavit of the undersigned counsel indicates, the Genesee County Juvenile Court has no

record of Mr. Gibbs **ever** being placed on bond when he acquired the entering without permission

charge as a juvenile.  *Affidavit of Counsel, Appendix B.*  Additional substantiation of this fact is

forthcoming.  Even if he had been on bond, however, the plain language of the legislative

sentencing guidelines under PRV-6 make it apparent that points cannot be assessed for a

defendant's relationship with the juvenile justice system.  Resentencing is thus warranted.

A five-point score under PRV-6 is reserved for offenders who already have a "relationship

to the criminal justice system" when the crime is committed.  MCL 777.56(1).  A few months before

committing the sentencing offense, the then-sixteen-year-old defendant was adjudicated responsible

(by virtue of a plea) for entering without permission in the Genesee County Probate Court (PSR 3).

He did not receive a juvenile disposition for this offense until **after** the current crimes had been

committed. When that disposition took effect, however, he was placed on a probationary term that

was ultimately suspended in light of the charges in the current case.  As noted, there is no evidence

that Mr. Gibbs was on bond during the interim between his adjudication and disposition.

Unlike the judicial guidelines, the Legislature's version of PRV-6 does not assign points

based on a defendant's status within the juvenile justice system.  *See Part A, infra.*  Further, contrary

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

to what the trial court believed, this Court's decision in *People v Endres,* 269 Mich 414 (2006), did not address the applicability of PRV-6 to offenders who commit crimes while awaiting juvenile disposition. *See Part B, infra.* Simply put, there is no authority for scoring PRV-6 in this case. Resentencing is warranted.

### A.    The Plain Language of PRV-6

Whether a relationship to the juvenile justice system may be used to score PRV-6 is a question of statutory construction. When interpreting statutes, this Court must give effect to the intent of the Legislature by applying the provision's plain language. *People v Koonce,* 466 Mich 515, 518 (2002). This Court considers both the plain meaning of the critical word or phrase as well as its placement and purpose in the statutory scheme. *US Fidelity Insurance & Guaranty Co. v Michigan Catastrophic Claims Ass'n,* 482 Mich 414, 423 (2008). Whenever possible, the Court should give effect to every phrase, clause and word in a statute. *Id.* Omitted phrases may also be significant, as "[t]he Legislature is presumed to be familiar with the rules of statutory construction and, when promulgating new laws, to be aware of the consequences of its use or omission of statutory language[.]" *Tellin ex rel Hinga v Forsyth Tp.,* 291 Mich App 692 (2011) (quoting *In re MKK,* 286 Mich App 546, 556 (2009)).

Critically, the Legislature made no reference to juvenile delinquency proceedings when it enacted MCL 777.56, the statute which created the current version of PRV-6. The variable examines whether the offender had a "relationship to the ***criminal justice system***" at the time of the sentencing offense. MCL 777.56(1) (emphasis added). Such a score is appropriate only if the "[o]ffender is on probation or delayed sentence status or on bond awaiting adjudication or sentencing for a misdemeanor." MCL 777.56(1)(d). As noted, zero points must be assessed if the "[o]ffender has ***no relationship to the criminal justice system***." MCL 777.56(1)(e) (emphasis added). *See also People v Johnson,* 293 Mich App 79 (2011).

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

The Legislature's repeated use of the phrase "criminal justice system" makes clear it did not intend PRV-6 to encompass juvenile matters. Through various enactments, the Legislature has established a clear distinction between criminal cases and delinquency proceedings. The procedures governing the latter are codified not in the Penal Code, but instead in the Probate Code at MCL 712A.1 *et seq. See also* Const 1963, Art 6, § 15 (providing that the probate court "shall have original jurisdiction in all cases of juvenile delinquents and dependents, except as otherwise provided by law."). By statute, "proceedings under this chapter **are not criminal proceedings**" unless otherwise provided. MCL 712A.1(2) (emphasis added). Thus, as this Court has noted, "proceedings against juveniles are not even considered criminal proceedings." *In re T.D.*, __ Mich App __ (May 26, 2011) (Docket No. 294716).

This distinction is found elsewhere in the guidelines as well. PRV-1 and PRV-2, for example, weigh "convictions" for certain "crimes." MCL 777.51, 777.52. In contrast, PRV-3 and PRV-4 consider only "a juvenile adjudication for conduct that would be . . . [a crime] if committed by an adult[.]" MCL 777.53, 777.54. Similarly, PRV-5 refers to "a juvenile adjudication for conduct that if committed by an adult would be a misdemeanor." MCL 777.55(3)(b). As these provisions recognize, a juvenile is not adjudicated guilty of a "crime"; rather, a juvenile can only be adjudicated guilty of what "would be" a crime if committed by someone older. The guidelines therefore acknowledge what the Probate Code already confirms: "proceedings under this chapter **are not criminal proceedings**" unless otherwise provided. MCL 712A.1(2) (emphasis added).

Certainly, if the Legislature had intended for PRV-6 to apply to a defendant's relationship with the juvenile justice system, it could have said so. After all, PRV-3, PRV-4, and PRV-5 all expressly provide for the consideration of delinquency adjudications. In contrast, while the word "adjudication" does appear in the text of PRV-6, it is not used in the context of delinquency proceedings. Nor is it used to refer to juvenile bond status. Rather, it appears within the phrase "on

bond awaiting adjudication or sentencing for a misdemeanor." MCL 777.56(1)(d). In this context, "adjudication" means simply: "The legal process of resolving a dispute; the process of judicially deciding a case." Black's Law Dictionary (9th ed), p. 42. It follows, therefore, that this clause of PRV-6 is only concerned with sentencing offenses that occur before the final resolution of an adult misdemeanor charge. After all, as discussed above, PRV-6 refers to defendants charged with a "misdemeanor," not defendants charged with "conduct that if committed by an adult would be a misdemeanor." *Compare* MCL 777.55(3)(b) *with* MCL 777.56(3)(b).

Language referencing juvenile matters could have been added to PRV-6 with little difficulty. Given what is expressed in PRV-3, PRV-4, and PRV-5, it must be presumed that the Legislature intentionally omitted such language when it drafted PRV-6. This is consistent with the well-established legal doctrine *expressio unius est exclusio alterius* ("the expression of one thing is the exclusion of another"). *Miller v Allstate Ins. Co.,* 481 Mich 601, 611 (2008). The maxim is a rule of construction that is a product of "logic and common sense." *Feld v Robert & Charles Beauty Salon,* 435 Mich 352, 362 (1990) (quoting 2A Sands, *Sutherland Statutory Construction* (4th ed), § 47.24, at 203). Our Supreme Court has long held that "no maxim is more uniformly used to properly construe statutes." *Hoerstman Gen. Contracting, Inc. v Hahn*, 474 Mich 66, 74–75 (2006) (citing *Taylor v Michigan Public Utilities Comm.,* 217 Mich 400, 403 (1922)).

Further evidence of the Legislature's intent can be found by comparing PRV-6 to its predecessor under the judicial guidelines. The instructions to the predecessor variable expressly provided that "a 'relationship to the criminal justice system' **applies to relationships determined by juvenile convictions or charges**." *Id. People v Stone,* 195 Mich App 600, 607-608 (1992) (emphasis added) (quoting the version of PRV-6 which appeared in the judicial sentencing guidelines). Thus, it must be presumed: (1) that the Legislature was aware of the prior version of PRV-6 when it enacted the current version; and (2) that the differences between the two variables

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

were intended.  *See People v Hegwood,* 465 Mich 432, 438-439 (2001) ("At the time it enacted these guidelines, the Legislature opted for a system with many features that were easily recognizable by courts familiar with the format previously employed in Michigan.  . . . Yet it is apparent that the Legislature has provided new ground rules.").

For all of these reasons, PRV-6 was not intended to be scored in this case.

### B.      Inapplicability of *Endres* Decision

It is worth noting that this Court's ruling in *Endres* does not support the trial court's scoring decision.   Since the defendant in that case completed his juvenile probationary term before committing the sentencing offense, this Court did not analyze whether PRV-6 could have been scored if the timing of the juvenile sentence had been different.  *Endres,* 269 Mich App at 422. Rather, the *Endres* Court scored PRV-6 because the sentencing offense arose a few weeks after the defendant was charged with possessing alcohol as a minor ("MIP").  *Id.*  The MIP charge was filed on May 12, 2001, seven months after the defendant turned seventeen years old.  *Id.*  Given his age, the defendant in *Endres* was necessarily charged as an adult, since the family court lacked jurisdiction over any crime occurring after his seventeenth birthday.  MCL 712A.2(a)(1).

Other panels of this Court have misread *Endres.*  An unpublished opinion of one panel, for example, notes that "in *People v Endres,* this Court affirmed the trial court's scoring of PRV-6 based on the defendant's juvenile conviction."  *People v Kelly*, unpublished opinion per curiam of the Court of Appeals, issued April 13, 2010 (Docket No. 289689) (footnote and citation omitted) (included in *Appendix C).*  Again, this is not what that case held; *Endres* actually involved a pending adult charge.

The unpublished *Kelly* opinion proceeds to turn the rules of statutory construction on their head, stating that "if the Legislature had intended to limit application of PRV-6 to adult prisoners only, it was capable of specifying such a limitation."  *Id.*  Again, as discussed above, the opposite is true.  Other variables make it very clear when juvenile adjudications may be counted and when they

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

may not.  *See* MCL 777.53 through 777.56.  If the Legislature had intended PRV-6 to include contacts with the juvenile justice system, it could have said so.  Indeed, all it had to do was copy from the judicial guidelines.

## OV 13

OV 13 should have been scored at zero points, not 25.  Multiple convictions arising from a single incident do not establish a "continuing pattern of criminal behavior." OV 13 was scored 25 points on the theory that the sentencing offense was "part of a pattern of felonious criminal activity involving 3 or more crimes against a person."  MCL 777.43(1)(b); Sentencing Information Report (SIR), *Appendix D.*

The three crimes against a person of which Mr. Gibbs was convicted here were his first felony convictions.  He had no other felony record, adult or juvenile.  PSR at 3.[11]  Because the three felony convictions in the case on appeal all arose from a single incident, they do not show a "pattern of felonious criminal behavior" and thus cannot support the 25-point OV 13 score.  *See People v Shane Joseph Smith,* unpublished opinion per curiam of the Court of Appeals, issued February 25, 2003 (Docket No. 229137) (*Appendix E*) at p 6 (concurrent convictions stemming from "one incident" not scoreable under OV 13; "it is repeated felonious conduct that should be considered in scoring this offense variable") (distinguishing *People v Harmon,* 248 Mich App 522, 532 (2001), as case in which concurrent convictions arose not from single incident but from "separate acts").  As in *Smith*, the three concurrent convictions here all arose from one incident—a single robbery of three different individuals at the same time.

Moreover, the Supreme Court's decision in *People v Cannon,* 481 Mich 152 (2008), reveals *Harmon* to be bad law.  In *Harmon,* the defendant argued that one of the prior crimes said to

---

[11] Because the presentence report is confidential, it is not intended for inclusion in the Court's public file.

substantiate the OV 13 score should not have been counted because it was of the wrong crime class. *Harmon*, 248 Mich App at 532. This Court did not reach the issue because, it held, other convictions of the proper class—defendant's concurrent convictions—provided sufficient support for the score on their own. *Id.* *Harman* thus appears to suggest that concurrent convictions (at least if not stemming from the same incident as the sentencing offense) might routinely be scored under OV 13 as well as under Prior Record Variable 7, the variable that explicitly counts "subsequent or concurrent felony convictions," MCL 777.57.

However, in *Cannon*, our Supreme Court made clear that interpreting the guidelines-variables statutes requires a different approach than the one take in *Harmon*. Reviewing courts must keep in mind the "Legislature's focus" expressed by the title and first subsection. *People v Cannon,* 481 Mich 152, 157 (2008). Those words—the statute's "central subject"—condition what follows. *Id.* Particular provisions of the statute must be read in the context of that central subject. Thus, OV 10 (whose central subject, as expressed in the title and first subsection, is "exploitation of a vulnerable victim"[12]) requires proof of vulnerable-victim exploitation even when considering a provision of the statute ("predatory conduct was involved") that makes no mention of vulnerable victims. *Id.* at 156-59.

OV 13 has a central subject that was likewise ignored, improperly, in *Harman*. The particular statutory subsection at issue both here and in *Harman* requires proof only of "a *pattern* of felonious criminal activity involving 3 or more crimes against a person"[13]—language that could arguably refer to crimes committed at the same, or nearly the same, time. However, the statute's title and first subsection make clear that the legislative focus is different: identifying, and providing greater punishment for, those whose conduct reflects a "*continuing* pattern of criminal behavior." MCL

---

[12] MCL 777.40.
[13] MCL 777.43(1)(b) (emphasis added).

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

777.43(1) (emphasis added).  As this Court recognized in *Smith*, *supra*, the modifier "continuing" means that to be scored under OV 13, a "pattern" of criminal acts must be one that reflects "*repeated* felonious conduct.*"  *Smith*, *supra* (emphasis added).  OV 13 should have been scored 0 points, for "no pattern of felonious criminal acts were committed."  MCL 777.43(1)(g).

## **Remedy**

The erroneous scoring of PRV-5, PRV-6, and OV 13 increased Mr. Gibbs' total guidelines range from the correct cell of C-III, to the resulting range of D-IV.  The error inflated the guidelines range from 81-135 months to 126-210 months.  The trial court then sentenced Mr. Gibbs at the very top of this incorrect range, to a minimum prison term of 17.5 years.  Because the error in scoring the guidelines violated Mr. Gibbs' state and federal due process rights to be sentenced accurately and consistently with the law, he is entitled to be resentenced within the correct range.  *Francisco*, 474 Mich at 89-92.

## SUMMARY AND RELIEF AND REQUEST FOR ORAL ARGUMENT

**WHEREFORE**, for the foregoing reasons, Defendant-Appellant asks that this

Honorable Court reverse his  conviction and/or remand this matter for an evidentiary hearing and to

allow him to seek resentencing.

Respectfully submitted,

**STATE APPELLATE DEFENDER OFFICE**

/s/  Brandy Y. Robinson

BY:_____

**BRANDY Y. ROBINSON (P66895)**
Assistant Defender
3300 Penobscot Building
645 Griswold
Detroit, Michigan  48226
(313) 256-9833

Dated:  May 23, 2012

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

**APPENDIX A**
**AFFIDAVITS OF GIBBS' FAMILY MEMBERS**

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

STATE OF MICHIGAN

IN THE COURT OF APPEALS

**PEOPLE OF THE STATE OF MICHIGAN**

           Plaintiff-Appellee

**Court of Appeals No. 306124**

**Lower Court No. 11-28140FC**

-vs-

**PHILLIP CHARLES GIBBS**

           Defendant-Appellant.

_____/

## AFFIDAVIT OF ELVERTA THERESA GIBBS

STATE OF MICHIGAN   )
                 ) ss.
COUNTY OF GENESSEE)

     **Elverta Theresa Gibbs,** being duly sworn, hereby deposes and says that:

1. I am the mother of Phillip Charles Gibbs, the defendant in the above-mentioned case.

2. I was present on June 28, 2011 in Judge Judith A. Fullerton's courtroom at the Genessee County Circuit Court, for the purpose of attending the trial of Mr. Gibbs and his co-defendant Tyrell Henderson.

3. Myself, my daughter, my son-in-law and other members of the public were prevented from entering the courtroom during jury selection in the case. After being turned away at the door, I waited in the hallway outside the courtroom.

4. I understand that at one point, I was listed as a possible witness in the case, but I do not understand why other members of my family and the co-defendant's family were denied access to the proceedings during jury selection.

5. Present with me was my daughter Seandra Davidson-Coleman and my son-in-law Courtney Jones.

6. The above information is true to the best of my knowledge and belief.

7. If called to testify at a hearing, my statements would be the same as they are outlined above.

                                              **Elverta Theresa Gibbs**

Subscribed and sworn to before me
May 21, 2012

Lisa Ann Lamarre
Notary Public, Wayne County, Michigan
My commission expires: 6/6/2018

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

**STATE OF MICHIGAN**

**IN THE COURT OF APPEALS**

PEOPLE OF THE STATE OF MICHIGAN

           **Court of Appeals No.** 306124

     Plaintiff-Appellee

           **Lower Court No.** 11-28140FC

-vs-

**PHILLIP CHARLES GIBBS**

     Defendant-Appellant.

_____/

**AFFIDAVIT OF COURTNEY JONES**

STATE OF MICHIGAN )
         ) ss.
COUNTY OF GENESSEE)

     **Courtney Jones,** being duly sworn, hereby deposes and says that:

1. I am the soon-to-be brother in law of Phillip Charles Gibbs, the defendant in the above-mentioned case.

2. I was present on June 28, 2011 in Judge Judith A. Fullerton's courtroom at the Genessee County Circuit Court to attend the trial of Mr. Gibbs and his co-defendant Tyrell Henderson.

3. I was told by a male official in Judge Fullerton's courtroom that since a jury was being picked, I could not enter and watch the proceedings. The sole reason given was that jury selection was in progress.

4. Upon leaving I sat on a bench that was located outside the courtroom and watched as some of the jurors left the courtroom.

5. Present with me were Seandra Davidson-Coleman and my mother-in-law Elverta Theresa Gibbs.

6. The above information is true to the best of my knowledge and belief.

7. I would swear to these facts if called to testify at a hearing.

           Courtney Jones
           **Courtney Jones**

Subscribed and sworn to before me
May 21, 2012

Lisa Ann Lamarre
Notary Public, Wayne County, Michigan
My commission expires: 6/6/2018

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

## STATE OF MICHIGAN

### IN THE COURT OF APPEALS

**PEOPLE OF THE STATE OF MICHIGAN**

Plaintiff-Appellee

**Court of Appeals No.** 306124

**Lower Court No.** 11-28140FC

-vs-

**PHILLIP CHARLES GIBBS**

Defendant-Appellant.

_____/

### AFFIDAVIT OF SEANDRA DAVIDSON-COLEMAN

STATE OF MICHIGAN )
                 ) ss.
COUNTY OF GENESSEE)

    **Seandra Davidson-Coleman,** being duly sworn, hereby deposes and says that:

1. I am the sister of Phillip Charles Gibbs, the defendant in the above-mentioned case.

2. I was present on June 28, 2011 in Judge Judith A. Fullerton's courtroom at the Genessee County Circuit Court to attend the trial of Mr. Gibbs and his co-defendant Tyrell Henderson.

3. I was told by a male person in Judge Fullerton's courtroom that I could not be present in the courtroom while the jury was being picked for Mr. Gibbs' case.

4. After being prevented from sitting inside the courtroom, I waited outside with other family members.

5. We eventually decided to leave the courthouse after being told that jury selection would take all day.

6. We were allowed to enter the courtroom the next day, but only after the jury had been picked.

7. Present with me was my mother Theresa Gibbs and Courtney Jones.

8. The above information is true to the best of my knowledge and belief.

9. If called to testify at a hearing, my statements would be the same as they are outlined above.

                                    **Seandra Davidson-Coleman**

Subscribed and sworn to before me
May 21, 2012

Lisa Ann Lamarre
Notary Public, Wayne County, Michigan
My commission expires: 6/6/2018

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

**APPENDIX B**
**AFFIDAVIT OF COUNSEL**

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

STATE OF MICHIGAN

IN THE COURT OF APPEALS

**PEOPLE OF THE STATE OF MICHIGAN**

|  |  |
|---|---|
| Plaintiff-Appellee, | **Court of Appeals No.** 306124 |
|  | **Lower Court No**. 10-231624FC |
| -vs- |  |

**PHILLIP CHARLES GIBBS**

Defendant-Appellant.

_____/

### AFFIDAVIT OF COUNSEL / OFFER OF PROOF

**BRANDY Y. ROBINSON** hereby states as follows:

1. I represent Mr. Gibbs on appeal from the above-referenced conviction.

2. In researching Mr. Gibbs' sentence for appeal, I discovered an inaccuracy in the Presentence Investigation Report regarding Mr. Gibbs' relationship to the criminal justice system at the time he committed the current offenses.

3. I recently contacted the Juvenile Records Department of the Family Court Division of the Genesee County Probate Court. I spoke by telephone with a clerk who informed me that her review of Mr. Gibbs' juvenile file showed no indication whatsoever that Mr. Gibbs had been placed on bond between adjudication and sentencing for entering without permission.

4. Assuming this information is correct, there was no basis for scoring points against Mr. Gibbs under Prior Record Variable 5.

5. Counsel is undertaking steps to obtain an official certification of Mr. Gibbs' no-bond status as a juvenile.

6. Once that certification is obtained, counsel will promptly file evidence thereof with the Court.

7. Additionally, if granted a hearing on Mr. Gibbs' claim that he was denied the right to a public trial, the undersigned counsel will proffer the testimony of, *inter alia*, Mr. Gibbs' mother, Elverta Gibbs, his Sister Seandra Davidson-Coleman, and his soon-to-be brother in law Courtney Jones. The substance of their proposed testimony appears in the attached Affidavits. Counsel will also seek evidence from court staff connected with Judge Fullerton's chambers to as to her policy on this subject as of the time of trial. Trial counsel will also have to be examined.

8. The foregoing statements are true to the best of my knowledge.

/s/Brandy Y. Robinson

_____

**BRANDY Y. ROBINSON (P66895)**

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

**APPENDIX C**

*PEOPLE V KELLY*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

          Plaintiff-Appellee,

v

DeJUAN KELLY,

          Defendant-Appellant.

UNPUBLISHED
April 13, 2010

No.  289689
Wayne Circuit Court
LC No.  08-004999-03

Before:  WHITBECK, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

Defendant DeJuan Kelly appeals as of right his jury conviction of unlawful imprisonment.[1]  Following his arrest for failure to appear for sentencing, the trial court sentenced Kelly to a term of 86 months to 15 years' imprisonment.  We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Kelly and three codefendants were initially charged with multiple counts of armed robbery[2] and unlawful imprisonment.  Kelly and two of the three codefendants were also charged with felony firearm.[3]  Evidence at the June 2008 trial on those charges established that the men entered an apartment, bound the occupants, and then robbed them of their personal possessions at gunpoint.  At trial, the jury acquitted Kelly on the armed robbery and felony firearm charges but failed to reach a verdict on the unlawful imprisonment charge.  Therefore, the trial court declared a mistrial regarding the unlawful imprisonment charge.

In August 2008, a new jury trial was held on the unlawful imprisonment charge.  The jury ultimately convicted Kelly.  Kelly now appeals various issues that occurred during trial and sentencing.

---

[1] MCL 750.349b.

[2] MCL 750.529.

[3] MCL 750.227b.

-1-

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

## II.  EVIDENTIARY ISSUES

### A.  STANDARD OF REVIEW

The decision whether to admit evidence is within the trial court's discretion, and we will not disturb that decision absent an abuse of that discretion.[4]

### B.  PRELIMINARY EXAMINATION TRANSCRIPT

During the August 2008 trial, the trial court considered the prosecution's request to declare one of the victims unavailable and admit his testimony from the preliminary examination.  Demond Bryant was in federal custody in Kentucky and the federal authorities would not permit him to be conveyed to Michigan for at least another 30 days.  Defense counsel objected, arguing that the examining magistrate had not permitted wide-ranging cross-examination during the preliminary examination.  Defense counsel also argued that Bryant was a key witness because he was the only one at the preliminary examination who testified that Kelly tied him up.  The trial court reviewed Bryant's preliminary examination testimony, ordered some changes and redactions for the jury, and then ruled that it would be admitted.

The next morning, defense counsel again objected to the admission of Bryant's testimony.  Defense counsel first argued that because the prosecution knew where to find Bryant, they should retrieve him from federal custody; but counsel then stated, "I will leave it to the Court's discretion."  The trial court affirmed its earlier ruling that the witness was unavailable and noted that it had encountered difficulty when attempting to obtain witnesses from federal custody.

Kelly now argues that the trial court abused its discretion in allowing into evidence the transcript of Bryant's preliminary examination testimony where there was no diligent, good-faith effort to procure Bryant's actual presence at trial.

The prosecution may present evidence at trial through a preliminary examination transcript when a witness is "unavailable."  A witness is unavailable where the prosecution "has been unable to procure the declarant's attendance . . . by process or other reasonable means, and in a criminal case, due diligence is shown."[5]  With respect to due diligence, "[t]he test is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it."[6]  Due diligence requires attempts to do everything reasonable, not everything possible, to obtain the presence of a witness.[7]

---

[4] *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003).

[5] MRE 804(a)(5).

[6] *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998).

[7] *People v Cummings*, 171 Mich App 577, 585; 430 NW2d 790 (1988).

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

Kelly argues that the prosecution "made little, if any attempt to secure" Bryant's presence. However, as Kelly also acknowledges, Bryant was in custody at an out-of-state federal prison at the time of trial. The prosecution explained that she had contacted the federal officials but they would "not release him for at least another 30 days because of the extradition laws." And in accepting the preliminary examination transcript, the trial court explained that even an order from the trial court would have done little to secure Bryant's presence because "they [federal officials] can choose to ignore [the court's] request."

Therefore, we conclude that the trial court did not abuse its discretion in allowing into evidence the transcript of Bryant's preliminary examination testimony.

## C. PRIOR TRIAL TESTIMONY REGARDING ROBBERIES

At Kelly's August 2008 trial, Kelly asserted that the witnesses should not be permitted to testify about having their property taken because Kelly had been acquitted of armed robbery in the June 2008 trial. Instead, according to Kelly, the witnesses should only testify about the unlawful imprisonment. The prosecution maintained that the jury must hear the context of the events regardless of the acquittals in the previous trial. The trial court denied Kelly's request and ruled that having the witnesses attempt to omit facts from the sequence of events would make the remaining testimony seem improbable. But the trial court stated that the jury would be instructed to consider only the charge of unlawful imprisonment.

Kelly now argues that the trial court abused its discretion by allowing into evidence the witness testimony from the June 2008 trial regarding the armed robberies. More specifically, Kelly argues that allowance of the testimony violated MRE 404(b), which prohibits admission of evidence regarding prior bad acts if the prosecution offers it solely to show the criminal propensity of an individual to establish that he acted in conformity therewith.[8]

"[T]here are substantial limits on the admissibility of evidence concerning other bad acts."[9] However, it is essential that a jury receive an "intelligible presentation" of the complete story to fully understand the context in which the underlying events took place.[10]

"It is the nature of things that an event often does not occur singly and independently, isolated from all others, but, instead, is connected with some antecedent event from which the fact or event in question follows as an effect from a cause. When such is the case and the antecedent event incidentally involves the commission of another crime, the principle that the jury is entitled to hear the 'complete story' ordinarily supports the admission of such evidence."[11]

---

[8] *People v Vandervliet*, 444 Mich 52, 65; 508 NW2d 114 (1993).

[9] *People v Sholl*, 453 Mich 730, 741; 556 NW2d 851 (1996); see MRE 404(b).

[10] *Sholl*, 453 Mich at 741.

[11] *Id*. at 742, quoting *People v Delgado*, 404 Mich 76, 83; 273 NW2d 395 (1978).

-3-

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

In other words, "'Evidence of other criminal acts is admissible when so blended or connected with the crime of which defendant is accused that proof of one incidentally involves the other or explains the circumstances of the crime.'"[12]   Therefore, a jury is entitled to hear the full *res gestae* regardless whether those facts may also establish criminal acts other than the charged offense.[13]

Thus, the question here is whether the armed robberies were necessary to be revealed during the presentation of the *res gestae* of the unlawful imprisonment.[14]   The record shows that the armed robberies were part of the continuous transaction and the facts surrounding the unlawful imprisonment could not be presented without discussing the armed robberies.[15]   The trial court did not abuse its discretion in reasoning that the witnesses' accounts would appear improbable without being placed in the proper context.  Thus, the evidence was admissible.

Moreover, this Court has held that the fact that the defendant was acquitted on the prior charge is not relevant to its admission.[16]   "For it is its occurrence which would bear on the motive and intent of the defendant, not whether or not the defendant was acquitted on the charge.  The *res gestae* constitutes substantive evidence and may properly be considered by the jury in determining guilt or innocence."[17]

Therefore, we conclude that the trial court did not abuse its discretion in allowing into evidence the witness testimony from the June 2008 trial regarding the armed robberies.

### D.  PRIOR ACQUITTAL VERDICT

At Kelly's August 2008 trial, asserting lack of relevance and unfair prejudice, the prosecution objected to the defense request to advise the new jury of the June 2008 jury's acquittal verdicts.  The trial court agreed that the new jury should not be advised of the prior verdicts.  Kelly now argues that the trial court abused its discretion by denying him the opportunity to admit into evidence the acquittal verdicts from the first trial.

---

[12] *Id.*, quoting *Arizona v Villavicencio*, 388 P2d 245, 246 (Ariz, 1964).

[13] *People v Kowatch*, 258 Mich 630, 633; 242 NW 791 (1932); *People v McClure*, 29 Mich App 361, 366; 185 NW2d 426 (1971).

[14] See *McClure*, 29 Mich App at 366.

[15] See *id.*

[16] *Id.*; see also *People v Oliphant*, 399 Mich 472, 495-500; 250 NW2d 443 (1976) (stating that the fact of a defendant's acquittal on charges arising out of prior incidents does not act to bar its admission.)

[17] *McClure*, 29 Mich App at 366 (internal citation omitted).

In support of his argument, Kelly cites *People v Nabers*,[18] in which this Court "express[ed] [its] support" for Judge ALLEN's partial concurrence and dissent in *People v Bolden*.[19]  Specifically, in *Nabers*, this Court, stated:

> Defendant was tried for the Swank Men's Shop robbery; this trial ended in a hung jury.  Nonetheless, this fact does not automatically bar the admission of such evidence.[3]  [*People v*] *Oliphant*, [399 Mich 472, 499-500; 250 NW2d 443 (1976)], *People v Bolden*, 92 Mich App 421, 424; 285 NW2d 210 (1979).[20]  However, we take this opportunity to express our support for Judge Allen's partial concurrence and partial dissent in *People v Bolden*, 98 Mich App 452, 464; 296 NW2d 613 (1980), wherein he writes:
>
> > "To the extent that a prior acquittal of the alleged similar act of the defendant reflects on the accuracy of the charge that defendant committed that act, then the defendant should be entitled to show that another jury determined that he did not commit the similar act."
>
> We think the same rationale holds true where defendant was not convicted due to a hung jury.[21]

However, the *Nabers* Court's "support" of Judge ALLEN's statement was merely dicta.[22]  Moreover, we find persuasive the conclusion from numerous federal circuits,[23] including the Sixth Circuit, that "evidence of prior acquittals is generally inadmissible."[24]  Judgments of acquittal are "inadmissible in large part because they may not present a determination of

---

[18] *People v Nabers*, 103 Mich App 354, 364; 303 NW2d 205, rev'd on other grounds, 411 Mich 1046 (1981).

[19] *People v Bolden*, 98 Mich App 452, 464; 296 NW2d 613 (1980).

[20] Citing *Oliphant*, 399 Mich at 499-500.

[21] *Nabers*, 103 Mich App at 364.

[22] See *People v Wellborn*, unpublished opinion per curiam of the Court of Appeal, issued Dec. 16, 2003 (Docket No. 242229), at 4 n 1.  We acknowledge that, pursuant to Michigan Court Rule, an unpublished opinion has no precedential value.  MCR 7.215(C)(1); *Charles Reinhart Co v Winiemko*, 444 Mich 579, 588; 513 NW2d 773 (1994).  However, we exercise our prerogative to view this opinion as persuasive.  *Dyball v Lennox*, 260 Mich App 698, 705 n 1; 680 NW2d 522 (2003); *People v McCullum*, 172 Mich App 30, 33; 431 NW2d 451 (1988).

[23] Although "federal court decisions are not precedentially binding on questions of Michigan law[,]" a court may choose to agree with the analysis of a federal court decision.  *American Axle & Mfg, Inc v City of Hamtramck*, 461 Mich 352, 364; 604 NW2d 330 (2000).

[24] *Wellborn*, unpub op at 4 n 1, quoting *United States v Gricco*, 277 F3d 339, 352-353 (CA 3, 2002).

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

innocence, but rather only a decision that the prosecution has not met its burden of proof beyond a reasonable doubt."[25]

Therefore, we conclude that the trial court did not abuse its discretion by denying Kelly the opportunity to admit into evidence the acquittal verdicts from the first trial.

### III.   JURY INSTRUCTIONS

### A.   STANDARD OF REVIEW

Kelly points out that, in ruling that the August 2008 jury was not to be told about the acquittals in Kelly's first trial, the trial court stated that it would instruct the jury to disregard the fact of the prior trial.  However, Kelly argues that the trial court committed reversible error because, according to Kelly, the trial court ultimately failed to give that instruction to the jury.

This Court reviews jury instructions in their entirety to determine if error requiring reversal occurred.[26]

### B.   ANALYSIS

After the trial court agreed that the August 2008 jury would not be advised of the prior acquittal verdicts, it stated that it would instruct the jurors that they should disregard the fact that there was an earlier trial and base their verdict solely on the evidence presented in this trial.  In Kelly's brief on appeal, his counsel asserts that "nowhere in the transcript supplied to appellate counsel does the court give that instruction to the jury."  However, on page 116 of the August 19, 2008 trial transcript, the trial court *did* clearly instruct the impaneled jurors to disregard the fact that there was an earlier trial.  Specifically, the trial court instructed the jury,

> This case has been tried before and during this trial you may hear some references to the first trial.  Sometimes a case must be retried before a new jury, and you should not pay any attention to the fact that this is the second trial.  Your verdict must be based only on the evidence in this trial.  You must decide the facts only from what you hear and see.

Moreover, when asked, counsel for both parties stated that they had no objections to the trial court's instructions.

Therefore, we conclude that Kelly's claim of instructional error is without merit.

---

[25] *Gricco*, 277 F3d at 353.

[26] *People v Brown*, 239 Mich App 735, 746; 610 NW2d 234 (2000).

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

IV.  SENTENCING

A.  STANDARD OF REVIEW

Kelly argues that the trial court abused it discretion in sentencing him when it erroneously scored prior record variable (PRV) 6 and offense variable (OV) 4.

The interpretation and application of the statutory sentencing guidelines are legal questions subject to our de novo review.[27]  However, this Court reviews the scoring to determine whether the sentencing court properly exercised its discretion and whether the evidence adequately supported a particular score.[28]

B.  ANALYSIS

1.  PRV 6

Before imposition of the sentence, the prosecution objected to the scoring of PRV 6.  The prosecution objected to the scoring of 10 points for that variable, arguing that the proper scoring was 20 points.  According to the prosecution, while under the jurisdiction of the juvenile court following a 2007 adjudication for carrying a concealed weapon, Kelly escaped from his court-ordered community placement.  Therefore, at the time Kelly committed the instant offense, he was listed as an escapee in the LEIN system.  The trial court granted the prosecution's request and scored PRV 6 at 20 points.  Kelly now argues that the trial court erred in scoring PRV 6 at 20 points because he was a juvenile escapee, not an adult prisoner.

Under MCL 777.56(1)(a), 20 points are appropriate where "[t]he offender is a prisoner of the department of corrections or serving a sentence in jail."  According to MCL 777.56(3)(b), "'Prisoner of the department of corrections or serving a sentence in jail' includes an individual who is an escapee."  Nothing in PRV 6 indicates that it was not meant to apply to an escapee from juvenile confinement.  Indeed, in MCL 777.50(1), in which the Legislature specifically limited the use of juvenile adjudications when scoring PRVs 1 to 5, supports that a trial court is permitted to take juvenile adjudications into account when scoring PRV 6.  In other words, if the Legislature had intended to limit application of PRV 6 to adult prisoners only, it was capable of specifying such a limitation.  Moreover, in *People v Endres*,[29] this Court affirmed the trial court's scoring of PRV 6 based on the defendant's juvenile conviction.

Therefore, we conclude that the trial court did not abuse its discretion in scoring PRV 6 at 20 points.

---

[27] *People v Cannon*, 481 Mich 152, 156; 749 NW2d 257 (2008).

[28] *People v Steele*, 283 Mich App 472, 490; 769 NW2d 256 (2009).

[29] *People v Endres*, 269 Mich App 414, 422-423; 711 NW2d 398 (2006).

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

2.  OV 4

The prosecution also objected to the scoring of OV 4.  The prosecution objected to the scoring of 0 points for that variable, arguing that the proper scoring was 10 points.  The trial court agreed with the prosecution and scored OV 4 at 10 points.  Kelly now argues that the trial court erred in scoring OV 4 at 10 points because there was no showing of any psychological or other injury, specifically noting that none of the victims submitted a victim impact statement.

Under MCL 777.34(1)(a), 10 points are appropriate if "[s]erious psychological injury requiring professional treatment occurred to a victim."  Here, in ruling on the prosecution's request, the trial court explained that the victims had testified that

> they were scared to death.  They thought he [sic] were gonna die.  And one woman was struck in the face.  And I think that that's—and being tied up.  And I do remember the testimony about the pillow.

On this latter point about the pillow, the trial court was apparently referring to the testimony that, while the victims were tied up, Kelly said that he was not leaving any witnesses and demonstrated to his codefendants how to use a pillow as a "silencer."  The trial court opined, "I think that would cause some serious psychological injury that may require professional treatment . . . ."

Because the evidence adequately supported the score,[30] we conclude that the trial court did not abuse its discretion in scoring OV 4 at 10 points.

We affirm.

/s/ William C. Whitbeck
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood

---

[30] *People v Steele*, 283 Mich App 472, 490; 769 NW2d 256 (2009).

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

**APPENDIX D**
**SENTENCE INFORMATION REPORT (SIR)**

Offender: Gibbs, Phillip Charles          SSN: 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          Workload: 2519          Docket Number: 1128140-FC

Judge: The Honorable Judith A. Fullerton          Bar No.: P20455          Circuit No.: 07          County: 25

## Conviction Information

Conviction PACC: 750.529          Offense Title: Robbery Armed (Conspiracy)

Crime Group: Public Safety (Person)          Offense Date: 10/26/2010

Crime Class: Class A          Conviction Count: 4 of 4          Scored as of: 10/26/2010

Statutory Max: Life          Habitual: No          Attempted: No

## Prior Record Variable Score

PRV1: 0     PRV2: 0     PRV3: 0     PRV4: 0     PRV5: 2     PRV6: 5     PRV7: 20

Total PRV: 27

PRV Level: D

## Offense Variable

OV1: 15     OV2: 5     OV3: 10     OV4: 10     OV5: 0     OV6: 0     OV7: 0

OV8: 0     OV9: 10     OV10: 0     OV11: 0     OV12: 0     OV13: 25     OV14: 0

OV16: 0     OV17: 0     OV18: 0     OV19: 0     OV20: 0

Total OV: 75

OV Level: IV

## Sentencing Guideline Range

Guideline Minimum Range : 126 to 210

## Minimum Sentence

|  | Months | Life |
|---|---|---|
| Probation: |  | ☐ |
| Jail: |  |  |
| Prison: | 17.5 yrs | ☐ |

Sentence Date: 8-15-11

Guideline Departure: _____

Consecutive Sentence: _____

Concurrent Sentence: Yes

Sentencing Judge: _Judith A. Fullerton_          Date: 8-15-11

Prepared By: JACKSON, WENDI M

Gibbs, Phillip Charles - 810512

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

**APPENDIX E**

*PEOPLE V SMITH*

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

SHANE JOSEPH SMITH,

   Defendant-Appellant.

UNPUBLISHED
February 25, 2003

No.  229137
Monroe Circuit Court
LC No.  99-030211-FH

Before:  Markey, P.J., and Smolenski and Meter, JJ.

PER CURIAM.

  Following a jury trial, defendant was convicted of operating a vehicle while his license was revoked, causing death, MCL 257.904(4) (count I), operating a motor vehicle while under the influence of intoxicating liquor (OUIL), causing death, MCL 257.625(4) (count II), manslaughter, MCL 750.321 (count III), and failure to stop at the scene of a serious personal injury accident, MCL 257.617 (count IV).  Defendant was sentenced to concurrent terms of seven to fifteen years' imprisonment each for counts I-III, and thirty-six to sixty months' imprisonment for count IV.  Defendant appeals as of right.  We affirm defendant's convictions, but remand for resentencing.

## I.  Facts

  On October 4, 1999, at approximately 6:50 p.m., defendant was driving his pickup truck on US-23 in Dundee Township.  Three witnesses testified that defendant was driving at a high rate of speed, at least 85 miles per hour, when defendant lost control of his vehicle and hit a pedestrian, Ronald Keeton, Jr., who had been walking on the side of the roadway.  Mr. Keeton died as a result of injuries sustained in the accident.  Defendant did not stop at the scene of the accident.

  Officer Steven Pascoe was on duty four miles south of the accident when he heard central dispatch alert officers to be on the lookout for a red pickup truck that had left the scene of the accident.  After receiving word that a vehicle matching this description had exited the freeway at US-223 and headed west, Pascoe eventually located defendant's truck at a gas station which was still under construction.  Defendant's vehicle was parked next to a five-foot pile of dirt and behind a port-a-potty.  Pascoe inspected defendant's truck; no one was inside, but there was a beer can on the driver's side floor.

Shortly thereafter, Pascoe saw defendant running to a Sunoco gas station, about 200 yards away. Officer Marvin Carlson responded to the call for help and found defendant using the phone at the Sunoco gas station. Carlson handcuffed defendant and, at that point, defendant said something about being hijacked. Carlson arrested defendant and read him his rights. Defendant volunteered that he had been traveling south on US-23 when he picked up a hitchhiker. Defendant claimed that the hitchhiker pulled a gun on him, forced him into the passenger's seat, and began to drive his truck. Defendant said the hitchhiker was driving at a high rate of speed, driving stupid, and that he swerved and struck another car. Defendant claimed that he was able to escape and run away, and the hitchhiker continued on in his truck.

Carlson believed that defendant was visibly impaired due to alcohol consumption. He smelled alcohol on defendant's breath, defendant's speech was rapid and somewhat slurred, and defendant's eyes were bloodshot and glossy. Defendant admitted that he had two beers. Defendant was then taken to the hospital for a blood test, the results of which showed that defendant's blood alcohol level ("BAC") was .063 two and one-half hours after the accident. Forensic toxicologist Julia Pearson testified that defendant's BAC was between .09 and .11 during the accident, assuming he did not have a beer when he was driving; or between .07 and .09 had he consumed a beer during his drive. Carlson later determined that defendant's driving privileges had been revoked by the State of Michigan, and that notice of this revocation had been issued to defendant.

Van Buren Township Police Officer Lawrence Temple was permitted to testify about defendant's involvement in a hit and run accident which occurred on September 5, 1999. Temple stated that he was flagged down by a driver who told him that he had just been struck by a white F-150 pickup truck, and that the driver of that vehicle did not stop. Temple located the white F-150 pickup truck at a nearby gas station, where defendant and a woman were standing outside the driver's side door looking at the damaged mirror. Defendant initially said that the woman had been driving the truck. At first the woman agreed, but then she started crying, said she wasn't driving, and told defendant, "I'm not taking the rap for you this time." Defendant then admitted he had been driving. Temple testified that he noted a strong odor of intoxicants on defendant's breath. Temple also testified that he gave defendant a "driving permit," which informed defendant that his driving privileges were denied, revoked and expired as of that day.

Defendant testified that he had risen for work at 3:00 a.m., worked until 3:30 p.m., and then made several stops, finally leaving a friend's house sometime after 6:00 p.m. Defendant stated that from 4:00 p.m. to 6:00 p.m. he drank about four beers and ate some fried vegetables. On defendant's behalf, several witnesses testified that defendant had consumed fried vegetables and a total of four beers. None of the witnesses felt that defendant was intoxicated, but rather that he was tired. Defendant's expert witness testified that given defendant's food consumption, his BAC would have been at or below .06 at the time of the accident.

Defendant further testified that he had his cruise control set at seventy-eight miles per hour as he traveled southbound on US-23. He stated that he came up behind a car, which put on its turn signal to get over. He then looked down at some paperwork on his seat, and when he looked back up he saw that the car had not moved over. Defendant applied his brakes, but did not think he was going to be able to stop quickly enough; so he jerked the wheel to the right to go around the car. Defendant testified that he jerked too hard, and when he brought the wheel

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

-2-

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

back the other way the back end started to slide and spin. Defendant stated he heard a smash, and subsequently managed to straighten out his vehicle and pull off at an exit.

Defendant denied ever seeing a pedestrian and had no idea that he had hit anyone. Instead, he thought he hit a mile marker or a pole. Defendant stated that his ability to drive was not affected by the alcohol he drank and denied driving at an excessive speed. He also denied knowing that his driving privileges had been suspended by the State of Michigan. He did admit that he lied to the police when they found him after the accident, explaining that he "lost control," was not in his right frame of mind, and that he had no idea of what he was saying.

Defendant's accident reconstructionist testified that the markings on the road indicated defendant had made a hard right steer, and then a corrective left steer. The markings also indicated that defendant was traveling between 73 and 76 miles per hour at the time. Defendant's expert also testified that defendant's vision would not have been focused on the shoulder area, but rather on the roadway and on his own vehicle, and that defendant would have had less than three seconds to observe anyone on the shoulder.

Defendant was convicted and sentenced in the manner described above, and now appeals asserting numerous claims of error.

## II.  Admissibility of Evidence

Defendant alleges that the trial court erroneously admitted several pieces of evidence. The decision whether evidence is admissible is within the trial court's discretion and should only be reversed where there is a clear abuse of discretion. *People v Starr*, 457 Mich 490, 494; 577 NW2d 673 (1998). An abuse of discretion exists only when an unprejudiced person, considering the facts on which the trial court acted, would say there was no justification or excuse for the ruling made. *People v Rice (On remand)*, 235 Mich App 429, 439; 597 NW2d 843 (1999).

### A.  Lay Opinions

Defendant argues that the trial court erred in allowing the testimony of three lay witnesses regarding the speed of his vehicle. We disagree.

Lay witness testimony in the form of an opinion is permitted where it is rationally based on the witness' perception and is helpful to a clear understanding of the witness' testimony or the determination of a fact in issue. MRE 701; *Richardson v Ryder Truck Rental, Inc*, 213 Mich App 447, 455; 540 NW2d 696 (1995). Opinion testimony of lay witnesses with regard to speed has repeatedly been held to be admissible, even where the qualifications of the witnesses to judge speed are based on little more than their own assertion of their ability to do so, or the testimony borders on the incredible. *People v Zimmerman*, 385 Mich 417, 439; 189 NW2d 259 (1971) (Adams, J., separate opinion).[1]

---

[1] See also *Hammock v Sims*, 313 Mich 248, 21 NW2d 118 (1946); *Zylstra v Graham*, 244 Mich 319, 326; 221 NW 318 (1928); *People v Schwartz*, 215 Mich 197, 183 NW 723 (1921); *Mitchell v Steward Oldford & Sons, Inc*, 163 Mich App 622, 629; 415 NW2d 224 (1987); *Kuhnee v*

(continued…)

-3-

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

In this case, all of the witnesses gave some basis for their speed estimates rooted in their personal experiences, and their testimony regarding the speed of defendant's vehicle was certainly material to the case.  Accordingly, we find that the trial court did not abuse its discretion in allowing their opinion testimony.

### B.  404(b) Evidence

Although defendant objected below, he failed to provide this Court with the transcript of the hearing at which the trial court considered and ruled on this issue.  Therefore, because we were not provided with a record to review, defendant has waived review of this issue.  *Thomas v McGinnis*, 239 Mich App 636, 649; 609 NW2d 222 (2000); *People v Anderson*, 209 Mich App 527, 535; 531 NW2d 780 (1995).

Defendant also raises a hearsay issue as it relates to the 404(b) evidence.  Defendant did object below, but failed to frame this issue in his statement of questions presented on appeal; therefore, this issue is unpreserved.  *People v Brown*, 239 Mich App 735, 748; 610 W2d 234 (2000).  We review unpreserved, non-constitutional issues for plain error only.  *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

At trial, the prosecutor asked Officer Temple what information he obtained from the driver whose vehicle had been hit in the September 1999 hit-and-run incident.  Over defendant's hearsay objection, Temple testified that the driver told him that he had just been struck by a white pickup, which was driven by a white male with a white female passenger headed westbound.  Temple further testified that the driver said that his friend was following the white pickup truck and that the driver of the white pickup truck did not stop.

Hearsay is an out of court statement offered for the truth of the matter asserted, and is generally inadmissible.  MRE 801(c); MRE 802.  The prosecutor argued that the information was not being offered for the truth of the matter, but rather to show why the officer located defendant's vehicle, and the trial court agreed.  However, while the driver's statements regarding the occupants and the color of the pickup truck could be construed as foundational, we believe that the driver's statement indicating that the pickup truck did not stop is clearly hearsay.

The reason the prosecutor presented Temple's testimony was to show that defendant did not leave the scene of this accident by mistake.  Therefore, the evidence was offered for the truth of the matter asserted, i.e., to show that defendant did not stop at the scene of the September 1999 hit-and-run accident.  Therefore, we find that the court abused its discretion in allowing this testimony.  However, we find the error did not affect defendant's substantial rights, given the other evidence presented at trial.  *Carines, supra* at 763.

---

(…continued)

*Miller*, 37 Mich App 649, 653-655; 195 NW2d 299 (1972); *People v Ray*, 2 Mich App 623, 635; 141 NW2d 320 (1966).

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

### III. Pre-trial Publicity

Defendant argues that he was denied the right to a fair and impartial jury, given the amount of pre-trial publicity in this case and the fact that nearly all the jurors admitted they had heard about the case from the media before trial.  Because defendant failed to object at trial, we review this issue for plain error only.  *Carines, supra* at 763.

The right to a jury trial guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors.  *People v Jendrzejewski*, 455 Mich 495, 501; 566 NW2d 530 (1997).  Juror exposure to newspaper accounts of a defendant's crime does not in itself establish a presumption that the defendant has been deprived of a fair trial by virtue of pretrial publicity.  *Id.* at 502.  Whether or not prejudice warranting a new trial results from the reading of news articles or seeing or hearing broadcasts must turn on the special facts of each case, and the question is left largely to the determination and discretion of the trial court.  *People v Grove*, 455 Mich 439, 472; 566 NW2d 547 (1997).

In this case, during the jury selection process, the court explored the issue of bias against defendant.  None of the jurors indicated that they were biased against defendant or had already formed an opinion about defendant's guilt.  In fact, only two potential jurors recalled hearing about the case through the media, one of whom defendant exercised a peremptory challenge to remove.  Ultimately, defense counsel said that he was satisfied with the jury as seated and may not now harbor any alleged error as an appellate parachute.  *People v Carter*, 462 Mich 206, 214-215; 612 NW2d 144 (2001).  Thus, we find no error that affected defendant's substantial rights.

### IV. Constitutionality of MCL 257.904(4)

Defendant asserts that the statute which imposes criminal liability for operating a vehicle under a revoked license, causing death, MCL 257.904(4), is unconstitutional because it imposes strict liability.  The constitutionality of a statute is a question of law that this Court reviews de novo.  *People v Jensen (On Remand)*, 231 Mich App 439, 444; 586 NW2d 748 (1998).  A statute is accorded a strong presumption of validity and this Court has a duty to construe it as valid absent a clear showing of unconstitutionality.  *Id.*

MCL 257.904(4) provides,

(4) A person who operates a motor vehicle in violation of subsection (1) and who, by operation of that motor vehicle, causes the death of another person is guilty of a felony punishable by imprisonment for not more than 15 years or a fine of not less then $2,500.00 or more than $10,000.00, or both.  This subsection does not apply to a person whose operator's or chauffeur's license was suspended because that person failed to answer a citation or comply with an order or judgment pursuant to section 321a.

Subsection (1), referred to above, provides,

(1) A person whose operator's or chauffeur's license or registration certificate has been suspended or revoked and who has been notified as provided in section 212 of that suspension or revocation, whose application for license has

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

been denied, or who has never applied for a license, shall not operate a motor vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of motor vehicles, within this state.  [MCL 257.904(1).]

A strict liability crime is one for which the prosecutor need to prove that the defendant performed the wrongful act, regardless of whether he intended to perform it.  *People v Lardie*, 452 Mich 231, 241; 551 NW2d 656 (1996).  Here, it is clear from the wording of subsection (1) that the Legislature intended to hold a person liable under the above provision only if the person had knowledge that they were driving without a valid license.  Where a statute requires a criminal mind for some but not all of its elements, it is not one of strict liability.  *People v Quinn*, 440 Mich 178, 187; 487 NW2d 194 (1992).  Therefore, MCL 257.904(4) is not a strict liability statute just because there is no intent requirement for the "causing death" element.

Defendant also contends that subsection (4) of the statute is unconstitutional because driving while one's license is suspended has no bearing on the person's ability to operate a motor vehicle; there is no casual relation between a person's decision to drive and the death of an individual, and thus, the provision violates his due process rights.  We disagree.

MCL 257.904(4) is a general intent crime.  The prosecutor needed to prove that defendant voluntarily drove a motor vehicle despite knowing that he was not entitled to do so. See *Lardie, supra* at 241.  The statute is designed to discourage persons, who have been determine to be unfit drivers, from driving without being entitled to the privilege.  1998 PA 341. We find that MCL 257.904(4) is rationally related to a legitimate state purpose, and, therefore, is constitutional.  *Mahaffey v Attorney General*, 222 Mich App 325, 344; 564 NW2d 104 (1997); see also *Quinn, supra* at 187.  "A statute is not unconstitutional merely because it is undesirable, unfair, or unjust."  *Phillips v Mirac, Inc*, 251 Mich App 586, 589; 651 NW2d 437 (2002).

### V.  Sufficiency of the Evidence

We review de novo challenges to the sufficiency of the evidence at trial.  *People v Hawkins*, 245 Mich App 439, 457; 628 NW2d 105 (2001).  In determining whether sufficient evidence has been presented to sustain a conviction, an appellate court is required to view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.  *People v Jaffray*, 445 Mich 287, 296; 519 NW2d 108 (1994).

Defendant asserts that there was insufficient evidence to support his convictions for operating a motor vehicle while impaired, causing death, MCL 257.625(4), manslaughter with a motor vehicle, MCL 750.321, and operating a motor vehicle with a revoked license causing death, MCL 257.904(4).  Again, we disagree.

MCL 257.625(4) provides that "[a] person, whether licensed or not, who operates a motor vehicle in violation of subsection (1) or (3) and by the operation of that motor vehicle causes the death of another person" is guilty of a crime.  MCL 257.625(1) and (3) provide,

(1) A person, whether licensed or not, shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

vehicles, including an area designated for the parking of vehicles, within this state if either of the following applies:

> (a) The person is under the influence of intoxicating liquor, a controlled substance or a combination of intoxicating liquor and a controlled substance.

> (b) The person has an alcohol content of 0.10 grams or more per 100 milliliters of blood, per 210 liters of breath, or per 67 milliliters of urine.

<p style="text-align:center">* * *</p>

> (3) A person, whether licensed or not, shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state when, due to the consumption of intoxicating liquor, a controlled substance, or a combination of intoxication liquor and a controlled substance, the person's ability to operate the vehicle is visibly impaired ....

Defendant's involuntary manslaughter conviction required that the prosecution prove that defendant operated his vehicle in a grossly negligent manner, *Lardie, supra* at 247-248, and caused the death of another, *People v Tims*, 449 Mich 83, 94; 534 NW2d 675 (1995).

The prosecution's forensic toxicologist testified that defendant's blood alcohol level was between .09 and .11 during the accident, assuming he did not have a beer when he was driving. Moreover, the arresting officer testified that he believed that defendant was visibly impaired due to alcohol consumption. Also, there was testimony that defendant was driving at a high rate of speed in an erratic fashion. This evidence, viewed most favorably to the prosecution, was sufficient to enable the jury to find that defendant was guilty of OUIL causing death and manslaughter with a motor vehicle.

Defendant contends that his conviction under MCL 257.904(4) should be reversed because there was insufficient evidence to show a causal connection between his driving with a revoked license and the victim's death. As support for his contention, defendant cites *Lardie, supra*.

In *Lardie*, the Court held that MCL 257.625(4), operation of a motor vehicle while intoxicated causing death, required proof of causation, i.e., the prosecutor must establish that the particular defendant's decision to drive while intoxicated produced a change in that driver's operation of the vehicle that caused the death. *Id*. at 234; 257-258. In reaching its conclusion, the Court considered the Legislature's intent, which was to reduce fatalities by deterring drunken driving. *Id*. at 257. Therefore, the statute must have been designed to punish drivers only when their drunken driving caused another's death. *Id*. at 257-258.

In this case, the statute was enacted to address the problem of individuals who engage in drunk driving and have their license suspended or revoked, yet continue to drive on these invalid licenses. 1998 PA 341. The statute was obviously designed to punish drivers who cause a fatal accident because they disregarded their revoked or suspended status. The prosecution presented evidence that the state issued notice to defendant that his license was revoked, and additionally,

<p style="text-align:center">-7-</p>

that defendant had been drinking.  Therefore, we find that, viewing the evidence in a light most favorable to the prosecution, the evidence was sufficient to support the conviction.

### VI.  Sentencing Issues

Defendant argues that the trial court erred in scoring offense variables ("OV") 9, 13, and 18.[2]

A sentencing court has discretion in determining the number of points to be scored, provided that evidence of record adequately supports a particular score.  *People v Hornsby*, 251 Mich App 462, 468; 650 NW2d 700 (2002).  Scoring decisions for which there is any evidence in support will be upheld.  *Id*.

### A.  OV 9

Defendant contends that OV 9 was improperly scored at ten points.  Ten points is properly scored if there are between two and nine victims.  Each person who is placed in danger of injury or loss of life is considered a victim.  MCL 777.39.  The evidence indicated that there were four victims, Beth Ann Lay and her two children who were in the car that defendant passed and the decedent, Mr. Keeton.  Ms. Lay testified that defendant pulled up behind her out of nowhere, driving at a high rate of speed, swerved to her right, hit Mr. Keeton, then cut back in front of her.  The court properly assessed ten points.

### B.  OV 13

Defendant also disputes the twenty-five points which were scored for OV 13.  Twenty-five points are properly scored for OV 13 if "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person."  MCL 777.43(1)(b).[3]  MCL 777.43(2)(a) states that "[f]or determining the appropriate points under this variable, all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction."  Zero points should be scored if there is no pattern of felonious criminal activity.  MCL 777.43(1)(f).

At sentencing, the prosecutor argued that OV 13 was properly scored at twenty-five points because there were four felony convictions, but conceded that there was no pattern of felonious criminal activity over the past five years outside the instant offenses.  The court concluded that, while there was no pattern in the sense that defendant had prior felony convictions, the twenty-five point score was supported based on defendant's multiple convictions.

The proper application of the statutory sentencing guidelines is a legal question reviewed by this Court de novo.  *People v Libbett*, 251 Mich App 353, 365; 650 NW2d 407 (2002).  In

---

[2] The offenses here were committed in October 1999; therefore, this matter is controlled by the legislative sentencing guidelines.  MCL 769.34(2); See *People v Reynolds*, 240 Mich App 250, 253, 611 NW2d 316 (2000).

[3] MCL 777.43 was amended by 1999 PA 279, effective October 1, 2000.

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

construing OV 13, we must assign the words their plain and ordinary meaning. *Id*. The use of the term "pattern" and the fact that the Legislature permitted consideration of all crimes within a five-year period evinces an intention that it is repeated felonious conduct that should be considered in scoring this offense variable.

In *People v Harmon*, 248 Mich App 522, 532; 640 NW2d 314 (2001), the Court held that twenty-five points were properly scored because of "defendant's four concurrent convictions" in that case. The defendant was convicted of four counts of making child sexually abusive material, which were based on defendant's activities in photographing two fifteen-year-old girls. Four photos, two of each girl, taken on a single date, supported defendant's four convictions. *Id*. at 525. We believe that this case is distinguishable from *Harmon* because defendant's convictions stemmed from one incident, not four individual acts. Therefore, we conclude that the trial court improperly scored OV 13 at twenty-five points; rather, no points should have been scored.

C.  OV 18

Defendant also contends that the five point score for OV 18 is erroneous. Five points are to be scored for OV 18 if the offender operated a vehicle when his bodily alcohol content was 0.07 or more but less than 0.10 grams per 100 milliliters of blood, or while the offender was visibly impaired by the use of intoxicating liquor. MCL 777.48. The evidence indicated that defendant's blood alcohol level was between .09 and .10 during the accident, assuming he did not have a beer when he was driving. His blood alcohol level would have been between .07 and .09 had he consumed a beer during his drive. Moreover, the arresting officer testified that defendant was visibly impaired due to alcohol consumption. Thus, the score of five points was warranted.

D.  Resentencing

Because the reduction in score for OV 13 places defendant's sentences for counts I-III above the sentencing guidelines[4] and there is no indication on the record that the trial court would have found a substantial and compelling reason to depart, we must remand this case for resentencing. Cf *People v Mutchie*, 251 Mich App 273, 275; 650 NW2d 733 (2002). Accordingly, we need not decide whether these sentences are proportional.

However, we affirm defendant's sentence for failure to stop at the scene of a serious personal injury accident (count IV). Even with the OV 13 scoring error, his sentence is within the range recommended by the statutory sentencing guidelines. A sentence within the guideline range is presumed proportional and defendant has not presented any circumstances for us to find otherwise. *People v Hogan*, 225 Mich App 431, 437; 571 NW2d 737 (1997).

Defendant also contends that resentencing should take place before a different judge. In determining whether resentencing should occur before a different judge, this Court considers (1) whether the original judge would reasonably be expected upon remand to have substantial

[4] Defendant's new sentencing guideline's range is 36 to 71 months' imprisonment, MCL 777.64; thus, his minimum sentence of 84 months' imprisonment for counts I-III is above this range.

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.  *People v Hill*, 221 Mich App 391, 398; 561 NW2d 862 (1997).

Here, defendant cites nothing other than the court's misscoring of the three offense variables at issue in support of his claim.  However, the court correctly scored two of these offense variables, and the third involved a question of law.  Given these circumstances, we find that defendant has not shown he is entitled to resentencing before a different judge.

Affirmed, but remanded for resentencing.  We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Michael R. Smolenski
/s/ Patrick M. Meter

RECEIVED by Michigan Court of Appeals 5/23/2012 11:05:59 PM

-10-

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

| Lower Court or Tribunal | **STATE OF MICHIGAN**<br>**IN THE COURT OF APPEALS**<br>**Cover Sheet** | *CASE NO.* | | | |
|---|---|---|---|---|---|
| | | | Year | Number | Case Type |
| GENESEE CIRCUIT COURT | | CIRCUIT: | 11 | 028140 | FC |
| | | COURT OF APPEALS: | 306124 | | |

## Filing Party

| | |
|---|---|
| Filing Party Last Name or Business/Entity/Agency Name | Attorney Last Name |
| GIBBS CHARLES PHILLIP | Robinson |
| Filing Party First Name    M.I. | Attorney First Name    M.I.  P Number |
| | Brandy    Y    66895 |
| Address (Street 1, Street 2, City, State, and ZIP Code) | Address(Street 1, Street 2, City, State, and ZIP Code) |
| | 645 Griswold Street |
| | Suite 3300 |
| | Detroit    MI    48226 |
| | Attorney Telephone Number |
| | (313)256-9833 |

## Summary of Items Filed

| Type | Filename/Description | Filing Fee | Doc Fee | Total This Filing |
|---|---|---|---|---|
| Motion - Regular | Motion to Remand, Offer of Proof, Supporting Brief, and Appendices | $5.00 | ---- | $5.00 |

| | | |
|---|---|---|
| | **3% Service Fee:** | $0.15 |
| **Fee Substitute/Alternate Payment** | **Total All Filings:** | $5.15 |

**Reason:**

| | |
|---|---|
| X | **Appointed Counsel** |
| ☐ | **Motion To Waive Fee** |
| ☐ | **Fees Waived in this Case** |
| ☐ | **MI InterAgency Transfer** |
| ☐ | No Fee per MCR 7.203(F)(2) |

**Filer Office Use Only:**    25680

The documents listed above were electronically filed with the Michigan Court of Appeals at the date/time stated in the left margin.  As a recipient of service of these documents, you may wish to go to https://wiznet.wiznet.com/appealsmi to register as a user of the electronic filing system.

306124 - 263567

| Lower Court or Tribunal | **STATE OF MICHIGAN**<br>**IN THE COURT OF APPEALS**<br><br>**Proof of Service** | *CASE NO.* | | |
|---|---|---|---|---|
| GENESEE CIRCUIT COURT | | CIRCUIT: | Year **11** | Number **028140** | Case Type **FC** |
| | | COURT OF APPEALS: **306124** | | |

Case Name:   PEOPLE OF MI V PHILLIP CHARLES GIBBS

On   5/23/2012   , one copy of the following documents:

Motion - Regular                Motion to Remand, Offer of Proof, Supporting Brief, and Appendic
                                es

was delivered to the persons listed below:

Date
    5/23/2012

Signature
    /s/Brandy Y. Robinson

| Bar Number | Name | Delivery Method | Service Address |
|---|---|---|---|
| P- | AO, SADO | E-Serve | ao@sado.org |
| P- | AO Support, Genesee County | E-Serve | vhaley@co.genesee.mi.us |
| P- 66895 | Robinson, Brandy Y | E-Serve | brobinson@sado.org |
| P- | lamarre, lisa | E-Serve | llamorre@sado.org |

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

The documents listed above were electronically filed with the Michigan Court of Appeals at the date/time stated in the left margin.  As a recipient of service of these documents, you may wish to go to https://wiznet.wiznet.com/appealsmi to register as a user of the electronic filing system.

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

# STATE OF MICHIGAN

## IN THE COURT OF APPEALS

**PEOPLE OF THE STATE OF MICHIGAN**

    Plaintiff-Appellee,

-vs-

**PHILLIP CHARLES GIBBS**

    Defendant-Appellant.

_____/

**Court of Appeals No.** 306124

**Lower Court No.** 11-28140FC

**GENESEE COUNTY PROSECUTOR**
Attorney for Plaintiff-Appellee
_____

**BRANDY Y. ROBINSON (P66895)**
Attorney for Defendant-Appellant
_____

## MOTION TO REMAND

## OFFER OF PROOF

## BRIEF IN SUPPORT OF APPELLANT'S MOTION TO REMAND

**STATE APPELLATE DEFENDER OFFICE**

**BY:** **BRANDY Y. ROBINSON (P66895)**
   **Assistant Defender**
   3300 Penobscot Building
   645 Griswold
   Detroit, Michigan  48226
   (313) 256-9833

STATE OF MICHIGAN

IN THE COURT OF APPEALS

**PEOPLE OF THE STATE OF MICHIGAN**

                Plaintiff-Appellee,

**Court of Appeals No.** 305939

**Lower Court No**. 11-28140FC

-vs-

**PHILLIP CHARLES GIBBS**

                Defendant-Appellant.

_____/

**MOTION TO REMAND**

    Defendant-Appellant **PHILLIPS CHARLES GIBBS**, through his attorneys, the **STATE APPELLATE DEFENDER OFFICE**, by **BRANDY Y. ROBINSON**, respectfully moves for remand to the trial court, pursuant to MCR 7.211(C)(1)(a), stating:

    1.    Mr. Gibbs seeks remand to make two additional objections to his sentence and to develop his claim that he was denied his right to a public trial. Trial counsel did not raise these issues at trial or sentencing, but guidelines objections may be made for the first time in a motion to remand. MCL 769.34(10); MCR 6.429(C). Alternatively, Mr. Gibbs argues that his trial counsel was ineffective for acquiescing to the trial errors, and for failing to challenge the illegal sentence. *See Brief in Support of Motion to Remand.*

    2.    As to the scoring errors, Mr. Gibbs challenges PRV-5 and PRV-6, based in part upon the attached affidavit of counsel. Trial counsel interposed a timely objection to the scoring of OV-13.

    3.    As to the public trial claim, Mr. Gibbs relies on the attached affidavits of members of his family to challenge (1) the Court's *de facto* policy of excluding members from the public during *voir dire* and (2) counsel's ineffectiveness for failing to ensure that Mr. Gibbs' family and other members of the public were not improperly pushed out of the courtroom.

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

4.      A remand is appropriate because these matters must be first resolved by the trial court and/or require the development of an additional factual record to enable full appellate review by this Court.

**WHEREFORE**, Defendant-Appellant respectfully requests that this Honorable Court grant his Motion to Remand and afford him an opportunity to (1) develop the record by taking testimony and evidence regarding the closure of the courtroom, (2) examine trial counsel's reasons for failing to object to this error, and (3) ask the trial court for resentencing on the basis of his improperly scored guidelines under PRV-5 and PRV-6.

Respectfully submitted,

**STATE APPELLATE DEFENDER OFFICE**

BY:    /s/ Brandy Y. Robinson
_____
**BRANDY Y. ROBINSON (P66895)**
**Assistant Defender**
3300 Penobscot Building
645 Griswold
Detroit, Michigan  48226
(313) 256-9833

Date: May 23, 2012

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

## STATE OF MICHIGAN

## IN THE COURT OF APPEALS

**PEOPLE OF THE STATE OF MICHIGAN**

                Plaintiff-Appellee,

-vs-

**PHILLIP CHARLES GIBBS**

                Defendant-Appellant.

_____/

**Court of Appeals No.** 306124

**Lower Court No**. 11-28140FC

### AFFIDAVIT OF COUNSEL / OFFER OF PROOF

**BRANDY Y. ROBINSON** hereby states as follows:

1. I represent Mr. Gibbs on appeal from the above-referenced conviction.

2. In researching Mr. Gibbs' sentence for appeal, I discovered an inaccuracy in the Presentence Investigation Report regarding Mr. Gibbs' relationship to the criminal justice system at the time he committed the current offenses.

3. I recently contacted the Juvenile Records Department of the Family Court Division of the Genesee County Probate Court. I spoke by telephone with a clerk who informed me that her review of Mr. Gibbs' juvenile file showed no indication whatsoever that Mr. Gibbs had been placed on bond between adjudication and sentencing for entering without permission.

4. Assuming this information is correct, there was no basis for scoring points against Mr. Gibbs under Prior Record Variable 5.

5. Counsel is undertaking steps to obtain an official certification of Mr. Gibbs' no-bond status as a juvenile.

6. Once that certification is obtained, counsel will promptly file evidence thereof with the Court.

7. Additionally, if granted a hearing on Mr. Gibbs' claim that he was denied the right to a public trial, the undersigned counsel will proffer the testimony of, *inter alia,* Mr. Gibbs' mother, Elverta Gibbs, his Sister Seandra Davidson-Coleman, and his soon-to-be brother in law Courtney Jones. The substance of their proposed testimony appears in the attached Affidavits. Counsel will also seek evidence from court staff connected with Judge Fullerton's chambers to as to her policy on this subject as of the time of trial. Trial counsel will also have to be examined.

8. The foregoing statements are true to the best of my knowledge.

                          /s/Brandy Y. Robinson

                      _____

                      **BRANDY Y. ROBINSON (P66895)**

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**............................................................................i

**STATEMENT OF JURISDICTION** ........................................................iv

**STATEMENT OF QUESTIONS PRESENTED** .................................v

**STATEMENT OF FACTS** .........................................................................1

### ARGUMENTS

I.    **THE TRIAL COURT VIOLATED MR. GIBBS' SIXTH AMENDMENT RIGHT TO A PUBLIC TRIAL BY CLOSING THE COURTROOM AND EXCLUDING MEMBERS OF HIS FAMILY FROM JURY SELECTION.** .........................................8

II.   **BECAUSE THE COURT BELOW MADE THREE GUIDELINES-SCORING MISTAKES, AND CORRECTING THE MISTAKES WOULD SUBSTANTIALLY REDUCE THE GUIDELINES RANGE, MR. GIBBS MUST BE RESENTENCED.**12

**SUMMARY AND RELIEF AND REQUEST FOR ORAL ARGUMENT** ......................... 21

BYR*BOA with Trim.doc*25680  May 23, 2012
Phillip Charles Gibbs

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Combs* v *Coyle*, 205 F3d 269 (6th Cir 2000) ......................................................... 12

*People* v *Dendel*, 481 Mich 114 (2008) ................................................................. 8

*Feld* v *Robert & Charles Beauty Salon*, 435 Mich 352 (1990) ........................... 20

*Gannet Co* v *DePasquale*, 443 US 368 (1979) ..................................................... 9

*Hoerstman Gen Contracting, Inc* v *Hahn*, 474 Mich 66 (2006) ......................... 20

*In re MKK*, 286 Mich App 546 (2009) ................................................................. 18

*Miller* v *Allstate Ins. Co.*, 481 Mich 601 (2008) ................................................ 20

*Neder* v *United States*, 527 US 1 (1999) ............................................................ 11

*In Re Oliver*, 333 US 257 (1948) ......................................................................... 8

*People* v *Anderson*, 446 Mich 392 (1994) .......................................................... 11

*People* v *Cannon*, 481 Mich 152 (2008) ............................................................. 23

*People* v *Cannon*, 481 Mich 152 (2008) ............................................................. 22

*People* v *Carines*, 460 Mich 750 (1999) ........................................................8, 11

*People* v *Collier*, 426 Mich 23 (1986)…………………………………………12; 13

*People* v *Dye*, 431 Mich 58 (1988) .................................................................... 12

*People* v *Endres*, 269 Mich 414 (2006) .............................................................. 18

*People* v *Francisco*, 474 Mich 82 ...................................................................... 15

*People* v *Harmon*, 248 Mich App 522 (2001) .................................................... 22

*People* v *Hegwood*, 465 Mich 432 (2001) ........................................................... 21

*People* v *Johnson*, 293 Mich App 79 (2011) ...................................................... 18

*People* v *Koonce*, 466 Mich 515 (2002) ............................................................. 18

*People* v *Lee*, 391 Mich 618 (1974) ................................................................... 15

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

*People* v *Malkowski*, 385 Mich 244 (1971) ....................................................................15

*People* v *McPherson*, 263 Mich App 124 (2004) ...........................................................12

*People* v *Morson*, 471 Mich 248 (2004) ........................................................................15

*People* v *Stone*, 195 Mich App 600 (1992)....................................................................20

*Presley* v *Georgia*, 558 US _, 130 S Ct 721 (2010) .................................................8, 9, 10

*Press-Enterprise Co* v *Superior Court*, 478 US 1 (1980) ..................................................9

*Salem* v *Jenkins*, 414 F Supp 2d 687 (ED Mich 2006)...................................................10

*In re TD*, __ Mich App __ (May 26; 2011) (Docket No. 294716) ...................................19

*Taylor* v *Michigan Public Utilities Comm.*, 217 Mich 400 (1922)....................................20

*Tellin ex rel Hinga* v *Forsyth Tp.*, 291 Mich App 692 (2011) .......................................18

*Townsend* v *Burke*, 334 US 736 (1948) ..........................................................................15

*US Fidelity Insurance & Guaranty Co* v *Michigan Catastrophic Claims Ass'n*, 482 Mich 414 (2008) ...........18

*United States* v *Marcus*, 130 S Ct 2159 (2010) ............................................................11

*Waller* v *Georgia*, 467 US 39 (1984)....................................................................8, 9, 11

*Washington* v *Recuenco*, 548 US 212 (2006) ..............................................................11

## CONSTITUTIONS, STATUTES, COURT RULES

MCL 712A.1(2) ................................................................................................................19

MCL 712A.1 *et seq* ..........................................................................................................19

MCL 712A.2(a)(1) ...........................................................................................................21

MCL 750.529 ...................................................................................................................1

MCL 750.530 ....................................................................................................................1

MCL 777.40 .....................................................................................................................23

MCL 777.43(1) ………………………………………………………………                22; 23; 24

MCL 777.51; 777.52 ........................................................................................................19

MCL 777.53 ............................................................................22

MCL 777.53; 777.54 ...............................................................19

MCL 777.55(1) ……………………………………………………….. 16; 19

MCL 777.55(3) ........................................................................20

MCL 777.56(1) ……………………………………………………….17; 18; 20

MCL 777.57 ............................................................................23

MCR 2.613(A) ........................................................................15

US Const; amend VI ................................................................8

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

## <u>STATEMENT OF JURISDICTION</u>

Defendant-Appellant was convicted in the Genesee County Circuit Court by jury trial, and a Judgment of Sentence was entered on August 15, 2011.  A Claim of Appeal was filed on September 16, 2011 by the trial court pursuant to the indigent defendant's request for the appointment of appellate counsel dated September 6, 2011, as authorized by MCR 6.425(F)(3).  This Court has jurisdiction in this appeal as of right provided for by Mich Const 1963, art 1, §20, pursuant to MCL 600.308(1); MCL 770.3; MCR 7.203(A), MCR 7.204(A)(2).

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

## <u>STATEMENT OF QUESTIONS PRESENTED</u>

I.    DID THE TRIAL COURT VIOLATE MR. GIBBS' SIXTH AMENDMENT RIGHT TO A
      PUBLIC TRIAL BY CLOSING THE COURTROOM AND EXCLUDING MEMBERS OF
      HIS FAMILY FROM JURY SELECTION?

              Trial Court made no answer.

              Defendant-Appellant answers, "Yes".

II.   BECAUSE   THE   COURT   BELOW   MADE   THREE   GUIDELINES-SCORING
      MISTAKES,   AND   CORRECTING   THE   MISTAKES   WOULD   SUBSTANTIALLY
      REDUCE THE GUIDELINES RANGE, MUST MR. GIBBS MUST RESENTENCED?

              Trial Court answers, "No".

              Defendant-Appellant answers, "Yes".

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

## STATEMENT OF FACTS

On October 26, 2011, the lives of Defendant-Appellant Phillip Charles Gibbs, two Flint pawn-shop owners, and one of the shop's employees were changed forever when Mr. Gibbs – a mere sixteen years old at the time – entered the pawn shop with co-defendant Tyrell Henderson and participated in a robbery.  Gibbs was unarmed during the crime and insisted he knew nothing of Henderson's plans.  Instead, he acted under the very-real stress of knowing that his out-of-control co-defendant might turn the gun on him for failing to assist.

* * * * *

It was undisputed that Mr. Gibbs was the more passive actor during the robbery, which was recorded on the store's surveillance system.  **Costas Anagnostopoulos**, the owner of Flint-based Wholesale 4 U,[1] testified that around 4:00 p.m. on October 26th, Mr. Henderson entered the store alone and purchased a video game. [Trial 6/29/11, p 252-253].  Henderson later returned, this time with Mr. Gibbs, and claimed the game was not working properly. Mr. Anagnostopoulos directed his employee, Jeremy Kassing, to troubleshoot the problem on the store's Xbox game system.  In the meantime, Mr. Anagnostopoulos brought over a power supply to aid with the assessment.  It was then that Mr. Henderson hit Mr. Anagnostopoulos suddenly with a gun on the back of his neck, causing him to nearly fall to the ground.   Mr. Henderson was pointing the gun at Mr. Anagnostopoulos and ordered him to sit on the floor.  Mr. Henderson then demanded and took Mr. Anagnostopoulos' rings, neck jewelry, wallet, and money at gunpoint. [Trial 6/29/11, p 258-263].  He also ordered Mr. Anagnostopoulos to open the cash register.  [Trial 6/29/11, p 263].  In reciting what happened next, Mr. Anagnostopoulos began to testify not based on his knowledge or memory,

---

[1] The witness testified that the shop was also known as Wholesale 2 U.  Despite having a reputation otherwise, Mr. Anagnostopoulos was adamant that his store was not at all functioning as a pawn shop.  [Trial 6/29/11 245].

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

but by narrating the contents of the surveillance video in response to questions asked by the prosecutor.  [Trial 6/30/11, p 5-8].

Mr. Anagnostopoulos noted that Mr. Henderson took him to an office inside the store and ordered him to open up the safe.  Mr. Henderson was calling Mr. Anagnostopoulos racial slurs and threatening to shoot and kill him, and then hit him with the gun again on the side of his face.[2]  [Trial 6/30/11, p 9, 14-15].  Mr. Henderson directed Mr. Anagnostopoulos to hand him everything from inside the safe, including a gun he kept there.  [Trial 6/30/11, p 23].  Some of the other stolen goods included paper money, gold coins, silver dollars, silver certificates, foreign currency, three Rolex watches, and a gold Fossil watch.  [6/30/11 Trial, p 39-44].

Mr. Henderson and Mr. Gibbs ultimately left the store and Mr. Anagnostopoulos, his wife, and Mr. Kassing followed to determine where the two men went.  [Trial 6/30/11, p 27-29].  The police called and eventually arrived on the scene in response to receiving a silent panic alert from inside the store from Mr. Kassing.  [Trial 6/30/11, p 29-31].

Mr. Anagnostopoulos was able to pick out Mr. Gibbs in a subsequent corporeal line-up, but could not identify Mr. Henderson.[3]  [Trial 6/30/11, p 32-35].  According to him, his watches and Visa debit card was recovered, but several items taken during the robbery were never returned to him.  [Trial 6/30/11, p 34-37].

Nancy **Anagnostopoulos** was a joint owner of the Wholesale 4 U business with her husband Costas.  [Trial 6/29/11, p 8-9].  She arrived at the store around 5:25pm on the day of the robbery, thirty minutes before closing.  Her husband and Jeremy Kassing were present, and she sat down and down began reading a book [Trial 6/29/11, p 41-42].  Like her husband, Mrs.

[2] Part of Mr. Anagnostopoulos' ear was cut from being hit with the gun, requiring four stitches. He also claimed to have more frequent headaches as a result. [Trial 6/30/11, p 45-46].
[3] Mr. Anagnostopoulos was able to identify both men at trial. [Trial 6/29/11, p 251-252].

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

Anagnostopoulos recounted what happened next by walking the prosecutor and jury through the contents of the video, rather than testifying from her memory.

As her husband and Mr. Kassing worked to troubleshoot the video game, Mrs. Anagnostopoulos heard a loud crack. She stood up and saw her husband going down on the floor, and Mr. Gibbs approached her. He jerked the necklaces from her neck and tried to remove Mrs. Anagnostopoulos' ring from her finger.[4] When he could not remove the ring himself, he directed Mrs. Anagnostopoulos to either do so, or risk him cutting it off. Mr. Gibbs reached into all of Mrs. Anagnostopoulos' pockets and took her identification, ATM card, concealed pistol license, and money. [Trial 6/29/11, p 62-65, 94]. Mr. Henderson later double checked Mr. Gibbs' work in this regard. [Trial l6/29/11, p 117]. Mr. Gibbs never had possession of a gun, knife, or any other weapon and never threatened to beat, stab, shoot, or otherwise injure her, her husband, or Mr. Kassing. [Trial 6/29/11, p 106-110].

Mrs. Anagnostopoulos could see the gun in Mr. Henderson's hand, and heard him yelling racial slurs and threats at her husband. [Trial 6/29/11, p 66-67, 121-124]. When Henderson led Mr. Anagnostopoulos into the back room, Mr. Gibbs began removing money from the cash register. He also took an iPod, and according to Mrs. Anagnostopoulos, Mr. Gibbs retrieved several laptops from the showcase because Mr. Henderson had instructed him to do so. Mr. Gibbs was hesitant to go behind the showcase to obtain more merchandise, so Mrs. Anagnostopoulos volunteered to do so for him. [Trial 6/29/11, p 67-70]. Mr. Gibbs did not say much else to her, but he yelled to Mr. Henderson to "come on" and that they had three minutes. [Trial 6/29/11, p 71-72]. At that point (but only after double-checking whether Mr. Gibbs properly emptied the register), Mr. Henderson picked up a duffle bag, threw it at Mr. Gibbs, and yelled at him to put the laptops inside. [Trial 6/29/11, p 67, 73-74]. Mr. Gibbs "just did it," according to Mrs. Anagnostopoulos. Mr.

Henderson then directed Mr. Gibbs to wait before leaving, as they couldn't exit with the items so conspicuously.[5]  Mr. Henderson then emptied Mrs. Anagnostopoulos' purse. [Trial 6/29/11, p 74]. The two men left and Mrs. Anagnostopoulos, her husband and Mr. Kassing conveyed information about the event to the police.  [Trial 6/29/11, p 85, 89-93].  In separate live-lineups conducted later, Mrs. Anagnostopoulos selected Mr. Gibbs and Mr. Henderson as her assailants.  [Trial 6/29/11, p 99-104].  She also identified the men in court.

**Jeremy Kassing** added that the store had a hand-held silent panic alarm system, and he pressed the device nine times during the robbery to alert the police.  [Trial 6/30/11, p 78-79].  Mr. Kassing identified Mr. Gibbs as one of his assailants both during a lineup and at trial.  [Trial 6/30/11, p 79-80, 101-103].  Like the other two witnesses, Mr. Kassing confirmed that only Mr. Henderson had a gun during the incident.  Additionally, it was only Mr. Henderson who demanded that Mr. Kassing empty his pockets. [Trial 6/30/11, p 81-82, 97]. Mr. Kassing perceived Mr. Henderson as the leader of the robbery, inasmuch as he was telling Mr. Gibbs what to do.  [Trial 6/30/11, p 115-116].

**Officer Michael Ross** of the Flint Police Department responded to the radio dispatch regarding the incident.  [Trial 6/29/11, p 149, 151].  He took descriptions of the suspects, watched a portion of the surveillance video, and looked for potential fingerprints that could be lifted from the scene.  [Trial 6/26/11, p 154-155, 157-159].

After speaking with Officer Ross and watching the surveillance video, **Michele Champion** (then an identification technician for the Flint Police Department), processed a video game, a countertop, the safe, and a glass display cases inside the shop in an effort to locate fingerprints

---

[4] Mrs. Anagnostopoulos claimed to suffer whiplash from the snatching incident.  [Trial 6/29/11, p 94].
[5] Jeremy Kassing recalled this sequence of events similarly, noting that Mr. Henderson told Mr. Gibbs he couldn't look so suspicious, and then went back and found another bag.  [Trial 6/30/11, p 93].

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

[Trial 6/29/11, p 183, 187-190, 206-207]. She then submitted the prints for further identification through the Automated Fingerprint Identification System (AFIS), a national database. [Trial 6/29/11, p 197-198]. **Mary Martin**, an AFIS employee and sworn expert in fingerprint identification and comparison, then testified that one of the prints recovered matched Mr. Gibbs' left ring finger, while another matched Mr. Henderson's left ring finger. She also determined that one of the prints belonged to Costas Anagnostopoulos**.** [Trial 6/29/11, p 230-233]. **Phillip Thick**, another AFIS employee and fingerprint expert, added that a separate print recovered from the scene matched Mr. Gibbs' left thumb. [Trial 7/6/11, p 8, 16, 23-24].

**Sergeant Shawn Ellis** testified as the officer in charge of the investigation. [Trial 6/30/11, p 143]. After receiving the AFIS report, Sergeant Ellis followed-up with Mr. Gibbs, who turned himself in. He obtained consent from Mr. Gibbs' mother to search her house, and there the officer recovered, *inter alia*, (1) a Ziploc bag with miscellaneous jewelry, (2) a Sam's Club card bearing Nancy Anagnostopoulos' name and picture, (3) three Rolexes and a Fossil watch, and (4) coins and foreign currency. [Trial 6/30/11, p 152-153, 156-161].

Sergeant Ellis obtained a statement from Mr. Gibbs after he voluntarily surrendered. He claimed that Mr. Gibbs waived his *Miranda* rights and that the statement was recorded, although he was unable to produce the recording at the time of trial. [Trial 6/30/11, p 203, 211-212]. According to Sergeant Ellis, Mr. Gibbs said he and Mr. Henderson went to the pawn shop to try and sell some jewelry. They were trying to raise money to buy marijuana, but were told the jewelry was fake. [Trial 6/30/11, p 212]. Mr. Henderson then bought a video game for them to play and the two men left the store. [Trial 7/6/11, p 34]. Henderson changed his mind and decided to return the game, and Mr. Gibbs accompanied him back to the pawn shop. Mr. Gibbs did not know that Henderson was going to rob the place, but once inside, Henderson pulled out the handgun, hit the store owner with it, and ordered Mr. Gibbs to take Mrs. Anagnostopoulos' cell phone and jewelry along with laptops

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

and other items.  [Trial 7/6/11, p 34-35].  Mr. Gibbs noted that Mrs. Anagnostopoulos offered to help him and ultimately did so.  He acknowledged carrying away items from the store and said they drove around for thirty minutes and eventually ended up at Mr. Gibbs' house.  Mr. Henderson said he would pay Mr. Gibbs $100 to keep the items, but Mr. Gibbs was never paid and Mr. Henderson never came back to pick up anything he had left.  Amongst the items police recovered from Mr. Gibbs was a Pittsburgh Pirates hat that he said belonged to Mr. Henderson. [Trial 7/6/11, p 36-37].

Lastly, **Phillip Gibbs** testified in his own defense.  He was sixteen years old on the day of the robbery.  [Trial 7/6/11, p 87-88].  He acknowledged being in the store earlier in the day in an effort to sell Mr. Henderson's jewelry in exchange for money for marijuana.  [Trial 7/6/11, p 90-91].  After learning that the jewelry had no value, he informed Mr. Henderson of that and the two men returned to the store to buy a video game instead.  Mr. Gibbs went back to the store a third time with Henderson, who intended to seek a refund.  As Mr. Anagnostopoulos and Mr. Kassing plugged up the video game for testing, Mr. Gibbs heard a smacking / clapping noise and saw Mr. Anagnostopoulos falling to the floor.  [Trial 7/6/11, p 91-94].  Mr. Gibbs then saw Mr. Henderson with a large gun in his hand, and was startled when he realized Henderson had hit Mr. Anagnostopoulos with the gun.  [Trial 7/6/11, p 95].  Mr. Gibbs knew what Mr. Henderson was doing was wrong, but he complied with his orders to retrieve items from Nancy.  This was because he was hoping not to be injured himself, as he was afraid of Mr. Henderson's gun.  [Trial 7/6/11, p 96].  Accordingly, he took the money from the cash register and complied with the order to take the laptops from the showcase even though he really wanted no part of the robbery.  Although Mr. Gibbs did not run when Mr. Henderson was out of sight, he was thinking to himself that he hoped Mr. Henderson would not hurt anybody.  [Trial 7/6/11, p 97-101].  Mr. Henderson emerged from the back and checked the cash register again, then threw a duffle bag on the floor with directions for Mr. Gibbs to fill it with laptops.  Moreover, he called Mr. Gibbs dumb or stupid for leaving the

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

store with the items exposed, and retrieved Mrs. Anagnostopoulos' purse to carry the gun and some of the laptops. [Trial 7/6/11, p 101-103]. Consistent with his police statement, Mr. Gibbs indicated that he was taken home and agreed to hide the goods at his house after being pressured by Mr. Henderson. [Trial 7/6/11, p 106-107].

Ultimately, a Genesee County jury refused to hold Mr. Gibbs accountable for the weapon Mr. Henderson used to effectuate the crime. Nevertheless, Mr. Gibbs was still convicted of two counts of armed robbery,[6] one count of unarmed robbery,[7] and one count of conspiracy to commit armed robbery[8] on July 2, 2011 following a five-day trial before the Honorable Judith A. Fullerton. [Trial 7/7/11, p 59-60].

At sentencing, trial counsel agreed to the scoring of the prior record variables, but challenged the points assessed against Mr. Gibbs for OV 4 and OV 13. [Sentence 8/15/11, p 9-18]. Notwithstanding his relatively lesser culpability, minimal past, and youthful status, Judge Fullerton ordered Mr. Gibbs to serve concurrent sentences at the very top of his guidelines of (1) 17.5 years to 30 years imprisonment for the armed robbery and conspiracy charges, and (2) 100 months to 15 years imprisonment for unarmed robbery charge. [Sentence 8/15/11, p 25-26]. Presently incarcerated, this is Mr. Gibbs' appeal of right.

---

[6] MCL 750.529.
[7] MCL 750.530.
[8] 750.157a.

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

## ARGUMENT

I.   **THE TRIAL COURT VIOLATED MR. GIBBS' SIXTH AMENDMENT RIGHT TO A PUBLIC TRIAL BY CLOSING THE COURTROOM AND EXCLUDING MEMBERS OF HIS FAMILY FROM JURY SELECTION.**

*Issue Preservation and Standard of Review.*  Trial counsel did not object to the closing of the courtroom during *voir dire.*  Accordingly, the plain error standard of review applies.  *See People v Carines,* 460 Mich 750, 763 (1999).  Since this issue implicates Mr. Gibbs's Sixth Amendment right to a public trial, this Court reviews the claim *de novo.  People v Dendel,* 481 Mich 114 (2008).

*Argument.*  The Sixth Amendment directs that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy *and public trial. . . .*"  US Const; Am VI (emphasis added).  This right applies to state prosecutions under the Fourteenth Amendment.  *In Re Oliver*, 333 US 257, 273 (1948).  The policy considerations underlying the right to a public trial are compelling: "The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions. . . ." *Waller v Georgia,* 467 US 39, 46 (1984) (quoting *In re Oliver*, *supra* at 270, n 25).

In a recent *per curiam* decision, the United States Supreme Court noted unequivocally that the right to an open courtroom applies to the jury selection phase of the trial and, in particular, the examination of prospective jurors.  *Presley v Georgia,* 558 US _; 130 S Ct 721, 725 (2010).  This holding does not create a new right; it simply re-affirms what the Court recognized 28 years ago in *Waller v Georgia, supra.*[9]  The beneficiary of the right to a public trial is both the accused and the

---

[9] Among the values furthered by the public trial guarantee are: (1) to ensure a fair trial; (2) to remind the prosecutor and judge of their responsibility to the accused and the importance of their functions; (3) to encourage witnesses to come forward; and (4) to discourage perjury. Waller, *supra* at 46-47.

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

public-at-large.  The right is grounded in the Sixth Amendment, *Gannet Co v DePasquale,* 443 US 368, 380 (1979), as well as the First Amendment.  *See Press-Enterprise Co v Superior Court,* 478 US 1 (1980).

*Presley* reminds us that the selection of a jury is itself a matter of importance, "not simply to the adversaries, but to the criminal justice system."  *Presley, supra* at 724-25 (quoting *Press-Enterprise Co, supra* at 505.)  The *Presley* majority used strong language, declaring that under the Court's "clear precedents," it was "so well settled that the Sixth Amendment right extends to jury voir dire that this Court may proceed by summary disposition."  *Id.* at 722–24.  The tenor of the opinion demonstrates the Court's frustration with repeated failures to abide by its holdings.

*Presley* reemphasized that "[t]rial courts are obligated to take every reasonable measure to accommodate public attendance at criminal trials," including at jury selection. *Id.* at 724.  What is obvious from the Court's discussion is that the first and foremost "obligation" is the duty to ensure the courtroom is open and not unduly restricted by staff or court officers.  Furthermore, given the purposes of the public trial right articulated in *Waller*, it follows that the "integrity and public reputation of the judicial proceedings" is damaged when jury selection is closed to the public.

Here, the record is unclear as to whether Judge Fullerton knew her staff closed off the courtroom during *voir dire*.  The Judge mentions at the very beginning that "if any spectators would like to come in they're welcome,"[10] yet affidavits submitted by several members of Defendant-Appellant's family suggest that court personnel told them exactly the opposite.  Mr. Gibbs' mother, sister, and brother-in-law have all attested that they, members of the co-Defendant's family, and other members of the public were prevented from entering the courtroom during jury selection.  *Affidavits, Appendix A*.  Although these statements are not a part of the existing record, a remand is being requested so that Mr. Gibbs has an opportunity to further develop the issue for appeal.  If it turns out to be true that access was restricted based solely on the need to conduct *voir dire, Presley*

---

[10] [Trial 6/28/11, p 4].

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

indicates that reasonable alternatives had to be considered even if not advanced by the parties. *Presley, supra* at 725. Acceptable options could have included "reserving one or more rows for the public; dividing the jury venire panel to reduce courtroom congestion; or instructing prospective jurors not to engage or interact with audience members." *Id.* at 725.

Although there was no specific objection to the courtroom closure, the Supreme Court has noted that the lack of a complete objection has no bearing on the issue of whether the public trial right has been violated: "The public has a right to be present *whether or not any party has asserted the right.*" *Presley, supra* at 724-25 (emphasis added). This language places the responsibility for ensuring the right to a public trial firmly at the feet of the trial judge, not the defendant. For example, in *Salem v Jenkins,* 414 F Supp 2d 687, 696 (ED Mich 2006) the district court held that "the Michigan Court of Appeals' decision that counsel failed to preserve this issue was based on the incorrect belief that *Waller* required Petitioner's attorney to advance specific objections." To the contrary, it is not necessarily incumbent upon the defendant to contest a closed courtroom; rather, it is the onus of the trial court to ensure the public is granted access to a trial, thus preserving not only the defendant's right, but also the rights of the public-at-large. *Presley, supra* at 721. Furthermore, the public has a right of access to criminal trials that may not be waived. *Presley* was decided as a Sixth Amendment case, but the Supreme Court reiterated that the right to a public trial is also guaranteed by the First Amendment: "The Court has further held that the public trial right extends beyond the accused and can be invoked under the First Amendment. This requirement, too, is binding on the States." *Presley, supra* at 723.

By contrast, this Court has held that "the failure to timely assert the right to a public trial forecloses the later grant of relief." *People v Vaughn,* — Mich App — (Docket No. 292385, December 28, 2010), slip op 7. Yet, this reasoning cannot stand in the face of compelling U.S. Supreme Court statements to the contrary.

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

The attached affidavits provide strong support to Mr. Gibbs' claim that his right to a public trial was violated.  It is equally clear that this violation, if allowed to become a matter of record, amounts to "structural" error, *Waller supra*, at 50 n. 9, since it "'affect[s] the 'framework within which the trial proceeds.'" *United States v Marcus,* 130 S Ct 2159, 2164 (2010) (quoting omitted).  Automatic reversal is thus required.  *Washington v Recuenco,* 548 US 212, 218-19 (2006).

Even under plain error review, reversal is warranted.  *Carines, supra* at 763.  Since a violation of the public trial right is among the limited class of cases that involve structural error, prejudice is presumed, a violation of substantial rights has occurred, and a new trial is required.  *Neder v United States,* 527 US 1, 8-9 (1999); *People v Anderson,* 446 Mich 392, 40 (1994).

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

II.   **BECAUSE THE COURT BELOW MADE THREE GUIDELINES-SCORING MISTAKES, AND CORRECTING THE MISTAKES WOULD SUBSTANTIALLY REDUCE THE GUIDELINES RANGE, MR. GIBBS MUST BE RESENTENCED.**

*Issue Preservation and Standard of Review.*   Trial counsel objected at sentencing to some, but not all, of the erroneous scoring of the guidelines.  Specifically, he did not contest the scoring of any of the Prior Record Variables, but he did challenge the points assessed against Mr. Gibbs under OV 13.  The latter issue is thus preserved for appellate review.  Mr. Gibbs is requesting a remand for a resentencing and/or so that he can first present these issues to the trial court for consideration.

The proper interpretation and application of the statutory sentencing guidelines are legal questions that Michigan appellate courts review de novo.  *People v Morson,* 471 Mich 248, 255 (2004).

*Argument.*   Under the Michigan and United States Constitutions, defendants have a due process right to be sentenced on the basis of accurate information and in accordance with the law. *Townsend v Burke,* 334 US 736 (1948); *People v Lee,* 391 Mich 618, 636-637 (1974); *People v Malkowski,* 385 Mich 244 (1971).  Further, MCR 2.613(A) provides that a sentence must be consistent with "substantial justice."  Our Supreme Court has found that "it is difficult to imagine something 'more inconsistent with substantial justice' than requiring a defendant to serve a sentence that is based upon inaccurate information." *People v Francisco,* 474 Mich 82, 91, n6 (2006).  Thus, a defendant is entitled to resentencing when his sentence is predicated upon mis-scored and inflated guidelines. *Id.* at 91-92.

## PRV-5

Resentencing is required because Mr. Gibbs was improperly assessed two points under Prior Record Variable (PRV) 5, where the order of disposition was entered *after* the commission date of the sentencing offense.

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

Points may be attributed to a defendant under PRV-5 based on an offender's prior misdemeanor convictions and prior misdemeanor juvenile adjudications. A score of two points is appropriate under this guideline if a person has "1 prior misdemeanor conviction or prior misdemeanor juvenile adjudication":

1) Prior record variable 5 is prior misdemeanor convictions or prior misdemeanor juvenile adjudications. **Score prior record variable 5 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points**:

    (a) The offender has 7 or more prior misdemeanor convictions or prior misdemeanor juvenile adjudications............................ 20 points

    (b) The offender has 5 or 6 prior misdemeanor convictions or prior misdemeanor juvenile adjudications............................ 15 points

    (c) The offender has 3 or 4 prior misdemeanor convictions or prior misdemeanor juvenile adjudications............................ 10 points

    (d) The offender has 2 prior misdemeanor convictions or prior misdemeanor juvenile adjudications............................ 5 points

    (e) **The offender has 1 prior misdemeanor conviction or prior misdemeanor juvenile adjudication.** .................... **2 points**

MCL 777.55(1)(a) (emphasis added). If a defendant has no prior misdemeanor convictions or prior misdemeanor juvenile adjudications, the appropriate score to be assessed is zero points. The statute defines "prior misdemeanor juvenile adjudications" to mean "a juvenile adjudication for conduct that if committed by an adult would be a misdemeanor under a law of this state . . . **if the order of disposition was entered before the sentencing offense was committed.**" MCL 777.55(3)(b).

A review of the record here reveals, however, that the only juvenile adjudication eligible for scoring under PRV-5 was for an August 3, 2010 entering without permission case, the disposition of which took place November 9, 2010. Pre-Sentence Investigation Report (PSR) at 3. Because the current crimes occurred on October 26, 2010 (before the

juvenile disposition), it was improper to use this conviction as a basis for penalizing Mr. Gibbs with two points under PRV-5. This error, combined with the error in scoring PRV-6, *infra*, affects Mr. Gibbs' guidelines range and entitles him to a resentencing before the trial court.

## PRV-6

Additionally, Mr. Gibbs received a 5-point score under PRV-6 for being "on probation or delayed sentence status or on bond awaiting adjudication or sentencing for a misdemeanor." MCL 777.56(1)(d). Yet, this score was both factually and legally inappropriate. Factually speaking, as the attached affidavit of the undersigned counsel indicates, the Genesee County Juvenile Court has no record of Mr. Gibbs **ever** being placed on bond when he acquired the entering without permission charge as a juvenile. *Affidavit of Counsel, Appendix B.* Additional substantiation of this fact is forthcoming. Even if he had been on bond, however, the plain language of the legislative sentencing guidelines under PRV-6 make it apparent that points cannot be assessed for a defendant's relationship with the juvenile justice system. Resentencing is thus warranted.

A five-point score under PRV-6 is reserved for offenders who already have a "relationship to the criminal justice system" when the crime is committed. MCL 777.56(1). A few months before committing the sentencing offense, the then-sixteen-year-old defendant was adjudicated responsible (by virtue of a plea) for entering without permission in the Genesee County Probate Court (PSR 3). He did not receive a juvenile disposition for this offense until **after** the current crimes had been committed. When that disposition took effect, however, he was placed on a probationary term that was ultimately suspended in light of the charges in the current case. As noted, there is no evidence that Mr. Gibbs was on bond during the interim between his adjudication and disposition.

Unlike the judicial guidelines, the Legislature's version of PRV-6 does not assign points based on a defendant's status within the juvenile justice system. *See Part A, infra.* Further, contrary

14

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

to what the trial court believed, this Court's decision in *People v Endres,* 269 Mich 414 (2006), did not address the applicability of PRV-6 to offenders who commit crimes while awaiting juvenile disposition. *See Part B, infra.* Simply put, there is no authority for scoring PRV-6 in this case. Resentencing is warranted.

### A.   The Plain Language of PRV-6

Whether a relationship to the juvenile justice system may be used to score PRV-6 is a question of statutory construction. When interpreting statutes, this Court must give effect to the intent of the Legislature by applying the provision's plain language. *People v Koonce,* 466 Mich 515, 518 (2002). This Court considers both the plain meaning of the critical word or phrase as well as its placement and purpose in the statutory scheme. *US Fidelity Insurance & Guaranty Co. v Michigan Catastrophic Claims Ass'n,* 482 Mich 414, 423 (2008). Whenever possible, the Court should give effect to every phrase, clause and word in a statute. *Id.* Omitted phrases may also be significant, as "[t]he Legislature is presumed to be familiar with the rules of statutory construction and, when promulgating new laws, to be aware of the consequences of its use or omission of statutory language[.]" *Tellin ex rel Hinga v Forsyth Tp.,* 291 Mich App 692 (2011) (quoting *In re MKK*, 286 Mich App 546, 556 (2009)).

Critically, the Legislature made no reference to juvenile delinquency proceedings when it enacted MCL 777.56, the statute which created the current version of PRV-6. The variable examines whether the offender had a "relationship to the ***criminal justice system***" at the time of the sentencing offense. MCL 777.56(1) (emphasis added). Such a score is appropriate only if the "[o]ffender is on probation or delayed sentence status or on bond awaiting adjudication or sentencing for a misdemeanor." MCL 777.56(1)(d). As noted, zero points must be assessed if the "[o]ffender has ***no relationship to the criminal justice system***." MCL 777.56(1)(e) (emphasis added). *See also People v Johnson,* 293 Mich App 79 (2011).

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

The Legislature's repeated use of the phrase "criminal justice system" makes clear it did not intend PRV-6 to encompass juvenile matters.  Through various enactments, the Legislature has established a clear distinction between criminal cases and delinquency proceedings.  The procedures governing the latter are codified not in the Penal Code, but instead in the Probate Code at MCL 712A.1 *et seq*.  *See also* Const 1963, Art 6, § 15 (providing that the probate court "shall have original jurisdiction in all cases of juvenile delinquents and dependents, except as otherwise provided by law.").  By statute, "proceedings under this chapter **are not criminal proceedings**" unless otherwise provided.  MCL 712A.1(2) (emphasis added).  Thus, as this Court has noted, "proceedings against juveniles are not even considered criminal proceedings."  *In re T.D.*, __ Mich App __ (May 26, 2011) (Docket No. 294716).

This distinction is found elsewhere in the guidelines as well.  PRV-1 and PRV-2, for example, weigh "convictions" for certain "crimes."  MCL 777.51, 777.52.  In contrast, PRV-3 and PRV-4 consider only "a juvenile adjudication for conduct that would be . . .  [a crime] if committed by an adult[.]"  MCL 777.53, 777.54.  Similarly, PRV-5 refers to "a juvenile adjudication for conduct that if committed by an adult would be a misdemeanor."  MCL 777.55(3)(b).  As these provisions recognize, a juvenile is not adjudicated guilty of a "crime"; rather, a juvenile can only be adjudicated guilty of what "would be" a crime if committed by someone older.  The guidelines therefore acknowledge what the Probate Code already confirms: "proceedings under this chapter **are not criminal proceedings**" unless otherwise provided.  MCL 712A.1(2) (emphasis added).

Certainly, if the Legislature had intended for PRV-6 to apply to a defendant's relationship with the juvenile justice system, it could have said so.  After all, PRV-3, PRV-4, and PRV-5 all expressly provide for the consideration of delinquency adjudications.  In contrast, while the word "adjudication" does appear in the text of PRV-6, it is not used in the context of delinquency proceedings.  Nor is it used to refer to juvenile bond status.  Rather, it appears within the phrase "on

bond awaiting adjudication or sentencing for a misdemeanor." MCL 777.56(1)(d). In this context, "adjudication" means simply: "The legal process of resolving a dispute; the process of judicially deciding a case." Black's Law Dictionary (9th ed), p. 42. It follows, therefore, that this clause of PRV-6 is only concerned with sentencing offenses that occur before the final resolution of an adult misdemeanor charge. After all, as discussed above, PRV-6 refers to defendants charged with a "misdemeanor," not defendants charged with "conduct that if committed by an adult would be a misdemeanor." *Compare* MCL 777.55(3)(b) *with* MCL 777.56(3)(b).

Language referencing juvenile matters could have been added to PRV-6 with little difficulty. Given what is expressed in PRV-3, PRV-4, and PRV-5, it must be presumed that the Legislature intentionally omitted such language when it drafted PRV-6. This is consistent with the well-established legal doctrine *expressio unius est exclusio alterius* ("the expression of one thing is the exclusion of another"). *Miller v Allstate Ins. Co.,* 481 Mich 601, 611 (2008). The maxim is a rule of construction that is a product of "logic and common sense." *Feld v Robert & Charles Beauty Salon,* 435 Mich 352, 362 (1990) (quoting 2A Sands, *Sutherland Statutory Construction* (4th ed), § 47.24, at 203). Our Supreme Court has long held that "no maxim is more uniformly used to properly construe statutes." *Hoerstman Gen. Contracting, Inc. v Hahn*, 474 Mich 66, 74–75 (2006) (citing *Taylor v Michigan Public Utilities Comm.,* 217 Mich 400, 403 (1922)).

Further evidence of the Legislature's intent can be found by comparing PRV-6 to its predecessor under the judicial guidelines. The instructions to the predecessor variable expressly provided that "a 'relationship to the criminal justice system' ***applies to relationships determined by juvenile convictions or charges.***" *Id. People v Stone,* 195 Mich App 600, 607-608 (1992) (emphasis added) (quoting the version of PRV-6 which appeared in the judicial sentencing guidelines). Thus, it must be presumed: (1) that the Legislature was aware of the prior version of PRV-6 when it enacted the current version; and (2) that the differences between the two variables

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

were intended.  *See People v Hegwood,* 465 Mich 432, 438-439 (2001) ("At the time it enacted these guidelines, the Legislature opted for a system with many features that were easily recognizable by courts familiar with the format previously employed in Michigan.  . . . Yet it is apparent that the Legislature has provided new ground rules.").

For all of these reasons, PRV-6 was not intended to be scored in this case.

### B.    Inapplicability of *Endres* Decision

It is worth noting that this Court's ruling in *Endres* does not support the trial court's scoring decision.  Since the defendant in that case completed his juvenile probationary term before committing the sentencing offense, this Court did not analyze whether PRV-6 could have been scored if the timing of the juvenile sentence had been different.  *Endres,* 269 Mich App at 422. Rather, the *Endres* Court scored PRV-6 because the sentencing offense arose a few weeks after the defendant was charged with possessing alcohol as a minor ("MIP").  *Id.*  The MIP charge was filed on May 12, 2001, seven months after the defendant turned seventeen years old.  *Id.*  Given his age, the defendant in *Endres* was necessarily charged as an adult, since the family court lacked jurisdiction over any crime occurring after his seventeenth birthday.  MCL 712A.2(a)(1).

Other panels of this Court have misread *Endres.*  An unpublished opinion of one panel, for example, notes that "in *People v Endres,* this Court affirmed the trial court's scoring of PRV-6 based on the defendant's juvenile conviction."  *People v Kelly*, unpublished opinion per curiam of the Court of Appeals, issued April 13, 2010 (Docket No. 289689) (footnote and citation omitted) (included in *Appendix C).*  Again, this is not what that case held; *Endres* actually involved a pending adult charge.

The unpublished *Kelly* opinion proceeds to turn the rules of statutory construction on their head, stating that "if the Legislature had intended to limit application of PRV-6 to adult prisoners only, it was capable of specifying such a limitation."  *Id.*  Again, as discussed above, the opposite is true.  Other variables make it very clear when juvenile adjudications may be counted and when they

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

may not.  *See* MCL 777.53 through 777.56.  If the Legislature had intended PRV-6 to include contacts with the juvenile justice system, it could have said so.  Indeed, all it had to do was copy from the judicial guidelines.

## OV 13

OV 13 should have been scored at zero points, not 25.  Multiple convictions arising from a single incident do not establish a "continuing pattern of criminal behavior."  OV 13 was scored 25 points on the theory that the sentencing offense was "part of a pattern of felonious criminal activity involving 3 or more crimes against a person."  MCL 777.43(1)(b); Sentencing Information Report (SIR), *Appendix D.*

The three crimes against a person of which Mr. Gibbs was convicted here were his first felony convictions.  He had no other felony record, adult or juvenile.  PSR at 3.[11]  Because the three felony convictions in the case on appeal all arose from a single incident, they do not show a "pattern of felonious criminal behavior" and thus cannot support the 25-point OV 13 score.  *See People v Shane Joseph Smith,* unpublished opinion per curiam of the Court of Appeals, issued February 25, 2003 (Docket No. 229137) (*Appendix E*) at p 6 (concurrent convictions stemming from "one incident" not scoreable under OV 13; "it is repeated felonious conduct that should be considered in scoring this offense variable") (distinguishing *People v Harmon,* 248 Mich App 522, 532 (2001), as case in which concurrent convictions arose not from single incident but from "separate acts").  As in *Smith*, the three concurrent convictions here all arose from one incident—a single robbery of three different individuals at the same time.

Moreover, the Supreme Court's decision in *People v Cannon,* 481 Mich 152 (2008), reveals *Harmon* to be bad law.  In *Harmon*, the defendant argued that one of the prior crimes said to

---

[11] Because the presentence report is confidential, it is not intended for inclusion in the Court's public file.

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

substantiate the OV 13 score should not have been counted because it was of the wrong crime class. *Harmon*, 248 Mich App at 532.  This Court did not reach the issue because, it held, other convictions of the proper class—defendant's concurrent convictions—provided sufficient support for the score on their own. *Id.*   *Harman* thus appears to suggest that concurrent convictions (at least if not stemming from the same incident as the sentencing offense) might routinely be scored under OV 13 as well as under Prior Record Variable 7, the variable that explicitly counts "subsequent or concurrent felony convictions," MCL 777.57.

However, in *Cannon*, our Supreme Court made clear that interpreting the guidelines-variables statutes requires a different approach than the one take in *Harmon*.  Reviewing courts must keep in mind the "Legislature's focus" expressed by the title and first subsection.  *People v Cannon,* 481 Mich 152, 157 (2008).   Those words—the statute's "central subject"—condition what follows. *Id.* Particular provisions of the statute must be read in the context of that central subject.  Thus, OV 10 (whose central subject, as expressed in the title and first subsection, is "exploitation of a vulnerable victim"[12]) requires proof of vulnerable-victim exploitation even when considering a provision of the statute ("predatory conduct was involved") that makes no mention of vulnerable victims. *Id.* at 156-59.

OV 13 has a central subject that was likewise ignored, improperly, in *Harman*.  The particular statutory subsection at issue both here and in *Harman* requires proof only of "a *pattern* of felonious criminal activity involving 3 or more crimes against a person"[13]—language that could arguably refer to crimes committed at the same, or nearly the same, time.  However, the statute's title and first subsection make clear that the legislative focus is different: identifying, and providing greater punishment for, those whose conduct reflects a "*continuing* pattern of criminal behavior."   MCL

---

[12] MCL 777.40.
[13] MCL 777.43(1)(b) (emphasis added).

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

777.43(1) (emphasis added).  As this Court recognized in *Smith*, *supra*, the modifier "continuing" means that to be scored under OV 13, a "pattern" of criminal acts must be one that reflects "*repeated* felonious conduct.*" *Smith*, *supra* (emphasis added).  OV 13 should have been scored 0 points, for "no pattern of felonious criminal acts were committed." MCL 777.43(1)(g).

<div align="center"><u>**Remedy**</u></div>

The erroneous scoring of PRV-5, PRV-6, and OV 13 increased Mr. Gibbs' total guidelines range from the correct cell of C-III, to the resulting range of D-IV.  The error inflated the guidelines range from 81-135 months to 126-210 months.  The trial court then sentenced Mr. Gibbs at the very top of this incorrect range, to a minimum prison term of 17.5 years.  Because the error in scoring the guidelines violated Mr. Gibbs' state and federal due process rights to be sentenced accurately and consistently with the law, he is entitled to be resentenced within the correct range.  *Francisco*, 474 Mich at 89-92.

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

**APPENDIX A**
**AFFIDAVITS OF GIBBS' FAMILY MEMBERS**

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

STATE OF MICHIGAN

IN THE COURT OF APPEALS

**PEOPLE OF THE STATE OF MICHIGAN**

**Court of Appeals No. 306124**

Plaintiff-Appellee

**Lower Court No. 11-28140FC**

-vs-

**PHILLIP CHARLES GIBBS**

Defendant-Appellant.

_____/

## AFFIDAVIT OF ELVERTA THERESA GIBBS

STATE OF MICHIGAN )
               ) ss.
COUNTY OF GENESSEE)

     **Elverta Theresa Gibbs,** being duly sworn, hereby deposes and says that:

1. I am the mother of Phillip Charles Gibbs, the defendant in the above-mentioned case.

2. I was present on June 28, 2011 in Judge Judith A. Fullerton's courtroom at the Genessee County Circuit Court, for the purpose of attending the trial of Mr. Gibbs and his co-defendant Tyrell Henderson.

3. Myself, my daughter, my son-in-law and other members of the public were prevented from entering the courtroom during jury selection in the case. After being turned away at the door, I waited in the hallway outside the courtroom.

4. I understand that at one point, I was listed as a possible witness in the case, but I do not understand why other members of my family and the co-defendant's family were denied access to the proceedings during jury selection.

5. Present with me was my daughter Seandra Davidson-Coleman and my son-in-law Courtney Jones.

6. The above information is true to the best of my knowledge and belief.

7. If called to testify at a hearing, my statements would be the same as they are outlined above.

                                                            **Elverta Theresa Gibbs**

Subscribed and sworn to before me
May 21, 2012

Lisa Ann Lamarre
Notary Public, Wayne County, Michigan
My commission expires: 6/6/2018

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

**STATE OF MICHIGAN**

**IN THE COURT OF APPEALS**

PEOPLE OF THE STATE OF MICHIGAN

     **Court of Appeals No.** 306124

    Plaintiff-Appellee

     **Lower Court No.** 11-28140FC

-vs-

**PHILLIP CHARLES GIBBS**

    Defendant-Appellant.

            /

## AFFIDAVIT OF COURTNEY JONES

STATE OF MICHIGAN  )
       ) ss.
COUNTY OF GENESSEE)

   **Courtney Jones**, being duly sworn, hereby deposes and says that:

1. I am the soon-to-be brother in law of Phillip Charles Gibbs, the defendant in the above-mentioned case.

2. I was present on June 28, 2011 in Judge Judith A. Fullerton's courtroom at the Genessee County Circuit Court to attend the trial of Mr. Gibbs and his co-defendant Tyrell Henderson.

3. I was told by a male official in Judge Fullerton's courtroom that since a jury was being picked, I could not enter and watch the proceedings. The sole reason given was that jury selection was in progress.

4. Upon leaving I sat on a bench that was located outside the courtroom and watched as some of the jurors left the courtroom.

5. Present with me were Seandra Davidson-Coleman and my mother-in-law Elverta Theresa Gibbs.

6. The above information is true to the best of my knowledge and belief.

7. I would swear to these facts if called to testify at a hearing.

         _Courtney Jones_
         **Courtney Jones**

Subscribed and sworn to before me
May 21, 2012

_Lisa Ann Lamarre_
Lisa Ann Lamarre
Notary Public, Wayne County, Michigan
My commission expires: 6/6/2018

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

## STATE OF MICHIGAN

### IN THE COURT OF APPEALS

**PEOPLE OF THE STATE OF MICHIGAN**

        Plaintiff-Appellee

**Court of Appeals No.** 306124

**Lower Court No.** 11-28140FC

-vs-

**PHILLIP CHARLES GIBBS**

        Defendant-Appellant.

_____/

### AFFIDAVIT OF SEANDRA DAVIDSON-COLEMAN

STATE OF MICHIGAN   )
                  ) ss.
COUNTY OF GENESSEE)

      **Seandra Davidson-Coleman,** being duly sworn, hereby deposes and says that:

1. I am the sister of Phillip Charles Gibbs, the defendant in the above-mentioned case.

2. I was present on June 28, 2011 in Judge Judith A. Fullerton's courtroom at the Genessee County Circuit Court to attend the trial of Mr. Gibbs and his co-defendant Tyrell Henderson.

3. I was told by a male person in Judge Fullerton's courtroom that I could not be present in the courtroom while the jury was being picked for Mr. Gibbs' case.

4. After being prevented from sitting inside the courtroom, I waited outside with other family members.

5. We eventually decided to leave the courthouse after being told that jury selection would take all day.

6. We were allowed to enter the courtroom the next day, but only after the jury had been picked.

7. Present with me was my mother Theresa Gibbs and Courtney Jones.

8. The above information is true to the best of my knowledge and belief.

9. If called to testify at a hearing, my statements would be the same as they are outlined above.

                                             **Seandra Davidson-Coleman**

Subscribed and sworn to before me
May 21, 2012

_____
Lisa Ann Lamarre
Notary Public, Wayne County, Michigan
My commission expires: 6/6/2018

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

**APPENDIX B**
**AFFIDAVIT OF COUNSEL**

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

## STATE OF MICHIGAN

## IN THE COURT OF APPEALS

**PEOPLE OF THE STATE OF MICHIGAN**

        Plaintiff-Appellee,

-vs-

**PHILLIP CHARLES GIBBS**

        Defendant-Appellant.

_____/

**Court of Appeals No.** 306124

**Lower Court No**. 10-231624FC

## <u>AFFIDAVIT OF COUNSEL / OFFER OF PROOF</u>

**BRANDY Y. ROBINSON** hereby states as follows:

1.  I represent Mr. Gibbs on appeal from the above-referenced conviction.

2.  In researching Mr. Gibbs' sentence for appeal, I discovered an inaccuracy in the Presentence Investigation Report regarding Mr. Gibbs' relationship to the criminal justice system at the time he committed the current offenses.

3.  I recently contacted the Juvenile Records Department of the Family Court Division of the Genesee County Probate Court. I spoke by telephone with a clerk who informed me that her review of Mr. Gibbs' juvenile file showed no indication whatsoever that Mr. Gibbs had been placed on bond between adjudication and sentencing for entering without permission.

4.  Assuming this information is correct, there was no basis for scoring points against Mr. Gibbs under Prior Record Variable 5.

5.  Counsel is undertaking steps to obtain an official certification of Mr. Gibbs' no-bond status as a juvenile.

6.  Once that certification is obtained, counsel will promptly file evidence thereof with the Court.

7.  Additionally, if granted a hearing on Mr. Gibbs' claim that he was denied the right to a public trial, the undersigned counsel will proffer the testimony of, *inter alia*, Mr. Gibbs' mother, Elverta Gibbs, his Sister Seandra Davidson-Coleman, and his soon-to-be brother in law Courtney Jones. The substance of their proposed testimony appears in the attached Affidavits. Counsel will also seek evidence from court staff connected with Judge Fullerton's chambers to as to her policy on this subject as of the time of trial. Trial counsel will also have to be examined.

8.  The foregoing statements are true to the best of my knowledge.

        /s/Brandy Y. Robinson

       _____

       **BRANDY Y. ROBINSON (P66895)**

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

**APPENDIX C**

*PEOPLE V KELLY*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

DeJUAN KELLY,

      Defendant-Appellant.

UNPUBLISHED
April 13, 2010

No.  289689
Wayne Circuit Court
LC No.  08-004999-03

Before:  WHITBECK, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

      Defendant DeJuan Kelly appeals as of right his jury conviction of unlawful imprisonment.[1]  Following his arrest for failure to appear for sentencing, the trial court sentenced Kelly to a term of 86 months to 15 years' imprisonment.  We affirm.

## I.  BASIC FACTS AND PROCEDURAL HISTORY

      Kelly and three codefendants were initially charged with multiple counts of armed robbery[2] and unlawful imprisonment.  Kelly and two of the three codefendants were also charged with felony firearm.[3]  Evidence at the June 2008 trial on those charges established that the men entered an apartment, bound the occupants, and then robbed them of their personal possessions at gunpoint.  The three codefendants pleaded guilty to various offenses.  At trial, the jury acquitted Kelly on the armed robbery and felony firearm charges but failed to reach a verdict on the unlawful imprisonment charge.  Therefore, the trial court declared a mistrial regarding the unlawful imprisonment charge.

      In August 2008, a new jury trial was held on the unlawful imprisonment charge.  The jury ultimately convicted Kelly.  Kelly now appeals various issues that occurred during trial and sentencing.

---

[1] MCL 750.349b.

[2] MCL 750.529.

[3] MCL 750.227b.

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

## II.  EVIDENTIARY ISSUES

### A.  STANDARD OF REVIEW

The decision whether to admit evidence is within the trial court's discretion, and we will not disturb that decision absent an abuse of that discretion.[4]

### B.  PRELIMINARY EXAMINATION TRANSCRIPT

During the August 2008 trial, the trial court considered the prosecution's request to declare one of the victims unavailable and admit his testimony from the preliminary examination.  Demond Bryant was in federal custody in Kentucky and the federal authorities would not permit him to be conveyed to Michigan for at least another 30 days.  Defense counsel objected, arguing that the examining magistrate had not permitted wide-ranging cross-examination during the preliminary examination.  Defense counsel also argued that Bryant was a key witness because he was the only one at the preliminary examination who testified that Kelly tied him up.  The trial court reviewed Bryant's preliminary examination testimony, ordered some changes and redactions for the jury, and then ruled that it would be admitted.

The next morning, defense counsel again objected to the admission of Bryant's testimony.  Defense counsel first argued that because the prosecution knew where to find Bryant, they should retrieve him from federal custody; but counsel then stated, "I will leave it to the Court's discretion."  The trial court affirmed its earlier ruling that the witness was unavailable and noted that it had encountered difficulty when attempting to obtain witnesses from federal custody.

Kelly now argues that the trial court abused its discretion in allowing into evidence the transcript of Bryant's preliminary examination testimony where there was no diligent, good-faith effort to procure Bryant's actual presence at trial.

The prosecution may present evidence at trial through a preliminary examination transcript when a witness is "unavailable."  A witness is unavailable where the prosecution "has been unable to procure the declarant's attendance . . . by process or other reasonable means, and in a criminal case, due diligence is shown."[5]  With respect to due diligence, "[t]he test is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it."[6]  Due diligence requires attempts to do everything reasonable, not everything possible, to obtain the presence of a witness.[7]

---

[4] *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003).

[5] MRE 804(a)(5).

[6] *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998).

[7] *People v Cummings*, 171 Mich App 577, 585; 430 NW2d 790 (1988).

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

Kelly argues that the prosecution "made little, if any attempt to secure" Bryant's presence. However, as Kelly also acknowledges, Bryant was in custody at an out-of-state federal prison at the time of trial. The prosecution explained that she had contacted the federal officials but they would "not release him for at least another 30 days because of the extradition laws." And in accepting the preliminary examination transcript, the trial court explained that even an order from the trial court would have done little to secure Bryant's presence because "they [the federal officials] can choose to ignore [the court's] request."

Therefore, we conclude that the trial court did not abuse its discretion in allowing into evidence the transcript of Bryant's preliminary examination testimony.

## C. PRIOR TRIAL TESTIMONY REGARDING ROBBERIES

At Kelly's August 2008 trial, Kelly asserted that the witnesses should not be permitted to testify about having their property taken because Kelly had been acquitted of armed robbery in the June 2008 trial. Instead, according to Kelly, the witnesses should only testify about the unlawful imprisonment. The prosecution maintained that the jury must hear the context of the events regardless of the acquittals in the previous trial. The trial court denied Kelly's request and ruled that having the witnesses attempt to omit facts from the sequence of events would make the remaining testimony seem improbable. But the trial court stated that the jury would be instructed to consider only the charge of unlawful imprisonment.

Kelly now argues that the trial court abused its discretion by allowing into evidence the witness testimony from the June 2008 trial regarding the armed robberies. More specifically, Kelly argues that allowance of the testimony violated MRE 404(b), which prohibits admission of evidence regarding prior bad acts if the prosecution offers it solely to show the criminal propensity of an individual to establish that he acted in conformity therewith.[8]

"[T]here are substantial limits on the admissibility of evidence concerning other bad acts."[9] However, it is essential that a jury receive an "intelligible presentation" of the complete story to fully understand the context in which the underlying events took place.[10]

"It is the nature of things that an event often does not occur singly and independently, isolated from all others, but, instead, is connected with some antecedent event from which the fact or event in question follows as an effect from a cause. When such is the case and the antecedent event incidentally involves the commission of another crime, the principle that the jury is entitled to hear the 'complete story' ordinarily supports the admission of such evidence."[11]

---

[8] *People v Vandervliet*, 444 Mich 52, 65; 508 NW2d 114 (1993).

[9] *People v Sholl*, 453 Mich 730, 741; 556 NW2d 851 (1996); see MRE 404(b).

[10] *Sholl*, 453 Mich at 741.

[11] *Id*. at 742, quoting *People v Delgado*, 404 Mich 76, 83; 273 NW2d 395 (1978).

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

In other words, "'Evidence of other criminal acts is admissible when so blended or connected with the crime of which defendant is accused that proof of one incidentally involves the other or explains the circumstances of the crime.'"[12]   Therefore, a jury is entitled to hear the full *res gestae* regardless whether those facts may also establish criminal acts other than the charged offense.[13]

Thus, the question here is whether the armed robberies were necessary to be revealed during the presentation of the *res gestae* of the unlawful imprisonment.[14]   The record shows that the armed robberies were part of the continuous transaction and the facts surrounding the unlawful imprisonment could not be presented without discussing the armed robberies.[15]   The trial court did not abuse its discretion in reasoning that the witnesses' accounts would appear improbable without being placed in the proper context.   Thus, the evidence was admissible.

Moreover, this Court has held that the fact that the defendant was acquitted on the prior charge is not relevant to its admission.[16]   "For it is its occurrence which would bear on the motive and intent of the defendant, not whether or not the defendant was acquitted on the charge. The *res gestae* constitutes substantive evidence and may properly be considered by the jury in determining guilt or innocence."[17]

Therefore, we conclude that the trial court did not abuse its discretion in allowing into evidence the witness testimony from the June 2008 trial regarding the armed robberies.

### D.  PRIOR ACQUITTAL VERDICT

At Kelly's August 2008 trial, asserting lack of relevance and unfair prejudice, the prosecution objected to the defense request to advise the new jury of the June 2008 jury's acquittal verdicts.   The trial court agreed that the new jury should not be advised of the prior verdicts.   Kelly now argues that the trial court abused its discretion by denying him the opportunity to admit into evidence the acquittal verdicts from the first trial.

---

[12] *Id.*, quoting *Arizona v Villavicencio*, 388 P2d 245, 246 (Ariz, 1964).

[13] *People v Kowatch*, 258 Mich 630, 633; 242 NW 791 (1932); *People v McClure*, 29 Mich App 361, 366; 185 NW2d 426 (1971).

[14] See *McClure*, 29 Mich App at 366.

[15] See *id.*

[16] *Id.*; see also *People v Oliphant*, 399 Mich 472, 495-500; 250 NW2d 443 (1976) (stating that the fact of a defendant's acquittal on charges arising out of prior incidents does not act to bar its admission.)

[17] *McClure*, 29 Mich App at 366 (internal citation omitted).

In support of his argument, Kelly cites *People v Nabers*,[18] in which this Court "express[ed] [its] support" for Judge ALLEN's partial concurrence and dissent in *People v Bolden*.[19]  Specifically, in *Nabers*, this Court, stated:

> Defendant was tried for the Swank Men's Shop robbery; this trial ended in a hung jury.  Nonetheless, this fact does not automatically bar the admission of such evidence.[3]  [*People v*] *Oliphant*, [399 Mich 472, 499-500; 250 NW2d 443 (1976)], *People v Bolden*, 92 Mich App 421, 424; 285 NW2d 210 (1979).[20]  However, we take this opportunity to express our support for Judge Allen's partial concurrence and partial dissent in *People v Bolden*, 98 Mich App 452, 464; 296 NW2d 613 (1980), wherein he writes:
>
> > "To the extent that a prior acquittal of the alleged similar act of the defendant reflects on the accuracy of the charge that defendant committed that act, then the defendant should be entitled to show that another jury determined that he did not commit the similar act."
>
> We think the same rationale holds true where defendant was not convicted due to a hung jury.[21]

However, the *Nabers* Court's "support" of Judge ALLEN's statement was merely dicta.[22]  Moreover, we find persuasive the conclusion from numerous federal circuits,[23] including the Sixth Circuit, that "evidence of prior acquittals is generally inadmissible."[24]  Judgments of acquittal are "inadmissible in large part because they may not present a determination of

---

[18] *People v Nabers*, 103 Mich App 354, 364; 303 NW2d 205, rev'd on other grounds, 411 Mich 1046 (1981).

[19] *People v Bolden*, 98 Mich App 452, 464; 296 NW2d 613 (1980).

[20] Citing *Oliphant*, 399 Mich at 499-500.

[21] *Nabers*, 103 Mich App at 364.

[22] See *People v Wellborn*, unpublished opinion per curiam of the Court of Appeal, issued Dec. 16, 2003 (Docket No. 242229), at 4 n 1.  We acknowledge that, pursuant to Michigan Court Rule, an unpublished opinion has no precedential value.  MCR 7.215(C)(1); *Charles Reinhart Co v Winiemko*, 444 Mich 579, 588; 513 NW2d 773 (1994).  However, we exercise our prerogative to view this opinion as persuasive.  *Dyball v Lennox*, 260 Mich App 698, 705 n 1; 680 NW2d 522 (2003); *People v McCullum*, 172 Mich App 30, 33; 431 NW2d 451 (1988).

[23] Although "federal court decisions are not precedentially binding on questions of Michigan law[,]" a court may choose to agree with the analysis of a federal court decision.  *American Axle & Mfg, Inc v City of Hamtramck*, 461 Mich 352, 364; 604 NW2d 330 (2000).

[24] *Wellborn*, unpub op at 4 n 1, quoting *United States v Gricco*, 277 F3d 339, 352-353 (CA 3, 2002).

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

innocence, but rather only a decision that the prosecution has not met its burden of proof beyond a reasonable doubt."[25]

Therefore, we conclude that the trial court did not abuse its discretion by denying Kelly the opportunity to admit into evidence the acquittal verdicts from the first trial.

### III.  JURY INSTRUCTIONS

### A.  STANDARD OF REVIEW

Kelly points out that, in ruling that the August 2008 jury was not to be told about the acquittals in Kelly's first trial, the trial court stated that it would instruct the jury to disregard the fact of the prior trial.  However, Kelly argues that the trial court committed reversible error because, according to Kelly, the trial court ultimately failed to give that instruction to the jury.

This Court reviews jury instructions in their entirety to determine if error requiring reversal occurred.[26]

### B.  ANALYSIS

After the trial court agreed that the August 2008 jury would not be advised of the prior acquittal verdicts, it stated that it would instruct the jurors that they should disregard the fact that there was an earlier trial and base their verdict solely on the evidence presented in this trial.  In Kelly's brief on appeal, his counsel asserts that "nowhere in the transcript supplied to appellate counsel does the court give that instruction to the jury."  However, on page 116 of the August 19, 2008 trial transcript, the trial court *did* clearly instruct the impaneled jurors to disregard the fact that there was an earlier trial.  Specifically, the trial court instructed the jury,

> This case has been tried before and during this trial you may hear some references to the first trial.  Sometimes a case must be retried before a new jury, and you should not pay any attention to the fact that this is the second trial.  Your verdict must be based only on the evidence in this trial.  You must decide the facts only from what you hear and see.

Moreover, when asked, counsel for both parties stated that they had no objections to the trial court's instructions.

Therefore, we conclude that Kelly's claim of instructional error is without merit.

---

[25] *Gricco*, 277 F3d at 353.

[26] *People v Brown*, 239 Mich App 735, 746; 610 NW2d 234 (2000).

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

## IV. SENTENCING

### A. STANDARD OF REVIEW

Kelly argues that the trial court abused it discretion in sentencing him when it erroneously scored prior record variable (PRV) 6 and offense variable (OV) 4.

The interpretation and application of the statutory sentencing guidelines are legal questions subject to our de novo review.[27] However, this Court reviews the scoring to determine whether the sentencing court properly exercised its discretion and whether the evidence adequately supported a particular score.[28]

### B. ANALYSIS

#### 1. PRV 6

Before imposition of the sentence, the prosecution objected to the scoring of PRV 6. The prosecution objected to the scoring of 10 points for that variable, arguing that the proper scoring was 20 points. According to the prosecution, while under the jurisdiction of the juvenile court following a 2007 adjudication for carrying a concealed weapon, Kelly escaped from his court-ordered community placement. Therefore, at the time Kelly committed the instant offense, he was listed as an escapee in the LEIN system. The trial court granted the prosecution's request and scored PRV 6 at 20 points. Kelly now argues that the trial court erred in scoring PRV 6 at 20 points because he was a juvenile escapee, not an adult prisoner.

Under MCL 777.56(1)(a), 20 points are appropriate where "[t]he offender is a prisoner of the department of corrections or serving a sentence in jail." According to MCL 777.56(3)(b), "'Prisoner of the department of corrections or serving a sentence in jail' includes an individual who is an escapee." Nothing in PRV 6 indicates that it was not meant to apply to an escapee from juvenile confinement. Indeed, in MCL 777.50(1), in which the Legislature specifically limited the use of juvenile adjudications when scoring PRVs 1 to 5, supports that a trial court is permitted to take juvenile adjudications into account when scoring PRV 6. In other words, if the Legislature had intended to limit application of PRV 6 to adult prisoners only, it was capable of specifying such a limitation. Moreover, in *People v Endres*,[29] this Court affirmed the trial court's scoring of PRV 6 based on the defendant's juvenile conviction.

Therefore, we conclude that the trial court did not abuse its discretion in scoring PRV 6 at 20 points.

---

[27] *People v Cannon*, 481 Mich 152, 156; 749 NW2d 257 (2008).

[28] *People v Steele*, 283 Mich App 472, 490; 769 NW2d 256 (2009).

[29] *People v Endres*, 269 Mich App 414, 422-423; 711 NW2d 398 (2006).

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

2.  OV 4

The prosecution also objected to the scoring of OV 4.  The prosecution objected to the scoring of 0 points for that variable, arguing that the proper scoring was 10 points.  The trial court agreed with the prosecution and scored OV 4 at 10 points.  Kelly now argues that the trial court erred in scoring OV 4 at 10 points because there was no showing of any psychological or other injury, specifically noting that none of the victims submitted a victim impact statement.

Under MCL 777.34(1)(a), 10 points are appropriate if "[s]erious psychological injury requiring professional treatment occurred to a victim."  Here, in ruling on the prosecution's request, the trial court explained that the victims had testified that

> they were scared to death.  They thought he [sic] were gonna die.  And one woman was struck in the face.  And I think that that's—and being tied up.  And I do remember the testimony about the pillow.

On this latter point about the pillow, the trial court was apparently referring to the testimony that, while the victims were tied up, Kelly said that he was not leaving any witnesses and demonstrated to his codefendants how to use a pillow as a "silencer."  The trial court opined, "I think that would cause some serious psychological injury that may require professional treatment . . . ."

Because the evidence adequately supported the score,[30] we conclude that the trial court did not abuse its discretion in scoring OV 4 at 10 points.

We affirm.

/s/ William C. Whitbeck
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood

---

[30] *People v Steele*, 283 Mich App 472, 490; 769 NW2d 256 (2009).

-8-

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

**APPENDIX D**
**SENTENCE INFORMATION REPORT (SIR)**

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

## SENTENCING INFORMATION REPORT

| | | | |
|---|---|---|---|
| Offender: Gibbs, Phillip Charles | SSN: 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 | Workload: 2519 | Docket Number: 1128140-FC |
| Judge: The Honorable Judith A. Fullerton | Bar No.: P20455 | Circuit No.: 07 | County: 25 |

### Conviction Information

Conviction PACC: 750.529          Offense Title: Robbery Armed (Conspiracy)

Crime Group: Public Safety (Person)          Offense Date: 10/26/2010

Crime Class: Class A          Conviction Count: 4 of 4          Scored as of: 10/26/2010

Statutory Max: Life          Habitual: No          Attempted: No

### Prior Record Variable Score

| PRV1: 0 | PRV2: 0 | PRV3: 0 | PRV4: 0 | PRV5: 2 | PRV6: 5 | PRV7: 20 |
|---|---|---|---|---|---|---|

Total PRV: 27

PRV Level: D

### Offense Variable

| OV1: 15 | OV2: 5 | OV3: 10 | OV4: 10 | OV5: 0 | OV6: 0 | OV7: 0 |
|---|---|---|---|---|---|---|
| OV8: 0 | OV9: 10 | OV10: 0 | OV11: 0 | OV12: 0 | OV13: 25 | OV14: 0 |
| OV16: 0 | OV17: 0 | OV18: 0 | OV19: 0 | OV20: 0 | | |

Total OV: 75

OV Level: IV

### Sentencing Guideline Range

Guideline Minimum Range : 126 to 210

### Minimum Sentence

| | Months | Life |
|---|---|---|
| Probation: | | ☐ |
| Jail: | | |
| Prison: | 17.5 yrs | ☐ |

Sentence Date: 8-15-11

Guideline Departure: _____

Consecutive Sentence: _____

Concurrent Sentence: Yes

Sentencing Judge: _Judith A. Fullerton_          Date: 8-15-11

Prepared By: JACKSON, WENDI M

Gibbs, Phillip Charles - 810512

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

**APPENDIX E**

*PEOPLE V SMITH*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SHANE JOSEPH SMITH,

        Defendant-Appellant.

UNPUBLISHED
February 25, 2003

No.  229137
Monroe Circuit Court
LC No.  99-030211-FH

---

Before:  Markey, P.J., and Smolenski and Meter, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of operating a vehicle while his license was revoked, causing death, MCL 257.904(4) (count I), operating a motor vehicle while under the influence of intoxicating liquor (OUIL), causing death, MCL 257.625(4) (count II), manslaughter, MCL 750.321 (count III), and failure to stop at the scene of a serious personal injury accident, MCL 257.617 (count IV).  Defendant was sentenced to concurrent terms of seven to fifteen years' imprisonment each for counts I-III, and thirty-six to sixty months' imprisonment for count IV.  Defendant appeals as of right.  We affirm defendant's convictions, but remand for resentencing.

## I.  Facts

On October 4, 1999, at approximately 6:50 p.m., defendant was driving his pickup truck on US-23 in Dundee Township.  Three witnesses testified that defendant was driving at a high rate of speed, at least 85 miles per hour, when defendant lost control of his vehicle and hit a pedestrian, Ronald Keeton, Jr., who had been walking on the side of the roadway.  Mr. Keeton died as a result of injuries sustained in the accident.  Defendant did not stop at the scene of the accident.

Officer Steven Pascoe was on duty four miles south of the accident when he heard central dispatch alert officers to be on the lookout for a red pickup truck that had left the scene of the accident.  After receiving word that a vehicle matching this description had exited the freeway at US-223 and headed west, Pascoe eventually located defendant's truck at a gas station which was still under construction.  Defendant's vehicle was parked next to a five-foot pile of dirt and behind a port-a-potty.  Pascoe inspected defendant's truck; no one was inside, but there was a beer can on the driver's side floor.

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

Shortly thereafter, Pascoe saw defendant running to a Sunoco gas station, about 200 yards away. Officer Marvin Carlson responded to the call for help and found defendant using the phone at the Sunoco gas station. Carlson handcuffed defendant and, at that point, defendant said something about being hijacked. Carlson arrested defendant and read him his rights. Defendant volunteered that he had been traveling south on US-23 when he picked up a hitchhiker. Defendant claimed that the hitchhiker pulled a gun on him, forced him into the passenger's seat, and began to drive his truck. Defendant said the hitchhiker was driving at a high rate of speed, driving stupid, and that he swerved and struck another car. Defendant claimed that he was able to escape and run away, and the hitchhiker continued on in his truck.

Carlson believed that defendant was visibly impaired due to alcohol consumption. He smelled alcohol on defendant's breath, defendant's speech was rapid and somewhat slurred, and defendant's eyes were bloodshot and glossy. Defendant admitted that he had two beers. Defendant was then taken to the hospital for a blood test, the results of which showed that defendant's blood alcohol level ("BAC") was .063 two and one-half hours after the accident. Forensic toxicologist Julia Pearson testified that defendant's BAC was between .09 and .11 during the accident, assuming he did not have a beer when he was driving; or between .07 and .09 had he consumed a beer during his drive. Carlson later determined that defendant's driving privileges had been revoked by the State of Michigan, and that notice of this revocation had been issued to defendant.

Van Buren Township Police Officer Lawrence Temple was permitted to testify about defendant's involvement in a hit and run accident which occurred on September 5, 1999. Temple stated that he was flagged down by a driver who told him that he had just been struck by a white F-150 pickup truck, and that the driver of that vehicle did not stop. Temple located the white F-150 pickup truck at a nearby gas station, where defendant and a woman were standing outside the driver's side door looking at the damaged mirror. Defendant initially said that the woman had been driving the truck. At first the woman agreed, but then she started crying, said she wasn't driving, and told defendant, "I'm not taking the rap for you this time." Defendant then admitted he had been driving. Temple testified that he noted a strong odor of intoxicants on defendant's breath. Temple also testified that he gave defendant a "driving permit," which informed defendant that his driving privileges were denied, revoked and expired as of that day.

Defendant testified that he had risen for work at 3:00 a.m., worked until 3:30 p.m., and then made several stops, finally leaving a friend's house sometime after 6:00 p.m. Defendant stated that from 4:00 p.m. to 6:00 p.m. he drank about four beers and ate some fried vegetables. On defendant's behalf, several witnesses testified that defendant had consumed fried vegetables and a total of four beers. None of the witnesses felt that defendant was intoxicated, but rather that he was tired. Defendant's expert witness testified that given defendant's food consumption, his BAC would have been at or below .06 at the time of the accident.

Defendant further testified that he had his cruise control set at seventy-eight miles per hour as he traveled southbound on US-23. He stated that he came up behind a car, which put on its turn signal to get over. He then looked down at some paperwork on his seat, and when he looked back up he saw that the car had not moved over. Defendant applied his brakes, but did not think he was going to be able to stop quickly enough; so he jerked the wheel to the right to go around the car. Defendant testified that he jerked too hard, and when he brought the wheel

back the other way the back end started to slide and spin.  Defendant stated he heard a smash, and subsequently managed to straighten out his vehicle and pull off at an exit.

Defendant denied ever seeing a pedestrian and had no idea that he had hit anyone. Instead, he thought he hit a mile marker or a pole.  Defendant stated that his ability to drive was not affected by the alcohol he drank and denied driving at an excessive speed.  He also denied knowing that his driving privileges had been suspended by the State of Michigan.  He did admit that he lied to the police when they found him after the accident, explaining that he "lost control," was not in his right frame of mind, and that he had no idea of what he was saying.

Defendant's accident reconstructionist testified that the markings on the road indicated defendant had made a hard right steer, and then a corrective left steer.  The markings also indicated that defendant was traveling between 73 and 76 miles per hour at the time. Defendant's expert also testified that defendant's vision would not have been focused on the shoulder area, but rather on the roadway and on his own vehicle, and that defendant would have had less than three seconds to observe anyone on the shoulder.

Defendant was convicted and sentenced in the manner described above, and now appeals asserting numerous claims of error.

## II.  Admissibility of Evidence

Defendant alleges that the trial court erroneously admitted several pieces of evidence. The decision whether evidence is admissible is within the trial court's discretion and should only be reversed where there is a clear abuse of discretion.  *People v Starr*, 457 Mich 490, 494; 577 NW2d 673 (1998).  An abuse of discretion exists only when an unprejudiced person, considering the facts on which the trial court acted, would say there was no justification or excuse for the ruling made.  *People v Rice (On remand)*, 235 Mich App 429, 439; 597 NW2d 843 (1999).

### A.  Lay Opinions

Defendant argues that the trial court erred in allowing the testimony of three lay witnesses regarding the speed of his vehicle.  We disagree.

Lay witness testimony in the form of an opinion is permitted where it is rationally based on the witness' perception and is helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.  MRE 701; *Richardson v Ryder Truck Rental, Inc*, 213 Mich App 447, 455; 540 NW2d 696 (1995).  Opinion testimony of lay witnesses with regard to speed has repeatedly been held to be admissible, even where the qualifications of the witnesses to judge speed are based on little more than their own assertion of their ability to do so, or the testimony borders on the incredible.  *People v Zimmerman*, 385 Mich 417, 439; 189 NW2d 259 (1971) (Adams, J., separate opinion).[1]

---

[1] See also *Hammock v Sims*, 313 Mich 248, 21 NW2d 118 (1946); *Zylstra v Graham*, 244 Mich 319, 326; 221 NW 318 (1928); *People v Schwartz*, 215 Mich 197, 183 NW 723 (1921); *Mitchell v Steward Oldford & Sons, Inc*, 163 Mich App 622, 629; 415 NW2d 224 (1987); *Kuhnee v*

(continued…)

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

In this case, all of the witnesses gave some basis for their speed estimates rooted in their personal experiences, and their testimony regarding the speed of defendant's vehicle was certainly material to the case.  Accordingly, we find that the trial court did not abuse its discretion in allowing their opinion testimony.

<div align="center">B.  404(b) Evidence</div>

Although defendant objected below, he failed to provide this Court with the transcript of the hearing at which the trial court considered and ruled on this issue.  Therefore, because we were not provided with a record to review, defendant has waived review of this issue.  *Thomas v McGinnis*, 239 Mich App 636, 649; 609 NW2d 222 (2000); *People v Anderson*, 209 Mich App 527, 535; 531 NW2d 780 (1995).

Defendant also raises a hearsay issue as it relates to the 404(b) evidence.  Defendant did object below, but failed to frame this issue in his statement of questions presented on appeal; therefore, this issue is unpreserved.  *People v Brown*, 239 Mich App 735, 748; 610 W2d 234 (2000).  We review unpreserved, non-constitutional issues for plain error only.  *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

At trial, the prosecutor asked Officer Temple what information he obtained from the driver whose vehicle had been hit in the September 1999 hit-and-run incident.  Over defendant's hearsay objection, Temple testified that the driver told him that he had just been struck by a white pickup, which was driven by a white male with a white female passenger headed westbound.  Temple further testified that the driver said that his friend was following the white pickup truck and that the driver of the white pickup truck did not stop.

Hearsay is an out of court statement offered for the truth of the matter asserted, and is generally inadmissible.  MRE 801(c); MRE 802.  The prosecutor argued that the information was not being offered for the truth of the matter, but rather to show why the officer located defendant's vehicle, and the trial court agreed.  However, while the driver's statements regarding the occupants and the color of the pickup truck could be construed as foundational, we believe that the driver's statement indicating that the pickup truck did not stop is clearly hearsay.

The reason the prosecutor presented Temple's testimony was to show that defendant did not leave the scene of this accident by mistake.  Therefore, the evidence was offered for the truth of the matter asserted, i.e., to show that defendant did not stop at the scene of the September 1999 hit-and-run accident.  Therefore, we find that the court abused its discretion in allowing this testimony.  However, we find the error did not affect defendant's substantial rights, given the other evidence presented at trial.  *Carines, supra* at 763.

---

(...continued)

*Miller*, 37 Mich App 649, 653-655; 195 NW2d 299 (1972); *People v Ray*, 2 Mich App 623, 635; 141 NW2d 320 (1966).

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

### III.  Pre-trial Publicity

Defendant argues that he was denied the right to a fair and impartial jury, given the amount of pre-trial publicity in this case and the fact that nearly all the jurors admitted they had heard about the case from the media before trial.  Because defendant failed to object at trial, we review this issue for plain error only.  *Carines, supra* at 763.

The right to a jury trial guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors.  *People v Jendrzejewski*, 455 Mich 495, 501; 566 NW2d 530 (1997).  Juror exposure to newspaper accounts of a defendant's crime does not in itself establish a presumption that the defendant has been deprived of a fair trial by virtue of pretrial publicity.  *Id.* at 502.  Whether or not prejudice warranting a new trial results from the reading of news articles or seeing or hearing broadcasts must turn on the special facts of each case, and the question is left largely to the determination and discretion of the trial court.  *People v Grove*, 455 Mich 439, 472; 566 NW2d 547 (1997).

In this case, during the jury selection process, the court explored the issue of bias against defendant.  None of the jurors indicated that they were biased against defendant or had already formed an opinion about defendant's guilt.  In fact, only two potential jurors recalled hearing about the case through the media, one of whom defendant exercised a peremptory challenge to remove.  Ultimately, defense counsel said that he was satisfied with the jury as seated and may not now harbor any alleged error as an appellate parachute.  *People v Carter*, 462 Mich 206, 214-215; 612 NW2d 144 (2001).  Thus, we find no error that affected defendant's substantial rights.

### IV.  Constitutionality of MCL 257.904(4)

Defendant asserts that the statute which imposes criminal liability for operating a vehicle under a revoked license, causing death, MCL 257.904(4), is unconstitutional because it imposes strict liability.  The constitutionality of a statute is a question of law that this Court reviews de novo.  *People v Jensen (On Remand)*, 231 Mich App 439, 444; 586 NW2d 748 (1998).  A statute is accorded a strong presumption of validity and this Court has a duty to construe it as valid absent a clear showing of unconstitutionality.  *Id.*

MCL 257.904(4) provides,

> (4) A person who operates a motor vehicle in violation of subsection (1) and who, by operation of that motor vehicle, causes the death of another person is guilty of a felony punishable by imprisonment for not more than 15 years or a fine of not less then $2,500.00 or more than $10,000.00, or both.  This subsection does not apply to a person whose operator's or chauffeur's license was suspended because that person failed to answer a citation or comply with an order or judgment pursuant to section 321a.

Subsection (1), referred to above, provides,

> (1) A person whose operator's or chauffeur's license or registration certificate has been suspended or revoked and who has been notified as provided in section 212 of that suspension or revocation, whose application for license has

been denied, or who has never applied for a license, shall not operate a motor vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of motor vehicles, within this state.  [MCL 257.904(1).]

A strict liability crime is one for which the prosecutor need to prove that the defendant performed the wrongful act, regardless of whether he intended to perform it.  *People v Lardie*, 452 Mich 231, 241; 551 NW2d 656 (1996).  Here, it is clear from the wording of subsection (1) that the Legislature intended to hold a person liable under the above provision only if the person had knowledge that they were driving without a valid license.  Where a statute requires a criminal mind for some but not all of its elements, it is not one of strict liability.  *People v Quinn*, 440 Mich 178, 187; 487 NW2d 194 (1992).  Therefore, MCL 257.904(4) is not a strict liability statute just because there is no intent requirement for the "causing death" element.

Defendant also contends that subsection (4) of the statute is unconstitutional because driving while one's license is suspended has no bearing on the person's ability to operate a motor vehicle; there is no casual relation between a person's decision to drive and the death of an individual, and thus, the provision violates his due process rights.  We disagree.

MCL 257.904(4) is a general intent crime.   The prosecutor needed to prove that defendant voluntarily drove a motor vehicle despite knowing that he was not entitled to do so.  See *Lardie, supra* at 241.   The statute is designed to discourage persons, who have been determine to be unfit drivers, from driving without being entitled to the privilege.  1998 PA 341.  We find that MCL 257.904(4) is rationally related to a legitimate state purpose, and, therefore, is constitutional.  *Mahaffey v Attorney General*, 222 Mich App 325, 344; 564 NW2d 104 (1997); see also *Quinn, supra* at 187.  "A statute is not unconstitutional merely because it is undesirable, unfair, or unjust."  *Phillips v Mirac, Inc*, 251 Mich App 586, 589; 651 NW2d 437 (2002).

### V.  Sufficiency of the Evidence

We review de novo challenges to the sufficiency of the evidence at trial.  *People v Hawkins*, 245 Mich App 439, 457; 628 NW2d 105 (2001).  In determining whether sufficient evidence has been presented to sustain a conviction, an appellate court is required to view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.  *People v Jaffray*, 445 Mich 287, 296; 519 NW2d 108 (1994).

Defendant asserts that there was insufficient evidence to support his convictions for operating a motor vehicle while impaired, causing death, MCL 257.625(4), manslaughter with a motor vehicle, MCL 750.321, and operating a motor vehicle with a revoked license causing death, MCL 257.904(4).  Again, we disagree.

MCL 257.625(4) provides that "[a] person, whether licensed or not, who operates a motor vehicle in violation of subsection (1) or (3) and by the operation of that motor vehicle causes the death of another person" is guilty of a crime.  MCL 257.625(1) and (3) provide,

(1) A person, whether licensed or not, shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

vehicles, including an area designated for the parking of vehicles, within this state if either of the following applies:

(a) The person is under the influence of intoxicating liquor, a controlled substance or a combination of intoxicating liquor and a controlled substance.

(b) The person has an alcohol content of 0.10 grams or more per 100 milliliters of blood, per 210 liters of breath, or per 67 milliliters of urine.

* * *

(3) A person, whether licensed or not, shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state when, due to the consumption of intoxicating liquor, a controlled substance, or a combination of intoxication liquor and a controlled substance, the person's ability to operate the vehicle is visibly impaired ....

Defendant's involuntary manslaughter conviction required that the prosecution prove that defendant operated his vehicle in a grossly negligent manner, *Lardie, supra* at 247-248, and caused the death of another, *People v Tims*, 449 Mich 83, 94; 534 NW2d 675 (1995).

The prosecution's forensic toxicologist testified that defendant's blood alcohol level was between .09 and .11 during the accident, assuming he did not have a beer when he was driving. Moreover, the arresting officer testified that he believed that defendant was visibly impaired due to alcohol consumption. Also, there was testimony that defendant was driving at a high rate of speed in an erratic fashion. This evidence, viewed most favorably to the prosecution, was sufficient to enable the jury to find that defendant was guilty of OUIL causing death and manslaughter with a motor vehicle.

Defendant contends that his conviction under MCL 257.904(4) should be reversed because there was insufficient evidence to show a causal connection between his driving with a revoked license and the victim's death. As support for his contention, defendant cites *Lardie, supra*.

In *Lardie*, the Court held that MCL 257.625(4), operation of a motor vehicle while intoxicated causing death, required proof of causation, i.e., the prosecutor must establish that the particular defendant's decision to drive while intoxicated produced a change in that driver's operation of the vehicle that caused the death. *Id*. at 234; 257-258. In reaching its conclusion, the Court considered the Legislature's intent, which was to reduce fatalities by deterring drunken driving. *Id*. at 257. Therefore, the statute must have been designed to punish drivers only when their drunken driving caused another's death. *Id*. at 257-258.

In this case, the statute was enacted to address the problem of individuals who engage in drunk driving and have their license suspended or revoked, yet continue to drive on these invalid licenses. 1998 PA 341. The statute was obviously designed to punish drivers who cause a fatal accident because they disregarded their revoked or suspended status. The prosecution presented evidence that the state issued notice to defendant that his license was revoked, and additionally,

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

-7-

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

that defendant had been drinking.  Therefore, we find that, viewing the evidence in a light most favorable to the prosecution, the evidence was sufficient to support the conviction.

## VI.  Sentencing Issues

Defendant argues that the trial court erred in scoring offense variables ("OV") 9, 13, and 18.[2]

A sentencing court has discretion in determining the number of points to be scored, provided that evidence of record adequately supports a particular score.  *People v Hornsby*, 251 Mich App 462, 468; 650 NW2d 700 (2002).  Scoring decisions for which there is any evidence in support will be upheld.  *Id.*

### A.  OV 9

Defendant contends that OV 9 was improperly scored at ten points.  Ten points is properly scored if there are between two and nine victims.  Each person who is placed in danger of injury or loss of life is considered a victim.  MCL 777.39.  The evidence indicated that there were four victims, Beth Ann Lay and her two children who were in the car that defendant passed and the decedent, Mr. Keeton.  Ms. Lay testified that defendant pulled up behind her out of nowhere, driving at a high rate of speed, swerved to her right, hit Mr. Keeton, then cut back in front of her.  The court properly assessed ten points.

### B.  OV 13

Defendant also disputes the twenty-five points which were scored for OV 13.  Twenty-five points are properly scored for OV 13 if "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person."  MCL 777.43(1)(b).[3]  MCL 777.43(2)(a) states that "[f]or determining the appropriate points under this variable, all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction."  Zero points should be scored if there is no pattern of felonious criminal activity.  MCL 777.43(1)(f).

At sentencing, the prosecutor argued that OV 13 was properly scored at twenty-five points because there were four felony convictions, but conceded that there was no pattern of felonious criminal activity over the past five years outside the instant offenses.  The court concluded that, while there was no pattern in the sense that defendant had prior felony convictions, the twenty-five point score was supported based on defendant's multiple convictions.

The proper application of the statutory sentencing guidelines is a legal question reviewed by this Court de novo.  *People v Libbett*, 251 Mich App 353, 365; 650 NW2d 407 (2002).  In

[2] The offenses here were committed in October 1999; therefore, this matter is controlled by the legislative sentencing guidelines.  MCL 769.34(2); See *People v Reynolds*, 240 Mich App 250, 253, 611 NW2d 316 (2000).

[3] MCL 777.43 was amended by 1999 PA 279, effective October 1, 2000.

construing OV 13, we must assign the words their plain and ordinary meaning. *Id.* The use of the term "pattern" and the fact that the Legislature permitted consideration of all crimes within a five-year period evinces an intention that it is repeated felonious conduct that should be considered in scoring this offense variable.

In *People v Harmon*, 248 Mich App 522, 532; 640 NW2d 314 (2001), the Court held that twenty-five points were properly scored because of "defendant's four concurrent convictions" in that case. The defendant was convicted of four counts of making child sexually abusive material, which were based on defendant's activities in photographing two fifteen-year-old girls. Four photos, two of each girl, taken on a single date, supported defendant's four convictions. *Id.* at 525. We believe that this case is distinguishable from *Harmon* because defendant's convictions stemmed from one incident, not four individual acts. Therefore, we conclude that the trial court improperly scored OV 13 at twenty-five points; rather, no points should have been scored.

## C. OV 18

Defendant also contends that the five point score for OV 18 is erroneous. Five points are to be scored for OV 18 if the offender operated a vehicle when his bodily alcohol content was 0.07 or more but less than 0.10 grams per 100 milliliters of blood, or while the offender was visibly impaired by the use of intoxicating liquor. MCL 777.48. The evidence indicated that defendant's blood alcohol level was between .09 and .10 during the accident, assuming he did not have a beer when he was driving. His blood alcohol level would have been between .07 and .09 had he consumed a beer during his drive. Moreover, the arresting officer testified that defendant was visibly impaired due to alcohol consumption. Thus, the score of five points was warranted.

## D. Resentencing

Because the reduction in score for OV 13 places defendant's sentences for counts I-III above the sentencing guidelines[4] and there is no indication on the record that the trial court would have found a substantial and compelling reason to depart, we must remand this case for resentencing. Cf *People v Mutchie*, 251 Mich App 273, 275; 650 NW2d 733 (2002). Accordingly, we need not decide whether these sentences are proportional.

However, we affirm defendant's sentence for failure to stop at the scene of a serious personal injury accident (count IV). Even with the OV 13 scoring error, his sentence is within the range recommended by the statutory sentencing guidelines. A sentence within the guideline range is presumed proportional and defendant has not presented any circumstances for us to find otherwise. *People v Hogan*, 225 Mich App 431, 437; 571 NW2d 737 (1997).

Defendant also contends that resentencing should take place before a different judge. In determining whether resentencing should occur before a different judge, this Court considers (1) whether the original judge would reasonably be expected upon remand to have substantial

_____

[4] Defendant's new sentencing guideline's range is 36 to 71 months' imprisonment, MCL 777.64; thus, his minimum sentence of 84 months' imprisonment for counts I-III is above this range.

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness. *People v Hill*, 221 Mich App 391, 398; 561 NW2d 862 (1997).

Here, defendant cites nothing other than the court's misscoring of the three offense variables at issue in support of his claim. However, the court correctly scored two of these offense variables, and the third involved a question of law. Given these circumstances, we find that defendant has not shown he is entitled to resentencing before a different judge.

Affirmed, but remanded for resentencing. We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Michael R. Smolenski
/s/ Patrick M. Meter

RECEIVED by Michigan Court of Appeals 5/23/2012 11:07:40 PM

-10-

# Court of Appeals, State of Michigan

# ORDER

People of MI v Phillip Charles Gibbs

Docket No.    306124

LC No.    11-028140-FC

Pat M. Donofrio
Presiding Judge

E. Thomas Fitzgerald

Elizabeth L. Gleicher

Judges

The Court orders that the motion to remand pursuant to MCR 7.211(C)(1) is GRANTED and the matter is remanded to the trial court so that defendant-appellant may file a motion for resentencing regarding Prior Record Variables 5 and 6. Defendant-appellant may also move for a new trial and the trial court shall conduct an evidentiary hearing based on the closure of the courtroom during voir dire. Proceedings on remand are limited to the issues as raised in the motion to remand.

Defendant-appellant is to file with this Court a copy of any motion and any supporting brief filed in the trial court within 14 days of the Clerk's certification of this order. The trial court is to hear and decide the matter within 56 days of the Clerk's certification of this order. Defendant-appellant must also file with the Clerk of this Court copies of all orders entered on remand within 14 days after entry.

The trial court is to make findings of fact and a determination on the record. The trial court is to cause a transcript of any hearing on remand to be prepared and filed within 21 days after completion of the proceedings.

Defendant-appellant may file a supplemental brief pertaining to the issues raised on remand within 21 days after entry of the trial court's order deciding the matter or 21 days after the transcript of the hearing on remand is filed, whichever is later. Plaintiff-appellee may file a supplemental brief in response.

This Court retains jurisdiction in the cause, and the time for proceeding with the appeal in this Court begins upon issuance of an order in the trial court that finally disposes of the remand proceedings. Nevertheless, the time for proceeding with the appeal begins 14 days from the date of certification of this order if remand pleadings are not filed in the trial court within the 14-day period.

A true copy entered and certified by Larry S. Royster, Chief Clerk, on



**JUN 2 0 2012**

Date

Chief Clerk

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

| | | | | |
|---|---|---|---|---|
| Lower Court or Tribunal | **STATE OF MICHIGAN IN THE COURT OF APPEALS** **Cover Sheet** | CASE NO. | | |

Lower Court or Tribunal
GENESEE CIRCUIT COURT

**STATE OF MICHIGAN**
**IN THE COURT OF APPEALS**
**Cover Sheet**

*CASE NO.*

CIRCUIT:  Year **11**  Number **028140**  Case Type **FC**

COURT OF APPEALS: **306124**

## Filing Party

Filing Party Last Name or Business/Entity/Agency Name
**GIBBS CHARLES PHILLIP**

Filing Party First Name                    M.I.

Address (Street 1, Street 2, City, State, and ZIP Code)

Attorney Last Name
**Robinson**

Attorney First Name                M.I.  P Number
**Brandy**                          **Y**  **66895**

Address(Street 1, Street 2, City, State, and ZIP Code)
**645 Griswold Street**
**Suite 3300**
**Detroit**        **MI**  **48226**

Attorney Telephone Number
**(313)256-9833**

## Summary of Items Filed

| Type | Filename/Description | Filing Fee | Doc Fee | Total This Filing |
|---|---|---|---|---|
| Motion - Regular | Motion for New Trial | $5.00 | ---- | $5.00 |
| | | **3% Service Fee:** | | $0.15 |
| Fee Substitute/Alternate Payment | | **Total All Filings:** | | $5.15 |

Reason:

| | |
|---|---|
| **X** | **Appointed Counsel** |
| | **Motion To Waive Fee** |
| | **Fees Waived in this Case** |
| | **MI InterAgency Transfer** |
| | **No Fee per MCR 7.203(F)(2)** |

Filer Office Use Only:  **25680**

The documents listed above were electronically filed with the Michigan Court of Appeals at the date/time stated in the left margin.  As a recipient of service of these documents, you may wish to go to https://wiznet.wiznet.com/appealsmi to register as a user of the electronic filing system.
306124 - 271089

| Lower Court or Tribunal | **STATE OF MICHIGAN**<br>**IN THE COURT OF APPEALS**<br>**Proof of Service** | *CASE NO.* | | |
|---|---|---|---|---|
| | | CIRCUIT: | Year<br>11 | Number<br>028140 | Case Type<br>FC |
| GENESEE CIRCUIT COURT | | COURT OF APPEALS: | 306124 | | |

Case Name:   PEOPLE OF MI V PHILLIP CHARLES GIBBS

On   7/3/2012   , one copy of the following documents:

Motion - Regular                    Motion for New Trial

was delivered to the persons listed below:

Date
7/3/2012

Signature
/s/Lisa Ann Lamarre

| Bar Number | Name | Delivery Method | Service Address |
|---|---|---|---|
| P- | AO, SADO | E-Serve | ao@sado.org |
| P- | Prosecutor, Genesee County | E-Serve | vhaley@co.genesee.mi.us |
| P- 66895 | Robinson, Brandy Y | E-Serve | brobinson@sado.org |

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

The documents listed above were electronically filed with the Michigan Court of Appeals at the date/time stated in the left margin.  As a recipient of service of these documents, you may wish to go to https://wiznet.wiznet.com/appealsmi to register as a user of the electronic filing system.

# STATE APPELLATE DEFENDER OFFICE
### Detroit

**DAWN VAN HOEK**
DIRECTOR

**JONATHAN SACKS**
DEPUTY DIRECTOR

**www.sado.org**
Client calls: 313.256.9822



**MAIN OFFICE:**
PENOBSCOT BLDG., STE 3300
645 GRISWOLD
DETROIT, MI 48226-4281
Phone: 313.256.9833 • Fax: 313.965.0372

**LANSING OFFICE:**
101 N. WASHINGTON, 14TH FLOOR
LANSING, MI 48913-0001
Phone: 517.334.6069 • Fax: 517.334.6987

July 3, 2012

Clerk of the Court
Michigan Court of Appeals
Suite 800
201 West Big Beaver
Troy, MI 48084

      Re:   **People v Phillip Charles Gibbs**
             Court of Appeals No. 306124
             Lower Court No. 11-28140FC

Dear Clerk:

      Enclosed for the court's review is a copy of the Motion for New Trial, Resentencing and to Initiate Remand Proceedings that was filed with the Genesee County Circuit Court. A hearing for this matter has been scheduled for **Monday July 16, 2012 at 9:00a.m.**

      Thank you for your cooperation.

                    Sincerely,

                    Lisa Ann Lamarre
                    Paralegal

Enclosures

cc:   Genesee County Prosecutor
      File ·25680

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

# STATE APPELLATE DEFENDER OFFICE

**DAWN VAN HOEK**
DIRECTOR

**JONATHAN SACKS**
DEPUTY DIRECTOR

www.sado.org
Client calls: 313.256.9822



**MAIN OFFICE:**
PENOBSCOT BLDG., STE 3300
645 GRISWOLD
DETROIT, MI 48226-4281
Phone: 313.256.9833 • Fax: 313.965.0372

**LANSING AREA:**
Phone: 517.334.6089 • Fax: 517.334.6987

July 2, 2012

Clerk
Room 205 Courthouse
900 South Saginaw Street
Flint, MI 48502

Re:   **People v Phillip Charles Gibbs**
        Lower Court No. 11-28140FC
        Court of Appeals No. 306124

Dear Clerk:

Enclosed is an original of the **Motion for a New Trial, Resentencing, and to Initiate Remand Proceedings,** the Brief in Support of the Motion, and a Certificate of Service covering the above captioned case which we request you file in your Court.

Sincerely,

Brandy Y. Robinson
Assistant Defender

BR/LAL
Enclosures

cc:   Genesee County Prosecutor
        Assignment Clerk
        Hon. Judith A. Fullerton
        Court of Appeals Clerk
        Mr. Phillip Charles Gibbs
        File

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

# STATE OF MICHIGAN

## IN THE GENESEE COUNTY CIRCUIT COURT

**PEOPLE OF THE STATE OF MICHIGAN**

                Plaintiff-Appellee,

-vs-

**PHILLIP CHARLES GIBBS**

                Defendant-Appellant.

_____/

**Court of Appeals No.** 306124

**Lower Court No.** 11-28140FC

**GENESEE COUNTY PROSECUTOR**
Attorney for Plaintiff-Appellee
_____

**BRANDY Y. ROBINSON (P66895)**
Attorney for Defendant-Appellant
_____

## MOTION FOR NEW TRIAL, RESENTINCING, AND TO INITIATE REMAND PROCEEDINGS

**STATE APPELLATE DEFENDER OFFICE**

BY:    **BRANDY Y. ROBINSON (P66895)**
        **Assistant Defender**
        3300 Penobscot Building
        645 Griswold
        Detroit, Michigan  48226
        (313) 256-9833

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

<div align="center">

**STATE OF MICHIGAN**

**IN THE GENESEE COUNTY CIRCUIT COURT**

</div>

**PEOPLE OF THE STATE OF MICHIGAN**

<div style="margin-left: 2em;">Plaintiff-Appellee,</div>

**Court of Appeals No.** 305939

**Lower Court No**. 11-28140FC

-vs-

**PHILLIP CHARLES GIBBS**

<div style="margin-left: 2em;">Defendant-Appellant.</div>

_____/

<div align="center">

**MOTION FOR NEW TRIAL, RESENTENCING AND TO INITIATE REMAND PROCEEDINGS**

</div>

Defendant-Appellant **PHILLIPS CHARLES GIBBS**, through his attorneys, the **STATE APPELLATE DEFENDER OFFICE**, by **BRANDY Y. ROBINSON**, respectfully moves for a new trial, resentencing, and to initiate remand proceedings and says in support:

1.     Mr. Gibbs makes two additional objections to his sentence and seeks to develop his claim that he was denied his right to a public trial. Trial counsel did not raise these issues at trial or sentencing, but guidelines objections may be made for the first time in a motion for resentencing. Alternatively, Mr. Gibbs argues that his trial counsel was ineffective for acquiescing to the trial errors, and for failing to challenge the illegal sentence. *See Brief in Support of Motion to Remand.*

2.     As to the scoring errors, Mr. Gibbs challenges PRV-5 and PRV-6, based in part upon the attached affidavit of counsel. Trial counsel interposed a timely objection to the scoring of OV-13.

3.     As to the public trial claim, Mr. Gibbs relies on the attached affidavits of members of his family to challenge (1) the Court's *de facto* policy of excluding members from the public during *voir dire* and (2) counsel's ineffectiveness for failing to ensure that Mr. Gibbs' family and other members of the public were not improperly pushed out of the courtroom.

<div align="center">2</div>

4.     The Court of Appeals has entered an order directing the Court to allow the Defendant to seek the relief requested herein, and to hold an evidentiary hearing on the closed courtroom issue.

**WHEREFORE**, Defendant-Appellant respectfully requests that this Honorable Court grant the instant motion and afford him an opportunity to (1) develop the record by taking testimony and evidence regarding the closure of the courtroom, (2) examine trial counsel's reasons for failing to object to this error, and (3) grant resentencing on the basis of his improperly scored guidelines under PRV-5 and PRV-6.

Respectfully submitted,

**STATE APPELLATE DEFENDER OFFICE**

BY:     _____

**BRANDY Y. ROBINSON (P66895)**
**Assistant Defender**
3300 Penobscot Building
645 Griswold
Detroit, Michigan  48226
(313) 256-9833

Date: July 2, 2012

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

**APPENDIX A**
**AFFIDAVITS OF GIBBS' FAMILY MEMBERS**

05/23/2012 13:01 FAX 8107324530          QTFATICC                                    ☑001

**STATE OF MICHIGAN**

**IN THE COURT OF APPEALS**

**PEOPLE OF THE STATE OF MICHIGAN**

             Plaintiff-Appellee

        **Court of Appeals No. 306124**

        **Lower Court No. 11-28140FC**

-vs-

**PHILLIP CHARLES GIBBS**

             Defendant-Appellant.

_____/

**AFFIDAVIT OF ELVERTA THERESA GIBBS**

STATE OF MICHIGAN   )
                  ) ss.
COUNTY OF GENESSEE)

Elverta Theresa Gibbs, being duly sworn, hereby deposes and says that:

1. I am the mother of Phillip Charles Gibbs, the defendant in the above-mentioned case.

2. I was present on June 28, 2011 in Judge Judith A. Fullerton's courtroom at the Genessee County Circuit Court, for the purpose of attending the trial of Mr. Gibbs and his co-defendant Tyrell Henderson.

3. Myself, my daughter, my son-in-law and other members of the public were prevented from entering the courtroom during jury selection in the case. After being turned away at the door, I waited in the hallway outside the courtroom.

4. I understand that at one point, I was listed as a possible witness in the case, but I do not understand why other members of my family and the co-defendant's family were denied access to the proceedings during jury selection.

5. Present with me was my daughter Seandra Davidson-Coleman and my son-in-law Courtney Jones.

6. The above information is true to the best of my knowledge and belief.

7. If called to testify at a hearing, my statements would be the same as they are outlined above.

                            *Elverta Gibbs*
                            **Elverta Theresa Gibbs**

Subscribed and sworn to before me
May 21, 2012

*Lisa Ann Lamarre*
Lisa Ann Lamarre
Notary Public, Wayne County, Michigan
My commission expires: 6/6/2018

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

05/23/2012 13:01 FAX 8107324530          QTFATICC                                    ☑002

## STATE OF MICHIGAN

### IN THE COURT OF APPEALS

**PEOPLE OF THE STATE OF MICHIGAN**

           Plaintiff-Appellee

-vs-

**PHILLIP CHARLES GIBBS**

           Defendant-Appellant.

**Court of Appeals No.** 306124

**Lower Court No.** 11-28140FC

_____/

### AFFIDAVIT OF COURTNEY JONES

STATE OF MICHIGAN   )
                ) ss,
COUNTY OF GENESSEE)

       Courtney Jones, being duly sworn, hereby deposes and says that:

1. I am the soon-to-be brother in law of Phillip Charles Gibbs, the defendant in the above-mentioned case.

2. I was present on June 28, 2011 in Judge Judith A. Fullerton's courtroom at the Genessee County Circuit Court to attend the trial of Mr. Gibbs and his co-defendant Tyrell Henderson.

3. I was told by a male official in Judge Fullerton's courtroom that since a jury was being picked, I could not enter and watch the proceedings. The sole reason given was that jury selection was in progress.

4. Upon leaving I sat on a bench that was located outside the courtroom and watched as some of the jurors left the courtroom.

5. Present with me were Seandra Davidson-Coleman and my mother-in-law Elverta Theresa Gibbs.

6. The above information is true to the best of my knowledge and belief.

7. I would swear to these facts if called to testify at a hearing.

                                  **Courtney Jones**

Subscribed and sworn to before me
May 21, 2012

Lisa Ann Lamarre
Notary Public, Wayne County, Michigan
My commission expires: 6/6/2018

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

STATE OF MICHIGAN

IN THE COURT OF APPEALS

**PEOPLE OF THE STATE OF MICHIGAN**

       Plaintiff-Appellee

-vs-

**PHILLIP CHARLES GIBBS**

       Defendant-Appellant

Court of Appeals No. 306124

Lower Court No. 11-28140FC

_____/

**AFFIDAVIT OF SEANDRA DAVIDSON-COLEMAN**

STATE OF MICHIGAN   )
                  ) ss.
COUNTY OF GENESSEE)

      **Seandra Davidson-Coleman**, being duly sworn, hereby deposes and says that:

1. I am the sister of Phillip Charles Gibbs, the defendant in the above-mentioned case.

2. I was present on June 28, 2011 in Judge Judith A. Fullerton's courtroom at the Genessee County Circuit Court to attend the trial of Mr. Gibbs and his co-defendant Tyrell Henderson.

3. I was told by a male person in Judge Fullerton's courtroom that I could not be present in the courtroom while the jury was being picked for Mr. Gibbs' case.

4. After being prevented from sitting inside the courtroom, I waited outside with other family members.

5. We eventually decided to leave the courthouse after being told that jury selection would take all day.

6. We were allowed to enter the courtroom the next day, but only after the jury had been picked.

7. Present with me was my mother Theresa Gibbs and Courtney Jones.

8. The above information is true to the best of my knowledge and belief.

9. If called to testify at a hearing, my statements would be the same as they are outlined above.

                                      _____
                                        Seandra Davidson-Coleman

Subscribed and sworn to before me
May 21, 2012

_____
Lisa Ann Lamarre
Notary Public, Wayne County, Michigan
My commission expires: 6/6/2018

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

**APPENDIX B
AFFIDAVIT OF COUNSEL**

STATE OF MICHIGAN

IN THE COURT OF APPEALS

**PEOPLE OF THE STATE OF MICHIGAN**

                  Plaintiff-Appellee,

-vs-

**PHILLIP CHARLES GIBBS**

                Defendant-Appellant.

      **Court of Appeals No.** 306124

      **Lower Court No.** 10-231624FC

_____/

**AFFIDAVIT OF COUNSEL / OFFER OF PROOF**

**BRANDY Y. ROBINSON** hereby states as follows:

1. I represent Mr. Gibbs on appeal from the above-referenced conviction.

2. In researching Mr. Gibbs' sentence for appeal, I discovered an inaccuracy in the Presentence Investigation Report regarding Mr. Gibbs' relationship to the criminal justice system at the time he committed the current offenses.

3. I recently contacted the Juvenile Records Department of the Family Court Division of the Genesee County Probate Court. I spoke by telephone with a clerk who informed me that her review of Mr. Gibbs' juvenile file showed no indication whatsoever that Mr. Gibbs had been placed on bond between adjudication and sentencing for entering without permission.

4. Assuming this information is correct, there was no basis for scoring points against Mr. Gibbs under Prior Record Variable 5.

5. Counsel is undertaking steps to obtain an official certification of Mr. Gibbs' no-bond status as a juvenile.

6. Once that certification is obtained, counsel will promptly file evidence thereof with the Court.

7. Additionally, if granted a hearing on Mr. Gibbs' claim that he was denied the right to a public trial, the undersigned counsel will proffer the testimony of, *inter alia*, Mr. Gibbs' mother, Elverta Gibbs, his Sister Seandra Davidson-Coleman, and his soon-to-be brother in law Courtney Jones. The substance of their proposed testimony appears in the attached Affidavits. Counsel will also seek evidence from court staff connected with Judge Fullerton's chambers to as to her policy on this subject as of the time of trial. Trial counsel will also have to be examined.

8. The foregoing statements are true to the best of my knowledge.

                            /s/Brandy Y. Robinson
                            _____
                            **BRANDY Y. ROBINSON (P66895)**

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

**APPENDIX C**
**Adjudication Order**

From:                                                    06/04/2012 12:48   #820 P.010/028

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

|  |  | PAGE  1 |
|---|---|---|
|  |  | JIS CODE: ODH |

| STATE OF MICHIGAN | ORDER OF ADJUDICATION | CASE NO. |
|---|---|---|
| JUDICIAL CIRCUIT - FAMILY DIVISION<br>GENESEE COUNTY | (DELINQUENCY PROCEEDINGS) | 10126888-DL |

Approved, SCAO

900 S. SAGINAW ST.
FLINT MI  48502                                      (810)2573510

| ORI<br>MI-250013J | CTN/TCN<br>see below | SID | DOB<br>11/27/1993 |
|---|---|---|---|

1. In the matter of   PHILLIP CHARLES GIBBS
   name(s), alias(es)   Petition #:  101122

2. Date of hearing: 08/03/2010      Judge/Referee: DAVID J. NEWBLATT        45306
                                                                    Bar No.

3. A petition has been filed in this matter and notice of hearing on the petition has
   been served as required by law.

4. The juvenile has appeared in court in person with parent(s), guardian, legal custodian,
   or guardian ad litem, and ☒ was represented by an attorney: CAT-KAREN BUNKER
                            ☐ waived representation by an attorney.

5. THE COURT FINDS: The following material allegations of the petition are sustained
   or dismissed:
   Petition 00101122    CTN 251080104101    CMP #000003485710

| Count | Plea | ADJUDICATED BY |  | DISMISSED BY* | ALLEGATIONS | CHARGE CODE(S)<br>MCL Citation/PACC Code |
|---|---|---|---|---|---|---|
|  |  | Court | Jury |  |  |  |
| 01 | A |  |  |  | B&E ILLEGAL ENT W/OUT PER | 750.115-A |

*For plea, insert 'A' for admission or 'NC' for nolo contendere. For dismissal, insert 'D' for dismissed by
court or 'NP' for dismissed by prosecutor/plaintiff.

☒ 6. A fingerprintable juvenile offense was committed pursuant to MCL 28.243 or MCL 28.727.
    Fingerprints ☒ have        ☐ have not      been taken.

IT IS ORDERED:

☒ 12. The matter is adjourned for    ☒ dispositional hearing.    ☐ additional testimony.
                                      ☐ other good cause.

☒ 13. The next hearing is set for   09/07/2010 AT 8:30 AM
                                    Date, time, and place

☒ 14. Pending disposition, the juvenile shall be under the supervision of this court and shall
    ☒ a. remain in the care and custody of HIS MOTHER
         and be subject to the reasonable and lawful commands of the parent(s), guardian, or
         legal custodian and those terms and conditions required by the probation officer.
    ☐ b. be placed with the Michigan Department of Human Services for care and supervision,
         subject to the rules and conditions of foster care. Parenting time shall be as approved
         by the probation officer. The parent(s) shall reimburse the Child Care Fund for costs
         of placement.

(SEE NEXT PAGE)

Do not write below this line - For court use only

FILED

2010 AUG -3 P 2: 37

FAMILY DIVISION

NOTE: If the juvenile had been previously removed from the home, was then returned to the home, and is being
removed again through this order, contrary to the welfare and reasonable efforts findings must be made even though
the findings had been made at a prior hearing.

JC59 (09/08) ORDER OF ADJUDICATION (DELINQUENCY PROCEEDINGS)    MCL 712A.18, MCR 3.942

From:                                              06/04/2012 12:48      #820 P.011/028

Approved, SCAO

| STATE OF MICHIGAN | ORDER OF ADJUDICATION | CASE NO. |
| JUDICIAL CIRCUIT -    FAMILY DIVISION | (DELINQUENCY PROCEEDINGS) | 10126888-DL |
| GENESEE COUNTY | | |

900 S. SAGINAW ST.                                  (810)2573510
FLINT MI  48502

In the matter of   PHILLIP CHARLES GIBBS

☐  c.  be referred to the Michigan Department of Human Services for placement and care
        pursuant to MCL 400.55(h).

☐  d.  be placed at _____
        Parenting time shall be as approved by the probation officer.  The parent(s) shall
        reimburse the Child Care Fund for the costs of placement.

☐  e.  cooperate with and participate in services, evaluations, tests, and the dispositional
        investigation as requested by the probation officer.  Parent(s) shall pay the costs of
        professional testing and evaluations.

☐  f.  cooperate with an evaluation to determine the need for psychiatric or psychological
        treatment as prescribed by  MCL 712A.181.

☒ 16.  Other:
        THE COURT HAS ACCEPTED THE JUVENILE'S GUILTY PLEA TO THE AMENDED CHARGE OF
        ILLEGAL ENTRY WITHOUT OWNER'S PERMISSION, BASED ON THE JUVENILE'S TESTIMONY.
        AS PART OF THE PLEA AGREEMENT, THE JUVENILE WILL PROVIDE TRUTHFUL TESTIMONY
        TO THE AUTHORITIES.
        THE JUVENILE'S MOTHER HAS GIVEN SUPPORT FOR THIS PLEA.

        DISPOSITION HAS BEEN ADJOURNED TO ALLOW THE CASEWORKER AND THE JUVENILE TO
        CREATE A SERVICE PLAN, INCLUDING SUBSTANCE ABUSE TREATMENT AND AN EDUCATIONAL
        PLAN.
        THE JUVENILE WILL NOT HAVE ANY CONTACT WITH THE CO-DEFENDANT IN THIS MATTER
        AND THE JUVENILE WILL BE PLACED UNDER HOUSE ARREST.

Recommended by: _____
                     Referee Signature

_____                                              45306
Date                          JUDGE  DAVID J. NEWBLATT          Bar No.

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

JC59 (09/08) **ORDER OF ADJUDICATION (DELINQUENCY PROCEEDINGS)**   MCL 712A.18, MCR 3.942

                                                        LAST PAGE

From:                                                    06/04/2012 12:49    #820 P.012/028

| STATE OF MICHIGAN | | File No. 10126888-DL |
| 7th Judicial Circuit - Family Division | DETENTION ORDER | |
| Genesee County | | Petn. No. 101122 |

In the matter of : Phillip Gibbs          DOB: 11-27-93

Date of hearing: 8-3-10          Judge/Referee NewBlatt

## THE COURT FINDS:

The above named juvenile comes within the provisions of the Juvenile Code of the State of Michigan MCL 712A.

☐ The above named juvenile has been previously adjudicated as a status offender and made subject to a juvenile court order; has received adequate and fair warning in writing and on the court record; has received in the alleged violation of the court order, the full range of due process enumerated in the re: Gault decision; has been adjudicated for violation of a valid court order in a full court hearing; and there is no less restrictive placement appropriate to the needs of the juvenile and the community.

## IT IS ORDERED: That The

☒ Genesee Valley Regional Detention Center, Flint Michigan
☐ Oakland County Children's Village, Pontiac Michigan
☐ Saginaw County Juvenile Detention Center, Saginaw Michigan
☐ _____

is authorized to:
☐ Temporarily receive and hold the above name juvenile within their facility pending other placement appropriate to the juveniles needs and further order of the court;
☒ Release the above name juvenile from their facility.

## IT IS FURTHER ORDERED: That The

☐ Genesee Valley Regional Detention Center, Flint Michigan
☐ Oakland County Children's Village, Pontiac Michigan
☐ Saginaw County Juvenile Detention Center, Saginaw Michigan
☐ _____

may seek necessary emergency and routine medical and dental care, and necessary clothing for the above named juvenile.  Payment for medical and dental care , as well as, necessary clothing is the responsibly of the juvenile's parents.

_____        _____        _____        8/3/10
Referee                Date                   Family Division Judge          Date

FILED

2010 AUG -3 P 2: 37

7TH JUDICIAL CIRCL
FAMILY DIVISION

White - Court File
Yellow - GVRC, OCCV, SCJDC, Other Facility
Pink - Parent
cc: Reimbursement

h:forms\detnord.doc  GC3029

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

**APPENDIX D**
**Court of Appeals Order**

25680 T
B4R

# Court of Appeals, State of Michigan

## ORDER

People of MI v Phillip Charles Gibbs

Docket No. 306124

LC No. 11-028140-FC

RECEIVED
JUN 21 2012
APPELLATE DEFENDER OFFICE

Pat M. Donofrio
Presiding Judge

E. Thomas Fitzgerald

Elizabeth L. Gleicher

Judges

The Court orders that the motion to remand pursuant to MCR 7.211(C)(1) is GRANTED and the matter is remanded to the trial court so that defendant-appellant may file a motion for resentencing regarding Prior Record Variables 5 and 6. Defendant-appellant may also move for a new trial and the trial court shall conduct an evidentiary hearing based on the closure of the courtroom during voir dire. Proceedings on remand are limited to the issues as raised in the motion to remand.

Defendant-appellant is to file with this Court a copy of any motion and any supporting brief filed in the trial court within 14 days of the Clerk's certification of this order. The trial court is to hear and decide the matter within 56 days of the Clerk's certification of this order. Defendant-appellant must also file with the Clerk of this Court copies of all orders entered on remand within 14 days after entry.

The trial court is to make findings of fact and a determination on the record. The trial court is to cause a transcript of any hearing on remand to be prepared and filed within 21 days after completion of the proceedings.

Defendant-appellant may file a supplemental brief pertaining to the issues raised on remand within 21 days after entry of the trial court's order deciding the matter or 21 days after the transcript of the hearing on remand is filed, whichever is later. Plaintiff-appellee may file a supplemental brief in response.

This Court retains jurisdiction in the cause, and the time for proceeding with the appeal in this Court begins upon issuance of an order in the trial court that finally disposes of the remand proceedings. Nevertheless, the time for proceeding with the appeal begins 14 days from the date of certification of this order if remand pleadings are not filed in the trial court within the 14-day period.

_____
Presiding Judge

A true copy entered and certified by Larry S. Royster, Chief Clerk, on



**JUN 20 2012**
_____
Date


Chief Clerk

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

**STATE OF MICHIGAN**

**IN THE GENESEE COUNTY CIRCUIT COURT**

**PEOPLE OF THE STATE OF MICHIGAN**                    **Lower Court No.** 11-28140FC

                    Plaintiff-Appellee,

                                                                                    **Hon. Judith A. Fullerton**

-vs-

**PHILLIP CHARLES GIBBS**

                    Defendant-Appellant.

_____/

**GENESEE COUNTY PROSECUTOR**
Attorney for Plaintiff-Appellee
_____

**BRANDY Y. ROBINSON (P66895)**
Attorney for Defendant-Appellant
_____


**BRIEF IN SUPPORT OF
MOTION FOR A NEW TRIAL, RESENTENCING, AND TO INITIATE REMAND
PROCEEDINGS**

CERTIFICATE OF SERVICE


**STATE APPELLATE DEFENDER OFFICE**


**BY:    BRANDY Y. ROBINSON (P66895)**
        **Assistant Defender**
        3300 Penobscot Building
        645 Griswold
        Detroit, MI 48226
        (313) 256-9833

STATE OF MICHIGAN

IN THE GENESEE COUNTY CIRCUIT COURT

**PEOPLE OF THE STATE OF MICHIGAN**                    Lower Court No. 11-28140FC

                        Plaintiff-Appellee,                    **Hon. Judith A. Fullerton**

-vs-

**PHILLIP CHARLES GIBBS**

                        Defendant-Appellant.
_____/

### CERTIFICATE OF SERVICE

STATE OF MICHIGAN            )
                                           ) ss.
COUNTY OF WAYNE           )

    **BRANDY ROBINSON**, being first duly sworn, deposes and says that on July 2, 2012, she filed with this Court the following:

### MOTION FOR A NEW TRIAL, RESENTENCING, AND TO INITIATE REMAND PROCEEDINGS

### BRIEF IN SUPPORT

CERTIFICATE OF SERVICE

and she e-filed one (1) copy of same with:

**GENESEE COUNTY PROSECUTOR**          Court of Appeals
Courthouse                                             Michigan Court of Appeals
900 South Saginaw Street                        Suite 800
Flint, MI 48502                                        201 West Big Beaver
                                                              Troy, MI 48084

BRANDY Y. ROBINSON

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

# <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES**...................................................................................i

**STATEMENT OF JURISDICTION** ................................................................iv

**STATEMENT OF QUESTIONS PRESENTED** ..........................................v

**STATEMENT OF FACTS** .............................................................................. 1

I.   **MR. GIBBS' SIXTH AMENDMENT RIGHT TO A PUBLIC TRIAL WAS VIOLATED BY THE CLOSING OF THE COURTROOM AND THE EXCLUSION OF MEMBERS OF HIS FAMILY FROM JURY SELECTION.**.................................... 8

II.  **BECAUSE THERE ARE THREE OUTCOME-DETERMINATIVE SCORING ERRORS IN THE SENTENCING GUIDELINES, MR. GIBBS IS ENTITLED TO A RESENTENCING.** ................................................................... 12

**SUMMARY AND RELIEF AND REQUEST FOR ORAL ARGUMENT** ......................... 20

BYR*Brief in Support of TCMOT for Resentencing and New Trial.doc*25680

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

# TABLE OF AUTHORITIES

## CASES

*Combs* v *Coyle*, 205 F3d 269 (6th Cir 2000) ............................................................12

*People* v *Dendel*, 481 Mich 114 (2008) ...............................................................8

*Feld* v *Robert & Charles Beauty Salon*, 435 Mich 352 (1990) ....................20

*Gannet Co* v *DePasquale*, 443 US 368 (1979) ......................................................9

*Hoerstman Gen Contracting, Inc* v *Hahn*, 474 Mich 66 (2006) ....................20

*In re MKK*, 286 Mich App 546 (2009) .........................................................18

*Miller* v *Allstate Ins. Co.*, 481 Mich 601 (2008) ......................................20

*Neder* v *United States*, 527 US 1 (1999) ...............................................11

*In Re Oliver*, 333 US 257 (1948) .................................................................8

*People* v *Anderson*, 446 Mich 392 (1994) ................................................11

*People* v *Cannon*, 481 Mich 152 (2008) ..................................................23

*People* v *Cannon*, 481 Mich 152 (2008) ..................................................22

*People* v *Carines*, 460 Mich 750 (1999) ..............................................8, 11

*People* v *Collier*, 426 Mich 23 (1986)……………………………………12; 13

*People* v *Dye*, 431 Mich 58 (1988) ............................................................12

*People* v *Endres*, 269 Mich 414 (2006) ...................................................18

*People* v *Francisco*, 474 Mich 82 ...........................................................15

*People* v *Harmon*, 248 Mich App 522 (2001) ........................................22

*People* v *Hegwood*, 465 Mich 432 (2001) .............................................21

*People* v *Johnson*, 293 Mich App 79 (2011) ........................................18

*People* v *Koonce*, 466 Mich 515 (2002) ................................................18

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

*People* v *Lee*, 391 Mich 618 (1974) ........................................................................................15

*People* v *Malkowski*, 385 Mich 244 (1971) ..............................................................................15

*People* v *McPherson*, 263 Mich App 124 (2004) ......................................................................12

*People* v *Morson*, 471 Mich 248 (2004) ...................................................................................15

*People* v *Stone*, 195 Mich App 600 (1992) ...............................................................................20

*Presley* v *Georgia*, 558 US __, 130 S Ct 721 (2010) ...........................................................8, 9, 10

*Press-Enterprise Co* v *Superior Court*, 478 US 1 (1980) ...........................................................9

*Salem* v *Jenkins*, 414 F Supp 2d 687 (ED Mich 2006) ...........................................................10

*In re TD*, __ Mich App __ (May 26; 2011) (Docket No. 294716) ...........................................19

*Taylor* v *Michigan Public Utilities Comm.*, 217 Mich 400 (1922) ...........................................20

*Tellin ex rel Hinga* v *Forsyth Tp.*, 291 Mich App 692 (2011) ................................................18

*Townsend* v *Burke*, 334 US 736 (1948) ...................................................................................15

*US Fidelity Insurance & Guaranty Co* v *Michigan Catastrophic Claims Ass'n*, 482 Mich 414 (2008) ...........18

*United States* v *Marcus*, 130 S Ct 2159 (2010) .......................................................................11

*Waller* v *Georgia*, 467 US 39 (1984).................................................................................8, 9, 11

*Washington* v *Recuenco*, 548 US 212 (2006) .........................................................................11

**CONSTITUTIONS, STATUTES, COURT RULES**

MCL 712A.1(2) ........................................................................................................................19

MCL 712A.1 *et seq* ...................................................................................................................19

MCL 712A.2(a)(1) ...................................................................................................................21

MCL 750.529 ............................................................................................................................1

MCL 750.530 ............................................................................................................................1

MCL 777.40 .............................................................................................................................23

MCL 777.43(1) ……………………………………………………………………… 22; 23; 24

MCL 777.51; 777.52 .............................................................................................. 19

MCL 777.53 .......................................................................................................... 22

MCL 777.53; 777.54 .............................................................................................. 19

MCL 777.55(1) ……………………………………………………………………..   16; 19

MCL 777.55(3) ...................................................................................................... 20

MCL 777.56(1) …………………………………………………………… 17; 18; 20

MCL 777.57 .......................................................................................................... 23

MCR 2.613(A) ...................................................................................................... 15

US Const; amend VI .............................................................................................. 8

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

## <u>STATEMENT OF JURISDICTION</u>

Defendant-Appellant was convicted in the Genesee County Circuit Court by jury trial, and a Judgment of Sentence was entered on August 15, 2011.  A Claim of Appeal was filed on September 16, 2011 by this Court pursuant to the indigent defendant's request for the appointment of appellate counsel dated September 6, 2011, as authorized by MCR 6.425(F)(3).  Defendant-Appellant filed an appeal as of right as provided for by Mich Const 1963, art 1, §20, pursuant to MCL 600.308(1); MCL 770.3; MCR 7.203(A), MCR 7.204(A)(2).

On June 20, 2012, the Court of Appeals remanded the matter to this Court for an evidentiary hearing and for the Defendant to move for a new trial and for resentencing.

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

## <u>STATEMENT OF QUESTIONS PRESENTED</u>

I.  **WAS** MR. GIBBS' SIXTH AMENDMENT RIGHT TO A PUBLIC TRIAL VIOLATED BY THE CLOSING OF THE COURTROOM AND THE EXCLUSION OF MEMBERS OF HIS FAMILY FROM JURY SELECTION?

<div align="center">Defendant-Appellant answers, "Yes".</div>

II.  BECAUSE THERE ARE THREE OUTCOME-DETERMINATIVE SCORING ERRORS IN THE SENTENCING GUIDELINES, IS MR. GIBBS ENTITLED TO A RESENTENCING?

<div align="center">Defendant-Appellant answers, "Yes".</div>

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

## STATEMENT OF FACTS

On October 26, 2011, the lives of Defendant-Appellant Phillip Charles Gibbs, two Flint pawn-shop owners, and one of the shop's employees were changed forever when Mr. Gibbs – a mere sixteen years old at the time – entered the pawn shop with co-defendant Tyrell Henderson and participated in a robbery.  Gibbs was unarmed during the crime and insisted he knew nothing of Henderson's plans.  Instead, he acted under the very-real stress of knowing that his out-of-control co-defendant might turn the gun on him for failing to assist.

                    *             *             *             *             *

It was undisputed that Mr. Gibbs was the more passive actor during the robbery, which was recorded on the store's surveillance system.  **Costas Anagnostopoulos**, the owner of Flint-based Wholesale 4 U,[1] testified that around 4:00 p.m. on October 26th, Mr. Henderson entered the store alone and purchased a video game. [Trial 6/29/11, p 252-253].  Henderson later returned, this time with Mr. Gibbs, and claimed the game was not working properly. Mr. Anagnostopoulos directed his employee, Jeremy Kassing, to troubleshoot the problem on the store's Xbox game system.  In the meantime, Mr. Anagnostopoulos brought over a power supply to aid with the assessment.  It was then that Mr. Henderson hit Mr. Anagnostopoulos suddenly with a gun on the back of his neck, causing him to nearly fall to the ground.   Mr. Henderson was pointing the gun at Mr. Anagnostopoulos and ordered him to sit on the floor.  Mr. Henderson then demanded and took Mr. Anagnostopoulos' rings, neck jewelry, wallet, and money at gunpoint. [Trial 6/29/11, p 258-263].  He also ordered Mr. Anagnostopoulos to open the cash register.  [Trial 6/29/11, p 263].  In reciting what happened next, Mr. Anagnostopoulos began to testify not based on his knowledge or memory,

---

[1] The witness testified that the shop was also known as Wholesale 2 U.  Despite having a reputation otherwise, Mr. Anagnostopoulos was adamant that his store was not at all functioning as a pawn shop.  [Trial 6/29/11 245].

1

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

but by narrating the contents of the surveillance video in response to questions asked by the prosecutor.  [Trial 6/30/11, p 5-8].

Mr. Anagnostopoulos noted that Mr. Henderson took him to an office inside the store and ordered him to open up the safe.  Mr. Henderson was calling Mr. Anagnostopoulos racial slurs and threatening to shoot and kill him, and then hit him with the gun again on the side of his face.[2]  [Trial 6/30/11, p 9, 14-15].  Mr. Henderson directed Mr. Anagnostopoulos to hand him everything from inside the safe, including a gun he kept there.  [Trial 6/30/11, p 23].  Some of the other stolen goods included paper money, gold coins, silver dollars, silver certificates, foreign currency, three Rolex watches, and a gold Fossil watch.  [6/30/11 Trial, p 39-44].

Mr. Henderson and Mr. Gibbs ultimately left the store and Mr. Anagnostopoulos, his wife, and Mr. Kassing followed to determine where the two men went.  [Trial 6/30/11, p 27-29].  The police called and eventually arrived on the scene in response to receiving a silent panic alert from inside the store from Mr. Kassing.  [Trial 6/30/11, p 29-31].

Mr. Anagnostopoulos was able to pick out Mr. Gibbs in a subsequent corporeal line-up, but could not identify Mr. Henderson.[3]  [Trial 6/30/11, p 32-35].  According to him, his watches and Visa debit card was recovered, but several items taken during the robbery were never returned to him.  [Trial 6/30/11, p 34-37].

Nancy **Anagnostopoulos** was a joint owner of the Wholesale 4 U business with her husband Costas.  [Trial 6/29/11, p 8-9].  She arrived at the store around 5:25pm on the day of the robbery, thirty minutes before closing.  Her husband and Jeremy Kassing were present, and she sat down and down began reading a book [Trial 6/29/11, p 41-42].  Like her husband, Mrs.

---

[2] Part of Mr. Anagnostopoulos' ear was cut from being hit with the gun, requiring four stitches.  He also claimed to have more frequent headaches as a result. [Trial 6/30/11, p 45-46].
[3] Mr. Anagnostopoulos was able to identify both men at trial. [Trial 6/29/11, p 251-252].

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

Anagnostopoulos recounted what happened next by walking the prosecutor and jury through the contents of the video, rather than testifying from her memory.

As her husband and Mr. Kassing worked to troubleshoot the video game, Mrs. Anagnostopoulos heard a loud crack. She stood up and saw her husband going down on the floor, and Mr. Gibbs approached her. He jerked the necklaces from her neck and tried to remove Mrs. Anagnostopoulos' ring from her finger.[4] When he could not remove the ring himself, he directed Mrs. Anagnostopoulos to either do so, or risk him cutting it off. Mr. Gibbs reached into all of Mrs. Anagnostopoulos' pockets and took her identification, ATM card, concealed pistol license, and money. [Trial 6/29/11, p 62-65, 94]. Mr. Henderson later double checked Mr. Gibbs' work in this regard. [Trial l6/29/11, p 117]. Mr. Gibbs never had possession of a gun, knife, or any other weapon and never threatened to beat, stab, shoot, or otherwise injure her, her husband, or Mr. Kassing. [Trial 6/29/11, p 106-110].

Mrs. Anagnostopoulos could see the gun in Mr. Henderson's hand, and heard him yelling racial slurs and threats at her husband. [Trial 6/29/11, p 66-67, 121-124]. When Henderson led Mr. Anagnostopoulos into the back room, Mr. Gibbs began removing money from the cash register. He also took an iPod, and according to Mrs. Anagnostopoulos, Mr. Gibbs retrieved several laptops from the showcase because Mr. Henderson had instructed him to do so. Mr. Gibbs was hesitant to go behind the showcase to obtain more merchandise, so Mrs. Anagnostopoulos volunteered to do so for him. [Trial 6/29/11, p 67-70]. Mr. Gibbs did not say much else to her, but he yelled to Mr. Henderson to "come on" and that they had three minutes. [Trial 6/29/11, p 71-72]. At that point (but only after double-checking whether Mr. Gibbs properly emptied the register), Mr. Henderson picked up a duffle bag, threw it at Mr. Gibbs, and yelled at him to put the laptops inside. [Trial 6/29/11, p 67, 73-74]. Mr. Gibbs "just did it," according to Mrs. Anagnostopoulos. Mr.

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

Henderson then directed Mr. Gibbs to wait before leaving, as they couldn't exit with the items so conspicuously.[5]  Mr. Henderson then emptied Mrs. Anagnostopoulos' purse. [Trial 6/29/11, p 74]. The two men left and Mrs. Anagnostopoulos, her husband and Mr. Kassing conveyed information about the event to the police.  [Trial 6/29/11, p 85, 89-93].  In separate live-lineups conducted later, Mrs. Anagnostopoulos selected Mr. Gibbs and Mr. Henderson as her assailants.  [Trial 6/29/11, p 99-104].  She also identified the men in court.

**Jeremy Kassing** added that the store had a hand-held silent panic alarm system, and he pressed the device nine times during the robbery to alert the police.  [Trial 6/30/11, p 78-79].  Mr. Kassing identified Mr. Gibbs as one of his assailants both during a lineup and at trial.  [Trial 6/30/11, p 79-80, 101-103].  Like the other two witnesses, Mr. Kassing confirmed that only Mr. Henderson had a gun during the incident.  Additionally, it was only Mr. Henderson who demanded that Mr. Kassing empty his pockets. [Trial 6/30/11, p 81-82, 97].  Mr. Kassing perceived Mr. Henderson as the leader of the robbery, inasmuch as he was telling Mr. Gibbs what to do.  [Trial 6/30/11, p 115-116].

**Officer Michael Ross** of the Flint Police Department responded to the radio dispatch regarding the incident.  [Trial 6/29/11, p 149, 151].  He took descriptions of the suspects, watched a portion of the surveillance video, and looked for potential fingerprints that could be lifted from the scene.  [Trial 6/26/11, p 154-155, 157-159].

After speaking with Officer Ross and watching the surveillance video, **Michele Champion** (then an identification technician for the Flint Police Department), processed a video game, a countertop, the safe, and a glass display cases inside the shop in an effort to locate fingerprints

---

[4]  Mrs. Anagnostopoulos claimed to suffer whiplash from the snatching incident.  [Trial 6/29/11, p 94].

[5]  Jeremy Kassing recalled this sequence of events similarly, noting that Mr. Henderson told Mr. Gibbs he couldn't look so suspicious, and then went back and found another bag.  [Trial 6/30/11, p 93].

[Trial 6/29/11, p 183, 187-190, 206-207]. She then submitted the prints for further identification through the Automated Fingerprint Identification System (AFIS), a national database. [Trial 6/29/11, p 197-198]. **Mary Martin**, an AFIS employee and sworn expert in fingerprint identification and comparison, then testified that one of the prints recovered matched Mr. Gibbs' left ring finger, while another matched Mr. Henderson's left ring finger. She also determined that one of the prints belonged to Costas Anagnostopoulos. [Trial 6/29/11, p 230-233]. **Phillip Thick**, another AFIS employee and fingerprint expert, added that a separate print recovered from the scene matched Mr. Gibbs' left thumb. [Trial 7/6/11, p 8, 16, 23-24].

**Sergeant Shawn Ellis** testified as the officer in charge of the investigation. [Trial 6/30/11, p 143]. After receiving the AFIS report, Sergeant Ellis followed-up with Mr. Gibbs, who turned himself in. He obtained consent from Mr. Gibbs' mother to search her house, and there the officer recovered, *inter alia*, (1) a Ziploc bag with miscellaneous jewelry, (2) a Sam's Club card bearing Nancy Anagnostopoulos' name and picture, (3) three Rolexes and a Fossil watch, and (4) coins and foreign currency. [Trial 6/30/11, p 152-153, 156-161].

Sergeant Ellis obtained a statement from Mr. Gibbs after he voluntarily surrendered. He claimed that Mr. Gibbs waived his *Miranda* rights and that the statement was recorded, although he was unable to produce the recording at the time of trial. [Trial 6/30/11, p 203, 211-212]. According to Sergeant Ellis, Mr. Gibbs said he and Mr. Henderson went to the pawn shop to try and sell some jewelry. They were trying to raise money to buy marijuana, but were told the jewelry was fake. [Trial 6/30/11, p 212]. Mr. Henderson then bought a video game for them to play and the two men left the store. [Trial 7/6/11, p 34]. Henderson changed his mind and decided to return the game, and Mr. Gibbs accompanied him back to the pawn shop. Mr. Gibbs did not know that Henderson was going to rob the place, but once inside, Henderson pulled out the handgun, hit the store owner with it, and ordered Mr. Gibbs to take Mrs. Anagnostopoulos' cell phone and jewelry along with laptops

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

and other items.  [Trial 7/6/11, p 34-35].  Mr. Gibbs noted that Mrs. Anagnostopoulos offered to help him and ultimately did so.  He acknowledged carrying away items from the store and said they drove around for thirty minutes and eventually ended up at Mr. Gibbs' house.  Mr. Henderson said he would pay Mr. Gibbs $100 to keep the items, but Mr. Gibbs was never paid and Mr. Henderson never came back to pick up anything he had left.  Amongst the items police recovered from Mr. Gibbs was a Pittsburgh Pirates hat that he said belonged to Mr. Henderson. [Trial 7/6/11, p 36-37].

Lastly, **Phillip Gibbs** testified in his own defense.  He was sixteen years old on the day of the robbery.  [Trial 7/6/11, p 87-88].  He acknowledged being in the store earlier in the day in an effort to sell Mr. Henderson's jewelry in exchange for money for marijuana.  [Trial 7/6/11, p 90-91].  After learning that the jewelry had no value, he informed Mr. Henderson of that and the two men returned to the store to buy a video game instead.  Mr. Gibbs went back to the store a third time with Henderson, who intended to seek a refund.  As Mr. Anagnostopoulos and Mr. Kassing plugged up the video game for testing, Mr. Gibbs heard a smacking / clapping noise and saw Mr. Anagnostopoulos falling to the floor.  [Trial 7/6/11, p 91-94].  Mr. Gibbs then saw Mr. Henderson with a large gun in his hand, and was startled when he realized Henderson had hit Mr. Anagnostopoulos with the gun.  [Trial 7/6/11, p 95].  Mr. Gibbs knew what Mr. Henderson was doing was wrong, but he complied with his orders to retrieve items from Nancy.  This was because he was hoping not to be injured himself, as he was afraid of Mr. Henderson's gun.  [Trial 7/6/11, p 96].  Accordingly, he took the money from the cash register and complied with the order to take the laptops from the showcase even though he really wanted no part of the robbery.  Although Mr. Gibbs did not run when Mr. Henderson was out of sight, he was thinking to himself that he hoped Mr. Henderson would not hurt anybody.  [Trial 7/6/11, p 97-101].  Mr. Henderson emerged from the back and checked the cash register again, then threw a duffle bag on the floor with directions for Mr. Gibbs to fill it with laptops.  Moreover, he called Mr. Gibbs dumb or stupid for leaving the

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

store with the items exposed, and retrieved Mrs. Anagnostopoulos' purse to carry the gun and some of the laptops. [Trial 7/6/11, p 101-103]. Consistent with his police statement, Mr. Gibbs indicated that he was taken home and agreed to hide the goods at his house after being pressured by Mr. Henderson. [Trial 7/6/11, p 106-107].

Ultimately, a Genesee County jury refused to hold Mr. Gibbs accountable for the weapon Mr. Henderson used to effectuate the crime. Nevertheless, Mr. Gibbs was still convicted of two counts of armed robbery,[6] one count of unarmed robbery,[7] and one count of conspiracy to commit armed robbery[8] on July 2, 2011 following a five-day trial before the Honorable Judith A. Fullerton. [Trial 7/7/11, p 59-60].

At sentencing, trial counsel agreed to the scoring of the prior record variables, but challenged the points assessed against Mr. Gibbs for OV 4 and OV 13. [Sentence 8/15/11, p 9-18]. Notwithstanding his relatively lesser culpability, minimal past, and youthful status, Judge Fullerton ordered Mr. Gibbs to serve concurrent sentences at the very top of his guidelines of (1) 17.5 years to 30 years imprisonment for the armed robbery and conspiracy charges, and (2) 100 months to 15 years imprisonment for unarmed robbery charge. [Sentence 8/15/11, p 25-26]. The Court of Appeals remanded this case to allow Mr. Gibbs to file a motion for a new trial and for resentencing, and for an evidentiary hearing on June 20, 2012. *Court of Appeals Order, Appendix D.* Presently incarcerated, this is Mr. Gibbs' motion to initiate remand proceedings in accordance with the Court of Appeals' order.

---

[6] MCL 750.529.
[7] MCL 750.530.
[8] 750.157a.

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

# ARGUMENT

**I.    MR. GIBBS' SIXTH AMENDMENT RIGHT TO A PUBLIC TRIAL WAS VIOLATED BY THE CLOSING OF THE COURTROOM AND THE EXCLUSION OF MEMBERS OF HIS FAMILY FROM JURY SELECTION.**

The Sixth Amendment directs that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy *and public trial. . . .*"  US Const; Am VI (emphasis added).  This right applies to state prosecutions under the Fourteenth Amendment.  *In Re Oliver*, 333 US 257, 273 (1948).  The policy considerations underlying the right to a public trial are compelling: "The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions. . . ." *Waller v Georgia,* 467 US 39, 46 (1984) (quoting *In re Oliver*, *supra* at 270, n 25).

In a recent *per curiam* decision, the United States Supreme Court noted unequivocally that the right to an open courtroom applies to the jury selection phase of the trial and, in particular, the examination of prospective jurors.  *Presley v Georgia,* 558 US __; 130 S Ct 721, 725 (2010).  This holding does not create a new right; it simply re-affirms what the Court recognized 28 years ago in *Waller v Georgia, supra.*[9]  The beneficiary of the right to a public trial is both the accused and the public-at-large.  The right is grounded in the Sixth Amendment, *Gannet Co v DePasquale,* 443 US 368, 380 (1979), as well as the First Amendment.  *See Press-Enterprise Co v Superior Court,* 478 US 1 (1980).

*Presley* reminds us that the selection of a jury is itself a matter of importance, "not simply to the adversaries, but to the criminal justice system."  *Presley, supra* at 724-25 (quoting *Press-Enterprise Co, supra* at 505.)  The *Presley* majority used strong language, declaring that under the Court's "clear

---

[9] Among the values furthered by the public trial guarantee are: (1) to ensure a fair trial; (2) to remind the prosecutor and judge of their responsibility to the accused and the importance of their functions; (3) to encourage witnesses to come forward; and (4) to discourage perjury. *Waller, supra* at 46-47.

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

precedents," it was "so well settled that the Sixth Amendment right extends to jury voir dire that this Court may proceed by summary disposition." *Id.* at 722–24. The tenor of the opinion demonstrates the Court's frustration with repeated failures to abide by its holdings.

*Presley* reemphasized that "[t]rial courts are obligated to take every reasonable measure to accommodate public attendance at criminal trials," including at jury selection. *Id.* at 724. It is apparent from the Court's discussion that the first and foremost "obligation" is the duty to ensure the courtroom is open and not unduly restricted by staff or court officers. Furthermore, given the purposes of the public trial right articulated in *Waller*, it follows that the "integrity and public reputation of the judicial proceedings" is damaged when jury selection is closed to the public.

Here, the record is unclear as to whether the Court knew its staff closed off the courtroom during *voir dire*. The Court mentions at the very beginning that "if any spectators would like to come in they're welcome,"[10] yet affidavits submitted by several members of Defendant-Appellant's family suggest that court personnel told them exactly the opposite. Mr. Gibbs' mother, sister, and brother-in-law have all attested that they, members of the co-Defendant's family, and other members of the public were prevented from entering the courtroom during jury selection. *Affidavits, Appendix A.* Although these statements are not a part of the existing record, one of the purposes of the remand hearings is to afford Mr. Gibbs an opportunity to further develop the issue by taking testimony. If it turns out to be true that access was restricted based solely on the need to conduct *voir dire, Presley* indicates that reasonable alternatives had to be considered even if not advanced by the parties. *Presley, supra* at 725. Acceptable options could have included "reserving one or more rows for the public; dividing the jury venire panel to reduce courtroom congestion; or instructing prospective jurors not to engage or interact with audience members." *Id.* at 725.

---

[10] [Trial 6/28/11, p 4].

Although there was no specific objection to the courtroom closure, the US Supreme Court has noted that the lack of a complete objection has no bearing on the issue of whether the public trial right has been violated: "The public has a right to be present *whether or not any party has asserted the right.*" *Presley, supra* at 724-25 (emphasis added). This language places the responsibility for ensuring the right to a public trial firmly at the feet of the trial judge, not the defendant. For example, in *Salem v Jenkins,* 414 F Supp 2d 687, 696 (ED Mich 2006) the district court held that "the Michigan Court of Appeals' decision that counsel failed to preserve this issue was based on the incorrect belief that *Waller* required Petitioner's attorney to advance specific objections." To the contrary, it is not necessarily incumbent upon the defendant to contest a closed courtroom; rather, it is the onus of the trial court to ensure the public is granted access to a trial, thus preserving not only the defendant's right, but also the rights of the public-at-large. *Presley, supra* at 721. Furthermore, the public has a right of access to criminal trials that may not be waived. *Presley* was decided as a Sixth Amendment case, but the Supreme Court reiterated that the right to a public trial is also guaranteed by the First Amendment: "The Court has further held that the public trial right extends beyond the accused and can be invoked under the First Amendment. This requirement, too, is binding on the States." *Presley, supra* at 723.

Although the Court of Appeals has held that "the failure to timely assert the right to a public trial forecloses the later grant of relief," *People v Vaughn,* 291 Mich App 183 (2010), that assessment is not binding inasmuch as review of the issue is pending before the Michigan Supreme Court. *People v Vaughn*, 490 Mich 887 (2011). Moreover, this reasoning cannot stand in the face of compelling U.S. Supreme Court statements to the contrary.

The attached affidavits provide strong support to Mr. Gibbs' claim that his right to a public trial was violated. It is equally clear that this violation, if allowed to become a matter of record, amounts to "structural" error, *Waller supra*, at 50 n9, since it "'affect[s] the 'framework within which

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

10

the trial proceeds.'" *United States v Marcus,* 130 S Ct 2159, 2164 (2010) (quoting omitted).  Automatic reversal is thus required.  *Washington v Recuenco,* 548 US 212, 218-19 (2006).

Even under plain error review, reversal is warranted.  *Carines, supra* at 763.  Since a violation of the public trial right is among the limited class of cases that involve structural error, prejudice is presumed, a violation of substantial rights has occurred, and a new trial is required.  *Neder v United States,* 527 US 1, 8-9 (1999); *People v Anderson,* 446 Mich 392, 40 (1994).

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

II.     BECAUSE   THERE   ARE   THREE   OUTCOME-
        DETERMINATIVE   SCORING   ERRORS   IN   THE
        SENTENCING GUIDELINES, MR. GIBBS IS ENTITLED
        TO A RESENTENCING.

Trial counsel objected at sentencing to some, but not all, of the guidelines that Mr. Gibbs

now submits were in error.  Counsel did not contest the scoring of any of the Prior Record

Variables, but he did challenge the points assessed against Mr. Gibbs under OV 13.  The latter issue

is thus preserved for appellate review, and will not be re-litigated as part of the current motion.

*Argument.*   Under the Michigan and United States Constitutions, defendants have a due

process right to be sentenced on the basis of accurate information and in accordance with the law.

*Townsend v Burke,* 334 US 736 (1948); *People v Lee,* 391 Mich 618, 636-637 (1974); *People v Malkowski,*

385 Mich 244 (1971).  Further, MCR 2.613(A) provides that a sentence must be consistent with

"substantial justice."  Our Supreme Court has found that "it is difficult to imagine something 'more

inconsistent with substantial justice' than requiring a defendant to serve a sentence that is based

upon inaccurate information."  *People v Francisco,* 474 Mich 82, 91, n6 (2006).  Thus, a defendant is

entitled to resentencing when his sentence is predicated upon mis-scored and/or inflated guidelines.

*Id.* at 91-92.

### PRV-5

Resentencing is required because Mr. Gibbs was improperly assessed two points under Prior

Record Variable (PRV) 5.  Points may be attributed to a defendant under PRV-5 based on an

offender's prior misdemeanor convictions and prior misdemeanor juvenile adjudications.  A score of

two points is appropriate under this guideline if a person has "1 prior misdemeanor conviction or

prior misdemeanor juvenile adjudication":

1)      Prior record variable 5 is prior misdemeanor convictions or prior
        misdemeanor juvenile adjudications. **Score prior record variable 5 by
        determining which of the following apply and by assigning the number
        of points attributable to the one that has the highest number of points**:

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

(a)     The offender has 7 or more prior misdemeanor convictions or prior misdemeanor juvenile adjudications..............................  20 points

(b)     The offender has 5 or 6 prior misdemeanor convictions or prior misdemeanor juvenile adjudications..............................  15 points

(c)     The offender has 3 or 4 prior misdemeanor convictions or prior misdemeanor juvenile adjudications..............................  10 points

(d)     The offender has 2 prior misdemeanor          convictions   or   prior misdemeanor juvenile adjudications..............................  5 points

(e)     **The offender has 1 prior misdemeanor conviction or prior misdemeanor juvenile adjudication.** ....................   **2 points**

MCL 777.55(1)(a) (emphasis added).  If a defendant has no prior misdemeanor conviction or prior misdemeanor juvenile adjudications, the appropriate score to be assessed is zero points.  The statute defines "prior misdemeanor juvenile adjudications" to mean "a juvenile adjudication for conduct that if committed by an adult would be a misdemeanor under a law of this state . . . **if the order of disposition was entered *before* the sentencing offense was committed.**" MCL 777.55(3)(b) (emphasis added).

Here, a close review of the record reveals that the only juvenile adjudication in Mr. Gibbs' background that was eligible for scoring under PRV-5 was for an August 3, 2010 entering without permission case.  *Pre-Sentence Investigation Report (PSR) at 3.*  According to the PSR, the order of disposition for that offense was entered on November 9, 2010.  This was a full two weeks *after* the October 26, 2010 commission date of the sentencing offense(s).  Thus, under the plain language of MCL 777.55(3)(b), it was improper to use this conviction as a basis for penalizing Mr. Gibbs with two points under PRV-5, inasmuch as that guideline only contemplates orders of disposition entered *before* the date of the sentencing offense.  *See,* MCL 777.53(3)(b).  This error, combined with the error in scoring PRV-6, *infra,* renders Mr. Gibbs' current sentence an upward departure from the correct guidelines range.  Resentencing is therefore required.

13

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

## **PRV-6**

Additionally, Mr. Gibbs received a 5-point score under PRV-6 for being "on probation or delayed sentence status or on bond awaiting adjudication or sentencing for a misdemeanor." MCL 777.56(1)(d). Yet, this score was both factually and legally inappropriate. Factually speaking, as the attached affidavit of the undersigned counsel indicates, the Genesee County Juvenile Court has no record of Mr. Gibbs **ever** being placed on bond when he acquired the entering without permission charge as a juvenile. *Affidavit of Counsel, Appendix B.* Even if he had been on bond, however, the plain language of the legislative sentencing guidelines under PRV-6 make it apparent that points cannot be assessed for a defendant's relationship with the juvenile justice system. Resentencing is thus warranted.

### A.    *The Scoring of Five Points Under PRV-6 Was Inaccurate Based on the Facts of this Case*

A five-point score under PRV-6 is reserved for offenders who already have a "relationship to the criminal justice system" at the time crime is committed. MCL 777.56(1):

(1)    Prior record variable 6 is relationship to the criminal justice system. Score prior record variable 6 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a)    The offender is a prisoner of the department of corrections or serving a sentence in jail ...................................................................................... 20 points

(b)    The offender is incarcerated in jail awaiting adjudication or sentencing on a conviction or probation violation ....................................................... 15 points

(c)    The offender is on parole, probation, or delayed sentence status or on bond awaiting adjudication or sentencing for a felony ............................... 10 points

**(d)    The offender is on probation or delayed sentence status or on bond awaiting adjudication or sentencing for a misdemeanor .......... 5 points**

(e)    The offender has no relationship to the criminal justice system ..... .. 0 points

MCL 777.56(1) (emphasis added).

14

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

Here, a few months before committing the sentencing offense, the then-sixteen-year-old defendant was adjudicated responsible (by virtue of a plea) for entering without permission in the Genesee County Probate Court (PSR 3). *Adjudication Order, Appendix C.* He was not placed on bond or probation at that time. To the contrary, Mr. Gibbs was released to the care and custody of his mother, and remained in her custody at the time of the sentencing offense (October 26, 2010). *Id* at page 1. He did not receive a juvenile disposition for this offense until on November 9, 2010, two weeks **after** the current crimes had been committed.

When the disposition order finally took effect, Mr. Gibbs received a sentence of probation that was ultimately suspended in light of the charges in the current case. Such a penalty does not fall within the plain language of PRV-6, however. *See* MCL 777.56(1). And as noted, there is no evidence that Mr. Gibbs was on bond during the interim between his adjudication and disposition. Therefore, under the facts of this case, a five-point PRV-6 score was inappropriate.

> **B.    Even If the Facts Here Supported the Scoring of PRV-6, this Variable Could Not Be Scored Inasmuch as it Does Not Apply to Juvenile Offenses.**

Whether a relationship to the juvenile justice system may be used to score PRV-6 is a question of statutory construction. When interpreting statutes, courts must give effect to the intent of the Legislature by applying the provision's plain language. *People v Koonce,* 466 Mich 515, 518 (2002). Courts consider both the plain meaning of the critical word or phrase as well as its placement and purpose in the statutory scheme. *US Fidelity Insurance & Guaranty Co. v Michigan Catastrophic Claims Ass'n,* 482 Mich 414, 423 (2008). Whenever possible, the Court should give effect to every phrase, clause and word in a statute. *Id.* Omitted phrases may also be significant, as "[t]he Legislature is presumed to be familiar with the rules of statutory construction and, when promulgating new laws, to be aware of the consequences of its use or omission of statutory

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

language[.]" *Tellin ex rel Hinga v Forsyth Tp.,* 291 Mich App 692 (2011) (quoting *In re MKK*, 286 Mich App 546, 556 (2009)).

Critically, the Legislature made no reference to juvenile delinquency proceedings when it enacted MCL 777.56, the statute which created the current version of PRV-6. The variable examines whether the offender had a "relationship to the **criminal justice system**" at the time of the sentencing offense. MCL 777.56(1) (emphasis added). Such a score is appropriate only if the "[o]ffender is on probation or delayed sentence status or on bond awaiting adjudication or sentencing for a misdemeanor." MCL 777.56(1)(d). As noted, zero points must be assessed if the "[o]ffender has **no relationship to the criminal justice system**." MCL 777.56(1)(e) (emphasis added). *See also People v Johnson,* 293 Mich App 79 (2011).

The Legislature's repeated use of the phrase "criminal justice system" makes clear it did not intend PRV-6 to encompass juvenile matters. Through various enactments, the Legislature has established a clear distinction between criminal cases and delinquency proceedings. The procedures governing the latter are codified not in the Penal Code, but instead in the Probate Code at MCL 712A.1 *et seq. See also* Const 1963, Art 6, § 15 (providing that the probate court "shall have original jurisdiction in all cases of juvenile delinquents and dependents, except as otherwise provided by law."). By statute, "proceedings under this chapter **are not criminal proceedings**" unless otherwise provided. MCL 712A.1(2) (emphasis added). Thus, as the Court of Appeals has noted, "proceedings against juveniles are not even considered criminal proceedings." *In re TD*, 292 Mich App 678 (2011).

This distinction is found elsewhere in the guidelines as well. PRV-1 and PRV-2, for example, weigh "convictions" for certain "crimes." MCL 777.51, 777.52. In contrast, PRV-3 and PRV-4 consider only "a juvenile adjudication for conduct that would be . . . [a crime] if committed by an adult[.]" MCL 777.53, 777.54. Similarly, PRV-5 refers to "a juvenile adjudication for conduct

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

that if committed by an adult would be a misdemeanor." MCL 777.55(3)(b). As these provisions recognize, a juvenile is not adjudicated guilty of a "crime"; rather, a juvenile can only be adjudicated guilty of what "would be" a crime if committed by someone older. The guidelines therefore acknowledge what the Probate Code already confirms: "proceedings under this chapter **are not criminal proceedings**" unless otherwise provided. MCL 712A.1(2) (emphasis added).

Certainly, if the Legislature had intended for PRV-6 to apply to a defendant's relationship with the juvenile justice system, it could have said so. After all, PRV-3, PRV-4, and PRV-5 all expressly provide for the consideration of delinquency adjudications. In contrast, while the word "adjudication" does appear in the text of PRV-6, it is not used in the context of delinquency proceedings. Nor is it used to refer to juvenile bond status. Rather, it appears within the phrase "on bond awaiting adjudication or sentencing for a misdemeanor." MCL 777.56(1)(d). In this context, "adjudication" means simply: "The legal process of resolving a dispute; the process of judicially deciding a case." Black's Law Dictionary (9th ed), p. 42. It follows, therefore, that this clause of PRV-6 is only concerned with sentencing offenses that occur before the final resolution of an adult misdemeanor charge. After all, as discussed above, PRV-6 refers to defendants charged with a "misdemeanor," not defendants charged with "conduct that if committed by an adult would be a misdemeanor." *Compare* MCL 777.55(3)(b) *with* MCL 777.56(3)(b).

Language referencing juvenile matters could have been added to PRV-6 with little difficulty. Given what is expressed in PRV-3, PRV-4, and PRV-5, it must be presumed that the Legislature intentionally omitted such language when it drafted PRV-6. This is consistent with the well-established legal doctrine *expressio unius est exclusio alterius* ("the expression of one thing is the exclusion of another"). *Miller v Allstate Ins. Co.,* 481 Mich 601, 611 (2008). The maxim is a rule of construction that is a product of "logic and common sense." *Feld v Robert & Charles Beauty Salon,* 435 Mich 352, 362 (1990) (quoting 2A Sands, *Sutherland Statutory Construction* (4th ed), § 47.24, at

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

203).   Our Supreme Court has long held that "no maxim is more uniformly used to properly construe statutes." *Hoerstman Gen. Contracting, Inc. v Hahn*, 474 Mich 66, 74–75 (2006) (citing *Taylor v Michigan Public Utilities Comm.,* 217 Mich 400, 403 (1922)).

Further evidence of the Legislature's intent can be found by comparing PRV-6 to its predecessor under the judicial guidelines.  The instructions to the predecessor variable expressly provided that "a 'relationship to the criminal justice system' **applies to relationships determined by juvenile convictions or charges**." *People v Stone,* 195 Mich App 600, 607-608 (1992) (emphasis added) (quoting the version of PRV-6 which appeared in the judicial sentencing guidelines).  Thus, it must be presumed: (1) that the Legislature was aware of the prior version of PRV-6 when it enacted the current version; and (2) that the differences between the two variables were intended.  *See People v Hegwood,* 465 Mich 432, 438-439 (2001) ("At the time it enacted these guidelines, the Legislature opted for a system with many features that were easily recognizable by courts familiar with the format previously employed in Michigan.  . . . Yet it is apparent that the Legislature has provided new ground rules.").

For all of these reasons, PRV-6 was not intended to be scored in this case.

### Remedy

The erroneous scoring of PRV-5 and PRV-6, and OV 13 increased Mr. Gibbs' total guidelines range from the correct cell of C-III, to the resulting range of D-IV.  The error inflated the guidelines range from 81-135 months to 126-210 months.[11]  The Court then sentenced Mr. Gibbs at the very top of this incorrect range, to a minimum prison term of 17.5 years.  Because the error in scoring the guidelines violated Mr. Gibbs' state and federal due process rights to be sentenced

---

[11] Assuming that the Court is not willing not take into account the error in scoring related to OV 13, the correct guidelines range would be 108-180 months.  Mr. Gibbs' current 210 month sentence still represents an upward departure of 2.5 years from the correct range.

accurately and consistently with the law, he is entitled to be resentenced within the correct range.

*Francisco*, 474 Mich at 89-92.

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

## SUMMARY AND RELIEF AND REQUEST FOR ORAL ARGUMENT

**WHEREFORE**, for the foregoing reasons, Defendant-Appellant asks that this Honorable

Court reverse his  conviction and/or grant resentencing.

Respectfully submitted,

**STATE APPELLATE DEFENDER OFFICE**

BY:

**BRANDY Y. ROBINSON (P66895)**
Assistant Defender
3300 Penobscot Building
645 Griswold
Detroit, Michigan  48226
(313) 256-9833

Dated: July 2, 2012

RECEIVED by Michigan Court of Appeals 7/3/2012 3:54:02 PM

| Lower Court or Tribunal | STATE OF MICHIGAN<br>IN THE COURT OF APPEALS<br>**Cover Sheet** | *CASE NO.* | | |
|---|---|---|---|---|
| | | CIRCUIT: | Year **11** | Number **028140** | Case Type **FC** |
| GENESEE CIRCUIT COURT | | COURT OF APPEALS: | **306124** | |

RECEIVED by Michigan Court of Appeals 7/25/2012 5:28:26 PM

## Filing Party

| Filing Party Last Name or Business/Entity/Agency Name | Attorney Last Name |
|---|---|
| GIBBS CHARLES PHILLIP | Robinson |

| Filing Party First Name | M.I. | Attorney First Name | M.I. | P Number |
|---|---|---|---|---|
| | | Brandy | Y | 66895 |

| Address (Street 1, Street 2, City, State, and ZIP Code) | Address (Street 1, Street 2, City, State, and ZIP Code) |
|---|---|
| | 645 Griswold Street |
| | Suite 3300 |
| | Detroit    MI    48226 |

Attorney Telephone Number
(313)256-9833

## Summary of Items Filed

| Type | Filename/Description | Filing Fee | Doc Fee | Total This Filing |
|---|---|---|---|---|
| Correspondence | Status Update (With Attachments) | $5.00 | ---- | $5.00 |
| | | **3% Service Fee:** | | $0.15 |
| | | **Total All Filings:** | | $5.15 |

**Fee Substitute/Alternate Payment**

**Reason:**

| X | **Appointed Counsel** |
|---|---|
| ☐ | **Motion To Waive Fee** |
| ☐ | **Fees Waived in this Case** |
| ☐ | **MI InterAgency Transfer** |
| ☐ | **No Fee per MCR 7.203(F)(2)** |

**Filer Office Use Only:** 25680

The documents listed above were electronically filed with the Michigan Court of Appeals at the date/time stated in the left margin.  As a recipient of service of these documents, you may wish to go to https://wiznet.wiznet.com/appealsmi to register as a user of the electronic filing system.
306124 - 275021

| Lower Court or Tribunal | STATE OF MICHIGAN<br>IN THE COURT OF APPEALS<br>**Proof of Service** | *CASE NO.* | | | |
|---|---|---|---|---|---|
| | | CIRCUIT: | Year<br>11 | Number<br>028140 | Case Type<br>FC |
| GENESEE CIRCUIT COURT | | COURT OF APPEALS: | 306124 | | |

Case Name: ___PEOPLE OF MI V PHILLIP CHARLES GIBBS___

On ___7/25/2012___ , one copy of the following documents:

Correspondence                              Status Update (With Attachments)
_____

was delivered to the persons listed below:

Date
___7/25/2012___

Signature
/s/Brandy Y. Robinson
_____

| Bar<br>Number | Name | Delivery<br>Method | Service Address |
|---|---|---|---|
| P- | AO, SADO | E-Serve | ao@sado.org |
| P- | Prosecutor,<br>Genesee County | E-Serve | vhaley@co.genesee.mi.us |
| P- 66895 | Robinson, Brandy Y | E-Serve | brobinson@sado.org |

RECEIVED by Michigan Court of Appeals 7/25/2012 5:28:26 PM

The documents listed above were electronically filed with the Michigan Court of Appeals at the date/time stated in the left margin.  As a recipient of service of these documents, you may wish to go to https://wiznet.wiznet.com/appealsmi to register as a user of the electronic filing system.

# STATE APPELLATE DEFENDER OFFICE

### Detroit

**DAWN VAN HOEK**
DIRECTOR

**JONATHAN SACKS**
DEPUTY DIRECTOR

www.sado.org
Client calls: 313.256.9822



**MAIN OFFICE:**
PENOBSCOT BLDG., STE 3300
645 GRISWOLD
DETROIT, MI 48226-4281
Phone: 313.256.9833 • Fax: 313.965.0372

**LANSING OFFICE:**
101 N. WASHINGTON, 14TH FLOOR
LANSING, MI 48913-0001
Phone: 517.334.6069 • Fax: 517.334.6987

July 25, 2012

Clerk of the Court
Michigan Court of Appeals
Suite 800
201 West Big Beaver
Troy, MI 48084

Re:    **People** v **Phillip Charles Gibbs**
          Court of Appeals No. 306124
          Lower Court No. 11-28140FC

Dear Clerk:

This case was remanded to the Genesee County Circuit Court on June 20, 2012.  In accordance with this Court's directive, a trial court motion was timely filed in order to initiate the remand proceedings.  During the motion hearing on July 16, 2012, the trial judge denied Mr. Gibbs' motion for new trial and his motion for resentencing.  An order was not immediately issued by the court.

Counsel only received a copy of the signed order yesterday [July 24, 2012].  As requested in the Court's recent letter, a copy of that order is enclosed, along with a faxed copy of the July 24, 2012 stenographer's certificate filed by the court reporter.  Mr. Gibbs intends to file a post-remand brief once the transcript of the hearing is filed.

Please feel free to contact me with additional questions.

Sincerely,

/s/  Brandy Y. Robinson

Brandy Y. Robinson
Assistant Defender

BYR/LAL
Enclosures

cc:    Genesee County Prosecutor
          File ·25680

RECEIVED by Michigan Court of Appeals 7/25/2012 5:28:26 PM

State of Michigan
In the Circuit Court for the County of Genesee
7th Judicial Circuit

People of the State of Michigan,
       Plaintiff,

                              Circuit Court No. 11-28140 FC

vs                                   Judge: Fullerton

Phillip Charles Gibb,
       Defendant.

## Order

At a session of Court held on the
16th day of July 2012,
in the City of Flint,
Genesee County, Michigan

A TRUE COPY
Michael J. Carr, Clerk

HONORABLE JUDITH A. FULLERTON PRESIDING

This matter having come before the Court on Defendant's Motion for New Trial and Defendant's Motion for Resentencing.

**IT IS HEREBY ORDERED** that Defendant's Motion to For New Trial is denied for the reasons stated on the record.

**IT IS FURTHER ORDERED** that Defendant's Motion for Resentencing is denied for the reasons stated on the record.

Dated:

                                   Judith A. Fullerton
                                   Circuit Court Judge

Approved as to Form:

RECEIVED

JUL 24 2012

Attorney for Defendant

APPELLATE DEFENDER OFFICE

RECEIVED by Michigan Court of Appeals 7/25/2012 5:28:26 PM

i

| Lower Court or Tribunal<br><br>GENESEE CIRCUIT COURT | **STATE OF MICHIGAN**<br>**IN THE COURT OF APPEALS**<br>**Cover Sheet** | *CASE NO.* |
|---|---|---|

**CASE NO.**

| | Year | Number | Case Type |
|---|---|---|---|
| CIRCUIT: | 11 | 028140 | FC |
| COURT OF APPEALS: | | 306124 | |

## Filing Party

| Filing Party Last Name or Business/Entity/Agency Name | Attorney Last Name |
|---|---|
| GIBBS CHARLES PHILLIP | Robinson |

| Filing Party First Name | M.I. | Attorney First Name | M.I. | P Number |
|---|---|---|---|---|
| | | Brandy | Y | 66895 |

| Address (Street 1, Street 2, City, State, and ZIP Code) | Address(Street 1, Street 2, City, State, and ZIP Code) |
|---|---|
| | 645 Griswold Street |
| | Suite 3300 |
| | Detroit    MI    48226 |

Attorney Telephone Number

(313)256-9833

## Summary of Items Filed

| Type | Filename/Description | Filing Fee | Doc Fee | Total This Filing |
|---|---|---|---|---|
| Brief | Supplemental Brief After Remand | $5.00 | ---- | $5.00 |

|  |  |
|---|---|
| **3% Service Fee:** | $0.15 |

**Fee Substitute/Alternate Payment**

| | **Total All Filings:** | $5.15 |

**Reason:**

| X | **Appointed Counsel** |
|---|---|
| ☐ | **Motion To Waive Fee** |
| ☐ | **Fees Waived in this Case** |
| ☐ | **MI InterAgency Transfer** |
| ☐ | **No Fee per MCR 7.203(F)(2)** |

**RECEIVED by Michigan Court of Appeals 8/22/2012 1:10:23 PM**

**Filer Office Use Only:**    25680

The documents listed above were electronically filed with the Michigan Court of Appeals at the date/time stated in the left margin.  As a recipient of service of these documents, you may wish to go to https://wiznet.wiznet.com/appealsmi to register as a user of the electronic filing system.
306124 - 279684

| Lower Court or Tribunal | **STATE OF MICHIGAN**<br>**IN THE COURT OF APPEALS**<br><br>**Proof of Service** | *CASE NO.* | | | |
|---|---|---|---|---|---|
| GENESEE CIRCUIT COURT | | CIRCUIT: | Year<br>11 | Number<br>028140 | Case Type<br>FC |
| | | COURT OF APPEALS: | | 306124 | |

Case Name:   PEOPLE OF MI V PHILLIP CHARLES GIBBS

On   8/22/2012   , one copy of the following documents:

Brief                                           Supplemental Brief After Remand

was delivered to the persons listed below:

Date
  8/22/2012

Signature
  /s/Lisa Ann Lamarre

| Bar<br>Number | Name | Delivery<br>Method | Service Address |
|---|---|---|---|
| P- | AO, SADO | E-Serve | ao@sado.org |
| P- | Prosecutor,<br>Genesee County | E-Serve | vhaley@co.genesee.mi.us |
| P- 66895 | Robinson, Brandy Y | E-Serve | brobinson@sado.org |

*RECEIVED by Michigan Court of Appeals 8/22/2012 1:10:23 PM*

The documents listed above were electronically filed with the Michigan Court of Appeals at the date/time stated in the left margin.  As a recipient of service of these documents, you may wish to go to https://wiznet.wiznet.com/appealsmi to register as a user of the electronic filing system.

Approved, Michigan Court of Appeals

| LOWER COURT<br><br>Genesee County Circuit Court | **Electronically Filed**<br><br>**BRIEF COVER PAGE** | CASE NO.<br>Lower Court  11-28140FC<br><br>Court of Appeals  306124 |
| --- | --- | --- |

(Short title of case)

Case Name:  **People v. Phillip Charles Gibbs**

1. Brief Type (select one):  ☒ APPELLANT(S)    ☐ APPELLEE(S)    ☐ REPLY

   ☐ CROSS-APPELLANT(S)    ☐ CROSS-APPELLEE(S)    ☐ AMICUS

   ☐ OTHER [identify]:

2. This brief is filed by or on behalf of [insert party name(s)]: **Phillip Charles Gibbs**

3. ☐    This brief is in response to a brief filed on          by      .

4. ORAL ARGUMENT:        ☒ REQUESTED            ☐ NOT REQUESTED

5. ☐    THE APPEAL INVOLVES A RULING THAT A PROVISION OF THE CONSTITUTION, A STATUTE, RULE OR REGULATION, OR OTHER STATE GOVERNMENTAL ACTION IS INVALID.
   [See MCR 7.212(C)(12) to determine if this applies.]

6. As required by MCR 7.212(C), this brief contains, in the following order: [check applicable boxes to verify]

   ☒    Table of Contents [MCR 7.212(C)(2)]

   ☒    Index of Authorities [MCR 7.212(C)(3)]

   ☒    Jurisdictional Statement [MCR 7.212(C)(4)]

   ☒    Statement of Questions [MCR 7.212(C)(5)]

   ☒    Statement of Facts (with citation to the record) [MCR 7.212(C)(6)]

   ☒    Arguments (with applicable standard of review) [MCR 7.212(C)(7)]

   ☒    Relief Requested [MCR 7.212(C)(9)]

   ☒    Signature [MCR 7.212(C)(9)]

7. This brief is signed by [type name]: **Brandy Y. Robinson**
   Signing Attorney's Bar No. [if any]: **(P66895)**

(10/06) **E-File Brief Cover Page**                                    MCR 7.212(C)

RECEIVED by Michigan Court of Appeals 8/22/2012 1:10:23 PM

RECEIVED by Michigan Court of Appeals 8/22/2012 1:10:23 PM

# STATE OF MICHIGAN

## IN THE GENESEE COUNTY CIRCUIT COURT

**PEOPLE OF THE STATE OF MICHIGAN**

               Plaintiff-Appellee

-vs-

**PHILLIP CHARLES GIBBS**

               Defendant-Appellant.

_____/

**Court of Appeals No.** 306124

**Lower Court No.** 11-28140FC

**Honorable Judith A. Fullerton**

**GENESEE COUNTY PROSECUTOR**
Attorney for Plaintiff-Appellee
_____

**BRANDY Y. ROBINSON (P66895)**
Attorney for Defendant-Appellant
_____

## DEFENDANT-APPELLANT'S

## SUPPLEMENTAL BRIEF AFTER REMAND

**STATE APPELLATE DEFENDER OFFICE**

BY:    **BRANDY Y. ROBINSON (P66895)**
       **Assistant Defender**
       3300 Penobscot Building
       645 Griswold
       Detroit, Michigan  48226
       (313) 256-9833

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES** ...............................................................................i

**STATEMENT OF JURISDICTION** .............................................................. ii

**STATEMENT OF QUESTIONS PRESENTED** ............................................. iii

**STATEMENT OF FACTS** ............................................................................1

**I.    THE TRIAL COURT VIOLATED MR. GIBBS' SIXTH AMENDMENT RIGHT TO A PUBLIC TRIAL BY CLOSING THE COURTROOM AND EXCLUDING MEMBERS OF HIS FAMILY FROM JURY SELECTION.** ...........................................3

**II.   BECAUSE THE COURT BELOW MADE THREE GUIDELINES-SCORING MISTAKES, AND CORRECTING THE MISTAKES WOULD SUBSTANTIALLY REDUCE THE GUIDELINES RANGE, MR. GIBBS MUST BE RESENTENCED..7**

**SUMMARY AND RELIEF** ...........................................................................9

BYR*Brief After Remand - TRIM.docx*25680  August 22, 2012

Phillip Charles Gibbs

RECEIVED by Michigan Court of Appeals 8/22/2012 1:10:23 PM

RECEIVED by Michigan Court of Appeals 8/22/2012 1:10:23 PM

# TABLE OF AUTHORITIES

## CASES

*Gannet Co v DePasquale*, 443 US 368; 99 S. Ct. 2898, 61 L. Ed. 2d 608 (1979)...........................................4

*Gibbons v Savage*, 555 F3d 112 (CA 2, 2009) ............................................................ 5, 6

*People v Carines*, 460 Mich 750; 597 N.W.2d 130 (1999)...........................................4

*People v Vaughn*, 491 Mich 642 (2012)........................................................................ 5, 6

*Presley v Georgia*, US 209; 130 S Ct 721; 175 L. Ed. 2d 675 (2010).  .................... 3, 4, 5

*Press-Enter Co v Superior Court of California, Riverside County*, 464 US 501 (1984)...........4

*Press-Enterprise Co v Superior Court*, 478 US 1; 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1980) ...........4

*Waller v Georgia*, 467 US 39; 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984).....................3, 4

## CONSTITUTIONS, STATUTES, COURT RULES

MCL 750.529 ....................................................................................................................1

MCL 750.530 ....................................................................................................................1

MCL 777.56(1) ................................................................................................................8

MCL 777.56(1)(d) ...........................................................................................................7

# STATEMENT OF JURISDICTION

Defendant-Appellant was convicted in the Genesee County Circuit Court by jury trial and a Judgment of Sentence was entered on August 15, 2011.  A Claim of Appeal was filed on September 16, 2011 by the trial court pursuant to the indigent defendant's request for the appointment of appellate counsel dated September 6, 2011, as authorized by MCR 6.425(F)(3).  This Court has jurisdiction in this appeal as of right provided for by Mich Const 1963, art 1, §20, pursuant to MCL 600.308(1); MCL 770.3; MCR 7.203(A), MCR 7.204(A)(2).

RECEIVED by Michigan Court of Appeals 8/22/2012 1:10:23 PM

RECEIVED by Michigan Court of Appeals 8/22/2012 1:10:23 PM

# <u>STATEMENT OF QUESTIONS PRESENTED</u>

I.   DID THE TRIAL COURT VIOLATE MR. GIBBS' SIXTH AMENDMENT RIGHT TO A PUBLIC TRIAL BY CLOSING THE COURTROOM AND EXCLUDING MEMBERS OF HIS FAMILY FROM JURY SELECTION?

                Trial Court answers, "No".

                Defendant-Appellant answers, "Yes".

II.  BECAUSE THE COURT BELOW MADE THREE GUIDELINES-SCORING MISTAKES, AND CORRECTING THE MISTAKES WOULD SUBSTANTIALLY REDUCE THE GUIDELINES RANGE, MUST MR. GIBBS BE RESENTENCED?

                Trial Court answers, "No".

                Defendant-Appellant answers, "Yes".

RECEIVED by Michigan Court of Appeals 8/22/2012 1:10:23 PM

## STATEMENT OF FACTS

On July 7, 2011, following a five-day trial before the Honorable Judith A. Fullerton of the Genesee County Circuit Court, a jury convicted Defendant-Appellant Phillip Charles Gibbs of two counts of armed robbery,[1] one count of unarmed robbery,[2] and one count of conspiracy to commit armed robbery[3] arising out of the hold-up of three people at a Flint pawn shop.  [Trial 7/7/11, p 59-60].   At sentencing, Mr. Gibbs was ordered to serve concurrent sentences at the very top of his guidelines of (1) 17.5 years to 30 years imprisonment for the armed robbery and conspiracy charges, and (2) 100 months to 15 years imprisonment for unarmed robbery.  [Sentence 8/15/11, p 25-26].

As part of his appeal of right, Mr. Gibbs timely filed a brief on appeal with this Court, along with a motion to remand on May 23, 2012.  The Court granted the remand request in an order dated June 20, 2012.  *6/20/12 Order of the Court of Appeals, Appendix A.*  The order authorized Mr. Gibbs to move for a new trial and for resentencing before the trial court.  In non-permissive language, it also indicated that the trial court "*shall* conduct an evidentiary hearing based on the closure of the courtroom during voir dire."  *Id.*  Mr. Gibbs timely filed the above-referenced motions with the trial court and scheduled the matter for hearing.

On July 16, 2012, the undersigned counsel appeared on Mr. Gibbs' behalf at the motion hearing.  There, the trial court acknowledged that indeed, once jury selection begins, it is her policy to not allow any persons to enter or leave the courtroom.  [Hearing 7/16/12, p 6].  She disclaimed any duty on her part to "troll in the halls for spectators," or go out "and lasso [people] with a rope" to bring them in, but reaffirmed that "if someone comes after we've started selecting the jury, they will not be allowed in, that's absolutely right."  [Hearing 7/16/12, p 7, 9].  In her judgment, "If that's

---

[1] MCL 750.529.
[2] MCL 750.530.
[3] 750.157a.

1

a violation, then [she] violated." [Hearing 7/16/12, p 8]. With that, Judge Fullerton declined to hold the evidentiary hearing or grant Mr. Phillips a new trial on that basis. [Hearing 7/16/12, p 14-15].

As to the request for resentencing, the government tendered no evidence to substantiate its claim that Mr. Gibbs was on bond for a juvenile misdemeanor when he committed the sentencing offenses. It instead rested on its legal arguments and noted that resentencing would not be required if the court were inclined to give the same sentence. [Hearing 7/16/12, p 17]. Nevertheless, the Court found that as to PRV 6, Mr. Phillips was "obviously related" to the criminal justice system between the date of his guilty plea and the acquisition of new charges. [Hearing 7/16/12, p 18]. She also concluded that, in her judgment, PRV-5 was correctly scored for the prior misdemeanor conviction, though she did not articulate a reason underlying this conclusion.

Presently incarcerated, this is Mr. Gibbs' supplemental brief after remand.

RECEIVED by Michigan Court of Appeals 8/22/2012 1:10:23 PM

RECEIVED by Michigan Court of Appeals 8/22/2012 1:10:23 PM

# <u>ARGUMENT</u>

### I.   THE TRIAL COURT VIOLATED MR. GIBBS' SIXTH AMENDMENT RIGHT TO A PUBLIC TRIAL BY CLOSING THE COURTROOM AND EXCLUDING MEMBERS OF HIS FAMILY FROM JURY SELECTION.

Mr. Gibbs relies primarily upon the previously-filed brief to articulate his position on this issue.  He adds, however, that the trial court seemed to acknowledge that closing the courtroom was improper, though it seemed far less concerned with the consequences of taking such a position.  Notwithstanding the court's view on the wisdom of the policy, Mr. Gibbs reiterates that "the requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions. . . ." *Waller v Georgia,* 467 US 39, 46 (1984) (quoting *In re Oliver*, *supra* at 270, n 25).  The point is particularly well-taken where, as here, it was members of Mr. Gibbs' immediately family that were excluded from the courtroom.

Moreover, Mr. Gibbs continues to emphasize the US Supreme Court's admonishment to lower tribunals on this point in *Presley v Georgia*, US 209; 130 S Ct 721, 725 (2010).  Of course, in that decision, the United States Supreme Court noted unequivocally that the right to an open courtroom applies to the examination of prospective jurors.  *Id* (characterizing the right to a public trial during *voir dire* as well-settled).  This holding does not create a new right; it simply re-affirms what the Court recognized 28 years ago in *Waller v Georgia, supra*.[4] The beneficiary of the right to a public trial is both the accused and the public-at-large.  The right is grounded in the Sixth Amendment, *Gannet Co v*

---

[4] Among the values furthered by the public trial guarantee are: (1) to ensure a fair trial; (2) to remind the prosecutor and judge of their responsibility to the accused and the importance of their functions; (3) to encourage witnesses to come forward; and (4) to discourage perjury. Waller, *supra* at 46-47.

RECEIVED by Michigan Court of Appeals 8/22/2012 1:10:23 PM

*DePasquale,* 443 US 368, 380 (1979), as well as the First Amendment.  *See Press-Enterprise Co v Superior Court,* 478 US 1 (1980).

*Presley* reminds us that the selection of a jury is itself a matter of importance, "not simply to the adversaries, but to the criminal justice system." *Presley, supra* at 724-25 (quoting *Press-Enterprise Co, supra* at 505.)  The *Presley* majority used strong language, declaring that under the Court's "clear precedents," it was "so well settled that the Sixth Amendment right extends to jury voir dire that this Court may proceed by summary disposition." *Id.* at 722–24.  The tenor of the opinion demonstrates the Court's frustration with repeated failures to abide by its holdings.

*Presley* reemphasized that "[t]rial courts are obligated to take every reasonable measure to accommodate public attendance at criminal trials," including at jury selection. *Id.* at 724.  What is obvious from the Court's discussion is that the first and foremost "obligation" is the duty to ensure the courtroom is open and not unduly restricted by staff or court officers.  Furthermore, given the purposes of the public trial right articulated in *Waller*, it follows that the "integrity and public reputation of the judicial proceedings" is damaged when jury selection is closed to the public. *People v Carines,* 460 Mich 750 (1999).

While it is true that the right to a public trial is not absolute and may yield to competing interests, the Supreme Court has warned that the justifications for any closure must be compelling:

> [T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.

*Waller, supra* at 48.  It is also axiomatic that the court's reasons for closing the courtroom must be placed on the official record.  *Press-Enter Co v Superior Court of California, Riverside County,* 464 US 501, 510 (1984) ("The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that

interest. *The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.*") (emphasis added).

Even the recent proclamation by the Michigan Supreme Court in *People Vaughn* recognizes that, whereas here, a trial court closes the courtroom without advancing an overriding interest that is likely to be prejudiced, the first three prongs of the plain error test are satisfied, given the structural nature of such an error. *Vaughn,* 491 Mich 642 (2012). The *Vaughn* court ultimately concluded that no plain error occurred, however, by basically importing a "triviality" exception developed by the Second Circuit into the analysis. Under that exception, the court opined that not every temporary instance of unjustified exclusion of the public—no matter how brief or trivial, and no matter how inconsequential the proceedings that occurred during an unjustified closure—will require that a conviction be overturned. *See Vaughn, supra* (citing *Gibbons v Savage,* 555 F3d 112, 120 (CA 2, 2009). Further, the Court concluded that, since it is drawn from the public, the very presence of the jury venire itself " lessens the extent to which [the court's] closure implicates the defendant's public trial right because the venire . . . guarantees that the *voir dire* proceedings will be subject to a substantial degree of continued public review." Respectfully, however, Mr. Gibbs submits that this reasoning is flawed, because the prospective jurors are participants in the criminal process itself, and the right to a public trial protects the right of those members of the public who are *external* to that process to witness a defendant's trial. *See generally Vaughn, supra* Cavanagh J, dissenting ("Although the veniremembers are members of the public, if that fact is relevant to the plain-error analysis of the structural error at issue in this case, the right to public voir dire guaranteed by *Presley* loses all meaning. Specifically, veniremembers will always be present during *voir dire*; therefore, under the majority's approach, the prosecution will *always* be able to argue that the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence."); *See also Gibbons, supra* at 876 (Parker, J., dissenting).

5

RECEIVED by Michigan Court of Appeals 8/22/2012 1:10:23 PM

Mr. Gibbs asserts that the evidentiary hearing ordered by this Court is still warranted, and asks for the Court to remand the matter for the purpose of making an official record of the reasons for the courtroom closure, and to examine the impact thereof on Mr. Gibbs' family.

Mr. Gibbs recognizes that this Court is bound by the ruling in *Vaughn,* but he raises the arguments herein in order to preserve the issue for further appellate review.

RECEIVED by Michigan Court of Appeals 8/22/2012 1:10:23 PM

RECEIVED by Michigan Court of Appeals 8/22/2012 1:10:23 PM

## II.   BECAUSE THE COURT BELOW MADE THREE GUIDELINES-SCORING MISTAKES, AND CORRECTING THE MISTAKES WOULD SUBSTANTIALLY REDUCE THE GUIDELINES RANGE, MR. GIBBS MUST BE RESENTENCED.

Again, given the trial court's relatively perfunctory treatment of the sentencing issues on remand, Mr. Gibbs relies primarily upon his previously-submitted brief in requesting resentencing. The trial judge did not examine the plain language and dictates of either PRV-5 or PRV-6 in denying the motion for resentencing.  Nor did it require the prosecution, as it must, to produce sufficient evidence by a preponderance standard to prove that, factually, Mr. Gibbs was "on probation or delayed sentence status or on bond awaiting adjudication or sentencing for a misdemeanor," and thus deserving of a 5-point score under PRV-6.[5]  MCL 777.56(1)(d).  To support his argument on this point, Mr. Gibbs had presented documentation to the court indicating that a few months before committing the sentencing offense, the then-sixteen-year-old defendant was adjudicated responsible (by virtue of a plea) for entering without permission in the Genesee County Probate Court (PSR 3). *Adjudication Order, Appendix B.*  He was not placed on bond or probation at that time.  To the

---

[5] A five-point score under PRV-6 is reserved for offenders who already have a "relationship to the criminal justice system" at the time crime is committed.  MCL 777.56(1):

(1)      Prior record variable 6 is relationship to the criminal justice system. Score prior record variable 6 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a)      The offender is a prisoner of the department of corrections or serving a sentence in jail ........................................................................................................................ 20 points

(b)      The offender is incarcerated in jail awaiting adjudication or sentencing on a conviction or probation violation ........................................................................................ 15 points

(c)      The offender is on parole, probation, or delayed sentence status or on bond awaiting adjudication or sentencing for a felony ............................................................. 10 points

**(d)      The offender is on probation or delayed sentence status or on bond awaiting adjudication or sentencing for a misdemeanor ................................................... 5 points**

(e)      The offender has no relationship to the criminal justice system ......................... .. 0 points

MCL 777.56(1) (emphasis added).

contrary, Mr. Gibbs was released to the care and custody of his mother, and remained in her custody at the time of the sentencing offense (October 26, 2010).  *Id* at page 1.  He did not receive a juvenile disposition for this offense until on November 9, 2010, two weeks **after** the current crimes had been committed.

When the disposition order finally took effect, Mr. Gibbs received a sentence of probation that was ultimately suspended in light of the charges in the current case.  Such a penalty does not fall within the plain language of PRV-6, however.  *See* MCL 777.56(1).  And as noted, there is no evidence that Mr. Gibbs was on bond during the interim between his adjudication and disposition.  Therefore, under the facts of this case, a five-point PRV-6 score was factually inappropriate.  Mr. Gibbs also continues to maintain that, as previously briefed and argued, PRV-6 does not apply to juvenile offenders at all.  He therefore asks the Court to consider this argument as an alternate ground for granting sentencing relief.

RECEIVED by Michigan Court of Appeals 8/22/2012 1:10:23 PM

8

## SUMMARY AND RELIEF REQUESTED

**WHEREFORE**, for the foregoing reasons, Defendant-Appellant asks that this

Honorable Court to vacate his conviction and or grant resentencing.

Respectfully submitted,

**STATE APPELLATE DEFENDER OFFICE**

/s/ Brandy Y. Robinson

BY:_____

**BRANDY Y. ROBINSON (P66895)**
Assistant Defender
3300 Penobscot Building
645 Griswold
Detroit, Michigan  48226
(313) 256-9833

Dated:  August 22, 2012

RECEIVED by Michigan Court of Appeals 8/22/2012 1:10:23 PM

RECEIVED by Michigan Court of Appeals 8/22/2012 1:10:23 PM

**APPENDIX A**

**6/20/12 Order of Court of Appeals**

25680 T
B4R

# Court of Appeals, State of Michigan

## ORDER

RECEIVED

JUN 2 1 2012

APPELLATE DEFENDER OFFICE

People of MI v Phillip Charles Gibbs

Docket No. 306124

LC No. 11-028140-FC

Pat M. Donofrio
Presiding Judge

E. Thomas Fitzgerald
Elizabeth L. Gleicher

Judges

The Court orders that the motion to remand pursuant to MCR 7.211(C)(1) is GRANTED and the matter is remanded to the trial court so that defendant-appellant may file a motion for resentencing regarding Prior Record Variables 5 and 6. Defendant-appellant may also move for a new trial and the trial court shall conduct an evidentiary hearing based on the closure of the courtroom during voir dire. Proceedings on remand are limited to the issues as raised in the motion to remand.

Defendant-appellant is to file with this Court a copy of any motion and any supporting brief filed in the trial court within 14 days of the Clerk's certification of this order. The trial court is to hear and decide the matter within 56 days of the Clerk's certification of this order. Defendant-appellant must also file with the Clerk of this Court copies of all orders entered on remand within 14 days after entry.

The trial court is to make findings of fact and a determination on the record. The trial court is to cause a transcript of any hearing on remand to be prepared and filed within 21 days after completion of the proceedings.

Defendant-appellant may file a supplemental brief pertaining to the issues raised on remand within 21 days after entry of the trial court's order deciding the matter or 21 days after the transcript of the hearing on remand is filed, whichever is later. Plaintiff-appellee may file a supplemental brief in response.

This Court retains jurisdiction in the cause, and the time for proceeding with the appeal in this Court begins upon issuance of an order in the trial court that finally disposes of the remand proceedings. Nevertheless, the time for proceeding with the appeal begins 14 days from the date of certification of this order if remand pleadings are not filed in the trial court within the 14-day period.



Presiding Judge

A true copy entered and certified by Larry S. Royster, Chief Clerk, on



**JUN 20 2012**
Date


Chief Clerk

RECEIVED by Michigan Court of Appeals 8/22/2012 1:10:23 PM

RECEIVED by Michigan Court of Appeals 8/22/2012 1:10:23 PM

**APPENDIX B**

**Adjudication Order**

From:                                              06/04/2012 12:48    #820 P.010/028

RECEIVED by Michigan Court of Appeals 8/22/2012 1:10:23 PM

|  |  | PAGE 1 |
|---|---|---|
|  |  | JIS CODE: ODH |

Approved, SCAO

| **STATE OF MICHIGAN** | **ORDER OF ADJUDICATION** | **CASE NO.** |
|---|---|---|
| JUDICIAL CIRCUIT - FAMILY DIVISION | **(DELINQUENCY PROCEEDINGS)** | **10126888-DL** |
| GENESEE COUNTY |  |  |

900 S. SAGINAW ST.
FLINT MI 48502                                    (810)2573510

ORI
MI-250013J

| CTN/TCN see below | SID | DOB 11/27/1993 |
|---|---|---|

1. In the matter of   PHILLIP CHARLES GIBBS
   name(s), alias(es)   Petition #:  101122

2. Date of hearing: <u>08/03/2010</u>          Judge/Referee: <u>DAVID J. NEWBLATT</u>          <u>45306</u>
                                                                              Bar No.

3. A petition has been filed in this matter and notice of hearing on the petition has been served as required by law.

4. The juvenile has appeared in court in person with parent(s), guardian, legal custodian, or guardian ad litem, and ☒ was represented by an attorney: CAT-KAREN BUNKER
   ☐ waived representation by an attorney.

5. **THE COURT FINDS:** The following material allegations of the petition are sustained or dismissed:

   Petition <u>00101122</u>    CTN <u>251080104101</u>    CMP #<u>000003485710</u>

| Count | Plea | ADJUDICATED BY | | DISMISSED BY* | ALLEGATIONS | CHARGE CODE(S) |
|---|---|---|---|---|---|---|
|  |  | Court | Jury |  |  | MCL Citation/PACC Code |
| 01 | A |  |  |  | B&E ILLEGAL ENT W/OUT PER | 750.115-A |

*For plea, insert 'A' for admission or 'NC' for nolo contendere. For dismissal, insert 'D' for dismissed by court or 'NP' for dismissed by prosecutor/plaintiff.

☒ 6. A fingerprintable juvenile offense was committed pursuant to MCL 28.243 or MCL 28.727.
   Fingerprints   ☒ have    ☐ have not    been taken.

**IT IS ORDERED:**

☒ 12. The matter is adjourned for   ☒ dispositional hearing.   ☐ additional testimony.
                                     ☐ other good cause.

☒ 13. The next hearing is set for   <u>09/07/2010 AT 8:30 AM</u>
                                     Date, time, and place

☒ 14. Pending disposition, the juvenile shall be under the supervision of this court and shall

   ☒ a. remain in the care and custody of <u>HIS MOTHER</u>
      and be subject to the reasonable and lawful commands of the parent(s), guardian, or legal custodian and those terms and conditions required by the probation officer.

   ☐ b. be placed with the Michigan Department of Human Services for care and supervision, subject to the rules and conditions of foster care. Parenting time shall be as approved by the probation officer. The parent(s) shall reimburse the Child Care Fund for costs of placement.

(SEE NEXT PAGE)

|  |
|---|
| Do not write below this line - For court use only |
| FILED |
| 2010 AUG -3 P 2:37 |
| FAMILY DIVISION |

NOTE: If the juvenile had been previously removed from the home, was then returned to the home, and is being removed again through this order, contrary to the welfare and reasonable efforts findings must be made even though the findings had been made at a prior hearing.

**JC59 (09/08) ORDER OF ADJUDICATION (DELINQUENCY PROCEEDINGS)**    MCL 712A.18, MCR 3.942

From:                                                                06/04/2012 12:48      #820 P.011/028

Approved, SCAO

STATE OF MICHIGAN
JUDICIAL CIRCUIT -     FAMILY DIVISION
GENESEE COUNTY

| | | PAGE   2 |
| --- | --- | --- |
| | | JIS CODE: ODH |
| STATE OF MICHIGAN | ORDER OF ADJUDICATION | CASE NO. |
| | (DELINQUENCY PROCEEDINGS) | 10126888-DL |

900 S. SAGINAW ST.                                         (810)2573510
FLINT MI  48502

In the matter of  PHILLIP CHARLES GIBBS

☐  c. be referred to the Michigan Department of Human Services for placement and care
       pursuant to MCL 400.55(h).

☐  d. be placed at _____ .
       Parenting time shall be as approved by the probation officer.  The parent(s) shall
       reimburse the Child Care Fund for the costs of placement.

☐  e. cooperate with and participate in services, evaluations, tests, and the dispositional
       investigation as requested by the probation officer.  Parent(s) shall pay the costs of
       professional testing and evaluations.

☐  f. cooperate with an evaluation to determine the need for psychiatric or psychological
       treatment as prescribed by  MCL 712A.181.

☒ 16. Other:
       THE COURT HAS ACCEPTED THE JUVENILE'S GUILTY PLEA TO THE AMENDED CHARGE OF
       ILLEGAL ENTRY WITHOUT OWNER'S PERMISSION, BASED ON THE JUVENILE'S TESTIMONY.
       AS PART OF THE PLEA AGREEMENT, THE JUVENILE WILL PROVIDE TRUTHFUL TESTIMONY
       TO THE AUTHORITIES.
       THE JUVENILE'S MOTHER HAS GIVEN SUPPORT FOR THIS PLEA.

       DISPOSITION HAS BEEN ADJOURNED TO ALLOW THE CASEWORKER AND THE JUVENILE TO
       CREATE A SERVICE PLAN, INCLUDING SUBSTANCE ABUSE TREATMENT AND AN EDUCATIONAL
       PLAN.
       THE JUVENILE WILL NOT HAVE ANY CONTACT WITH THE CO-DEFENDANT IN THIS MATTER
       AND THE JUVENILE WILL BE PLACED UNDER HOUSE ARREST.

Recommended by: _____
                      Referee Signature

_____                                              45306
Date                          JUDGE DAVID J. NEWBLATT        Bar No.

JC59 (09/08) ORDER OF ADJUDICATION (DELINQUENCY PROCEEDINGS)   MCL 712A.18, MCR 3.942

                                                              LAST PAGE

From:                                                    06/04/2012 12:49   #820 P.012/028

| STATE OF MICHIGAN<br>7th Judicial Circuit - Family Division<br>Genesee County | DETENTION ORDER | File No. 10126888-D2<br>Patn. No. 101122 |
|---|---|---|

In the matter of: Phillip Gibbs                    DOB: 11-27-93

Date of hearing: 8-3-10                    Judge/Referee Newblatt

**THE COURT FINDS:**
The above named juvenile comes within the provisions of the Juvenile Code of the State of Michigan  MCL 712A.

☐ The above named juvenile has been previously adjudicated as a status offender and made subject to a juvenile court order; has received adequate and fair warning in writing and on the court record; has received in the alleged violation of the court order, the full range of due process enumerated in the re: Gault decision; has been adjudicated for violation of a valid court order in a full court hearing; and there is no less restrictive placement appropriate to the needs of the juvenile and the community.

**IT IS ORDERED: That The**

☒ Genesee Valley Regional Detention Center, Flint Michigan
☐ Oakland County Children's Village, Pontiac Michigan
☐ Saginaw County Juvenile Detention Center, Saginaw Michigan
☐ _____

is authorized to:
☐ Temporarily receive and hold the above name juvenile within their facility pending other placement appropriate to the juveniles needs and further order of the court;
☒ Release the above name juvenile from their facility.

**IT IS FURTHER ORDERED: That The**

☐ Genesee Valley Regional Detention Center, Flint Michigan
☐ Oakland County Children's Village, Pontiac Michigan
☐ Saginaw County Juvenile Detention Center, Saginaw Michigan
☐ _____

may seek necessary emergency and routine medical and dental care, and necessary clothing for the above named juvenile.  Payment for medical and dental care , as well as, necessary clothing is the responsibly of the juvenile's parents.

_____        _____        _____        8/3/10
Referee                         Date                   Family Division Judge                    Date

FILED

2010 AUG -3  P 2:37

7TH JUDICIAL CIRCL
FAMILY DIVISION

White - Court File
Yellow - GVRC, OCCV, SCJDC, Other Facility
Pink - Parent
cc: Reimbursement

h:forms\detnerd.doc  GC3029

RECEIVED by Michigan Court of Appeals 8/22/2012 1:10:23 PM

RECEIVED by Michigan Court of Appeals 2/4/2013 5:56:32 PM

| Lower Court or Tribunal | **STATE OF MICHIGAN**<br>**IN THE COURT OF APPEALS**<br>**Cover Sheet** | *CASE NO.* | | | |
|---|---|---|---|---|---|
| GENESEE CIRCUIT COURT | | CIRCUIT: | Year<br>11 | Number<br>028140 | Case Type<br>FC |
| | | COURT OF APPEALS: | 306124 | | |

<div align="center"><em>Filing Party</em></div>

| Filing Party Last Name or Business/Entity/Agency Name | Attorney Last Name |
|---|---|
| GIBBS CHARLES PHILLIP | Davidson |

| Filing Party First Name | M.I. | Attorney First Name | M.I. | P Number |
|---|---|---|---|---|
| | | Randy | E | 30207 |

| Address (Street 1, Street 2, City, State, and ZIP Code) | Address (Street 1, Street 2, City, State, and ZIP Code) |
|---|---|
| | 645 Griswold Street |
| | Suite 3300 |
| | Detroit   MI   48226 |

Attorney Telephone Number
(313)256-9833

<div align="center"><em>Summary of Items Filed</em></div>

| Type | Filename/Description | Filing Fee | Doc Fee | Total This Filing |
|---|---|---|---|---|
| Brief | Defendant-Appellant's Supplemental Authority -- MCR 7.212(F) | $5.00 | ---- | $5.00 |

| | | | |
|---|---|---|---|
| | | **3% Service Fee:** | $0.15 |
| **Fee Substitute/Alternate Payment** | | **Total All Filings:** | $5.15 |

**Reason:**

| | |
|---|---|
| X | **Appointed Counsel** |
| ☐ | **Motion To Waive Fee** |
| ☐ | **Fees Waived in this Case** |
| ☐ | **MI InterAgency Transfer** |
| ☐ | **No Fee per MCR 7.203(F)(2)** |

**Filer Office Use Only:**   25680T-J

The documents listed above were electronically filed with the Michigan Court of Appeals at the date/time stated in the left margin.  As a recipient of service of these documents, you may wish to go to https://wiznet.wiznet.com/appealsmi to register as a user of the electronic filing system.
306124 - 305691

| Lower Court or Tribunal | **STATE OF MICHIGAN**<br>**IN THE COURT OF APPEALS**<br>**Proof of Service** | *CASE NO.* | | |
|---|---|---|---|---|
| | | CIRCUIT: | Year **11** | Number **028140** | Case Type **FC** |
| GENESEE CIRCUIT COURT | | COURT OF APPEALS: | **306124** | |

Case Name: ___PEOPLE OF MI V PHILLIP CHARLES GIBBS___

On ___2/4/2013___ , one copy of the following documents:

Brief                               Defendant-Appellant's Supplemental Authority -- MCR 7.212(F)

was delivered to the persons listed below:

Date
___2/4/2013___

Signature
___/s/Randy E Davidson___

| Bar Number | Name | Delivery Method | Service Address |
|---|---|---|---|
| P- | AO, SADO | E-Serve | ao@sado.org |
| P- 30207 | Davidson, Randy E | E-Serve | rdavidson@sado.org |
| P- | Prosecutor, Genesee County | E-Serve | vhaley@co.genesee.mi.us |

RECEIVED by Michigan Court of Appeals 2/4/2013 5:56:32 PM

The documents listed above were electronically filed with the Michigan Court of Appeals at the date/time stated in the left margin. As a recipient of service of these documents, you may wish to go to https://wiznet.wiznet.com/appealsmi to register as a user of the electronic filing system.

RECEIVED by Michigan Court of Appeals 2/4/2013 5:56:32 PM

Approved, Michigan Court of Appeals

| **LOWER COURT** | **Electronically Filed** | **CASE NO.** |
|---|---|---|
| | | Lower Court   **11-28140FC** |
| **Genesee County Circuit Court** | **BRIEF COVER PAGE** | Court of Appeals  **306124** |

(Short title of case)

Case Name:  **People v. Phillip Charles Gibbs**

1. Brief Type (select one):   ☒ APPELLANT(S)     ☐ APPELLEE(S)     ☐ REPLY

   ☐ CROSS-APPELLANT(S)   ☐ CROSS-APPELLEE(S)   ☐ AMICUS

   ☒ OTHER [identify]:  **Supplemental Authority—MCR 7.212(F)**

2. This brief is filed by or on behalf of [insert party name(s)]: **Phillip Charles Gibbs**

3. ☐  This brief is in response to a brief filed on          by        .

4. ORAL ARGUMENT:     ☐ REQUESTED        ☐ NOT REQUESTED

5. ☐  THE APPEAL INVOLVES A RULING THAT A PROVISION OF THE CONSTITUTION, A
   STATUTE, RULE OR REGULATION, OR OTHER STATE GOVERNMENTAL ACTION IS
   INVALID.
   [See MCR 7.212(C)(12) to determine if this applies.]

6. As required by MCR 7.212(C), this brief contains, in the following order: [check applicable boxes to
   verify]

   ☐ Table of Contents [MCR 7.212(C)(2)]

   ☐ Index of Authorities [MCR 7.212(C)(3)]

   ☐ Jurisdictional Statement [MCR 7.212(C)(4)]

   ☐ Statement of Questions [MCR 7.212(C)(5)]

   ☐ Statement of Facts (with citation to the record) [MCR 7.212(C)(6)]

   ☐ Arguments (with applicable standard of review) [MCR 7.212(C)(7)]

   ☐ Relief Requested [MCR 7.212(C)(9)]

   ☐ Signature [MCR 7.212(C)(9)]

7. This brief is signed by [type name]: **Randy E. Davidson**

   Signing Attorney's Bar No. [if any]: **(P30207)**

(10/06)  **E-File Brief Cover Page**                                                    MCR
7.212(C)

STATE OF MICHIGAN

IN THE COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN

           Plaintiff-Appellee,

-vs-

PHILLIP CHARLES GIBBS

           Defendant-Appellant.

_____/

**Court of Appeals No.** 306124

**Lower Court No.** 11-28140FC

## DEFENDANT-APPELLANT'S SUPPLEMENTAL AUTHORITY

On Issue I., in *United States v Gupta*, 699 F3d 682 (CA 2, 11/8/2012), the Second Circuit held that the defendant did not forfeit his courtroom closure claim where it did not appear defense trial counsel was aware of the closure at the time it happened, and the record was "at best undeveloped." *Id*, p 689-690. In the present case, the trial court merely stated "if any spectators would like to come in they're welcome but they do have to sit over here by the law clerk, not in the middle of the pool" (T I 4). Nothing in the present record shows that defense trial counsel was aware that court personnel prevented Mr. Gibbs' family members from entering the courtroom during voir dire.

On Issue II., the United States Supreme Court has agreed to decide whether the Fifth Amendment protects a defendant from introduction of pre-arrest, pre-*Miranda* refusal to answer law enforcement questions. *Salinas v State*, 369 SW3d 176 (Tex Crim App, 2012), cert gtd ___ US ___; ___ S Ct ___; ___ L Ed 2d ___ (No. 12-246, 1/11/2013).

On Issue III., *In re TD*, 292 Mich App 678 (2011) was vacated as moot in 493 Mich 873; 821 NW2d 569 (10/24/2012). Also, in *People v Anderson*, ___ Mich App ___; ___ NW2d ___ (Docket No. 301701, issued 10/23/2012), this Court held that juvenile probation scores under PRV-6. Even assuming a defendant's status as being on bond in a juvenile case would score, the record does not show that Mr. Gibbs was on juvenile bond at the time of commission of the sentencing offenses.

           Respectfully submitted,

           **STATE APPELLATE DEFENDER OFFICE**

           /s/ Randy E. Davidson

BY:   _____

           **RANDY DAVIDSON (P30207)**
           **Assistant Defender**

Date: February 4, 2013

RECEIVED by Michigan Court of Appeals 2/4/2013 5:56:32 PM