UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILLIP CHARLES GIBBS,

       Petitioner,

                                     Case No. 14-cv-14028

v.                                   Hon. Matthew F. Leitman

JEFFREY WOODS,

       Respondent.
_____/

## OPINION AND ORDER (1) DENYING AMENDED PETITION FOR A WRIT OF HABEAS CORPUS (ECF No. 13), (2) GRANTING A LIMITED CERTIFICATE OF APPEALABILITY, AND (3) GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Petitioner Phillip Charles Gibbs is a state prisoner in the custody of the Michigan Department of Corrections.  In 2011, a jury in the Genesee County Circuit Court convicted Gibbs of two counts of armed robbery, Mich. Comp. Laws § 750.529, conspiracy to commit armed robbery, Mich. Comp. Laws §§ 750.157a, 750.529, and unarmed robbery, Mich. Comp. Laws § 750.530.  The state trial court then sentenced Gibbs to concurrent terms of 17 ½ to 30 years imprisonment on the armed robbery and conspiracy convictions and 8 years 4 months to 15 years imprisonment on the unarmed robbery conviction.

In this action, Gibbs seeks a writ of habeas corpus from this Court pursuant to 28 U.S.C. § 2254. (*See* Am. Pet., ECF No. 13.)  Gibbs' primary claim is that the

state trial court violated his Sixth Amendment right to a public trial when it excluded the public from *voir dire*.  He also asserts claims related to the use of his pre-arrest silence and the validity of his sentence.

Respondent argues that Gibbs' public trial claim is procedurally defaulted because Gibbs did not object during *voir dire* to the closure of the courtroom.  But enforcing a default against Gibbs based upon his lack of a contemporaneous objection would be troubling because the state trial court told Gibbs and his counsel that the courtroom was (and would remain) *open* during *voir dire*, and court security officers then closed the courtroom outside of the presence of Gibbs and his lawyer. Under these circumstances, Gibbs could not reasonably have been expected to object to the closure.  As explained below, there are substantial reasons to conclude that (1) Gibbs did not procedurally default his public trial claim when he failed to object contemporaneously to the unknown closure and/or (2) any procedural default should be excused because the state trial court led Gibbs to conclude that the courtroom would be open and that no objection would be necessary.

But the Sixth Circuit's divided decision in *Bickham v. Winn*, 888 F.3d 248 (6th Cir. 2018) compels the Court to deem Gibbs' public trial claim defaulted and to enforce the default.  In *Bickham*, the Sixth Circuit held that a habeas petitioner who was unaware of a courtroom closure procedurally defaulted his public trial claim

2

when he failed to object during jury selection to the unknown closure, and the Sixth Circuit enforced the default.

While *Bickham* binds this Court, it is not clear that the Sixth Circuit in that case considered all of the arguments that weigh heavily against finding and enforcing a procedural default under the circumstances presented here. That court may well deem these additional arguments worthy of further consideration (in an *en banc* setting if necessary). In the alternative, the Sixth Circuit may conclude that *Bickham* does not control here for some reason – a conclusion this Court does not feel that it may reach. For these reasons (and because enforcing a procedural default here seems grossly unfair), the Court will grant a certificate of appealability limited to Gibbs' public trial claim. (Gibbs' two remaining claims lack merit and are not worthy of further review.)

Accordingly, for the reasons stated below, the Court **DENIES** Gibbs' petition but **GRANTS** him limited certificate of appealability on his public trial claim.

## I

Gibbs' convictions arise from his and co-defendant Tyrell Henderson's armed robbery of a store in Flint, Michigan on October 26, 2010. The Michigan Court of Appeals described the relevant facts as follows:

> This case arises from an armed robbery that occurred at a store called Wholesale 4 U in Flint, Michigan, on October 26, 2010. Nancy Anagnostopoulos and her husband, Costas Anagnostopoulos, owned the store and were

present at the time of the robbery. Also present was employee Jeremy Kassing. Defendants had been to the store together numerous times that day. Originally, they had hoped to pawn some jewelry. After finding out that the jewelry had no value, Henderson purchased a video game. He later decided to return it. Defendants entered the store and told Costas that the game did not work. As Costas attempted to help determine what was wrong with the game, Henderson struck him in the head with a gun. Gibbs, who was not personally armed during the incident, approached Nancy and removed her necklaces and ring. He took her identification and purse. Gibbs also took an iPod from the store, as well as a number of laptop computers. In the meantime, Henderson took Costas's jewelry, wallet, and money. He ordered Costas to open the store's register and then took Costas to a back room where a safe was kept. Part of Costas's ear was cut off as a result of the blow he received, and he received stitches for the injury. Kassing's wallet was also taken. A subsequent search of the home Gibbs shared with his mother uncovered a sandwich bag containing jewelry, a sandwich bag containing papers and the identifications of the three victims, and several watches identified as those taken from the store.

In separate police interviews, both defendants admitted their involvement. However, Gibbs told the officer that his involvement was involuntary. Gibbs believed that they were going to the store to return the video game and had no idea that Henderson was planning a robbery. Gibbs stated that Henderson ordered him to take the victims' belongings and other store items. Gibbs testified at trial that he complied only because he did not want anything to happen to him.

The juries convicted defendants and they were sentenced as outlined previously.

*People v. Gibbs*, 830 N.W.2d 821, 823-24 (Mich. App. 2013).

Following his convictions and sentencing, Gibbs filed an appeal of right in the Michigan Court of Appeals.  He raised claims arising out of the trial court's closure of the courtroom during *voir dire*, the prosecutor's use of his pre-arrest silence, and the scoring of the state sentencing guidelines.  He also filed a motion to remand for a hearing on his public trial and sentencing issues.  The Michigan Court of Appeals granted the motion to remand and the case returned to the state trial court.  (The Court discusses the proceedings on remand in much more detail below.)

The state trial court denied Gibbs relief on remand, and Gibbs thereafter returned to the Michigan Court of Appeals.  That court affirmed his convictions and sentences.  Gibbs then filed an application for leave to appeal with the Michigan Supreme Court.  That court denied the application. *See People v. Gibbs*, 838 N.W.2d 875 (Mich. 2013).

In 2014, Gibbs filed his initial federal habeas petition in this Court. (*See* Pet., ECF No. 1.)  In that petition, Gibbs raised the same claims that he presented on direct appeal in the state courts. After Respondent filed an answer to the petition, Gibbs moved to amend the petition or to stay the proceedings so that he could exhaust in the state courts a claim that the state trial court interfered with his trial counsel's ability to provide effective assistance.  The Court stayed the proceedings and allowed Gibbs to exhaust that claim in December 2015. (*See* Order, ECF No. 11.)

Gibbs then filed a motion for relief from judgment with the state trial court. The trial court denied the motion. *See People v. Gibbs*, No. 11-02140-FC (Genesee Co. Cir. Ct. March 14, 2016). Gibbs then filed an application for leave to appeal with the Michigan Court of Appeals, and that court denied the application. *See People v. Gibbs*, No. 334968 (Mich. Ct. App. Dec. 22, 2016). Gibbs failed to timely seek leave to appeal with the Michigan Supreme Court.

Gibbs thereafter moved to reopen this case and proceed on an amended petition. (*See* Mot., ECF No. 12.) The Court granted that motion and reopened the case. (*See* Order, ECF No. 14.) In the amended habeas petition, Gibbs raises the following claims:

> I.   His Sixth Amendment right to a public trial was violated by the closure of the courtroom [which] excluded members of his family and the public from the jury selection.
>
> II.   He was prejudiced by the violation of his Fifth Amendment right to remain silent, and the prosecutor used his pre-arrest silence to impeach exculpatory testimony at trial. The prosecutor then referred to the silence during his closing argument.
>
> III.   His right to due process was violated by the refusal to correct guidelines scoring mistakes [PRV 5 and 6 and OV 13 where] correcting the mistakes would substantially reduce the guideline range.
>
> IV.   The trial court prevented him from having the effective assistance of trial counsel by the way of not disclosing the decision to have the courtroom closed to the public.

Respondent filed an answer to the amended petition. (*See* Ans., ECF No. 15.) Respondent argued that Gibbs' public trial and pre-arrest silence claims are procedurally defaulted, that the sentencing claim is not cognizable, and that all of the claims lack merit. (*See id.*) Gibbs filed a reply to that answer. (*See* Reply, ECF No. 17.) The Court thereafter appointed counsel for Gibbs and directed the parties to file supplemental pleadings on the public trial claim. Both parties did so. (*See* Supp. Brs., ECF No. 25, 26.)

## II

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires federal courts to uphold state court adjudications on the merits unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473

### III

### A

Gibbs first asserts that he is entitled to federal habeas relief because the state trial court closed the courtroom during jury *voir dire*.  Respondent contends that this claim is barred by procedural default because Gibbs did not object during *voir dire* to the closure of the courtroom.  Counsel that the Court appointed for Gibbs agrees with Respondent's assertion that, in light of the Sixth Circuit's decision in *Bickham*, *supra*, Gibbs' public trial claim is procedurally defaulted.  Based on that concession, and the Court's own reading of *Bickham*, the Court concludes that Gibbs' public trial claim is procedurally defaulted.  However, as set forth below, the enforcement of a procedural default here raises troubling questions, seems unfair, and is worthy of further review.

### B

In order to understand why the invocation of a procedural default is troubling here, it is helpful to review what happened in connection with the courtroom closure and the state courts' responses to Gibbs' argument concerning the closure.

Gibbs' trial began in the Genesee County Circuit Court on June 28, 2011.  Just prior to the start of *voir dire*, the trial court said that "if any spectators would like to come in [for jury selection] they're welcome." (6/28/2011 Trial Tr. at 4, ECF No. 8-

11, PageID.250.)  The court did not say – nor imply in any way – that any spectators would be prevented from entering the courtroom at any time.

The court then proceeded to pick the jury.  Unsurprisingly, Gibbs' trial counsel did not raise any objection to any closure of the courtroom.  Nothing the trial court had said would have led counsel to conclude that the courtroom had been closed in any fashion.  On the contrary, the trial court said the opposite – that spectators would be "welcome" to enter.

Following jury selection, the trial proceeded.  Gibbs was convicted as set forth above.

After trial, Gibbs learned that despite the trial court's statement that visitors would be "welcome" during *voir dire*, Gibbs' mother, sister, and brother-in-law were not allowed to enter the courtroom during *voir dire*.  Those family members said in sworn affidavits that they were told by a "male official in [the state trial judge's] courtroom that since a jury was being picked, [they] could not enter and watch the proceedings." (Courtney Jones Aff. at ¶3, ECF No. 8-18, PageID.1289. *See also* Elverta Theresa Gibbs Aff. at ¶¶ 3-4, ECF No. 8-18, PageID.1288; Seandra Davidson-Coleman Aff. at ¶ 3, ECF No. 8-18, PageID.1290.)

Gibbs then filed an appeal of right in the Michigan Court of Appeals.  Gibbs' appointed appellate counsel filed a motion to remand so that a full record related to the closure of the courtroom could be made in the state trial court. (*See* Mot. to

Remand, ECF No. 8-18, PageID.1317-1347.)   In that motion, appellate counsel noted that it was "unclear [] whether [the state trial judge] knew her staff closed off the courtroom during *voir dire*." (*Id.*, PageID.1335.)   Appellate counsel also submitted an affidavit in which she stated that "if granted a hearing on Mr. Gibbs' claim that he was denied the right to a public trial, the undersigned counsel [would] proffer the testimony of" Gibbs' three family members who were denied entry to the courtroom, would "seek evidence from court staff connected with [the state trial judge's] chambers to as to her policy on this subject as of the time of trial," and would "examine[]" Gibbs' trial counsel. (Brandy Robinson Aff. at ¶7, ECF No. 8-18, PageID.1354.)

The Michigan Court of Appeals granted the motion to remand on June 20, 2012. (*See* Order, ECF No. 8-18, PageID.1376.)   In the order granting the motion, the Michigan Court of Appeals specifically instructed the state trial court that it "*shall* conduct an evidentiary hearing based on the closure of the courtroom during *voir dire*." (*Id.;* emphasis added.)

Gibbs and his appointed appellate counsel appeared for that evidentiary hearing on July 16, 2012. (*See* 7/16/2012 Hr'g Tr., ECF No. 8-17.)   Counsel confirmed that she wanted to "go ahead with the evidentiary hearing" so that she could present witnesses who would "illuminate" what happened with respect to the closure of the courtroom during *voir dire*.  (*Id.*, PageID.1217.)

10

In defiance of the order from the Michigan Court of Appeals, the state trial court refused to hold an evidentiary hearing and denied Gibbs the opportunity to develop a record in support of his public trial claim.  The trial court said that there was no need for a hearing because the court knew what happened in connection with the closure of the courtroom.  It explained that it had followed its customary policy of allowing spectators who were present in the courtroom at the beginning of *voir dire* to remain while excluding spectators for entering for the first time during the *voir dire* process. (*See id.*, PageID.1218.) There is no indication in the record that the trial court ever informed Gibbs' trial attorney about this customary practice of exclusion.

After the state trial court denied Gibbs' motion for a new trial, he returned to the Michigan Court of Appeals.  A new panel of that court acknowledged that the state trial court did not hold an evidentiary hearing as the previous appellate panel had specifically ordered, but it nonetheless denied his public trial claim:

> Gibbs contends that his family and members of the public were prevented from entering the courtroom during jury selection. The record reveals that before jury selection began, the trial court stated, "And if any spectators would like to come in they're welcome but they do have to sit over here by the law clerk, not in the middle of the pool." Gibbs submitted affidavits indicating that individuals were not allowed to enter the courtroom during jury selection. Even accepting Gibbs's contention as true, we find no error given the trial court's statement. It appears that the courtroom was opened to the public initially, but then closed once jury selection began. On remand, the trial

11

court did not conduct a full hearing and acknowledged that once jury selection had begun, the courtroom was closed and suggested that it was "too confusing" to allow individuals to come and go during jury selection. Even if we were to find error on the basis of the trial court's admitted refusal to allow individuals to enter once jury selection began, Gibbs is not entitled to a new trial or evidentiary hearing. As in *Vaughn*, both parties engaged in vigorous *voir dire*, there were no objections to either party's peremptory challenges, and each side expressed satisfaction with the jury. Further, the venire itself was present. Accordingly, Gibbs fails to satisfy the fourth prong as set forth in *Vaughn* and is not entitled to a new trial.

*Gibbs*, 830 N.W.2d at 825.

## C

### 1

In Gibbs' present habeas petition, he re-raises his public trial claim. Respondent argues that because Gibbs' trial counsel did not contemporaneously object to the closure during *voir dire*, the claim is procedurally defaulted. After Respondent raised that argument, the Court appointed counsel for Gibbs and asked counsel to review the procedural default question. The Court asked appointed counsel to explore, among other things, whether Gibbs' failure to object to a courtroom closure of which he was unaware – and which he had no reason to believe would be occurring – could be considered a procedural default. The Court also asked counsel to research whether there was a basis for the Court to hold an evidentiary hearing to inquire into the circumstances surrounding the closure of the courtroom.

Gibbs' appointed counsel then conducted a diligent inquiry into these questions. Counsel discovered and directed the Court to *Bickham*. In *Bickham*, a habeas petitioner named Martez Bickham sought relief from his state-court second-degree murder conviction on the ground that the state trial court violated his Sixth Amendment right to a public trial. "[A]s *voir dire* was about to commence" at Bickham's trial, "court officers began to clear the public from the courtroom." *Id.* at 250. Bickham's trial counsel then "objected to the public's removal" under the Supreme Court's decision in *Presley v. Georgia*, 558 U.S. 209 (2010). *Id.* In response to that objection, the trial court told counsel that it was "not excluding" spectators from the proceedings and that after the jury panel entered the courtroom, members of the public would "be allowed in":

> [THE COURT:] The Court is not excluding people from being in the courtroom. Right now the deputies are removing the spectators or people who are in the courtroom in order to allow ... the jury panel of over fifty people be allowed in, and so that they are not intermixed with the audience, and so once the whole panel is in, those who fit separately from the jury can be allowed in. But we cannot bring a jury in with the number of people in this courtroom. They fill the bleachers, and in order to conduct voir dire, we need the jury panel to fit into the courtroom.

*Id.* A jury was then selected. After jury selection concluded, Bickham's counsel told the trial court that during jury selection, Bickham's family and supporters were not allowed to enter the courtroom. *See id.* The trial court responded that such an objection or request should have been raised during *voir dire*:

> [COUNSEL:] Judge, I would just once again under [*Presley*], the other family members of the defendant, supporters and possible witnesses were not allowed to come back in, or were not allowed to be seated in the courtroom during voir dire after they were excluded for the seating.
>
> THE COURT: All right. Thank you. I would state that there was no additional request made after the court explained the situation, and that the jury panel being [a] fifty-two member panel filled the entire courtroom, except for the small bench that can hold two people. If there was a request for two people to be in, specifically because there was a crowd of probably fifty people in the courtroom, some may be family or friends, or some having to do with other cases, I have no idea who they were. But there was no ruling made on any request. It was not made.

*Id.*

Trial then proceeded, and the jury convicted Bickham of several offenses. He appealed his convictions to the Michigan Court of Appeals. On appeal, he argued that "his Sixth Amendment right to a public trial was violated when the public was removed from the courtroom during jury selection and was not permitted to reenter." *Id.* The Michigan Court of Appeals rejected Bickham's Sixth Amendment argument and affirmed his convictions. *See id.* It held that "Bickham procedurally defaulted his Sixth Amendment claim when he did not make a contemporaneous objection to the closure of the courtroom." *Id.* Bickham filed an application for leave to appeal in the Michigan Supreme Court, but that court denied the application. *See id.*

14

Bickham then filed a petition for a writ of habeas corpus in federal court. "The State argued in response that Bickham had procedurally defaulted by failing to make a timely objection to the exclusion of the public, but the district court chose to decide the case on the merits. The district court ultimately dismissed the petition and declined to issue a certificate of appealability." *Id.* Bickham sought a certificate of appealability from the Sixth Circuit, and that court granted the certificate. *See id.*

The Sixth Circuit then affirmed the district court's denial of habeas relief. It concluded that "Bickham ha[d] procedurally defaulted his Sixth Amendment habeas claim":

> Although Bickham objected when the trial court ordered members of the public to exit the courtroom, the court responded that it was only initially removing the public in order to bring in the jury panel and that some of the public would be permitted to reenter after the panel was seated. Following entry of the jury panel, the court bailiffs apparently did not allow members of the public to reenter. As noted by the Michigan trial court, Bickham did not request that the court allow members of the public to reenter after the jury panel was seated, and the trial court, therefore, was unable to rule on such a request. In order to preserve his claim, Bickham should have objected when the jury panel had been seated and members of the public were not permitted to reenter. He objected a second time following voir dire, but this objection came too late for the court to take corrective actions. *See Grant*, 520 N.W.2d at 130.
>
> Bickham argues that his failure to object when members of the public were denied reentry was excusable because defense counsel reasonably relied upon the court's assurance that the public would be able to reenter after the

jury panel was seated. Cases cited by Bickham in support of this proposition, however, involve trial courts' granting of evidentiary motions prior to trial. *See, e.g.*, *People v. Hernandez*, 423 Mich. 340, 377 N.W.2d 729, 735 (1985) ("The defense, having moved in limine to exclude testimony concerning K.P. and having obtained a favorable ruling, was entitled to rely upon that determination."). Unlike the rules of evidence, of which we presume courts to have great familiarity, it is implausible that the trial court in this matter could differentiate members of the jury panel from members of the public. Defense counsel likely knew his client's family members, however, and was in a better position to realize their absence. Consequently, Bickham should have objected when members of the public were not permitted to reenter after the jury panel was seated and before voir dire began. His failure to do so amounts to a failure to comply with Michigan's contemporaneous-objection rule. *See Hodge v. Haeberlin*, 579 F.3d 627, 642 (6th Cir. 2009) (stating that, "in determining whether to give preclusive effect to a procedural default, this court must consider whether the petitioner actually failed to comply with a state procedural rule" (citing *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000))).

*Id.* at 251-52.

Gibbs' appointed counsel deemed *Bickham* to be controlling here. (*See* Gibbs Supp. Br., ECF No. 25, PageID.1704-1705.)   In Gibbs' supplemental brief, and during on-the-record status conferences held on May 1, 2019, and April 23, 2020, counsel acknowledged that under *Bickham*, Gibbs' public trial claim is procedurally defaulted – and that the default stands even though Gibbs may not have been aware of the courtroom closure.

The Court reluctantly agrees that *Bickham* compels the conclusion that Gibbs' public trial claim is procedurally defaulted. Indeed, the circumstances surrounding Gibbs' failure to object to the courtroom closure closely track the circumstances in *Bickham*. In both cases, (1) the state trial courts made statements suggesting that the courtroom would be open, (2) court security staff nonetheless closed the courtroom outside of the presence of defense counsel and defendant, and, as a result, (3) neither defense counsel nor defendant was aware of the closure. Since the failure to object was deemed a procedural default under these circumstances in *Bickham*, it seems that, as Gibbs' appointed counsel acknowledges, Gibbs' failure to object must likewise be deemed a procedural default here.[1]

## 2

While *Bickham* controls here, there is a serious argument – that was apparently not presented to the Sixth Circuit in *Bickham* – that Gibbs' failure to object during *voir dire* does not amount to a procedural default.

A "procedural default results where three elements are satisfied: (1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the

---

[1] Gibbs' appointed counsel also determined that there was no basis for the Court to hold an evidentiary hearing. Counsel communicated that conclusion to the Court during a series of on-the-record status conferences held on March 18, 2019, and May 1, 2019, and April 23, 2020.

petitioner's case; and (3) the procedural forfeiture is an adequate and independent state ground foreclosing review of a federal constitutional claim." *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003) (internal quotation marks omitted).   A state's procedural rule is "adequate and independent" where it is "firmly established and regularly followed" at the time it is applied. *Ford v. Georgia*, 498 U.S. 411, 423 (1991).

Here, the state rule that the Michigan Court of Appeals applied against Gibbs was the contemporaneous-objection rule – one that requires a criminal defendant to object to a constitutional error when the error occurs. *See People v. Carines*, 597 N.W.2d 130, 139 (Mich. 1999).   And while that rule is "normally enforced" by Michigan courts, *see Taylor v. McKee*, 649 F.3d 446, 451 (6th Cir. 2011), it is not clear that Michigan courts enforce the rule against defendants who failed to object because, through no fault of their own, they were unaware of the facts upon which to base their objection.   Indeed, this Court has not found a single decision from any Michigan appellate court enforcing the contemporaneous-objection rule against a defendant, like Gibbs, who did not know of the objectionable action by the state court.   Because it does not appear that the Michigan courts have regularly enforced procedural defaults in these circumstances, Gibbs' failure to object to the courtroom closure of which he was unaware should not bar federal review of his public trial claim.

The Sixth Circuit reached a contrary conclusion in *Bickham*.  It held that "Michigan precedent makes clear that the contemporaneous-objection rule [is] 'firmly established and regularly followed' in the public-trial context." *Bickham*, 888 F.3d at 252.  In support of that conclusion, the court cited two decisions of the Michigan Court of Appeals: *People v. Gratton*, 309 N.W.2d 609, 610 (Mich. App. 1981) and *People v. Smith*, 282 N.W.2d 227, 229 (Mich. App. 1979). *See id*.

The petitioner in *Bickham* apparently did not explain to the Sixth Circuit why these two decisions were inapposite.  In both *Gratton* and *Smith*, the Michigan Court of Appeals held that the defendants waived the right to raise public trial claims on appeal where they failed to object to the courtroom closures at trial.  But the defendants in both of those cases knew about the closure at the time they failed to object.  Indeed, the defendant in *Gratton* was obviously aware of the courtroom closure when he failed to object, *see Gratton*, 309 N.W.2d at 610 (the trial court "cleared the courtroom of spectators" during testimony by a child witness), and the defendant in *Smith* "gave his express consent" to the closure. *Smith*, 282 N.W.2d at 229.  Thus, neither *Smith* nor *Gratton* is an example of a Michigan court enforcing the contemporaneous-objection rule against a defendant who, through no fault of his own, was unaware of the facts that could support the objection.  Those decisions demonstrate only that Michigan courts enforce the contemporaneous-objection rule against defendants who fail to object to a *known* courtroom closure.

Decisions like *Gratton* and *Smith* applying the contemporaneous-objection rule against fully informed defendants say little, if anything, about whether the rule applies against *uninformed* defendants. Indeed, numerous courts – both state and federal – that regularly apply the contemporaneous-objection rule against informed defendants have declined to apply the rule against defendants who, through no fault of their own, were unaware of the basis for the objection.[2]   As the courts in these cases properly recognized, there is a significant difference between applying the contemporaneous-objection rule against a fully informed defendant and one who, through no fault of his own, does not know the facts that could have supported the objection.   Thus, the fact that the Michigan Court of Appeals applied the contemporaneous-objection rule against the fully informed defendants in *Gratton*

---

[2] *See, e.g., U.S. v. Gupta*, 699 F.3d 682, 689-90 (2d Cir. 2012) (holding that defendant did not forfeit public trial claim where he failed to object to a courtroom closure of which he was unaware); *Eversole v. Commonwealth*, 600 S.W.3d 209, 214 (Ky. 2020) (reviewing claim that third party interfered with jury despite lack of contemporaneous objection because the defendant and his lawyer "were never made aware of the information" and thus court "would not expect to find a timely objection in the record"); *Shootes v. State*, 20 So.3d 434, 436-38 (Fl. App. 2009) (declining to enforce contemporaneous-objection rule against defendant whose "counsel had no opportunity to object … because he was unaware of what was occurring in the gallery behind him."); *Commonwealth v. Johnson*, 456 A.2d 988, 396-97 (Pa. Super. 1983) (declining to enforce contemporaneous-objection rule against defendant who did not object at time of error because he was "not [then] aware" of the facts on which to base the objection). *See also U.S. v. Hanno*, 21 F.3d 42, 45, n. 2 (4th Cir. 1994) ("Defendant should not be penalized for failure to object based on a ground not known to him."); *U.S. v. Douglas*, 155 F.2d 894, 896 (7th Cir. 1946) ("Obviously, defendant's counsel could not be expected to object to the submission of the affidavits unless he had knowledge thereof.").

and *Smith* does not speak to whether Michigan regularly applies the rule against defendants like Gibbs who were unaware of the facts underlying the omitted objection. Had the petitioner in *Bickham* shown that *Gratton* and *Smith* are inapposite for this reason, the Sixth Circuit may not have been persuaded that the Michigan courts regularly apply the contemporaneous-objection rule against uninformed defendants in Bickham's (and Gibbs') position. But since *Bickham* stands, this Court must conclude that Gibbs procedurally defaulted his public trial claim by failing to object during *voir dire*.

### D

The Court must next consider whether Gibbs' procedural default may be excused. Gibbs' default may be excused if he shows (1) cause for his failure to object and actual prejudice resulting from the alleged constitutional violation, *see Coleman v. Thompson*, 501 U.S. 722, 753 (1991); *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996), or (2) that the failure to consider his due process claim will result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750. "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). "To be credible, [a claim of actual innocence] requires [a habeas] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory

scientific evidence, trustworthy eyewitness accounts, or critical physical evidence –

that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Gibbs cannot make either showing.

## 1

First, Gibbs cannot demonstrate cause for his failure to object.  To establish

cause, Gibbs must demonstrate that some external impediment frustrated his ability

to comply with the state's procedural rule. *See Murray*, 477 U.S. at 488.  In *Strickler*

*v. Greene*, 527 U.S. 263 (1999), the Supreme Court explained that this "cause"

standard is "ordinarily establish[ed]" where a petitioner can show that "conduct

attributable to the [State] impeded trial counsel's access to the factual basis for

making a [] claim." *Id.* at 283.  *See also Murray*, 477 U.S. at 488 (explaining that "a

showing that the factual or legal basis for a claim was not reasonably available to

counsel or that some interference by officials made compliance impracticable would

constitute cause") (internal citations and punctuation omitted).

Gibbs argues that he has shown "cause" under *Strickler*.  He highlights that

the state trial court specifically told him and his trial counsel that members of the

public would be "welcome" to "come in" and observe *voir dire*. (6/28/2011 Trial Tr.

at 4, ECF No. 8-11, PageID.250.)   But in direct contravention of the court's

statement and unbeknownst to Gibbs or his counsel, another state actor – security

staff employed by the state court – prevented Gibbs' family members from entering

the courtroom during jury selection.   Thus, Gibbs concludes that "conduct attributable" to the state trial judge and to the court security officers "impeded [Gibbs'] trial counsel's access to the factual basis for making" a contemporaneous objection to the closure of the courtroom. *Strickler*, 527 U.S. at 283.  In other words, "interference" by state officials "made compliance" with the contemporaneous-objection rule "impracticable." *Murray*, 477 U.S. at 488.  Gibbs' argument seems to have real merit.

However, finding "cause" on this basis under *Strickler* would be inconsistent with *Bickham*.  As noted above, in *Bickham*, as here, the state trial court led the petitioner's counsel to believe the members of the public would be allowed into the courtroom during *voir dire*.  And also, as here, the petitioner's trial counsel in *Bickham* was unaware that the courtroom had been closed until it was too late to make a contemporaneous objection.  Yet, the court in *Bickham* nonetheless held that the petitioner failed to show "cause" for his failure to object. *Bickham*, 888 F.3d at 252.  In light of *Bickham*, the Court cannot find the required "cause" under the standard described in *Strickler*.[3]

---

[3] On August 12, 2020, Gibbs sent a letter to the Court in which he requested additional time to develop his argument that he can show the required "cause" to excuse the procedural default on his public trial claim. (*See* Ltr., ECF No. 39.)  The Court has carefully reviewed the letter and the attachments to the letter.  In light of the decisions in *Bickham*, discussed at length above, the Court is not persuaded that Gibbs has a reasonable possibility of developing his proposed argument that cause

The Court also notes that while *Bickham* controls, the majority in *Bickham* did not consider *Strickler* in its analysis. And in circumstances presented here – where the actions of the state court and its employees actively prevent a petitioner or his counsel from learning the basis for a contemporaneous objection – *Strickler* appears relevant to the "cause" inquiry.[4]

### 2

Second, Gibbs has failed to show that there was a fundamental miscarriage of justice. Gibbs argues that the closure of the courtroom during *voir dire* rendered his trial "extremely outside of the realm of fundamental fairness." (Am. Pet., ECF No. 13, PageID.1562.)  But the closure of the courtroom during *voir dire* here – while troubling – does not rise to the level of a fundamental miscarriage of justice. The miscarriage of justice exception the procedural default bar requires a showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. Gibbs has not even attempted to make such a showing. He asserts only that his habeas claims have merit, but that assertion

---

existed to excuse his procedural default. Accordingly, the Court concludes that Gibbs is not entitled to additional time to develop his "cause" argument.

[4] Because Gibbs has failed to establish cause to excuse this procedural default, the Court need not address the issue of prejudice. *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983).

does not demonstrate his actual innocence.  Thus, Gibbs has not established that there was a fundamental miscarriage of justice.

For all of these reasons, Gibbs is not entitled to federal habeas relief on his public trial claim.

## IV

In a related claim, Gibbs asserts that his Sixth Amendment right to the effective assistance of counsel was violated in connection with the closure of the courtroom. (*See* Gibbs Reply Br., ECF No. 17, PageID.1681.)  But Gibbs "is not arguing that counsel was 'ineffective' under the standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984)." (*Id.*, PageID.1682.)  Nor is Gibbs "attacking counsel's action in failing to object" to the closure of the courtroom during *voir dire*. (*Id.*)  Instead, Gibbs says that the "trial judge's action in failing to inform the parties that members of the public would be barred from entering the courtroom once [jury selection] began … deprive[d Gibbs] of his Sixth Amendment right to the assistance of counsel." (*Id.*)  Thus, Gibbs' ineffective assistance claim rests on the same grounds as his arguments under *Strickler* that the Court addressed at length above. The Court denies relief on Gibbs' ineffective assistance claim for the same reason it concluded that Gibbs was not entitled to relief under *Strickler*.

**V**

Gibbs next argues that he is entitled to federal habeas relief because the prosecutor used his pre-arrest silence to impeach him and then referred to his pre-arrest silence during closing arguments.  Respondent contends that this claim is barred by procedural default.  The Court agrees.

As explained above, a "procedural default results where three elements are satisfied: (1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an adequate and independent state ground foreclosing review of a federal constitutional claim." *Willis*, 351 F.3d at 744 (internal quotation marks omitted).  All three elements are satisfied here.

First, as noted above, in Michigan courts, a party must contemporaneously object to a known constitutional error in order to "provide[] the trial court an opportunity to correct the error, which could thereby obviate the necessity of further legal proceedings and would be by far the best time to address a defendant's constitutional … rights." *Carines*, 597 N.W.2d at 139.  Here, Gibbs failed to object at trial to the prosecutor's use of his pre-arrest silence.  And he has not argued that he was unaware of the prosecution's use of his pre-arrest silence.

Second, the state courts enforced this procedural rule against Gibbs.  When Gibbs raised this claim of error on direct appeal in the Michigan Court of Appeals, that court held that the claim was "unpreserved" because Gibbs had failed to object at trial. *Gibbs*, 830 N.W.2d at 826.

Finally, as further noted above, the Michigan courts regularly apply the contemporaneous-objection rule against defendants who fail to object to known errors. *See Taylor,* 649 F.3d at 451.  And Michigan courts regularly enforce this procedural rule against defendants who fail to object at trial to the alleged use of, or reference to, their pre-arrest silence. *See*, *e.g.*, *People v. McCluskey*, 2007 WL 4355430, at *2 (Mich. Ct. App. Dec. 13, 2007) (holding that defendant had not preserved for appellate review a claim that the prosecution had elicited testimony that referenced his pre-arrest silence because "[a]t trial, defendant did not object to the challenged evidence based on defendant's right to remain silent"); *People v. Rizk*, 2007 WL 3015403, at *1 (Mich. Ct. App., Oct. 16, 2007) (holding that defendant's claim that his "due process rights were violated by the prosecution's use of his prearrest silence" was "not preserved" where trial counsel failed to object at trial); *People v. Woodley*, 2010 WL 2629718, at *7 (Mich. Ct. App. July 1, 2020) (holding that claim alleging wrongful use of pre-arrest silence was "unpreserved" because "defendant failed to object" at trial).

For all of these reasons, Gibbs' claim related to his pre-arrest silence is procedurally defaulted. And Gibbs has not presented any basis for the Court to find cause for the default. Gibbs is therefore not entitled to federal habeas relief on this claim.

## VI

Finally, Gibbs claims that he is entitled to federal habeas relief because the state trial court erred when it scored Prior Record Variables 5 and 6 and Offense Variable 13 of the state sentencing guidelines at his sentencing. Respondent contends that this claim is not cognizable on habeas review. The Court agrees.

Gibbs raised this claim on direct review and the Michigan Court of Appeals rejected it. *See Gibbs*, 830 N.W.2d at 827-829. That court concluded that Prior Record Variable 6 and Offense Variable 13 were properly scored and that while Prior Record Variable 5 was improperly scored, a correction of that error would not affect Gibbs' sentences. *See id.*

Gibbs has not shown that the Michigan Court of Appeals' decision was contrary to, or an unreasonable application of, federal law. Claims that a state trial court incorrectly scored, calculated, or applied sentencing guidelines are state-law claims. Indeed, "[a] state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only." *Howard v. White*, 76 Fed. App'x 52, 53 (6th Cir. 2003). And "federal habeas corpus relief does not lie

for errors of state law." *Id.* (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)). *See also Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief). Thus, Gibbs' claim that the trial court erred when it scored certain offense variables is not cognizable on federal habeas review. Gibbs is therefore not entitled to federal habeas relief on this claim.

## VII

For all of the reasons stated above, the Court concludes that Gibbs is not entitled to federal habeas relief on any his claims. Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** Gibbs' amended petition for a writ of habeas corpus.

Before Gibbs may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies habeas relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v.*

*Cockrell*, 537 U.S. 322, 327 (2003).  When a court denies relief on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484-85.

The Court concludes that Gibbs is entitled a certificate of appealability with respect to his public trial claim *only*.  The Court denied that claim for procedural reasons.  Thus, as stated above, to obtain a certificate of appealability, Gibbs must show that jurists of reason would find it debatable whether he stated a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the court was correct in its procedural ruling. *See id.*  The Court finds that standard satisfied here.

First, it is (at least) debatable whether Gibbs stated a valid claim for the denial of his constitutional right to a public trial.  The standard to be applied in evaluating that claim on habeas review depends upon whether the closure of the courtroom during *voir dire* was a total closure or a partial closure.  On the record now before the Court, it is not clear whether the courtroom was partially or completely closed

during *voir dire*.[5]  But the merits of Gibbs' public trial claim are debatable whether the closure was complete or partial.  If the closure was complete, Gibbs' right to a public trial was likely violated because the trial court failed to apply the four-part test that must be applied before a courtroom is completely closed. *See Waller v. Georgia*, 467 U.S. 39 (1984).[6]  If the courtroom was partially closed, Gibbs' right to a public trial may well have been violated because there is at least a serious question as to whether the state trial court "balance[d] the interests favoring closure against those opposing it." *Drummond v. Houk*, 797 F.3d 400, 404 (6th Cir. 2015).  Indeed, there is a strong argument that the trial court did not engage in this balancing.  During the limited proceedings on remand, the court explained that the closure was pursuant to its standard practice, not pursuant to any case-specific balancing of interests. (*See*

---

[5] The state trial court indicated that members of the public would be "welcome" during *voir dire*, yet some members of the public (Gibbs' family) were prevented from entering the courtroom during jury selection.  And it is not clear whether any members of the public were ever permitted to enter the courtroom during *voir dire*.

[6] The four factors are:

> [(1)] the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [(2)] the closure must be no broader than necessary to protect that interest, [(3)] the trial court must consider reasonable alternatives to closing the proceeding, and [(4)] it must make findings adequate to support the closure.

*Waller*, 467 U.S. at 48.

7/16/2012 Hr'g Tr., ECF No. 8-17, PageID.1218.) For these reasons, it is at least debatable whether Gibbs has a viable public trial claim.

Second, it is debatable whether this Court's procedural ruling – *i.e.*, enforcing the procedural default against Gibbs on his public trial claim – was correct. The Court was compelled to reach that conclusion based on the Sixth Circuit's published decision in *Bickham*, *supra*. But for all of the reasons explained above, there are serious arguments against the result reached in *Bickham*, and it does not appear that these arguments were presented to the panel that decided that case. These arguments make the procedural ruling here at least debatable, and, in this Court's opinion, they warrant further consideration by the Sixth Circuit – perhaps in an *en banc* setting, if necessary.

For all of these reasons, the Court **GRANTS** Gibbs a limited certificate of appealability with respect to his public trial claim. The Court **DENIES** Gibbs a certificate of appealability in all other respects. Gibbs has failed to make a substantial showing of the denial of a constitutional right as to the rest of his claims and reasonable jurists could not debate the correctness of the Court's rulings on those claims.

Finally, the Court **GRANTS** Gibbs leave to proceed in forma pauperis on appeal because an appeal could be taken in good faith. *See* Fed. R. App. P. 24(a).

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  September 9, 2020

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 9, 2020, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764