# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: August 30, 2021

Mr. Benton C. Martin
Federal Defender Office
613 Abbott Street, Suite 500
Detroit, MI 48226

Mr. John S. Pallas
Mr. Bernard Eric Restuccia
Office of the Attorney General of Michigan
P.O. Box 30212
Lansing, MI 48909

Re: Case No. 20-1973, *Phillip Gibbs v. Erica Huss*
Originating Case No. : 2:14-cv-14028

Dear Counsel,

The court made a correction to the opinion that issued today in this case. Please refer to page 13, third paragraph, first sentence, which should now read as follows:

> Third, there is no evidence that the trial court would have allowed his family to spectate during voir dire even had Mr. Gibbs raised a contemporaneous objection to the courtroom *closure*.

Enclosed is a copy of the opinion incorporating the correction in print. Please note that the date the opinion is deemed to have been filed remains August 30, 2021

Yours very truly,

Deborah S. Hunt, Clerk

Cathryn Lovely
Deputy Clerk

cc: Ms. Kinikia D. Essix

Enclosure

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0201p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

PHILLIP CHARLES GIBBS,

        *Petitioner-Appellant*,

    *v.*

ERICA HUSS, Warden,

        *Respondent-Appellee.*

No. 20-1973

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:14-cv-14028—Matthew F. Leitman, District Judge.

Argued: July 20, 2021

Decided and Filed: August 30, 2021

Before: BOGGS, CLAY, and WHITE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Benton C. Martin, FEDERAL DEFENDER OFFICE, Detroit, Michigan, for Appellant. B. Eric Restuccia, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** Benton C. Martin, FEDERAL DEFENDER OFFICE, Detroit, Michigan, for Appellant. B. Eric Restuccia, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

_____

**OPINION**

_____

    BOGGS, Circuit Judge. Petitioner Phillip Gibbs appeals the district court's denial of his petition for a writ of habeas corpus. He claims that the Michigan trial court violated his public-trial right by barring his family and other members of the public from entering the courtroom

during voir dire.  On direct appeal, the Michigan Court of Appeals remanded for the trial court to hold an evidentiary hearing on the issue, but the trial court did not hold such a hearing and denied any relief.  The Michigan Court of Appeals then held that Mr. Gibbs's claim was defaulted because he did not contemporaneously object to the courtroom closure during voir dire.  But Mr. Gibbs alleges that he and his attorney were completely ignorant of the trial court's closure rule and that they had no reason to know that they should have objected to a closure.

If Mr. Gibbs's allegations be true, then he would have had no reason to object.  The application of the ordinarily adequate contemporaneous-objection rule would, in such unique circumstances, be an inadequate bar to federal review.  Because it is unclear from the record whether Mr. Gibbs was aware of or reasonably should have been aware of the courtroom closure, we remand for the district court to determine these key facts and proceed accordingly.

## I.  BACKGROUND

### A.  The Crime

The following facts, drawn from the last reasoned state-court opinion in Mr. Gibbs's case, are "presumed to be correct" unless Mr. Gibbs rebuts them by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

On October 26, 2010, Mr. Gibbs (then aged 16) and his codefendant in state court, Tyrell Henderson, robbed the store Wholesale 4 U in Flint, Michigan.  *People v. Gibbs*, 830 N.W.2d 821, 823 (Mich. Ct. App. 2013) (per curiam).  They had gone to the store together "numerous times that day," trying to pawn some jewelry.  *Ibid.*  After learning that the jewelry was worthless, Mr. Henderson bought a video game, but he later returned it, telling one of the store owners that it did not work.  *Ibid.*  As the owner tried to troubleshoot the game, Mr. Henderson "struck him in the head with a gun," severing part of his ear.  *Id.* at 823–24.  Mr. Henderson ordered the owner to open the store's cash register and safe, and he also took his jewelry, money, and wallet.  *Ibid.*

For his part, Mr. Gibbs was not armed, but he took the opportunity to relieve the other owner of her jewelry, purse, and identification. *Id.* at 823. He also took an iPod and several laptops from the store. *Ibid.* And one of the two men took another employee's wallet. *Id.* at 824.

Police later searched Mr. Gibbs's mother's house. *Ibid.* There, officers found "a sandwich bag containing jewelry," another bag with "papers and the identifications of the three victims," and "several watches" from Wholesale 4 U. *Ibid.* Both Mr. Gibbs and Mr. Henderson "admitted their involvement" in separate police interrogations, but Mr. Gibbs claimed that he had "had no idea" that Mr. Henderson was planning to rob the store. *Ibid.* He also claimed that Mr. Henderson had "ordered him to take the victims' belongings and other store items" and that he had complied only because he feared the consequences otherwise. *Ibid.*

**B. State Proceedings**

Both men took their cases to trial. *Id.* at 823. They had a joint trial with separate juries. *Ibid.* Just before jury selection began, the trial judge commented in open court:

> All right. We're gonna get—going to get the jury to come upstairs now and so we're going to have an order of sequestration for witnesses only. And if any spectators would like to come in they're welcome but they do have to sit over here by the law clerk, not in the middle of the pool.

But three of Mr. Gibbs's family members supplied sworn affidavits that they "and other members of the public were prevented from entering the courtroom during jury selection in the case" and had to "wait[] in the hallway outside the courtroom" until jury selection had ended. The family members eventually left the courthouse "after being told that jury selection would take all day." They were able to enter the courtroom the next day, "but only after the jury had been picked."[1] Mr. Gibbs did not object to the closure of the courtroom during voir dire. He represents that because the court did not inform him that it would bar entry during the voir dire proceedings, he had "no reason to object to closure of the courtroom, and so he did not." He also represents that he did not learn that his family members were excluded from voir dire until after trial.

---

[1]The record does not indicate when his family members or other members of the public attempted to enter the voir dire proceedings or whether they were present at the courthouse before jury selection began.

At trial, Mr. Gibbs argued the affirmative defense of duress, taking the stand to testify. *Gibbs*, 830 N.W.2d at 824. Mr. Gibbs's jury convicted him of two counts of armed robbery, one count of unarmed robbery, and one count of conspiracy to commit armed robbery. *Id.* at 823. He was sentenced to 17 ½ years to 30 years of imprisonment. *Ibid.*[2]

Mr. Gibbs moved for and received a remand from the state court of appeals to the trial court to, among other things, "develop his argument that he was denied the right to a public trial." *Id.* at 824. In particular, he argued that the trial court's closure of the courtroom, excluding his family from viewing jury selection, violated that right. *Ibid.* On remand, the trial court stated that "its procedure is that, after jury selection begins, it does not allow people to enter or leave the courtroom," and anyone who had entered after jury selection began would have had to leave. *Ibid.*

> I'm telling you, after we start, when the panel is in the room, you're absolutely right no one would be coming or going. I agree with that. If that's a violation, then I violated.

The trial court neither held an evidentiary hearing nor granted relief.

The court of appeals affirmed. *Gibbs*, 830 N.W.2d at 824. It held that, because Mr. Gibbs had not objected contemporaneously to the closure of the courtroom, he had forfeited that claim. *Ibid.* The court applied Michigan's plain-error review standard under *People v. Vaughn*, 821 N.W.2d 288, 297 (Mich. 2012).[3] *Gibbs*, 830 N.W.2d at 824.

---

[2] Mr. Henderson's jury convicted him of three counts of armed robbery, one count of conspiracy to commit armed robbery, one count of assault with intent to rob while armed, one count of carrying a concealed weapon, and possession of a firearm during the commission of a felony. *Gibbs*, 830 N.W.2d at 823. He received a term of imprisonment of 225 to 480 months. *Ibid.* The Michigan Court of Appeals vacated his conviction of assault with intent to rob while armed on double-jeopardy grounds but otherwise affirmed his convictions and sentence. *Ibid.*

[3] The federal plain-error standard under *United States v. Olano*, 507 U.S. 725 (1993), forms the basis for the Michigan plain-error standard:

> In analyzing a forfeited claim of error, a defendant is not entitled to relief unless he can establish (1) that the error occurred, (2) that the error was "plain," (3) that the error affected substantial rights, and (4) that the error either resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings.

*Vaughn*, 821 N.W.2d at 297.

It first held that the trial court did not err, determining that the trial court's statement accurately expressed that spectators were welcome to enter *before* jury selection began—it was coming and going *during* jury selection that the trial court had prohibited. *Gibbs*, 830 N.W.2d at 825. Given that the trial court found it "'too confusing' to allow individuals to come and go during jury selection," the trial court's reason for "partially closing" the courtroom during voir dire was a "substantial reason for the closure" under *People v. Russell*, 825 N.W.2d 623, 631 (Mich. Ct. App. 2012). *Gibbs*, 830 N.W.2d at 825.

The state court of appeals further held that, even had there been error, Mr. Gibbs would not be entitled to relief under the plain-error doctrine. *Ibid.* In *Vaughn*, also a case about the public-trial right, the Michigan Supreme Court held that the first two elements of plain error—error that is clear or obvious—were satisfied by the trial court's closure of the courtroom during voir dire, and it had also observed that its precedents suggested that "a plain structural error" affects a defendant's substantial rights, satisfying the third plain-error element. *Vaughn*, 821 N.W.2d at 304. But the *Vaughn* court held that the closure had not "seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 305 (quoting *People v. Carines*, 597 N.W.2d 130, 143 (Mich. 1999)). It reasoned that "the presence of the *venire* lessens the extent to which [the court's] closure implicates the defendant's public trial right because the *venire*, derived from and representative of the public, guarantees that the voir dire proceedings will be subject to a substantial degree of continued public review." *Ibid.* (alteration in original) (quoting *United States v. Gupta*, 650 F.3d 863, 870–71 (2d Cir. 2011), *vacated and superseded by* 699 F.3d 682 (2d Cir. 2012)). Moreover, the closure in *Vaughn* had been "limited to a vigorous voir dire process that ultimately yielded a jury that satisfied both parties." *Ibid.*

In Mr. Gibbs's case, similar to *Vaughn*, "both parties engaged in vigorous voir dire," "there were no objections to either party's peremptory challenges," "each side expressed satisfaction with the jury," and "the venire itself was present," lessening "the extent to which the closure implicated the defendant's right and guarantee[ing] that the proceedings were subject to a substantial degree of public review." *Gibbs*, 830 N.W.2d at 825. Thus, under *Vaughn*, any error neither "resulted in the conviction of an actually innocent defendant" nor "seriously affected the

fairness, integrity, or public reputation of judicial proceedings." *Id.* at 824–25 (quoting *Vaughn*, 821 N.W.2d at 297).

Mr. Gibbs applied for leave to appeal to the Michigan Supreme Court on the public-trial ground, a *Miranda* ground, and a sentencing ground. That court denied his application in an order stating that it was "not persuaded that the questions presented should be reviewed." *People v. Gibbs*, 838 N.W.2d 875, 875 (Mich. 2013) (mem.). Although the order did cite a case relevant to the sentencing issue Mr. Gibbs had raised, it did not discuss the merits of the public-trial issue. *Ibid.*

## C. Federal Proceedings

In 2014, Mr. Gibbs filed his first § 2254 petition in the district court. The district court held the habeas proceedings in abeyance so that Mr. Gibbs could exhaust an ineffective-assistance claim in state court; after doing so, he moved to reopen his federal habeas case. He proceeded on an amended petition that contained the public-trial claim, the *Miranda* claim, the sentencing claim, and the newly exhausted ineffective-assistance claim.[4]

The warden responded that the public-trial claim was procedurally defaulted. Relying on *Bickham v. Winn*, 888 F.3d 248 (6th Cir. 2018), the warden argued that trial counsel's failure to follow Michigan's contemporaneous-objection requirement resulted in a procedural default *even if* trial counsel and the defendant did not know that the courtroom had been closed.

The district court "reluctantly" agreed that, under *Bickham*, Mr. Gibbs's public-trial claim was procedurally defaulted. It described what it believed were three similarities between this case and *Bickham*: "(1) the state trial courts made statements suggesting that the courtroom would be open, (2) court security staff nonetheless closed the courtroom outside of the presence of defense counsel and defendant, and, as a result, (3) neither defense counsel nor defendant was aware of the closure."

---

[4]The district court found the three claims besides the public-trial claim to be meritless and denied a certificate of appealability on them, so we do not address them further.

The district court opined that we had decided *Bickham* incorrectly. In *Bickham*, we cited two Michigan cases for the proposition that the contemporaneous-objection rule was "firmly established and regularly followed," as is required for a state procedural rule to be "adequate" to foreclose review of a federal constitutional claim, *Ford v. Georgia*, 498 U.S. 411, 423–24 (1991). Those cases were *People v. Gratton*, 309 N.W.2d 609, 610 (Mich. Ct. App. 1981), and *People v. Smith*, 282 N.W.2d 227, 229 (Mich. Ct. App. 1979). *Bickham*, 888 F.3d at 252. The district court argued that those cases were inapposite to Mr. Bickham's case because, in both *Gratton* and *Smith*, the defendants had known of their respective courtroom closures but Mr. Bickham had not known of the closure in his case. The district court also cited several other cases from throughout the country holding that a defendant does not forfeit a public-trial claim by failing to object to a courtroom closure of which he is unaware.[5] Nevertheless, the district court concluded that *Bickham* was on-point and binding precedent; thus, Mr. Gibbs had procedurally defaulted his claim.

The district court then considered whether the default was excused by cause and prejudice. Mr. Gibbs argued that conduct attributable to the state prevented him from making a contemporaneous objection and that he therefore had cause for his procedural default under *Strickler v. Greene*, 527 U.S. 263 (1999). The district court conceded that this argument "seem[ed] to have real merit." But it concluded that a finding of cause on that basis would be inconsistent with *Bickham*, in which we stated that Mr. Bickham had "not present[ed] evidence of either cause and prejudice or a fundamental miscarriage of justice," *Bickham*, 888 F.3d at 252. The district court determined that, because the circumstances surrounding the courtroom closure in *Bickham* and Mr. Gibbs's case were essentially the same, the finding of no cause in *Bickham* compelled a finding of no cause for Mr. Gibbs. The district court declined to reach the issue of prejudice. Further finding that Mr. Gibbs had not shown that there would be a fundamental

---

[5]These cases included *United States v. Gupta*, 699 F.3d 682, 689–90 (2d Cir. 2012) (vacating and superseding the earlier panel holding on which the Michigan case Vaughn had relied); *Eversole v. Commonwealth*, 600 S.W.3d 209, 214 (Ky. 2020); *Shootes v. State*, 20 So. 3d 434, 436–38 (Fla. Dist. Ct. App. 2009); and *Commonwealth v. Johnson*, 456 A.2d 988, 994 (Pa. Super. Ct. 1983). The district court also noted two out-of-circuit cases that held that a defendant cannot be penalized for failure to object to something unknown to him. *United States v. Hanno*, 21 F.3d 42, 45 n.2 (4th Cir. 1994); *United States v. Douglas*, 155 F.2d 894, 896 (7th Cir. 1946).

miscarriage of justice in enforcing the procedural default, the district court denied the public-trial claim as procedurally defaulted.

But the district court issued a certificate of appealability, finding it at least debatable whether Mr. Gibbs had "stated a valid claim of the denial of a constitutional right" and likewise at least debatable whether the finding of procedural default had been correct. Mr. Gibbs filed a timely notice of appeal, and we now exercise jurisdiction under 28 U.S.C. § 2253(a).

## II.  ANALYSIS

### A.  Procedural Default

A procedural default is a "critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). A default generally bars federal review of the merits of a claim— even a constitutional claim—"that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). A habeas claim is procedurally defaulted if and only if "(1) the petitioner failed to comply with a state rule; (2) the state enforced the rule against the petitioner; and (3) the rule is an 'adequate and independent' state ground foreclosing review of a federal constitutional claim." *Bickham*, 888 F.3d at 251 (quoting *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003)).

A common example of a procedural default is a failure to raise a claim in state court in a timely manner. That is what happened in *Bickham*—the defendant failed to object contemporaneously with the closure of the courtroom during voir dire. *Id.* at 251–52. As a result, he forfeited full review of his public-trial claim in the state court. Although the state court applied plain-error review, we still consider such an impediment to merits review to be enforcement of a procedural rule. *Williams v. Burt*, 949 F.3d 966, 973 (6th Cir.), *cert. denied*, 141 S. Ct. 276 (2020).

Federal courts usually decline to meddle with state criminal judgments under these circumstances "[o]ut of respect for finality, comity, and the orderly administration of justice." *Dretke v. Haley*, 541 U.S. 386, 388 (2004). But there are exceptions, one of which is

encapsulated in the third element of our definition of procedural default. If a state procedural ground is not "adequate," it does not foreclose federal review. *Bickham*, 888 F.3d at 251.

## B. Adequacy of the State Procedural Rule

### 1. Legal Framework

What constitutes an adequate procedural rule is a question of federal law. *Lee v. Kemna*, 534 U.S. 362, 375 (2002). A determination of adequacy "generally requires 'an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims.'" *Clifton v. Carpenter*, 775 F.3d 760, 764 (6th Cir. 2014) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). And a rule may be inadequate for one of several reasons. First, if the rule violates the United States Constitution, it cannot "serve as an adequate basis for the state court's decision . . . under the adequate and independent state ground doctrine." *Ibid.* (alteration in original) (quoting *Doan v. Brigano*, 237 F.3d 722, 727–28 (6th Cir. 2001), *overruled on other grounds by Wiggins v. Smith*, 539 U.S. 510 (2003)); *see also* Richard H. Fallon, Jr., et al., *Hart and Wechsler's The Federal Courts and the Federal System* 535 (7th ed. 2015) ("[R]eview plainly cannot be foreclosed by a litigant's noncompliance with a state procedural rule that, on its face or as applied, violates the Due Process Clause.").

But constitutionality is not the only bar. A rule might be inadequate because it is novel or inconsistently applied by the state's courts. *Sutton v. Carpenter*, 745 F.3d 787, 790 (6th Cir. 2014) ("Our review . . . is circumscribed by deference to 'a State's application of its own firmly established, consistently followed, constitutionally proper procedural rules.'" (quoting *Trevino v. Thaler*, 569 U.S. 413, 421 (2013))); *see also Rogers v. Alabama*, 192 U.S. 226 (1904) (holding it inadequate to strike two-page motion to quash indictment as "prolix"); *James v. Kentucky*, 466 U.S. 341 (1984) (holding that a state rule requiring a jury-charge request be labeled "instruction" rather than "admonition" was inadequate because it had not been consistently applied in earlier cases); *Ford v. Georgia*, 498 U.S. 411 (1991) (holding that a state procedural rule not yet established at the time of petitioner's trial and which expressly applied only prospectively was inadequate to preclude Supreme Court review).

And an ordinarily adequate procedural rule may nevertheless be inadequate in "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Lee*, 534 U.S. at 376. The *Lee* Court drew from *Osborne v. Ohio*, 495 U.S. 103 (1990). There, the Ohio Supreme Court had held that Mr. Osborne's constitutional objections to jury instructions were procedurally barred because he had "failed to object contemporaneously to the judge's charge." *Lee*, 534 U.S. at 376–77. But Mr. Osborne had already objected to one of the challenged instructions earlier in the proceedings, "and the trial judge, 'in no uncertain terms,' had rejected [his] argument." *Id.* at 377 (quoting *Osborne*, 495 U.S. at 124). Thus, in that "atypical instance," in which a jury-instruction objection had already been made and decisively overruled, Ohio's enforcement of the contemporaneous-objection rule "serve[d] 'no perceivable state interest'" and was therefore inadequate to prevent Supreme Court review. *Id.* at 378 (quoting *Osborne*, 495 U.S. at 124).

In *Lee*, three defense witnesses, who were to testify in support of the defendant's alibi, left the courthouse for an at-the-time-unknown reason. *Lee*, 534 U.S. at 369. (They later attested that an officer of the court had told them that "their testimony would not be needed that day." *Id.* at 373 & n.6.) Mr. Lee orally moved the trial court for a "continuance until the next morning, to gain time to enforce the subpoenas he had served on the witnesses." *Id.* at 369. The trial judge denied the motion because he could not hold court the next day—his daughter would be in the hospital, and he would have to attend to her. *Ibid.* The court also denied a continuance until the next week because there was another case set for trial. *Id.* at 370. Mr. Lee argued on appeal that the trial court had denied him his right to present a defense. *Id.* at 371.

In its appellate brief, the state raised for the first time that Mr. Lee's motion was improper because it did not satisfy Missouri Supreme Court Rule 24.10 (requiring certain factual showings be made in an application for a continuance). *Lee*, 534 U.S. at 371–72. In its opinion denying relief, the state court of appeals raised on its own a separate procedural rule, Missouri Supreme Court Rule 24.09 (requiring an application for a trial continuance be made on a written motion with an affidavit). *Lee*, 534 U.S. at 372–73. According to Missouri, those two rules "work together to enhance the reliability of a trial court's determination of whether to delay a scheduled criminal trial due to the absence of a witness." *Id.* at 380 (emphasis omitted) (quoting Brief for

Respondent at 29, *Lee*, 534 U.S. 362 (No. 00-6933)). But "neither the prosecutor nor the trial judge so much as mentioned the Rules as a reason for denying Lee's continuance motion." *Ibid.*

In finding the Missouri rules inadequate to support a procedural default, the Court observed that the state had presented no case law for the proposition that "flawless compliance" with the rules was required "in the unique circumstances" presented—namely, "the sudden, unanticipated, and at the time unexplained disappearance of critical subpoenaed witnesses on what became the trial's last day." *Id.* at 382. Also important to the Court's decision was that there was no evidence that "formally perfect compliance with the Rules would have changed the trial court's decision." *Id.* at 387. And, as the Court noted, if the procedural default were upheld, it would not have mattered even if the witnesses truly *had* been told to leave "on the instigation of a prosecutor who knew the judge would be at the hospital with his daughter the next day." *Ibid.* The Court rejected a doctrine under which a "particular application [of the Missouri Rule], never mind how egregious, would be ignored so long as the Rule, like the mine run of procedural rules, generally serves a legitimate state interest." *Ibid.*

     2. *Comparison of This Case with* Bickham

Here, Mr. Gibbs argues that he did not procedurally default his public-trial claim by failing to contemporaneously object. His only route to that conclusion is to show that the state procedural rule is inadequate. But his obstruction to showing inadequacy, as the district court pointed out, is *Bickham*, which held that Michigan's contemporaneous-objection rule is an adequate state procedural ground to support a default. Thus, he can show inadequacy only if he distinguishes his case factually from *Bickham*.

In *Bickham*, the petitioner had been aware of other members of the public interested in observing voir dire because those members of the public, including Mr. Bickham's family, were already in the courtroom. *Bickham*, 888 F.3d at 250. Thus, when those family members did not reenter the courtroom after the venire had been seated, Mr. Bickham was on notice that there was a potential violation of the public-trial right. *See id.* at 251. Moreover, Mr. Bickham was better-positioned than the trial judge to know that there were members of his own family who were not in the courtroom: he knew what his family looked like and that they were present in the

No. 20-1973                  *Gibbs v. Huss*                  Page 12

courthouse—he had just seen them in the courtroom—while the trial judge would have had little reason to know who Mr. Bickham's family members were. *Id.* at 251–52. Thus, Mr. Bickham would reasonably have known to object once he saw that his family had not returned to the courtroom after the venire entered.

By contrast, here, Mr. Gibbs represents that he was in "complete ignorance" of the trial court's closure. Before the venire entered, the court had stated, "And if any spectators would like to come in they're welcome but they do have to sit over here by the law clerk, not in the middle of the pool." That can reasonably be construed as a statement that spectators could enter at any time during voir dire. There is nothing in the record indicating that there was a written local rule prohibiting anyone's entry or exit during voir dire—as far as it appears, this was the trial judge's personal rule to minimize "confusi[on]" during jury selection. And the record neither proves nor disproves that Mr. Gibbs knew of his family's plan to attend voir dire.[6]

Thus, if Mr. Gibbs did not know of the judge's rule *and* there were no other circumstances that would have reasonably put him on notice of the courtroom closure (such as knowing that his family members were coming to voir dire), then he was not on notice of a potential violation of his public-trial right. That would take his case outside the scope of *Bickham*, and the contemporaneous-objection rule would have to be viewed in light of his particular circumstance—that he had not had a reasonable opportunity to object contemporaneously to the closure.

3. *Inadequacy of the Rule If Mr. Gibbs Had No Reasonable Notice of the Courtroom Closure*

If it be true that Mr. Gibbs neither was aware nor reasonably should have been aware of the courtroom's closure during voir dire, then Michigan's contemporaneous-objection rule would be inadequate to support a default of his public-trial claim in his unique circumstances. This is

---

[6]There is one hint that perhaps he had known that at least his mother would be at the courthouse. At the remand hearing directed by the state appellate court, the trial judge recalled that Mr. Gibbs's clothes had not been fitting correctly and thought that his mother had come to bring him different clothes. But the court stated only that "maybe his family can figure out for *tomorrow* . . . if he's changed sizes." (emphasis added) And his mother was on the witness list, and there was a sequestration order in effect, so she would not have been able to sit in on the proceedings. So merely his *mother's* absence from the courtroom would not reasonably have put him on notice of the closure.

true for several reasons. First, no perceivable state interest is served by requiring a defendant to object to a constitutional violation he did not know and should not reasonably have known of. *Cf. Osborne*, 495 U.S. at 124; *Lee*, 534 U.S. at 378. And the federal interest in providing a forum to vindicate federal rights necessarily outweighs a complete lack of state interest in enforcing a procedural rule. *See Clifton*, 775 F.3d at 764.

Second, requiring a contemporaneous objection to a violation of which a defendant is neither aware nor reasonably should be aware is neither "firmly established" nor "consistently followed" by the Michigan courts. Just as Missouri failed to do in *Lee*, the warden here cites no Michigan case law for the proposition that Michigan requires a contemporaneous objection in the "unique circumstances this case presents," *Lee*, 534 U.S. at 382, instead resting on the general adequacy of the contemporaneous-objection rule. Indeed, it appears that such an application of the contemporaneous-objection rule would be a novel one, and novelty of a procedural rule is a reason to find it inadequate to foreclose federal review. *Cf. Ford*, 498 U.S. 411.

Third, there is no evidence that the trial court would have allowed his family to spectate during voir dire even had Mr. Gibbs raised a contemporaneous objection to the courtroom closure. *See Lee*, 534 U.S. at 387 ("Nor is there any indication that formally perfect compliance with the Rules would have changed the trial court's decision."). Indeed, there is affirmative evidence to the contrary. The trial judge herself stated on the record:

> I'm telling you, after we start, when the panel is in the room, you're absolutely right no one would be coming or going. I agree with that. *If that's a violation, then I violated.*

(emphasis added). The trial court was firm on enforcing its closure rule. The state's ostensible purpose for its contemporaneous-objection rule—to promote judicial economy by allowing the trial court to rectify errors immediately—would not be advanced by its enforcement here. *See Osborne*, 495 U.S. at 124 (holding that, "under the circumstances, nothing would be gained" by requiring adherence to a procedural rule for preserving an argument after the trial court "in no uncertain terms" had already rejected the argument once before).

Last, if Mr. Gibbs really did not know and should not reasonably have known that his public-trial right was being violated, then requiring him to object to preserve that right would be

an "exorbitant" and "egregious" application of Michigan's contemporaneous-objection rule. *See Lee*, 534 U.S. at 376, 387 (holding that state procedural rules were inadequate to support a default in a challenge to a violation of a federal right that the state affirmatively caused and that required quick action to correct). Indeed, such a rule would deny due process. *See Gupta*, 699 F.3d at 690 ("[W]e are loath to impute to a defendant—at least in the circumstances here— an obligation to raise a legal objection as to which his own defense counsel is ignorant during the throes of trial."); *United States v. Tramunti*, 500 F.2d 1334, 1341 n.3 (2d Cir. 1974) ("Defense counsel cannot fairly be penalized for failure to raise at trial an issue of which he was, without his own fault, ignorant."); *United States v. Douglas*, 155 F.2d 894, 896 (7th Cir. 1946) ("Counsel for the government was the moving factor in the [submission to the jury of hearsay affidavits of which the defendant was not made aware] and must be held responsible for a procedure which . . . was unfair, prejudicial and attended with dangerous consequences."); *see also Davis v. Wechsler*, 263 U.S. 22, 24 (1923) ("Whatever springes the State may set for those who are endeavoring to assert rights that the State confers, the assertion of Federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice.").

      Thus, under the assumption that Mr. Gibbs neither knew of nor reasonably should have known of the courtroom closure, his failure to contemporaneously object would be an inadequate state procedural ground for a default.

      The district court shall determine in the first instance whether Mr. Gibbs was aware of the courtroom closure or whether there were other circumstances that should have reasonably put him on notice of the closure. If he was not—and could not reasonably have been—aware of the closure, then *Bickham* does not control his case. Rather, the contemporaneous-objection rule would not have been an adequate state procedural ground to default Mr. Gibbs's claim, and there would be no procedural default.

### C. Cause and Prejudice

      One last note on cause and prejudice. We do not decide those issues here, but if the district court finds that Mr. Gibbs's claim is indeed procedurally defaulted, it will then need to

address them. In case it does, we note that *Bickham* does not institute a per se rule that a petitioner can never show cause if he fails to object contemporaneously to a courtroom closure.

The issues of cause and prejudice were not before us in *Bickham*. In his briefing, Mr. Bickham stood on his argument that he had not procedurally defaulted and did not attempt to show cause and prejudice. Appellant's Opening Brief at 12–40, *Bickham*, 888 F.3d 248 (No. 16-2174), ECF No. 13 (arguing that the rule enforced in Mr. Bickham's case was not an adequate ground to support a procedural default and proceeding to an argument on the merits); Appellant's Reply Brief at 1–14, *Bickham*, 888 F.3d 248 (No. 16-2174), ECF No. 23 (same). And the only part of the warden's brief discussing cause and prejudice was boilerplate discussion about ineffective assistance of counsel (inapplicable to Mr. Bickham's case) followed by an argument that, because Mr. Bickham had not argued that his counsel had been ineffective, he had not shown cause. Appellee's Br. at 24–25, *Bickham*, 888 F.3d 248 (No. 16-2174), ECF No. 17. Thus, our statement that Mr. Bickham had not shown cause and prejudice was a statement that those issues had not been argued, not that he *could not* have shown cause and prejudice.

### III. CONCLUSION

For the reasons above, we vacate the district court's judgment and its opinion and order of September 9, 2020, and we remand for further proceedings consistent with this opinion.