UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILLIP CHARLES GIBBS,

           Petitioner,                            Case No. 14-cv-14028
                                                Hon. Matthew F. Leitman

v.

JEFFREY WOODS,

           Respondent.

_____/

**OPINION AND ORDER (1) DETERMINING THAT PETITIONER
PHILLIP GIBBS' PUBLIC TRIAL CLAIM IS PROCEDURALLY
DEFAULTED; (2) DETERMINING THAT THE PROCEDURAL DEFAULT
IS NOT EXCUSED; (3) DENYING HABEAS RELIEF ON GIBBS' PUBLIC
TRIAL CLAIM; AND (4) GRANTING A CERTIFICATE OF
APPEALABILITY**

In 2014, Petitioner Phillip Gibbs filed a Petition for a Writ of Habeas Corpus

in this Court.  He later amended the Petition.  In the Amended Petition, Gibbs

claimed, among other things, that the state trial court violated his right to a public

trial when it prevented members of the public from entering the courtroom during

*voir dire*.  Respondent countered that this claim was procedurally defaulted because

Gibbs had not objected to the state trial court's closure of the courtroom.

The Court had serious questions about whether Gibbs' failure to object could

be considered a procedural default because there was no indication in the record that

Gibbs was (or reasonably could have been) aware of the state trial court's closure of

1

the courtroom.  The Court did not believe that a party's failure to object to an unknown act by a state trial court could amount to a procedural default.  Nonetheless, the Court reluctantly concluded that the Sixth Circuit's decision in *Bickham v. Wynn*, 888 F.3d 248 (6th Cir. 2018), compelled the conclusion that even if Gibbs was not aware that the state trial court closed the courtroom, Gibbs' failure to object constituted a procedural default of his public trial claim.  The Court granted Gibbs a certificate of appealability on this claim.

On appeal, the Sixth Circuit vacated this Court's judgment. *Gibbs v. Huss*, 12 F.4th 544 (6th Cir. 2021).  The Sixth Circuit held that Gibbs' failure to object would not constitute a procedural default of his public trial claim if he was not (and could not reasonably have been) aware of the courtroom closure.  The Sixth Circuit then remanded the case with instructions that this Court should determine "whether Mr. Gibbs was aware of the courtroom closure or whether there were other circumstances that should have put him on notice of the closure." *Id.* at 554.  The Sixth Circuit further directed that "if [this Court] finds that Mr. Gibbs' claim is procedurally defaulted [because Gibbs was or should have been aware of the courtroom closure and did not object], then it will need to address" whether Gibbs can show cause and prejudice to excuse the default. *Id.*

The Court has now completed the tasks ordered by the Sixth Circuit.  The Court held an evidentiary hearing to determine whether Gibbs was or should have

been aware of the courtroom closure.  For the reasons explained below (and as Gibbs now concedes), his attorney was aware of the closure, and thus his public trial claim is procedurally defaulted.  As further explained below, the Court concludes that Gibbs has not shown cause and prejudice sufficient to excuse the default.  Accordingly, the Court **DENIES** relief on Gibbs' public trial claim – the sole remaining claim in the Amended Petition.  However, the Court will **GRANT** Gibbs a certificate of appealability so that he may obtain review of the Court's ruling.

## I

The Court reviewed the factual and procedural background of Gibbs' case in detail in its prior Opinion and Order denying relief on Gibbs' Amended Petition. (*See* Op. & Order, ECF No. 40, PageID.1745–1754.)  The Court will not repeat this background in detail here and, instead, sets forth only what is essential to the present motion.

## A

The charges against Gibbs arose from an armed robbery of a store in Flint, Michigan on October 26, 2010.  Gibbs' trial began in the Genesee County Circuit Court on June 28, 2011.  Just prior to the start of *voir dire*, the state trial court said that "if any spectators would like to come in [for jury selection] they're welcome." (6/28/2011 Trial Tr., ECF No. 8-11, PageID.250.)  The court then proceeded to pick the jury.

3

After trial, Gibbs learned that his mother, sister, and brother-in-law were not allowed to enter the courtroom during *voir dire*.  Those family members said in sworn affidavits that they were told by a "male official in [the state trial judge's] courtroom that since a jury was being picked, [they] could not enter and watch the proceedings." (Courtney Jones Aff. at ¶ 3, ECF No. 8-18, PageID.1289; Elverta Theresa Gibbs Aff. at ¶¶ 3–4, ECF No. 8-18, PageID.1288; Seandra Davidson-Coleman Aff. at ¶ 3, ECF No. 8-18, PageID.1290.)  Gibbs did not object to their exclusion during *voir dire*.

At the conclusion of the trial, the jury convicted Gibbs of "two counts of armed robbery and one count of unarmed robbery." *People v. Gibbs*, 830 N.W.2d 821, 828 (Mich. Ct. App. 2013)

## B

Gibbs then filed an appeal of right in the Michigan Court of Appeals.  Gibbs argued, among other things, that the state trial court violated his Sixth Amendment right to a public trial when it prevented his family members and other members of the public from entering the courtroom during *voir dire*.

Gibbs' appointed appellate counsel filed a motion to remand to the state trial court so that that court could create a full record related to the closure of the courtroom. (*See* Mot. to Remand, ECF No. 8-18, PageID.1317–1347.)   The Michigan Court of Appeals granted the motion to remand on June 20, 2012. (*See*

4

Order, ECF No. 8-18, PageID.1376.)  In the order granting the motion, the Michigan Court of Appeals specifically instructed the state trial court that it "*shall* conduct an evidentiary hearing based on the closure of the courtroom during *voir dire*." (*Id.* (emphasis added).)

## C

On remand, however, the state trial court did not hold an evidentiary hearing. Instead, the trial judge said to the lawyers who appeared for the hearing that it was her policy (1) to admit members of the public to observe *voir dire* if they enter the courtroom before *voir dire* begins and (2) to preclude members of the public from entering the courtroom if they arrive after *voir dire* has begun.  The judge explained her policy (the "*Voir Dire* Policy") as follows:

> *[O]nce we start with the selection in filling the seats, I do not allow anybody to come or go.* So if that clarifies it and I'm suppose to stop and let people come and go. If they came after we started, then they would not have been allowed in. I absolutely agree. […] So I don't think there's much else I can say of that. I can't troll in the halls for spectators. And if someone wants in, we have special arrangements for them to sit at the side out of the jury pull. And if someone comes after we've started selecting the jury, they will not be allowed in, that's absolutely right.
>
> ***
>
> *I'm telling you, after we start, when the panel is in the room, you're absolutely right no one would be coming or going.* I agree with that. If that's a violation, then I violated. I don't have them in afterwards of that period nobody comes and goes. And if a juror has to go to the bathroom,

> the deputy or court clerk has to take them. We can't do that
> during jury selection. It's much too confusing.

(*See* 7/16/2012 Hr'g Tr., ECF No. 8-17, PageID.1218–1219, 1220 (emphases

added).)  The state trial court thereafter denied Gibbs' motion for a new trial.

## D

Gibbs then returned to the Michigan Court of Appeals.   That court

acknowledged that the state trial court did not hold an evidentiary hearing as it had

been ordered to do.   But the court nonetheless denied relief on Gibbs' public trial

claim.

The court first held that plain-error review applied to Gibbs' public trial claim

because Gibbs did not object to the state trial court's closure of the courtroom

pursuant to *Voir Dire* Policy. *Gibbs*, 830 N.W.2d at 824.   The court then explained

that Gibbs could obtain relief on his public trial claim under plain-error review only

if he showed: "(1) that the error occurred, (2) that the error was 'plain,' (3) that the

error affected substantial rights, and (4) that the error either resulted in the conviction

of an actually innocent defendant or seriously affected the fairness, integrity, or

public reputation of judicial proceedings." *Id.* (quoting *People v. Vaughn*, 821

N.W.2d 288, 297 (Mich. 2012)).   Finally, the court held that Gibbs was not entitled

to relief because he had not established the first or fourth prongs of the plain error

test.  The court reasoned as follows:

> Gibbs contends that his family and members of the public were prevented from entering the courtroom during jury selection. The record reveals that before jury selection began, the trial court stated, "And if any spectators would like to come in they're welcome but they do have to sit over here by the law clerk, not in the middle of the pool." Gibbs submitted affidavits indicating that individuals were not allowed to enter the courtroom during jury selection. *Even accepting Gibbs's contention as true, we find no error given the trial court's statement.* It appears that the courtroom was opened to the public initially, but then closed once jury selection began. On remand, the trial court did not conduct a full hearing and acknowledged that once jury selection had begun, the courtroom was closed and suggested that it was "too confusing" to allow individuals to come and go during jury selection. *Even if we were to find error on the basis of the trial court's admitted refusal to allow individuals to enter once jury selection began, Gibbs is not entitled to a new trial or evidentiary hearing.* As in *Vaughn*, both parties engaged in vigorous *voir dire*, there were no objections to either party's peremptory challenges, and each side expressed satisfaction with the jury. Further, the venire itself was present. *Accordingly, Gibbs fails to satisfy the fourth prong as set forth in Vaughn and is not entitled to a new trial.*

*Gibbs*, 830 N.W.2d at 825 (emphases added).  Gibbs then filed an Application for Leave to Appeal with the Michigan Supreme Court.  That court denied the Application. *See People v. Gibbs*, 838 N.W.2d 875 (Mich. 2013).

## E

In 2014, Gibbs filed his Petition for a Writ of Habeas Corpus in this Court. (*See* Pet., ECF No. 1.)  After the Court temporarily stayed the case to permit Gibbs to attempt to exhaust one of his claims, Gibbs filed his Amended Petition. (*See*

Order, ECF No. 14.)  In his Amended Petition, Gibbs claimed, among other things, that the courtroom closure during *voir dire* "denied [him] a Public Trial[.]" (Amended Petition, ECF No. 13, PageID.1562.)   In his Answer, Respondent countered that Gibbs' public trial claim was procedurally defaulted. (*See* Ans., ECF No. 15.)  The Court thereafter appointed counsel for Gibbs and directed the parties to file supplemental pleadings on the public trial claim.  Both parties did so. (*See* Supp'l Brs., ECF No. 25, 26.)

On June 9, 2020, the Court issued an Opinion and Order denying relief on all of Gibbs' claims. (*See* Op. & Order, ECF No. 40.)  As noted above, the Court reluctantly determined that the Sixth Circuit's decision in *Bickham* compelled the conclusion that Gibbs procedurally defaulted his public trial claim because he did not object to the courtroom closure during his trial. (*Id.*, PageID.1759.)  The Court granted Gibbs a certificate of appealability on his public trial claim. (*Id.*, PageID.1772–1774.)  Gibbs filed a Notice of Appeal on September 30, 2020. (*See* Notice of Appeal, ECF No. 43.)

**F**

On appeal, the Sixth Circuit vacated this Court's ruling that Gibbs had procedurally defaulted his public trial claim. *Gibbs*, 12 F.4th 544.  The Sixth Circuit explained that Gibbs' failure to object to the courtroom closure did not necessarily render his public trial claim procedurally defaulted under *Bickham*.  Instead, the key

issue under *Bickham* was whether Gibbs "knew" or "reasonably should have known" of the closure. *Id.* at 554.  If he knew or reasonably should have known of that closure, then, under *Bickham*, his failure to object would amount to a procedural default. *See id.*  If he was not (or should not reasonably have been) aware of the closure, then his failure to object "would be an inadequate state procedural ground for a default," and his public trial claim would not be defaulted. *Id.*

The Sixth Circuit noted that it was "unclear from the record whether Mr. Gibbs was aware of or reasonably should have been aware of" the courtroom closure. *Id.* at 546.  Accordingly, the Sixth Circuit remanded the case back to this Court for further proceedings. *Id.*  The Sixth Circuit explained this Court's inquiry on remand as follows:

> The district court shall determine in the first instance whether Mr. Gibbs was aware of the courtroom closure or whether there were other circumstances that should have reasonably put him on notice of the closure. If he was not—and could not reasonably have been—aware of the closure, then *Bickham* does not control his case. Rather, the contemporaneous-objection rule would not have been an adequate state procedural ground to default Mr. Gibbs's claim, and there would be no procedural default.

*Id.* at 554.  The Sixth Circuit further instructed that if this Court determined Gibbs' claim was defaulted, then this Court to address whether that default was excused. *Id.*

**G**

Following remand from the Sixth Circuit, this Court held an evidentiary hearing on November 9, 2021.  The purpose of the evidentiary hearing was to determine if Gibbs was "aware" or "should he reasonably have been aware" of the courtroom closure. (11/9/21 Hr'g Tr., ECF No. 54, PageID.1831.)  The Court heard testimony from two witnesses: (1) Gibbs' trial counsel, Jeffrey Skinner; and (2) Gibbs.

Skinner testified first.  Skinner said that he had been trying criminal cases, largely in Genesee County, for approximately thirty years. (*See id.*, PageID.1837–1838.)  He noted that he had appeared before Gibbs' trial judge "[m]any times." (*Id.*, PageID.1838.)  He testified that he was aware of the *Voir Dire* Policy and understood that it would be enforced in connection with Gibbs' trial.  He understood that under that Policy, "if you're in, you can stay in," but that "[o]nce [*voir dire*] start[s], people aren't going to be coming in and out." (*Id.*, PageID.1851.)  He explained that his experience in the trial judge's courtroom, and in Genesee County Circuit Court generally, was that, once *voir dire* began, "there would be a deputy, one or more deputies, at th[e] door into the courtroom and if someone attempted to enter," that they would not be permitted "to enter during jury selection." (*Id.*, PageID.1835–1836.)

10

Skinner also testified that he did not find the *Voir Dire* Policy to be objectionable. (*See id.*, PageID.1846–1847.)  He explained that during *voir dire*, "a hundred percent of my attention is directed at what's going on in that courtroom." (*Id.*, PageID.1851–1852.)  Thus, he doesn't "want any distractions" during *voir dire*. (*Id.*, PageID.1851.)  He said that it was "very much" distracting to have people entering and exiting the courtroom "especially during *voir dire*." (*Id.*)

Finally, Skinner testified that he did not recall whether Gibbs' family members told him that they intended to be in courtroom during *voir dire*. (*See id.*, PageID.1836.)

Gibbs testified next.  Gibbs said that he was not aware that the state trial closed the courtroom during *voir dire*. (*See id.*, PageID.1856.)  He also testified that he did not talk to his family about whether they planned to attend his trial. (*See id.*, PageID.1859–1860.)  He added that he first learned that his family members were prevented from entering the courtroom during *voir dire* only after he was sentenced. (*See id.*, PageID.1861.)

At the end of the hearing, the Court requested post-hearing briefing from both parties.  Gibbs filed his brief on December 6, 2021. (*See* Post-Hr'g Br., ECF No. 55.)  Responded filed a response on January 10, 2022 (*see* Post-Hr'g Resp., ECF No. 57), and Gibbs replied on January 27, 2022. (*See* Post-Hr'g Reply, ECF No. 58.)  The Court heard oral argument on February 25, 2022.

## II

The first question before the Court is whether Gibbs procedurally defaulted his public trial claim.  To answer that question, the Court must determine whether Gibbs "was aware of the courtroom closure or whether there were other circumstances that should have reasonably put him on notice of the closure." *Gibbs*, 12 F. 4th at 554.  In his post-hearing brief, Gibbs concedes that Skinner's testimony at the evidentiary hearing "supports the finding that the defense was aware or reasonably could have been aware of the courtroom closure in this case during trial." (Post-Hr'g Br., ECF No. 55, PageID.1874.)  Indeed, Skinner testified that the *Voir Dire* Policy was well-known to him.  Accordingly, the Court concludes that Gibbs knew or reasonably should have known about the courtroom closure under the *Voir Dire* Policy at his trial.  Under these circumstances, Gibbs' failure to object to the closure of the courtroom pursuant to that policy amounts to a procedural default of his public trial claim.

## III

The Court's inquiry does not end there, however.  As the Sixth Circuit noted, even if Gibbs' public trial claim is defaulted, this Court must still address whether Gibbs can show sufficient cause and prejudice to excuse the default.  The Court turns to that issue below.

**A**

Gibbs argues that his attorney's failure to object to the state trial court's enforcement of the *Voir Dire* Policy constituted ineffective assistance of counsel and that counsel's ineffectiveness constitutes sufficient cause and prejudice to excuse the procedural default. "Generally speaking, counsel's deficient performance in state court can serve as grounds for excusing a petitioner's procedural default." *Williams v. Burt*, 949 F.3d 966, 973 (6th Cir. 2020). "[T]o show ineffective assistance of counsel excusing a procedural default," Gibbs must "show that his [ ] counsel's failure to raise the claim rose to the level of a constitutional violation under *Strickland v. Washington*, 466 U.S. 668 (1984)." *Chase v. MaCauley*, 971 F.3d 582, 592 (6th Cir. 2020) (internal quotation marks omitted). "Satisfying the *Strickland* standard, however, is difficult." *Williams*, 949 F.3d at 974. "*Strickland* sets forth a two-prong analysis for assessing ineffective-assistance-of-counsel claims: 1) 'the defendant must show that counsel's performance was deficient[,]' and 2) 'the defendant must show that the deficient performance prejudiced the defense.'" *Chase*, 971 F.3d at 592 (citing *Strickland*, 466 U.S. at 687).

This Court reviews *de novo* whether ineffective assistance of counsel exists to excuse Gibbs' procedural default. As the Sixth Circuit explained recently:

> "An argument that ineffective assistance of counsel should excuse a procedural default is treated differently than a free-standing [habeas] claim of ineffective assistance of counsel." *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir.

2009). In particular, "[t]he latter must meet the higher AEDPA standard of review, while the former need not." *Id.* at 237; *see also, e.g., Smith v. Warden, Toledo Corr. Inst.*, 780 F. App'x 208, 225 (6th Cir. 2019); *Joseph v. Coyle*, 469 F.3d 441, 459 (6th Cir. 2006). Thus, we review *de novo* the question of whether ineffective assistance of appellate counsel excuses [the petitioner's] procedural default.

*Chase*, 971 F.3d at 592.

## B

The Court first addresses whether Gibbs has demonstrated that Skinner's failure to object to the courtroom closure under the *Voir Dire* Policy constituted deficient performance.  To meet this prong, Gibbs must establish that Skinner's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.  And he must overcome the "strong presumption that counsel's conduct f[ell] within the wide range of reasonable professional assistance; that is, [Gibbs] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689.

Gibbs argues that Skinner's failure to object to the courtroom closure under the *Voir Dire* Policy was deficient because "[t]he constitutional violation here should have been obvious to Skinner," based on the leading court closure cases, *Waller v. Georgia*, 467 U.S. 39 (1984) and *Presley v. Georgia*, 558 U.S. 209 (2010). (Post Hr'g Br., ECF No. 55, PageID.1876.)  In those cases, the Supreme Court held that a trial court may not exclude the public from the courtroom during trial or voir dire

14

unless and until the court makes a series of findings as to why the closure is required. *Waller*, 467 U.S. at 48; *Presley*, 558 U.S. at 213. Gibbs says that the state trial court plainly violated *Waller* and *Presley* by closing the courtroom pursuant to the *Voir Dire* Policy without making any of the findings required to support a closure. Gibbs contends that any reasonable attorney in Skinner's position would have spotted the state trial court's patent violation of *Waller* and *Presley* and would have immediately objected to the closure. The Court disagrees.

First, the Court is not convinced that it would have been "obvious" to any reasonable attorney that *Waller* and *Presley* required the state trial court to make findings before enforcing the *Voir Dire* Policy. *Waller* and *Presley* both dealt with situations where the public was excluded *entirely* from certain courtroom proceedings. *Waller*, 467 U.S. at 42 (concerning seven-day suppression hearing "closed to all persons other than witnesses, court personnel, the parties, and the lawyers."); *Presley*, 588 U.S. at 210 (concerning *voir dire* proceedings where trial court removed defendant's uncle, the lone member of the public present, from the courtroom). In contrast, the *Voir Dire* Policy did not result in the exclusion of all members of the public from the courtroom. Under that policy: (1) members of the public could observe *voir dire* proceedings if they arrived in the courtroom prior to the beginning of said proceedings; but (2) once those proceedings began, members of the public not already in the courtroom would not be allowed in (and those already

in the courtroom would not be allowed out).  Thus, only late-arriving members of the public were prevented from entering the courtroom.  At oral argument, the Court asked Gibbs' counsel whether he could identify a case holding that a trial court is obligated to make the findings required under *Waller* and *Presley* when, as under the *Voir Dire* Policy, it (1) allows members of the public to enter the courtroom (and to remain in the courtroom) if they arrive before proceedings begin and then (2) excludes members of the public who attempt to enter the courtroom after the commencement of proceedings.  Gibbs' counsel could not do so.  In the absence of such authority, the Court is not persuaded that it would have been *obvious* to every attorney that the state trial court was required to make findings under *Waller* and *Presley* before closing the courtroom under the *Voir Dire* Policy.[1]

Second, even if the state trial court's closure of the courtroom under the *Voir Dire* Policy was an obvious constitutional violation, it does not follow that Skinner's failure to object to the closure necessarily amounted to deficient performance. Indeed, a defense attorney may reasonably decide that there is a strategic reason to withhold an objection to a patent constitutional violation.  For instance, it could be a reasonable strategy for a defense attorney to withhold an objection (under the

---

[1] To be clear, the Court is not concluding that the state court was free to close the courtroom pursuant to the *Voir Dire* Policy without making the findings required by *Waller* and *Presley*.  The Court concludes only that it would not have been obvious to every reasonable attorney that the state trial court was required to make those findings before implementing the *Voir Dire* Policy.

Confrontation Clause) to the admission of a confession by a non-testifying co-defendant if aspects of the co-defendant's confession supported a defense that counsel was attempting to pursue. Likewise, in this case, Skinner had a reasonable strategic reason for withholding an objection to the closure of the courtroom under the *Voir Dire* Policy. As he testified before the Court, he found it distracting when members of the public entered and exited the courtroom during *voir dire*. Thus, the exclusion of late-arriving members of the public pursuant to the *Voir Dire* Policy helped him to focus on the all-important selection of the jury. Under these circumstances, Gibbs has not shown that Skinner's failure to object to the courtroom closure under the *Voir Dire* Policy was not a permissible judgment call. *See Williams*, 949 F. 3d at 975 ("Absent other indicators, counsel's failure to object [to a public trial right violation] could fairly be described as a judgment call by counsel, something that rarely amounts to constitutionally ineffective assistance."). Simply put, Gibbs has not overcome the *Strickland* presumption that Skinner's decision to withhold an objection to the implementation of the *Voir Dire* Policy was within the boundaries of what "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

Gibbs counters that even if Skinner's goal of limiting distractions during *voir dire* was reasonable, Skinner's decision to withhold an objection to the closure of the courtroom under the *Voir Dire* Policy was not reasonable. Gibbs says that

Skinner should have asked the state trial court to explore options that would have simultaneously (1) avoided distractions during *voir dire* and (2) allowed late-arriving members of the public to observe *voir dire*.  He contends, for example, that Skinner could have asked the state trial court to periodically pause *voir dire* to allow members of the public to enter and exit the courtroom in a manner that would not have interrupted in-progress jury selection.  This is a reasonable suggestion, and it may have been preferable for Skinner to have proceeded in this manner.  However, the Court cannot conclude that Skinner's withholding of an objection altogether was so unreasonable as to constitute deficient performance.

For all of the foregoing reasons, the Court concludes that Gibbs has not established that Skinner's failure to object to closure of the courtroom under the *Voir Dire* Policy constituted deficient performance.

## C

The Court next turns to whether Gibbs has demonstrated prejudice from Skinner's failure to object to the courtroom closure under the *Voir Dire* Policy.  He has not.

## 1

The Sixth Circuit recently explained that a habeas petitioner who invokes ineffective assistance of counsel to excuse a procedural default for "failure to object to a potential public trial violation" bears the "heavy" burden of demonstrating

18

*Strickland* prejudice. *Williams*, 949 F.3d at 978.  In *Williams*, the court explained that a petitioner seeking to demonstrates prejudice in this context bears the burden of showing either (1) "a reasonable probability of a different outcome in [his] case" (*i.e.*, "Actual Prejudice"); or (2) that the "violation was so serious as to render the trial fundamentally unfair," (*i.e.*, "Presumed Prejudice"). *Id.* (quoting *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1911 (2017)).  Gibbs contends that he has demonstrated both types of prejudice here.  The Court disagrees.

## 2

### a

The Court begins with Gibbs' theory of Actual Prejudice.  That theory proceeds as follows:

> 1.  Skinner's failure to object to the state trial court's enforcement of the *Voir Dire* Policy "led directly to the Michigan Court of Appeals applying plain-error review to Gibbs' public- trial claim;"
>
> 2.  Plain error review is much more demanding than *de novo* review because, unlike *de novo* review, plain error review requires an appellant to demonstrate that he is actually innocent or that the claimed error seriously affected the fairness, integrity, or public reputation of judicial proceedings;

3.    The Court of Appeals denied relief on the basis that Gibbs failed to show that he was actually innocent or that the claimed error seriously affected the fairness, integrity, or public reputation of judicial proceedings against him. This demonstrates that the application of plain error review was fatal to Gibbs' public trial claim;

4.    On *de novo* review, the Court of Appeals would have held that the state trial court violated Gibbs' Sixth Amendment right to a public trial when it enforced the *Voir Dire* Policy; and

5.    Therefore, but for Skinner's failure to object to the enforcement of the *Voir Dire* Policy at Gibbs' trial, the Court of Appeals "would have reversed [Gibbs'] conviction."

(Post-Hr'g Br., ECF No. 55, PageID.1879–1880.)

The problem with this theory of prejudice is that it ignores a key independent basis on which the Court of Appeals rejected Gibbs' public trial claim. In addition to holding that the claim failed because Gibbs did not show that he was innocent and/or that the proceedings were fundamentally unfair, the Court of Appeals held that Gibbs was not entitled to relief because the state trial court committed "no error" when it closed the courtroom pursuant to the *Voir Dire* Policy. *Gibbs*, 830 N.W.2d at 825. This no-error finding demonstrates that the Court of Appeals would have rejected Gibbs' public trial claim even if the court had reviewed the claim *de novo*. Accordingly, the Court cannot conclude that there is a reasonable probability that the outcome on direct appeal would have been different if Skinner had secured *de novo* review of Gibbs' public trial claim by objecting to the courtroom closure.

20

At oral argument, Gibbs countered that the Court of Appeals' no-error finding was, itself, erroneous and would have been reversed, at the very least, on habeas review.  Thus, Gibbs argued, he showed prejudice by demonstrating that if Skinner had objected to the courtroom closure and thereby preserved his public trial claim for federal habeas review, he would have obtained federal habeas relief on the claim.  However, Gibbs has not cited any case in which any court has recognized such a relief-on-later-federal-habeas-review theory of Actual Prejudice.  Moreover, Gibbs has not persuaded the Court that – given the deferential standard of review under AEDPA – there is a "reasonable probability" that he would have obtained federal habeas relief on his public trial claim if the claim had not been procedurally-defaulted by Skinner's failure to object. *See Williams*, 949 F.3d at 978.

For all the foregoing reasons, the Court concludes that Gibbs has not established Actual Prejudice resulting from Skinner's failure to object to the courtroom closure under the *Voir Dire* Policy.

### b

The Court turns now to Gibbs' Presumed Prejudice argument.  Gibbs contends that Presumed Prejudice exists in this case because the state trial court's enforcement of the *Voir Dire* Policy was a "structural error" that rendered his trial "fundamentally unfair." (Post-Hr'g Br., ECF No. 55, PageID.1880 (quoting *Weaver*, 137 S. Ct. at 1908).)  Once again, the Court is not persuaded.

As Gibbs acknowledges, "not every public-trial violation will in fact lead to a fundamentally unfair trial." (*Id.* (quoting *Weaver*, 137 S. Ct. at 1911).)  Indeed, in *Weaver*, the Supreme Court held that a complete closure of the courtroom during *voir dire* did not render petitioner's trial fundamentally unfair.   It reasoned as follows:

> Although petitioner's mother and her minister were indeed excluded from the courtroom for two days during jury selection, petitioner's trial was not conducted in secret or in a remote place. The closure was limited to the jury *voir dire*; the courtroom remained open during the evidentiary phase of the trial; the closure decision apparently was made by court officers rather than the judge; there were many members of the venire who did not become jurors but who did observe the proceedings; and there was a record made of the proceedings that does not indicate any basis for concern, other than the closure itself.

> There has been no showing, furthermore, that the potential harms flowing from a courtroom closure came to pass in this case. For example, there is no suggestion that any juror lied during *voir dire*; no suggestion of misbehavior by the prosecutor, judge, or any other party; and no suggestion that any of the participants failed to approach their duties with the neutrality and serious purpose that our system demands.

*Weaver*, 137 S. Ct. at 1913.

Many of these circumstances exist here, as well.  Gibbs' trial, apart from *voir dire*, was open to the public.  And, during *voir dire* itself, the courtroom was open to members of the public who arrived before *voir dire* proceedings began.  Moreover, Gibbs does not contend that, apart from the state trial court's enforcement of the *Voir*

*Dire* Policy itself, there was any misconduct during *voir dire*, or at any other point in trial, that "flow[ed] from" the *Voir Dire* Policy. *See id.* These factors suggest that, as in *Weaver*, the closure under the *Voir Dire* Policy did not render Gibbs' trial fundamentally unfair.

Nonetheless, Gibbs insists that *Weaver* is distinguishable for three reasons: (1) the closure of the courtroom under *Voir Dire* Policy was a routine practice, rather than a one-off decision; (2) the *Voir Dire* Policy originated from the state court judge, rather than a courtroom employee; and (3) Gibbs challenged the closure on direct appeal, rather than on collateral review, and defendants who raise properly preserved public trial claims on direct appeal are "generally [] entitled to automatic reversal regardless of the error's actual effect on the outcome." (Post-Hr'g Br, ECF No. 55, PageID.1880–1882 (quoting *Weaver*, 137 S. Ct. at 1910 (internal quotation marks omitted).) Gibbs insists these distinctions warrant "presum[ing] prejudice in Gibbs' case." (*Id.*, PageID.1880.)

The Court is not convinced that these distinctions establish that the closure here rendered Gibbs' trial fundamentally unfair. The first two distinctions merely restate what the alleged violation in this case was – the closure under the *Voir Dire* Policy. They do not explain how that closure led to a fundamentally unfair trial for Gibbs. As for the third distinction, this argument is foreclosed by *Williams*. There, as here, petitioner raised his public trial claim on direct review. *Williams*, 949 F.3d

at 971.  And there, even after agreeing that petitioner's counsel was deficient for failing to object to a public trial violation, the Sixth Circuit saw "no basis to conclude that [petitioner] was prejudiced by the closure of the courtroom such that his procedural default should be excused." *Id.* at 979.  Thus, the fact that Gibbs raised his public trial claim on direct appeal does not warrant a presumption of prejudice. Accordingly, Gibbs has not persuaded the Court that the enforcement of the *Voir Dire* Policy rendered his trial fundamentally unfair, and he has therefore failed to establish Presumed Prejudice.

## D

For all of the reasons explained above, Gibbs has neither demonstrated that Skinner's failure to object to the courtroom closure under the *Voir Dire* Policy constituted deficient performance nor that it caused him prejudice.  For these two independent reasons, he has failed to show that his default of his public trial claim is excused by ineffective assistance of counsel.

## IV

For the foregoing reasons, the Court concludes that Gibbs' public trial claim is procedurally defaulted, and that neither cause nor prejudice exist to excuse it. Accordingly, the Court **DENIES** habeas relief on Gibbs' public trial claim.

Before Gibbs may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of

appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a court denies habeas relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that [...] jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  When a court denies relief on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484-85.

The Court concludes that Gibbs has met this standard here.  Accordingly, the Court **GRANTS** Gibbs a certificate of appealability with respect to the ruling set forth in this Opinion and Order.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  April 14, 2022

25

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 14, 2022, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126